UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                 :

  THE UNITED STATES OF AMERICA,    :

                                 :

  v.                                 :

                                 :

  ROBERT C. MORGAN,            :     18-CR-108-EAW

                                 :

                *Defendant.*    :

                                 :

                                 :

-----------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT C. MORGAN'S MOTION SEEKING AN ORDER CONFIRMING THE LACK OF PRETRIAL RESTRAINT ON DEFENDANT ROBERT C. MORGAN'S PROPERTY AND ENJOINING THE GOVERNMENT AGAINST FURTHER UNLAWFUL RESTRAINT**

GIBSON, DUNN & CRUTCHER LLP
Joel M. Cohen
Lee G. Dunst
Caitlin S. Walgamuth
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Attorneys for Defendant
ROBERT C. MORGAN

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 4

    **A.**    There is No Court Order Authorizing the Restraint or Seizure of Any
         Property In this Action ........................................................................................ 4

    **B.**    The Government's Actions To Date .................................................................... 5

         **1.**    The Government Communications with Mr. Morgan About Its
              Purported Authority ............................................................................... 5

         **2.**    The Government's Restrictions on the Sale of a Real Property
              Under its Purported Authority ................................................................ 6

         **3.**    The Government's Restrictions on the Sale of Unindicted Property
              Under its Purported Authority ................................................................ 8

         **4.**    The Government's Insufficient and Incomplete Representations to
              the Court and Mr. Morgan's Counsel ..................................................... 10

ARGUMENT ....................................................................................................................... 12

    **A.**    The Court Has Broad Authority to Confirm the Lack of a Pretrial Restraint
         Over Mr. Morgan's Real Estate Portfolio and Enjoin the Government's
         Extralegal Conduct ............................................................................................. 12

    **B.**    There is No Lawful Basis for Pretrial Restraint or Seizure of the Twelve
         Real Properties or the Unindicted Properties ..................................................... 14

    **C.**    The Government's Communications and Actions Unlawfully Restrain
         Both Twelve Real Properties and Unindicted Properties .................................... 17

    **D.**    The Court's Relief is Necessary to Stop the Government's Extralegal
         Restraint on Mr. Morgan's Property ................................................................... 18

CONCLUSION .................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)..................................................................................................13

*De La Maza v. U.S.*,
    215 F.2d 138 (9th Cir. 1954) .................................................................................12

*Honeycutt v. U.S.*,
    137 S. Ct. 1626 (2017)...............................................................................1, 15, 18

*ITT Cmty. Dev. Corp. v. Barton*,
    569 F.2d 1351 (5th Cir. 1978) ...............................................................................13

*Penn. Bureau of Corr. v. U.S. Marshals Serv.*,
    474 U.S. 34 (1985)............................................................................................13, 18

*U.S. v. Baird*,
    414 F.2d 700 (2d Cir. 1969)...................................................................................13

*U.S. v. Barnes*,
    16-CR-6029L, 2018 WL 4926857 (W.D.N.Y. Oct. 11, 2018) ...............................12

*U.S. v. Cannone*,
    528 F.2d 296 (2d Cir. 1975)...................................................................................13

*U.S. v. Cosme*,
    796 F.3d 226 (2d Cir. 2015)...................................................................................15

*U.S. v. Daugerdas*,
    No. S3 09 Cr. 581(WHP), 2012 WL 5835203 (S.D.N.Y. Nov. 7, 2012) ..............15

*U.S. v. Giacobbe, et al.*,
    No. 18-108 EAW (W.D.N.Y. May 21, 2019)..........................................................5

*U.S. v. King*,
    No. 10 Cr. 122(JGK), 2010 WL 4739791 (S.D.N.Y. Nov. 12, 2010)....................16

*U.S. v. Kozeny*,
    No. 05 CR 518 SAS, 2011 WL 1672473 (S.D.N.Y. Apr. 29, 2011).......................14

*U.S. v. Maye*,
    No. 08-cr-00194-WMS-JJM, 2011 WL 2533020 (W.D.N.Y. 2011).......................16

Page(s)

*U.S. v. McIntosh*,
11-CR-500 (SHS), 2017 WL 3396429 (S.D.N.Y. Aug. 8, 2017), *appeal
docketed*, No. 17-2623 (2d Cir. Aug. 24, 2017) .................................................................15

*U.S. v. N.Y. Tel. Co.*,
434 U.S. 159 (1977)...................................................................................................13, 14, 19

*United States v. Robert Morgan et al*,
18-CR-108-EAW ..............................................................................................................7, 9, 10

*Zenith Elec. Corp. v. U.S.*,
884 F.2d 556 (Fed. Cir. 1989).............................................................................................14, 18

**Statutes**

18 U.S.C. 3231 ......................................................................................................................19

18 U.S.C. § 982(b)(1) ...........................................................................................................15

18 U.S.C. § 2232 ..........................................................................................................5, 8, 18

18 U.S.C. § 2232(a) ..............................................................................................................18

