UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
THE UNITED STATES OF AMERICA, :
:
:
v. :
:
ROBERT C. MORGAN, : 18-CR-108-EAW
:
Defendant. :
:
:
------------------------------------------------------------x

## DECLARATION OF JOEL M. COHEN

I, Joel M. Cohen, pursuant to 28 U.S.C. § 1746, declare and state as follows:

I make this declaration in support of Defendant Robert C. Morgan's ("Mr. Morgan") Motion Seeking an Order Confirming the Lack of Pretrial Restraint on Mr. Morgan's Property and Enjoining the Government Against Further Unlawful Restraint (the "Motion"), and in support of Mr. Morgan's Motion for Expedited Hearing. I have personal knowledge of the facts set forth in this Declaration.

I am a member of the bar of the State of New York. I am a partner with the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), and represent for the limited purpose of these Motions, Mr. Robert C. Morgan in the above-entitled criminal proceeding.

1. On May 21, 2019, the United States Attorney's Office for the Western District of New York (the "government") filed a Superseding Indictment against Mr. Morgan in *U.S. v. Giacobbe, et al.* that included three forfeiture allegations seeking, upon conviction, the forfeiture

of "any property constituting or derived from the proceeds obtained, directly or indirectly, as a result of such offense of conviction" and sets forth *twelve* specific properties[1] subject to forfeiture (collectively, the "Twelve Real Properties"). (Dkt. 42).

2.      No other criminal, civil or ancillary forfeiture action related to *U.S. v. Giacobbe, et al.* is pending.

3.      In the present action, there is no court order restraining any of the Twelve Real Properties or any other property Mr. Morgan has an interest in, directly or indirectly (collectively, the "Unindicted Properties").

4.      Nor is there any seizure warrant ordered by a court authorizing the United States to seize the Twelve Real Properties or any Unindicted Properties.

5.      On May 28, 2019, the government sent Gibson Dunn a letter stating that it understood Mr. Morgan has an interest in some of the Twelve Real Properties and informed us that 18 U.S.C. § 2232 prohibits, among other conduct, knowingly taking action for the purpose of interfering with the forfeiture of a property, purposely impairing the government's "lawful authority" to seize and hold it, or purposely impairing the Court's jurisdiction over it. A true and correct copy of the government's May 28, 2019 letter is attached hereto as Exhibit A.

6.      On June 3, 2019, Gibson Dunn requested clarification as to whether the government intended to seek a pretrial restraint on the sale or transfer of any of the Twelve Real Properties. A true and correct copy of the June 3 letter is attached here to as Exhibit B.

---

[1] Those twelve properties are Rugby Square Apartments, Morgan Ellicott Apartments, Amherst Gardens Apartments, Avon Commons, Rochester Village Apartments, The Reserve at Southpointe, Eden Square Apartments, Villas at Victor, Park Place at South Park, Ellison Heights Apartments, Union Square Apartments, and the Links at Centerpointe Townhomes. Superseding Indictment at pp. 51–54, *U.S. v. Giacobbe, et al.*, No. 18-108 EAW (W.D.N.Y. May 21, 2019) (Dkt. 42).

7.	On June 4, 2019, Assistant United States Attorney Mary Kane sent counsel for stakeholders in Eden Square, a "draft stipulation" prepared by the government that laid out the government's requirements to approve a pending June 6 sale of Eden Square. The stipulation requires "the proceeds from the sale" of Eden Square be paid "to the United States Attorney's Office for the Western District of New York at or immediately after said closing" and the United States Marshals Service ("USMS") hold the proceeds "as the substitute res until resolution is reached in criminal and forfeiture litigation attendant to the case known as <u>United States v. Robert Morgan et al</u>, 18-CR-108-EAW with respect to those proceeds or until further order of the Federal Court." It also prohibits the seller from transferring any proceeds to the Eden Square entity, Robert Morgan, "or any of his family members or entities until further court order." In her cover email, Ms. Kane noted that the draft is with the USMS "for review to make sure they can accept the funds or if they need any 'magic' language in the stip in order to do so." A true and correct copy of Ms. Kane's June 4, 2019 email and the attached draft stipulation is attached hereto as Exhibit C.

