# Exhibit M

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Joel M. Cohen
Direct: +1 212.351.2664
Fax: +1 212.351.5264
JCohen@gibsondunn.com

Client: 65461-00001

June 21, 2019

BY ELECTRONIC FILING

Hon. Elizabeth A. Wolford
United States District Judge
Western District of New York
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

Re:  *United States v. Robert Morgan*, 18-CR-108-EAW

Dear Judge Wolford:

We write on behalf of our client, Mr. Robert Morgan, in the above-referenced action seeking a hearing and to obtain judicial intervention prohibiting the United States Attorney's Office (the "government") from communicating its extralegal views concerning the proposed use or disposition of properties in Mr. Morgan's real estate portfolio, unless, and then only to the extent that, the government first complies with the applicable statutes, files an application with the Court demonstrating any statutorily-required legal entitlement to pretrial property restraint, and, if successful, obtains a judicial restraint order.  To the best of our knowledge, the government has not complied with the governing statute detailing the procedure whereby the government can seek pretrial restraints on property subject to potential criminal forfeiture.  As set forth below, in the month since the government's indictment of Mr. Morgan, the government has made vague, unsupported, contradictory statements to Mr. Morgan and third parties, which are impeding Mr. Morgan's and various third parties' rights to enter into contracts and to dispose of property to which the government has either made no claim or sought the required authorization of the Court.  Despite efforts over the past several weeks by us and many affected third parties, the government has failed to cease or remediate such statements, thus imposing government restraints that ignore the statutory requirements and their own internal pretrial asset forfeiture policies.

The Superseding Indictment against Mr. Morgan in *U.S. v. Giacobbe, et al.* filed on May 21, 2019, included three forfeiture allegations seeking, upon conviction, the forfeiture of "any property constituting or derived from the proceeds obtained, directly or indirectly, as a result of such offense of conviction" and sets forth *twelve* specific properties[1] subject to forfeiture

---

[1]  Those twelve properties are Rugby Square Apartments, Morgan Ellicott Apartments, Amherst Gardens Apartments, Avon Commons, Rochester Village Apartments, The Reserve at Southpointe, Eden Square

**GIBSON DUNN**

Hon. Elizabeth A. Wolford
June 21, 2019
Page 2

(collectively, the "Twelve Real Properties"). However, pretrial restraint of property subject to forfeiture upon conviction is impermissible absent narrow circumstances set forth in 21 U.S.C. § 853, as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c). Where, as here, "criminal forfeiture is the only judicial forfeiture action that is commenced . . . the government must either obtain a criminal seizure warrant issued pursuant to 21 U.S.C. § 853(f), or an order issued pursuant to 21 U.S.C. § 853(e)" to possess or restrain the property. U.S. Department of Justice Asset Forfeiture Policy Manual. Ch. 2, III.C.1 (2019) (the "Asset Forfeiture Policy Manual").[2] As of the date of this letter, we do not believe that the government has sought (let alone been granted) any such warrant or order as detailed above.

Upon an application of the United States, section 853(e)(1) permits pretrial freezes of forfeitable property "only when the Government proves, at a hearing, that (1) the defendant has committed an offense triggering forfeiture, and (2) that 'the property at issue has the requisite connection to the crime.'" *Honeycutt v. U.S.*, 137 S. Ct. 1626, 1633 (2017) (internal citation omitted); *see also U.S. v. McIntosh*, 2017 WL 3396429, at *4 (S.D.N.Y. Aug. 8, 2017) ("Section 853(e)(1), permit[s] pretrial freezes only of property shown to have a connection to the underlying crime."); *U.S. v. Larson*, 2008 WL 5423251, at *6 (W.D.N.Y. Dec. 29, 2008) ("If other property is being sought [for forfeiture], the Government should particularize this as well."). In order to obtain this extraordinary relief, the government must demonstrate it has probable cause to restrain the property at issue. *See U.S. v. Cosme*, 796 F.3d 226, 234–35 (2d Cir. 2015) (remanding for a probable cause finding where the district court "relied on a mistaken understanding" that the grand jury voted on the forfeiture allegations in the indictment); *see also U.S. v. Daugerdas*, 2012 WL 5835203, at *2 (S.D.N.Y. Nov. 7, 2012) ("[t]he government may properly seize assets pretrial that are forfeitable upon conviction after demonstrating probable cause"). A criminal seizure warrant requires an even greater showing: "probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture" *and* that a protective order under section 853(e) "may not be sufficient to assure the availability of the property for forfeiture." 21 U.S.C. § 853(f).