18 U.S.C. § 3231 ..............................................................................................................2, 12

21 U.S.C. § 853 .....................................................................................................................15

21 U.S.C. § 853(e) .......................................................................................................1, 14, 15

21 U.S.C. § 853(f) ..........................................................................................................14, 15

28 U.S.C. § 1651(a) .......................................................................................................13, 18

28 U.S.C. § 2461(c) ..............................................................................................................15

**Rules**

Fed. R. Civ. P. Supp. G(7)(a) (2009) ...................................................................................16

Fed. R. Civ. P. Supp. G(7)(b)(iv)..........................................................................................16

N.Y. C.P.L.R. § 6501 et seq. ..................................................................................................5

Rule G(7) ...............................................................................................................................16

Page(s)

Rule G(7)(a)................................................................................................................16

Rule G(7)(b)(iv).....................................................................................................16, 17

Defendant Robert C. Morgan ("Mr. Morgan") respectfully moves for an order confirming that, in the present criminal action pending before the Court, none of the properties in which Mr. Morgan has an ownership interest, directly or indirectly, is currently subject to a lawful pretrial restraint or seizure by the United States and, as such, there is no restriction or impediment on the sale, transfer, or disposition of any proceeds of such properties at this time. Mr. Morgan further moves for an order enjoining the government from further interference with the sale, transfer, or disposition of proceeds of any properties in which Mr. Morgan has an ownership stake, directly or indirectly, absent an application by the government to the Court pursuant to 21 U.S.C. § 853(e), and a subsequent order from the Court and compelling the government to provide notice of the same to all third parties to whom the government has previously communicated about criminal or civil forfeiture related to this action.

## INTRODUCTION

Absent a court order restraining a property subject to forfeiture, Mr. Morgan and third-party stakeholders are free to transfer, sell, and dispose of any proceeds from a property's sale without government interference or opposition. The exclusive procedure for the United States Attorney's Office for the Western District of New York (the "government") to attempt to restrain the use or disposition of Mr. Morgan's real property is to follow the mandatory statutory process and make an application to the Court and "prove[], at a hearing, that (1) the defendant has committed an offense triggering forfeiture, and (2) that 'the property at issue has the requisite connection to the crime.'" *Honeycutt v. U.S.*, 137 S. Ct. 1626, 1633 (2017) (internal citation omitted) (analyzing 21 U.S.C. § 853(e)); *see* 21 U.S.C. § 853(e). The government concedes that there is no court order in this or any other action restraining any properties to which Mr. Morgan

has an ownership interest, directly or indirectly, so the government may not lawfully interfere with any such sales.

There is substantial evidence that the government has evaded this legal restriction. Simply put, the government has assumed on its own the Court's exclusive authority to determine whether properties may be restrained pretrial. In pursuit of this misguided effort, the government has confused third parties into negotiating proposed extra-judicial side deals that would restrain Mr. Morgan's property and deprive him of the proceeds he may need to defend against this very action and for other essential purposes. Not surprisingly, the government's actions lack any support and indeed contradict the Department of Justice's own published policies restricting the pretrial restraint of property.

As set forth below, the Court has jurisdiction to hear this motion and issue an order, under 18 U.S.C. § 3231, or alternately under the All Writs Act, to address issues relating to the criminal forfeiture charges in the case pending before the Court. And since Mr. Morgan's June 21 letter to the Court and the June 25 status conference before the Court, we have learned about additional government conduct that goes beyond the unsupported, contradictory statements by the government blessing or "opposing" property transactions. Cloaking itself in the apparent authority of the Court in this action (which the government has failed to seek as required by statute), the government has been negotiating side deals with stakeholders and *drafting stipulations to which it is a party but the Court is not*, setting restrictions that they have no legal right to demand as the consideration for their blessing on property sales. The government's stipulated restrictions manifest its position to date and that its representations to the Court and the defense of "taking no positions" concerning such transactions are plainly incorrect. The government's proposed terms require some or all proceeds from sales to be seized by the U.S.

Marshal Services ("USMS"), an arm of the Department of Justice, until the conclusion of this criminal action, likely years in the future. Their proposed terms contemplate no role or oversight for the Court even though pretrial restraints can only occur upon the government applying for and then receiving an order from the Court. In addition, the government demands as consideration for its blessing that third-party stakeholders agree to terms prohibiting Mr. Morgan *and his family members* from receiving any proceeds absent further court order, thus seeking to sweep into these side-deals restrictions adversely affecting non-party property owners. See, e.g., Cohen Declaration ("Cohen Decl.") ¶7, Ex. C. The government's proposed terms do not vary depending whether the property is one of the twelve subject to a forfeiture allegation in the Superseding Indictment or one of many dozens wholly outside the Superseding Indictment's allegations. *See* Cohen Decl. Ex. C (draft Eden Square stipulation); Ex. I (draft stipulation for unindicted properties). In such communications with stakeholders surrounding these stipulations, the government mentions nothing about the proscription in 21 U.S.C. § 853 that pretrial restraints can only occur upon court order. The government remains unwilling to correct stakeholder misimpressions created by the government, including that stakeholders face criminal penalties if they resist the terms demanded by the government. *Id*. at ¶ 23, Ex. Q; ¶ 8, Ex. D. In light of this extensive record of the government inserting itself into negotiations between private parties regarding these transactions, it is, to be generous, baffling that the government continues to claim that it takes "no position" on the disposition of assets. *Id*. at ¶ 23, Ex. Q.