8.	The next day, on June 5, 2019, in response to counsel for Eden Square's concern that the government's request that the USMS seize proceeds is "not really an escrow at all" because the "criminal forfeiture statute only allows third parties to petition for their interests in forfeited funds after the criminal case is over," and request that the title company hold the proceeds in escrow, Ms. Kane responded that the government "must insist the net proceeds be held by the USMS SADF" because Eden Square is an "indicted property" and Mr. Morgan received a letter advising of penalties pursuant to Title 18, U.S.C. Section 2232 for "disposing or transferring the property." A true and correct copy of this June 5, 2019 email exchange is attached hereto as Exhibit D.

3

9. In later communications the same day, Ms. Kane stated that the "USAO will oppose" a third party claim to the Court for the release or other disposition of assets held by the USMS. A true and correct copy of counsel for Eden Square's requested change is attached hereto as Exhibit E and a true and correct copy of Ms. Kane's response is attached hereto as Exhibit F.

10. In a June 5, 2019 letter in response to Gibson Dunn's June 3 clarification request the government stated, without any legal basis or judicial authority, that it "will allow sales" of "the indicted properties in the Superseding Indictment" "to Bona Fide Purchasers (BFP) only if the net proceeds . . . are placed with the United States Marshals Services (USMS) to be held in the USMS's Seized Asset Fund as the substitute 'res' for each individual property/complex." Its letter omits its stipulation and negotiations for the sale of Eden Square. A true and correct copy of the government's June 5, 2019 letter is attached hereto as Exhibit G.

11. In a letter dated June 10, 2019, the government informed counsel for an investor that the United States Attorney's Office and FBI "would oppose any such sale" of the View at MacKenzi/Colonial Gardens View at MacKenzi/Colonial Gardens ("View at Mackenzi"), a property located in York, Pennsylvania and owned by third parties and Mr. Morgan. A true and correct copy of the government's June 10, 2019 letter is attached hereto as Exhibit H.

12. On June 11, Gibson Dunn contacted the government by telephone to further clarify its position. During the call, the government stated that it considered only the Twelve Real Properties subject to potential forfeiture in the event that the government obtained a conviction in this case. It made no mention of its opposition to a sale for View at MacKenzi.

13. View at MacKenzi is not subject to a forfeiture allegation or proceeding. It is not even subject to a charge in the Superseding Indictment.

14. Based on information and belief, on or around June 13, 2019, the government sent a draft stipulation for the sale of View at MacKenzi to counsel for the intended purchaser. The draft stipulation provided to counsel contained red-line changes indicating they were made by Assistant United States Attorney Richard Kaufman. A true and correct copy of a June 27, 2019 email from counsel for the intended purchaser to counsel for another stakeholder, attaching the government's redline is attached hereto as Exhibit I.

15. The draft stipulation has left blank the property at issue's name, seemingly to allow the government to update the draft to apply it to any Unindicted Property it deems appropriate. Like the draft Eden Square stipulation, it requires "net proceeds from the sale of the above-reference property . . . be deposited with the United States Marshals Service . . . to be held in its Seized Asset Deposit Fund as the substitute res until resolution is reached in criminal and forfeiture litigation attendant to the case known as United States v. Robert Morgan, et al., 18-CR-108-EAW with respect to those proceeds or further ordered by the Federal Court" and prohibits the entity owning the property, Mr. Morgan, or "any of his family members, agents, other defendants, or entities" from receiving proceeds "until further federal court order." It also stipulates that "the parties understand that the property may be subject to either civil or criminal forfeiture in the near future." *See* Ex. I. Upon receiving the blank stipulation from the government, counsel for the intended purchaser believed "this procedure has been followed before with respect to the Morgan properties." A true and correct copy of the June 27, 2019 email between counsel for the intended purchaser and counsel for another stakeholder discussing the stipulation is attached hereto as Exhibit J.

16. On June 19, 2019, Gibson Dunn wrote to the government to request it address the confusion it has created and to provide its claimed legal basis for "oppos[ing]" property

transactions absent any court-ordered pretrial restraint. Given the chilling effect the government's statements have on third-party stakeholders, Gibson Dunn requested a response from the government by June 21, 2019 at 10 am. A true and correct copy of Gibson Dunn's June 19 letter is attached hereto as Exhibit K.