---

Apartments, Villas at Victor, Park Place at South Park, Ellison Heights Apartments, Union Square Apartments, and the Links at Centerpointe Townhomes. Superseding Indictment at pp. 51–54, *U.S. v. Giacobbe, et al.*, No. 18-108 EAW (W.D.N.Y. May 21, 2019).

[2] The government notes in its Asset Forfeiture Policy Manual that it does not "create or confer any legal rights, privileges, or benefits that may be enforced in any way by private parties," but therein also explicitly sets forth the purpose of the Manual is to "ensure the [DOJ's Asset Forfeiture] Program is administered professionally, lawfully, and in a manner consistent with sound public policy." Exhibit G, Asset Forfeiture Policy Manual (2019), Foreword.

**GIBSON DUNN**

Hon. Elizabeth A. Wolford
June 21, 2019
Page 3

To the best of our knowledge, the government has made no such applications to this Court for any relief under section 853. There is no order seizing or restraining the use or transfer of the Twelve Real Properties, much less any other properties Mr. Morgan has an ownership interest in as part of his broader real estate portfolio.[3] Notwithstanding these indisputable facts, the government's actions to date have generated considerable confusion about its purported efforts to restrain and otherwise dictate Mr. Morgan's and various third parties' rights to enter into contracts and dispose of property in which it has no lawful claim.

Instead of making an application with the Court and attempting to demonstrate the requisite showing under section 853, the government has had a series of communications with Mr. Morgan and third parties that provide or insinuate conflicting statements as to the government's authority to restrain the sale of properties (including those wholly outside of the Superseding Indictment's allegations). Absent judicial authorization, these statements, strictly speaking, are extralegal opinions by the government. But, as a result, various third parties (including lenders, purchasers, sellers, brokers, title companies, and counsel for all of these transactional participants) are understandably wary to close deals or transact on terms that the government objects to, even more so when they becloud the process by failing to demonstrate any legal authority for the government's "positions" or "objections." Mr. Morgan is also adversely affected by the government's confusing extralegal statements and actions. As a result of the government's conduct impeding these transactions, many of which have been in process prior to the government's Superseding Indictment, Mr. Morgan is improperly constrained or prevented from using his assets to support his legal defense, repay investors, and otherwise run his business and personal affairs.

On May 28, 2019, the government sent us a letter stating that it understood Mr. Morgan has an interest in some of the Twelve Real Properties and informed us that 18 U.S.C. § 2232 prohibits, among other conduct, knowingly taking action for the purpose of interfering with the forfeiture of a property, purposely impairing the government's lawful authority to seize and hold it, or purposely impairing the Court's jurisdiction over it. (Exhibit A). We thereafter requested clarification as to whether the government intended to seek a pretrial restraint on the sale or transfer of any of the Twelve Real Properties. (Exhibit B).

On June 5, 2019, in response to our clarification request, the government stated, without any legal basis or judicial authority, that it "will allow sales" of "the indicted properties in the Superseding Indictment" "to Bona Fide Purchasers (BFP) only if the net proceeds . . . are

---

[3] We understand that the government has filed *lis pendens* for at least some of the Twelve Real Properties. While a *lis pendens* notice provides general notice that a property is involved in a pending action, "recording a notice of a *lis pendens* is not a seizure of the real property." Exhibit G, Asset Forfeiture Manual, Ch. 4, II.B. Nor does it provide the government any claim to restrain it.

**GIBSON DUNN**

Hon. Elizabeth A. Wolford
June 21, 2019
Page 4

placed with the United States Marshals Services (USMS) to be held in the USMS's Seized Asset Fund as the substitute 'res' for each individual property/complex." (Exhibit C (emphasis in original)).