The government's actions have caused significant harm to Mr. Morgan and third parties. Its extralegal acts have already stymied many significant property transactions underway before Mr. Morgan's indictment, as lenders, buyers, sellers, title insurers and counsel understandably fear adverse government action unless they comply with the government's extralegal terms. As

the government refuses to clarify publicly that it has no legal entitlement at this time to restrain Mr. Morgan's assets pretrial, those fears remain and will continue to affect additional transactions until the Court acts. The government's continued actions encapsulate the need for the Court's intervention. The government continues to represent to Mr. Morgan and the Court that it "takes no position" when its actions outside of the Court's purview plainly contradict those representations. The government may not, through side deals with some third-party stakeholders, stipulate away its burden to comply with the statutory criminal forfeiture requirements. Nor may it prevent Mr. Morgan from seeking a remedy because it refuses to avail itself to the Court and comply with the applicable statutes to lawfully seek a pretrial restraint.

Because even now the government does not seem to appreciate or acknowledge what it has done, transactions will continue to be adversely affected or thwarted, and both Mr. Morgan and third parties will continue to lose the opportunity to obtain repayment and the benefit of their property transactions until the Court issues an order (1) confirming that there is no lawful pretrial restraint of properties in which Mr. Morgan has an interest, and that only the Court may order one, and (2) enjoining the government against further unlawful restraint absent such court order.

## FACTUAL BACKGROUND

### A. There is No Court Order Authorizing the Restraint or Seizure of Any Property In this Action

The Superseding Indictment against Mr. Morgan in *U.S. v. Giacobbe, et al.* was filed on May 21, 2019 and included three forfeiture allegations seeking, upon conviction, the forfeiture of "any property constituting or derived from proceeds obtained, directly or indirectly, as a result of such offense of conviction." (Dkt. 42). It sets forth *twelve* specific real estate properties[1] subject

---

[1] Those twelve properties are Rugby Square Apartments, Morgan Ellicott Apartments, Amherst Gardens Apartments, Avon Commons, Rochester Village Apartments, The Reserve at Southpointe, Eden Square Apartments, Villas at Victor, Park Place at South Park, Ellison Heights Apartments, Union Square Apartments,

to forfeiture upon conviction (individually a "Real Property," and collectively, the "Twelve Real Properties").

According to the government, it has filed notices of *lis pendens* on eleven of the Twelve Real Properties.[2]  *See Cohen Decl. Ex. N (Dkt. 61)*.  It has not filed a *lis pendens* notice on Eden Square.  *Id*.  To date, the government has not filed any civil or administrative forfeiture action, or made an application for a seizure warrant or other court-ordered pretrial restraint, related to the Twelve Real Properties or any other properties in which Mr. Morgan may have an ownership interest, either directly or indirectly (the "Unindicted Properties").  Cohen Decl. ¶¶ 2–4.

Accordingly, there is no court order at this time restraining the use, transfer, or disposition of any of the Twelve Real Properties or the Unindicted Properties.

## B.     The Government's Actions To Date

Notwithstanding these indisputable facts, the government's communications and actions to date have implied to Mr. Morgan and various third parties that the government is authorized to restrain the sale of and use of any proceeds in the Twelve Real Properties *and* any Unindicted Properties or set the terms for transactions between private parties in connection with those properties.

### 1.     The Government Communications with Mr. Morgan About Its Purported Authority

On May 28, 2019, the government sent Mr. Morgan's counsel a letter stating that it understood Mr. Morgan has an interest in some of the Twelve Real Properties and informed them that 18 U.S.C. § 2232 prohibits, among other conduct, knowingly taking action for the purpose

---

and the Links at Centerpointe Townhomes.  Superseding Indictment at 51–54, *U.S. v. Giacobbe, et al.*, No. 18-108 EAW (W.D.N.Y. May 21, 2019).

[2]  *Lis pendens* provides notice that property is subject to litigation, and to notify prospective purchasers or encumbrancers of the property of the claim.  *See* N.Y. C.P.L.R. § 6501 et seq.

of interfering with the forfeiture of a property, purposely impairing the government's lawful authority to seize and hold it, or purposely impairing the Court's jurisdiction over it. *Id*. at ¶ 5, Ex. A. Mr. Morgan's counsel thereafter requested clarification as to whether the government intended to seek a pretrial restraint on the sale or transfer of any of the Twelve Real Properties. *Id*. at ¶ 6, Ex. B. In a June 5, 2019 letter in response to the clarification request, the government stated, without any legal basis or judicial authority, that it "will allow sales" of "the indicted properties in the Superseding Indictment" "to Bona Fide Purchasers (BFP) only if the net proceeds . . . are placed with the United States Marshals Services (USMS) to be held in the USMS Seized Asset Fund as the substitute 'res' for each individual property/complex." *Id*. at ¶ 10, Ex. G (emphasis in original).