17. The government failed to provide clarification by June 21, 2019. A true and correct copy of the government's June 20, 2019 letter acknowledging receipt of Gibson Dunn's June 19 letter is attached hereto as Exhibit L.

18. On June 21, Mr. Morgan filed a letter with the Court seeking judicial intervention to address the confusion created by the government's extralegal views concerning the proposed use and disposition of properties in Mr. Morgan's real estate portfolio. (Dkt. 58). A true and correct copy of the June 21 letter (Dkt. 58) is attached hereto as Exhibit M.

19. On or about June 24, 2019, counsel for another third-party stakeholder contacted Gibson Dunn and shared with Gibson Dunn communications it had with the government about several Unindicted Properties. Similar to other examples set forth in this declaration, the government warned the third party of future government action involving these properties and dictated how any sale proceeds could be distributed, including which parties would be barred from their entitled proceeds. This third-party stakeholder has requested we do not share these communications out of fear of adverse government action.

20. On June 25, 2019, the government sent a letter to the Court to respond to issues raised in Mr. Morgan's June 21 letter. Its letter fails to address issues raised by Mr. Morgan's June 21 letter motion (including the government's June 10 letter opposing a sale of View at MacKenzi, *see* Ex. H) and omits critical information about the positions it has taken in the draft stipulations for Eden Square and the Unindicted Properties. Instead, it offers positions

contradictory to its conduct to date. It states the government's "position to date has been to inform [third parties] that presently there is no Court action on [Unindicted Properties] and they are free to act as they wish" and, when contacted about pre-indictment sales contracts, the government has "merely attempted to come to agreements . . . that maintain the status quo and protect[] the government's interest in preserving derived property for potential forfeiture pending future litigation." (P. 4) In describing its discussions with Eden Square stakeholders, the government represents it is "attempt[ing] to come to an agreement to allow the sale and place the net proceeds into an escrow account." (P. 2, n. 2) It fails to mention its insistence the net proceeds be seized by the USMS over the stakeholders' objections to a less restrictive escrow account. A true and correct copy of the government's June 25, 2019 letter (Dkt. 61) is attached hereto as Exhibit N.

21. On June 25, the Court held a telephonic status conference to discuss Mr. Morgan's letter motion. During the conference, government confirmed that it "will agree to cease any discussions as to reaching any type of agreement" with regard to the "unindicted properties" " unless further litigation is commenced." Tr. 7:22–8:7. A true and correct copy of the transcript from the June 25, 2019 conference is attached hereto as Exhibit O.

22. After the status conference on June 25, Gibson Dunn sent the government a letter requesting the government file a letter with the Court confirming no court order exists authorizing a pretrial restraint or seizure by the government and, as such, there is no restriction to the sale, transfer, or disposition of any proceeds of such properties. A true and correct copy of Gibson Dunn's June 25, 2019 letter is attached hereto as Exhibit P.

23. The next day, June 26, the government responded to Gibson Dunn stating "[t]o date, the government has not otherwise made any legal claim on other properties affiliated" with

Mr. Morgan and it "currently has and takes no position with respect to transactions involving these properties." A true and correct copy of the government's June 26, 2019 letter, along with its transmittal email, is attached hereto as Exhibit Q. However, the government refused to file this letter publicly.

24. To date, the government and relevant stakeholders have not executed a stipulation for the sale of Eden Square. Eden Square's sale remains stalled.

25. To date, the government and relevant stakeholders have not executed a stipulation for the sale of View at MacKenzi. View at MacKenzi's sale remains stalled.

26. Numerous other property deals have been postponed or abandoned because of stakeholders' confusion that the government must approve any future sale.

27. The Department of Justice's Asset Forfeiture Policy Manual provides detailed guidance to the government on all aspects of federal seizure and forfeiture. The purpose of the Manual is to "ensure the [DOJ's Asset Forfeiture] Program is administered professionally, lawfully, and in a manner consistent with sound public policy." A true and correct copy of the Asset Forfeiture Policy Manual (2019) is attached hereto as Exhibit R.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct. Executed this 28th day of June 2019 at New York, New York.

\_\_/s/ Joel M. Cohen_____

Joel M. Cohen