Then, on a June 11, 2019 call with the government to further clarify its position, the government told us orally it considered only the Twelve Real Properties subject to potential forfeiture in the event that the government obtained a conviction in this case. Nonetheless, the government also sent a letter dated a day earlier, June 10, 2019, to counsel for a third party stating that the United States Attorney's Office and FBI "would oppose any such sale" of the View at MacKenzie/Colonial Gardens, a property located in York, Pennsylvania and owned by third parties and Mr. Morgan. (Exhibit D). The View at MacKenzie/Colonial Gardens is *not* one of the Twelve Real Properties described in the Superseding Indictment as subject to potential forfeiture, nor is it referenced in or related to any of the charges in the 114-count Superseding Indictment.[4]

We wrote to the government on June 19, 2019 to request it address the confusion it has created and its claimed legal basis for "oppos[ing]" property transactions absent any court-ordered pretrial restraint. (Exhibit E). The government has not yet provided any clarification on its position nor a timeline to expect a response. (Exhibit F).

In addition, we are aware that lenders, prospective buyers, investors, title insurance companies and their counsel have unsuccessfully sought clarity via calls, emails and letters to the government about various transactions in process, including multi-million dollar deals previously scheduled and now delayed or possibly cancelled because of the government's insertion of its extralegal views. The government's June 10 letter (Exhibit D) encapsulates the nature of the problem. The government is entitled to seek judicial approval for restraints if it can meet its burden, and if not, is not entitled to interfere with private transactions. It cannot properly "object" to something over which it has no legal authority. The government's conduct here ignores statutory requirements, the needed judicial approval, and its own espoused standards to seek pretrial restraints "professionally, lawfully, and in a manner consistent with sound public policy." *See* Asset Forfeiture Policy Manual (2019), Foreword. (Exhibit G).

---

[4] Even if the government sought an application to restrain Views of MacKenzie/Colonial Gardens or another property not identified as subject to forfeiture as a "substitute asset" (which it has not), it is at best unclear it would have any such vested interest. *See U.S. v. Kramer*, No. 06–cr–200, 2006 WL 3545026, at *6–8 (E.D.N.Y. Dec. 8, 2006) (holding the government's interest in a substitute property vests, at the earliest, upon conviction because "[u]nlike specifically forfeitable property, . . . substitute properties are not the subject matter of the pending indictment"); *U.S. v. Jennings*, No. 98–cr–418, 2007 WL 1834651, at *4 (N.D.N.Y. June 15, 2007) (interest in substitute property vests when order of forfeiture is entered).

# GIBSON DUNN

Hon. Elizabeth A. Wolford
June 21, 2019
Page 5

Mr. Morgan has been discussing transactions with many potential buyers interested in purchasing properties in his valuable portfolio. These sales will generate proceeds for many stakeholders apart from Mr. Morgan, including financial institutions and investors within the Western District of New York and elsewhere. We understand that the government continues to communicate with numerous third parties to these proposed transactions, including lenders, title companies, and Mr. Morgan's partners under its seemingly self-appointed authority to bless or "oppose" any transaction. The government's confusing statements and threats to "oppose" future sales without legal basis are unjustifiably and needlessly chilling time-sensitive transactions, limiting the ability of these other stakeholders to obtain repayment or receive the benefit of these sales. Indeed, as recently as yesterday, we learned that a third-party title company has refused to continue with a planned transaction absent an affirmative order from the Court confirming that unrestrained properties are indeed unrestrained. By its actions, the government has turned the criminal forfeiture jurisprudence on its head, inserting itself in place of the Court and the law as the arbiter for what will be restrained pretrial.

The government's varying statements and positions also continue to needlessly impact Mr. Morgan's Sixth Amendment right to choose and pay for criminal counsel with the proceeds generated through the lawful sale of properties. The government's threats to "oppose" even sales of properties unrelated to the charges against Mr. Morgan, without any legal basis to do so, generate the specter that, at any time during the pendency of the criminal case, the government may opt to "oppose" additional transactions necessary to generate funds for his legal defense or other critical needs.

We respectfully request a hearing on this matter.

Respectfully yours,

/s/Joel M. Cohen

Joel M. Cohen

Enclosures

**GIBSON DUNN**

Hon. Elizabeth A. Wolford
June 21, 2019
Page 6


cc: Mr. Lee G. Dunst
    Ms. Caitlin S. Walgamuth
    Mr. John D. Fabian, Assistant United States Attorney
    Mr. Douglas A. Penrose, Assistant United States Attorney
    Ms. Mary C. Kane, Assistant United States Attorney
    Mr. Richard Kaufman, Assistant United States Attorney