## 2. The Government's Restrictions on the Sale of a Real Property Under its Purported Authority

Despite the lack of any court-ordered pretrial restraint or seizure warrant on the Twelve Real Properties (let alone the Unindicted Properties), the government has represented to various stakeholders (including potential buyers, lenders, title companies, and investors) that it has the authority to require all proceeds from any sale be seized by the government and restrict third parties from distributing proceeds to the rightful owners, including, but not limited to, Mr. Morgan.

For example, on June 4, 2019, the government drafted and provided counsel for the entity that owns Eden Square, one of the Twelve Real Properties, and counsel for a title company to the transaction, a "draft stipulation" that purports to set forth the government's requirements for an impending June 6 sale of Eden Square (the "Eden Square Stipulation"). *Id*. at ¶ 7, Ex. C. In its cover email, the government notes that the draft is "with USMS for review to make sure they can accept the funds" of the pending sale "or if they need any 'magic' language in the stip in order to

do so." *Id.*, Ex. C at 1. The government's draft stipulation includes the requirement that "the net proceeds from the sale" of Eden Square be paid by the title company "to the United States Marshal Service . . . to be held in its Seized Assets Deposit Fund [("SADF")] as the substitute res until the conclusion of the pending criminal and forfeiture in *United States v. Robert Morgan et al*, 18-CR-108-EAW with respect to those proceeds or **until further order of the Federal Court.**" *Id.*, Ex. C at 2–3, 5 (emphasis added). As such, the government's proposed terms plainly do not alert the recipients that this contravenes federal law because no such restraint can occur *unless* the government first applies to the Court for such relief and the Court then orders it. The draft Eden Square Stipulation also requires that "no proceeds shall be caused to be transferred in any manner to Eden Square's owner, Cranberry Vista Apartments LLC, Robert Morgan, or any of his family members or entities **until further federal court order.**" *Id.*, Ex. C at 5 (emphasis added). It includes no legal basis for either of these requirements (as there is none), nor does it explain there is no court order restricting this property.

In its communications with stakeholders about the proposed Eden Square Stipulation, the government misstates its authority to act, and allows for stakeholders' misunderstanding about the Court's role in the proposed stipulated restraint to go uncorrected. For example, counsel for a stakeholder expressed concern that the government is requiring the USMS to seize the funds because the criminal forfeiture statute only allows third parties to petition for their interests in "forfeited funds" after the criminal case is over and requested the government instead permit a title company hold the proceeds in "an actual escrow," noting (incorrectly) that "[a]ny party would of course still have to petition the court for the release of the funds." Cohen Decl. ¶ 8, Ex. D at 2. In its response, the government fails to correct the counsel's misunderstanding that a court order permitted the USMS seizure of the funds in the first instance, thereby necessitating

the Court's approval for release, and further compounds the misinformation by responding, without legal basis, that it "**must insist** the net proceeds be held by the USMS SADF until further discussions can be had" because Eden Square "is an 'indicted property.'" *Id.*, Ex. D at 1 (emphasis added).

Even further compounding the misinformation it has generated, the government asserts that Mr. Morgan is presently prohibited from disposing or transferring property because of 18 U.S.C. § 2232. *Id.* However, section 2232 has never been applied to allege criminal obstruction of forfeiture absent a court order of restraint preceding the alleged obstructive acts, nor could it be under the plain language of the statute. The government even sets terms rejecting proposed language that third parties not named in the Superseding Indictment may "apply to the Court" for release or disposition of the funds held pursuant to the draft stipulation, insisting that the "**USAO will oppose** such a claim." Cohen Decl. at ¶ 9, Ex. F (emphasis added).

To date, this draft stipulation has not been executed and, as a result, the Eden Square sale has not closed. *Id*. at ¶ 24. Nor has the government clarified to the third-party Eden Square stakeholders that there is no legal basis for the government to require net proceeds from a sale to be seized by the USMS.

### 3. The Government's Restrictions on the Sale of Unindicted Property Under its Purported Authority

The government also has appointed itself arbiter in determining whether *Unindicted Properties* may be sold and under what conditions — again without any effort to comply with the mandates of section 2232. For example, on June 10, 2019, the government wrote a letter to counsel for a third-party stakeholder stating that the USAO and FBI "would **oppose** any such sale" of the View at MacKenzi/Colonial Gardens ("View at MacKenzi"), an Unindicted Property located in York, Pennsylvania and owned by third parties and Mr. Morgan. Id. at ¶ 11, Ex. H

(emphasis added).  In the same communication, the government also provided its affirmative blessing to a third-party to proceed with transactions on two other Unindicted Properties.  *Id.*

In its June 25 letter to the Court, the government concedes (as it must) that it previously made representations to stakeholders concerning nearly 40 Unindicted Properties.  *See id.*, Ex. N (representing the government has "indicated to various parties who contacted us that approximately 35 to 40" Unindicted Properties are "not targeted for further criminal or civil action by the USAO").  However, the government failed to inform the Court about the quantity of stakeholders in the Unindicted Properties the government has communicated with in a manner inconsistent with the governing statute.[3]  *Id.* at ¶ 19.

For example, on or about June 13, 2019, the government modified the draft Eden Square Stipulation to encompass extralegal limitations on the sale of *any* Unindicted Property.  *Id.* at ¶¶ 14–15, Ex. I.  The new draft stipulation provides that "net proceeds from the sale of the above-referenced property . . . shall be deposited with the United States Marshall Service . . . to be held in its Seized Asset Deposit Fund **as the substitute res until resolution is reached in criminal and forfeiture litigation attendant to the case known as <u>United States v. Robert Morgan, et al.</u>,** 18-CR-108-EAW with respect to those proceeds or until **further ordered by the Federal Court**."  *Id.*, Ex. I at 2–3 (emphasis added).  In an effort to circumvent the lack of a forfeiture allegation with respect to an Unindicted Property, the government's stipulation states that "[w]hile ******* ******* is not specifically referenced in the Forfeiture Allegations of the Superseding Indictment as being subject to forfeiture in the event of conviction, the parties understand that the property **may be subject to either civil or criminal forfeiture in the near future**."  *Id.* at 3-4 (emphasis added).  Like the draft Eden Square Stipulation, the government

---

[3] The third-party who received this message from the government has requested that we not share the communications in a public court filing out of concern of an adverse government action.

proposed to require the seller to agree that **no proceeds** from the sale shall be "transferred in any manner" to the entity owning the property, Mr. Morgan, or "any of his family members, agents, other defendants, or entities **until further federal court order**." *Id.* at 6 (emphasis added). Far from "maintain[ing] the status quo," as the government erroneously suggests in its June 25 letter to the Court, *Id.*, Ex. M at 5, its insistence on this stipulation term would strip Mr. Morgan and third parties of the lawful benefit of their ownership stake for a property not subject to any allegation of forfeiture. And the government's inclusion of blank "******" placeholders demonstrates its intent to use this format to negotiate side-deal restraints on other Unindicted Properties.

The government shared a version of this blank stipulation (still showing the government's track changes altering the Eden Square Stipulation language to apply to *any* Unindicted Property), with counsel for the intended purchaser of View at MacKenzi, misleading counsel for the intended purchaser to understandably believe "[i]t's clear based on the attached [draft stipulation] that this Stipulation was red-lined off another Morgan deal so this procedure **has been followed before with respect to the Morgan properties**." *Id.* at ¶ 15, Ex. J. In fact, this draft term has not been utilized by the government in other Morgan-related transactions.

To date, the government's stipulation to sell the View at MacKenzi has not been signed and the sale has not occurred.

### 4. The Government's Insufficient and Incomplete Representations to the Court and Mr. Morgan's Counsel

Mr. Morgan's counsel wrote to the government on June 19, 2019 to request it address the confusion it had created and clarify its claimed legal basis for "oppos[ing]" property transactions absent any court-ordered pretrial restraint. *Id.* at ¶ 16, Ex. K. After the government failed to provide any clarification on its positions or a timeline for a response, Mr. Morgan's counsel filed

a letter motion to the Court on June 21, 2019, seeking judicial intervention prohibiting the government from communicating its extralegal views concerning the proposed use or disposition of properties in Mr. Morgan's real estate portfolio, unless and until the government obtains a judicial restraint order. *Id.* at ¶¶ 17–18; Ex. L.

On June 25, 2019, the government responded with a six-page letter to the Court that failed to acknowledge or address its conduct to date. *Id.* at ¶ 20, Ex. N. The government's letter does not discuss its opposition to any sale of View at MacKenzi or other Unindicted Properties, its insistence to counsel for Eden Square that any sales proceeds must be held by the USMS (not in an escrow account) until the end of the criminal action or court order, the existence of a draft stipulation for View at MacKenzi or other Unindicted Properties, or the nature or content of its restrictive draft stipulations, including the proposed prohibition on Mr. Morgan or his family members receiving any proceeds. *See id.* Instead, the letter sets forth positions inconsistent with other government communications with third parties provided by us to the court in support of this motion. *Compare, e.g.*, *id*, Ex. N at 4 (because there is "no Court action" on the Unindicted Properties, parties are "are free to act as they wish"), *with* Ex. H (stating the government "would oppose any such sale" of View at MacKenzi, an unindicted property).

In an effort to address this ongoing confusion without burdening the Court, Mr. Morgan's counsel wrote to the government after the June 25 status conference requesting the government submit a letter on the record in this action stating the undisputed fact that there is no court order authorizing a pretrial restraint of any properties in which Mr. Morgan has an ownership interest, and, as such, there is no restriction, impediment, or government opposition to the sale, transfer, or disposition of any proceeds of such properties. *Id.* at ¶ 22, Ex. P. The government responded on June 26 only that it "currently has and takes no position with respect to transactions

involving" properties affiliated with Mr. Morgan beyond the filing of *lis pendens* on eleven of the Twelve Real Properties, declining to provide clarification to allay the confusion it has generated. *Id.* at ¶ 23, Ex. Q. Moreover, the government refused to file even this letter on the court's docket. *Id.*

Because the government has chosen to attempt to negotiate side deals with stakeholders to obtain criminal forfeiture restraint *in this action* outside the purview and authorization of the Court, Mr. Morgan's opportunity to identify and address all instances of misstatements and confusion is limited. Mr. Morgan's motion is therefore supplemented with information available to him as of today, but it is likely an incomplete record of the government's extralegal conduct to date.

## ARGUMENT

**A.** **The Court Has Broad Authority to Confirm the Lack of a Pretrial Restraint Over Mr. Morgan's Real Estate Portfolio and Enjoin the Government's Extralegal Conduct**

This Court has jurisdiction to hear this motion under 18 U.S.C. § 3231, which provides jurisdiction over all offenses against the laws of the United States. Because the government obtained the Superseding Indictment from the Grand Jury in this District, the Court may retain jurisdiction over matters related to the indictment and the parties. *See De La Maza v. U.S.*, 215 F.2d 138, 140 (9th Cir. 1954) ("[A]fter an offense under the laws of the United States was set forth and returned in the indictment, the district court had jurisdiction of both the subject matter and the persons of defendants . . . ."); *see also U.S. v. Barnes*, 16-CR-6029L, 2018 WL 4926857, at *3 (W.D.N.Y. Oct. 11, 2018) (Larimer, J.) ("The broad grant of subject-matter jurisdiction [under 3231] is valid and enforceable, and the courts have thus uniformly rejected challenges to it." (internal citation omitted)).

It is well established that the Court has certain inherent powers that allow it to carry out its "responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness." *U.S. v. Baird*, 414 F.2d 700, 707 (2d Cir. 1969). "It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice." *U.S. v. Cannone*, 528 F.2d 296, 298 (2d Cir. 1975). The "wide latitude" inherent to the Court includes the power to issue orders not otherwise authorized by rule or statute. *Id.* (holding that the district court has the authority to compel the government to issue a list of trial witnesses, noting that "nowhere in the United States Code or the Federal Rules of Criminal Procedure are district courts explicitly authorized or forbidden" from entering such an order); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) ("[The Court's] inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices.").

Moreover, the All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act is a "source of procedural instruments designed to achieve the rational ends of law" and is to be exercised "flexibly in conformity with these principles," *U.S. v. N.Y. Tel. Co.*, 434 U.S. 159, 173 (1977) (internal citation omitted). It "fill[s] the interstices of federal judicial power when those gaps threate[n] to thwart the otherwise proper exercise of federal courts' jurisdiction," *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985), and allows the Court to "avail itself of all auxiliary writs as aids in the performance of its duties." *N.Y. Tel. Co.*, 434 U.S. at 173; *see also ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) ("The All Writs Act also empowers a federal court to employ procedures necessary to promote the resolution of issues in a case properly before it . .

. [when related to] the facilitation of the court's effort to manage the case to judgment.").  This "broad grant of authority" includes the power to enjoin conduct "that would impinge upon and interfere with [the Court's] jurisdiction."  *Zenith Elec. Corp. v. U.S.*, 884 F.2d 556, 562 (Fed. Cir. 1989) (enjoining the Department of Commerce from altering a determination which was before the court for review "without the court's prior authorization" was a proper use of the "broad grant of authority to federal courts" under the All Writs Act).  The Act is so broad as to even provide a basis to compel action from third parties "who are in a position to frustrate . . . the proper administration of justice . . . even those who have not taken any affirmative action to hinder justice."  *N.Y. Tel. Co.* 434 U.S. at 174.

**B.      There is No Lawful Basis for Pretrial Restraint or Seizure of the Twelve Real Properties or the Unindicted Properties**

A mere allegation of criminal forfeiture in an indictment does not in and of itself grant the government a right to restrain or seize real property prior to conviction.  *See U.S. v. Kozeny*, No. 05 CR 518 SAS, 2011 WL 1672473, at *3 (S.D.N.Y. Apr. 29, 2011) ("Once a defendant is convicted of the offense(s) giving rise to a forfeiture allegation, either by trial or by plea, the court must enter a preliminary order of forfeiture.").  Where, as here, "criminal forfeiture is the only judicial forfeiture action that is commenced . . . the government must either obtain a criminal seizure warrant issued pursuant to 21 U.S.C. § 853(f), or an order issued pursuant to 21 U.S.C. § 853(e)" to possess or restrain the property.  U.S. Department of Justice Asset Forfeiture Policy Manual. Ch. 2, III.C.1 (2019) (the "Asset Forfeiture Policy Manual").[4]

---

[4]   While the Asset Forfeiture Policy Manual does not "create or confer any legal rights, privileges, or benefits that may be enforced in any way by private parties," it explicitly sets forth the purpose of the Manual:  to "ensure the [DOJ's Asset Forfeiture] Program is administered professionally, lawfully, and in a manner consistent with sound public policy."  *See* Cohen Decl., Ex. R (Foreword)

Absent compliance with the requisite process set forth in 21 U.S.C. § 853, as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), the government's pretrial restraint of property subject to forfeiture upon conviction is impermissible. Upon an application of the United States, section 853(e)(1) permits pretrial freezes of forfeitable property "*only* when the Government proves, at a hearing, that (1) the defendant has committed an offense triggering forfeiture, and (2) that 'the property at issue has the requisite connection to the crime.'" *Honeycutt*, 137 S. Ct. at 1633 (emphasis added) (internal citation omitted); *see also U.S. v. McIntosh*, 11-CR-500 (SHS), 2017 WL 3396429, at *4 (S.D.N.Y. Aug. 8, 2017) ("Section 853(e)(1), permit[s] pretrial freezes only of property shown to have a connection to the underlying crime . . . ."), *appeal docketed*, No. 17-2623 (2d Cir. Aug. 24, 2017). In order to obtain this extraordinary relief, the government must demonstrate to the Court that it has probable cause to restrain the property at issue. *See U.S. v. Cosme*, 796 F.3d 226, 234–35 (2d Cir. 2015) (remanding for a probable cause finding where the district court "relied on a mistaken understanding" that the grand jury voted on the forfeiture allegations in the indictment); *see also U.S. v. Daugerdas*, No. S3 09 Cr. 581(WHP), 2012 WL 5835203, at *2 (S.D.N.Y. Nov. 7, 2012) ("[T]he government may properly seize assets pretrial that are forfeitable upon conviction after demonstrating probable cause."). A criminal seizure warrant requires an even greater showing: "probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture" *and* that a protective order under section 853(e) "may not be sufficient to assure the availability of the property for forfeiture." 21 U.S.C. § 853(f).

It is undisputed that the government here has made no such application nor has this Court granted any order restraining or permitting the seizure of any of the Twelve Real Properties or

any Unindicted Properties.  As such, there is no current restriction on Mr. Morgan's or third-party stakeholders' ability to sell, transfer, or dispose of the proceeds of any such sale.

Thus, the government's "position" (as expressed to Mr. Morgan and third parties) that it will "allow sales" of the Twelve Real Properties "only if the net proceeds" are held by the USMS is unsupported and contrary to the well-established statutory scheme.  *See* Cohen Decl. Ex. A (emphasis in original); *see also* Exs. C, I.  While it cites no legal basis for this position in its May 28 letter to Mr. Morgan's counsel, or in the stipulations it drafted in an effort to restrain both the Eden Square and View at MacKenzi sales (besides "'magic' language" in the draft stipulations), the government's June 25 letter to the Court suggests Rule G(7)(b)(iv) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Rule G(7)") allows the government's to seize sale proceeds from private sales of unrestrained property.  It does not. Rule G(7) applies in the limited circumstances where a *court orders* the interlocutory sale of property alleged to be forfeitable.  Fed. R. Civ. P. Supp. G(7)(a) (2009) ("When the government does not have actual possession of the defendant property **the court, on motion or on its own, may enter an order necessary to preserve the property**, to prevent its removal or encumbrance, or to prevent its use in a criminal offense.") (emphasis added); *see also U.S. v. Maye*, No. 08-cr-00194-WMS-JJM, 2011 WL 2533020, at *1 (W.D.N.Y. 2011) (McCarthy, J.) (denying the government's motion pursuant to 21 U.S.C. § 853(e)(1), Fed. R. Crim. P. 32.2(b)(7), and Rule G(7) seeking *an order authorizing and directing the interlocutory sale* of the vehicles).  Rule G(7)(b)(iv) does not apply beyond this narrow circumstance.  *See* Fed. R. Civ. P. Supp. G(7)(b)(iv); *see also U.S. v. King*, No. 10 Cr. 122(JGK), 2010 WL 4739791, at *3 (S.D.N.Y. Nov. 12, 2010) (granting an order for interlocutory sale pursuant to Supp. Rule G(7)(a) and noting defendant is "protected because the proceeds of any [interlocutory] sale

become substitute res held pending the disposition of the criminal case" pursuant to Rule G(7)(b)(iv)).

### C. The Government's Communications and Actions Unlawfully Restrain Both Twelve Real Properties and Unindicted Properties

Contrary to its latest assertions to the Court, the government has done far more than state it "takes no position with respect to transactions involving" the Twelve Real Properties. Cohen Decl. at ¶ 23, Ex. Q. Nor has it set forth any evidence that it has "inform[ed]" parties that "there is no Court action on [the Unindicted Properties] and they are free to act as they wish." *Id.* at Ex. N. Rather, the government has appointed itself arbiter in property transactions for which it has no lawful claim — opposing sales, negotiating side deals with stakeholders to "permit" the sale of properties in exchange for restraints that are impressible absent a court order, and wielding threats if parties refuse to comply with the government's extra-legal demands.

The government's "opposition" to a property sale a carries with it the weight of the United States and its power to prosecute purported violators. For example, in opposing any sale of View at MacKenzi (one of the Unindicted Properties), the government did not inform the stakeholder that there is "no Court action" or forfeiture allegation related to the property or that the parties are "free to act as they wish." *Compare* Cohen Decl., Ex. H (government's June 10 letter to a stakeholder in View at MacKenzi) *with id.*, Ex. N (government's June 25 letter to the Court). We are aware of similarly ominous representations made by the government to other third parties in connection with two additional Unindicted Properties. Cohen Decl. ¶ 19. In light of the government's incomplete and erroneous disclosures to the Court and Mr. Morgan, we have no assurance that it has heeded its representation to the Court that it would "cease all discussion as to reaching any type of agreement" for the Unindicted Properties. The government, in its May 28 letter to Mr. Morgan and in communications with counsel for Eden Square stakeholders,

relies on the threat of penalty under 18 U.S.C. § 2232 as its purported basis to dictate and restrict the sales of the Twelve Real Properties. The government's threat of criminal liability is understandably concerning to private citizens. Yet the government knows full well that section 2232 could not apply unless, as required in the statute, the government has "lawful authority to take such property into its custody or control" in the first instance, *see* 18 U.S.C. § 2232(a), which presupposes a government application and a subsequent court order to restrain property or seize property pretrial. Of course, the government has not explained to third parties that section 2232 is inapplicable because it has not obtained the prerequisite court order.

**D.    The Court's Relief is Necessary to Stop the Government's Extralegal Restraint on Mr. Morgan's Property**

Absent relief from this Court, there is no mechanism by which Mr. Morgan can address the government's extralegal actions. The government has refused to avail itself of the mandatory statutory mechanism with an application to the Court for a probable cause hearing to determine whether it is entitled to a pretrial restraint for a specific property and, if so, the specific limits of that restraint. *Honeycutt*, 137 S. Ct. at 1633. Instead, it has operated outside the authority and oversight of this Court, effectively "thwart[ing] the otherwise proper exercise of federal courts' jurisdiction." *Penn. Bureau of Corr.*, 474 U.S. at 43. The relief sought by Mr. Morgan is clearly "necessary or appropriate in aid of [the Court's] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The government, in representing or implying to third parties that Mr. Morgan's properties are currently subject to pretrial restraint, has circumvented the procedure prescribed by the criminal forfeiture statute, and in so doing has "impinge[d] upon and interfere[d] with" the Court's jurisdiction over a central legal issue to this matter. *See Zenith Elec. Corp.*, 884 F.2d at 562. Given the government's continued refusal to correct its errors in its communications with third parties, an order clarifying that there is no pretrial restraint or seizure

of any properties to which Mr. Morgan has an interest presents a simple and efficient means of restoring order to this proceeding. Mr. Morgan's request for an injunction, which does no more than prevent the government from engaging in further extralegal action and compel it to correct prior misstatements, is "designed to achieve the rational ends of law." *N.Y. Tel. Co*., 434 U.S. at 173. Issuing an injunction is therefore a proper exercise of this Court's supervision of this case that the government has brought before it, pursuant to 18 U.S.C. 3231, or alternatively, would be a reasonable use of the All Writs Act.

## CONCLUSION

For the reasons set forth herein, Mr. Morgan respectfully requests that this Court confirm that, in the present action, none of the properties in which Mr. Morgan has an ownership interest, directly or indirectly, is subject to a lawful pretrial restraint or seizure by the United States and, as such, there is no restriction or impediment on the sale, transfer, or disposition of any proceeds of such properties; and enjoin the government from interfering with the sale, transfer, or disposition of proceeds of any properties in which Mr. Morgan has an ownership interest, directly or indirectly, absent a court order; and compel the government to provide notice of the same to all third parties to whom the government has previously communicated about criminal or civil forfeiture related to this action.

We respectfully request the opportunity to file reply papers to respond to any opposition filed by the government.

Dated:   June 28, 2019
         New York, New York

GIBSON, DUNN & CRUTCHER LLP


By: /s/ Joel M. Cohen_____
    Joel M. Cohen
    Lee G. Dunst
    Caitlin S. Walgamuth


200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000

Attorneys for Defendant Robert C. Morgan