# Exhibit N



**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

*Federal Center*
*138 Delaware Avenue*
*Buffalo, New York 14202*   Writer's Telephone: 716/843-5809
Writer's fax: 716/551-3052
Mary.kane@usdoj.gov

<u>Via email</u>                                                June 25, 2019

Honorable Elizabeth A. Wolford
United States District Judge
United States Courthouse
100 State Street
Rochester, NY  14614

Dear Judge Wolford:

        Re: <u>United States v. Robert Morgan et al, 18-CR-108-EAW</u>

    Please accept this letter as our brief response to the issues raised in Mr. Cohen's June 21, 2019 correspondence to the Court and counsel for the government and for the Court's use prior to the telephone conference it has scheduled with the parties for later today. Mr. Cohen challenges the government's strategies thus far in handling the criminal forfeiture aspect of the Superseding Indictment. He also claims that the government's "varying" positions with respect to certain indicted and other unindicted properties have needlessly impacted defendant Robert Morgan's right to counsel of choice and his ability to access properties in order to pay for counsel of choice.

**<u>Counsel of Choice and Attorney's Fees</u>**

    Mr. Cohen's concerns regarding Sixth Amendment and his client's ability to access the indicted property in order to pay attorney's fees are more properly placed in a pre-trial motion either before this Court or before U.S. Magistrate Judge Schroeder, who has been designated to handle pre-trial matters.  The government notes that this Court directed Mr. Cohen to do exactly that at the conclusion of the hearing in <u>SEC v. Robert Morgan</u>, 19-CV-661-EAW, on June 5, 2019.

    Mr. Cohen's claim of the government's interference with his client's Sixth Amendment right to pay for counsel of his choice is best classified as a possible <u>Monsanto</u>[1]

---
[1] <u>United States v. Monsanto</u>, 924 F. 2d 1186 (2d Cir. 1991).

claim. Under Second Circuit case law, any motion regarding such a claim must be accompanied by a detailed sworn affidavit by Mr. Morgan regarding his entire portfolio, finances, assets and liabilities. He must demonstrate that he has *no other assets* with which to pay his attorney. *See* United States v. Bonventre, 720 F.3d 126, (2nd Cir. 2013)

Furthermore, under the Jones-Farmer[2] rule, courts will continue post-indictment, pre-trial restraints unless and until the defendant establishes **both**: (1) an actual need for the restrained assets for attorneys' fees; and (2) that there is some substantial evidence that the assets are not forfeitable. Under the first prong of the Jones-Farmer requirement, the defendant has the burden of showing that he lacks other funds with which to retain counsel. *See also,* Bonventre, 720 F.3d at133 (to qualify for a post-restraint Monsanto hearing, the defendant must disclose his net worth, provide a comprehensive list of his assets, and explain how he has been paying his significant living expenses; it is not enough to contrast his income stream and bank account balances with his living expenses and legal fees). Under the second prong, the defendant must show there is a bona fide reason to believe that the grand jury or the court erred in finding probable cause to believe the property was subject to forfeiture. *See,* Kaley v. United States, 571 U.S. 320, 134 S. Ct. 1090 (2014) (the defendant has no right to a judicial redetermination of the grand jury's finding of probable cause when his property is restrained pre-trial, the Court explains that the Government should not have to choose between preserving the property and giving the defendant a "sneak preview" of its case and strategy beyond what the criminal rules or due process requires).

Further, Mr. Cohen's claims regarding the government's alleged interference with Mr. Morgan's Sixth Amendment rights ring hollow. The United States Attorney's Office (USAO) has *already* indicated to various parties who contacted us that approximately 35 to 40 complexes of Mr. Morgan's are not targeted for further criminal or civil action by the USAO. The government has offered no formal opinion as to whether there is any potential criminal impediment to the sales of those properties. Mr. Morgan's real estate interests are massive, and to date the government has only placed *lis pendens* on those properties listed in the Indictment.[3]

Indeed, Mr. Cohen agrees that there are no restraints placed on any of defendant's unindicted assets or any substitute assets. He concurs that any *lis pendens* filed against the indicted properties are not restraints. (*See,* Cohen Letter at p. 3, note 3.) We have not filed, nor do we intend to file, *lis pendens* on any substitute assets of Mr. Morgan. If the government determines that it will file any civil or criminal forfeiture complaints or allegations against certain other Morgan properties, it will file *lis pendens* on those properties.

---

[2] United States v. Jones, 160 F. 3d 641, 647-48 (10th Cir. 1998); United States v. Farmer, 274 F. 3d 800 (4th Cir. 2001).

[3] *Lis pendens* have been filed on 11 of the 12 properties listed in the Indictment. We have not yet filed a *lis pendens* on the Eden Square property due to discussions with both sellers, lenders and potential purchasers in our attempts to come to an agreement to allow the sale and place the net proceeds into an escrow account. Based on Mr. Morgan's position that he wants to be able to access some of those sales proceeds himself, it appears that that the government will be forced to file a *lis pendens* to protect its interests.

**Indicted Properties**

With respect to the indicted properties, Congress has set forth a series of statutory provisions that allow for the orderly process of criminal forfeiture proceedings, including prohibiting third parties from interfering with the process until the criminal proceedings are completed. *See* Title 21, United States Code, Section 853(k).   The "relation back doctrine" which is codified at Title 18, United States Code, Section 981(f) provides that the government's interest in property vests (or relates back to) the commission of the criminal conduct (in the instant case, as alleged, when the fraudulent proceeds were used to pay off the earlier loans, reinvested in the property or became involved in the money laundering transactions).   Pursuant to Title 18, United States Code, Section 982 (b)(1) and Title 28, United States Code, Section 2461(c) all of these provisions are made applicable to criminal forfeiture provisions of Title 21, United States Code, Section 853.   *See* also 853(c).

In addition, Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions allows for interlocutory sale of property that is subject to forfeiture and specifically provides that sale proceeds be held as   'substitute res'.   *See* Rule G(7)(b)(iv).   Moreover, Title 18, United States Code, Section 2232 prevents defendants from destroying, wasting, damaging, disposing, transferring or taking any other action with respect to property that is subject to forfeiture.   For Mr. Cohen to take the position that Mr. Morgan is free to do what he wants with these indicted properties and use the proceeds as he deems fit runs counter to Congressional intent and the statutory scheme.

The only action that the government has taken with respect to the Indicted properties is to file *lis pendens* against 11 out of 12 of them.   It has long been recognized that the government can record a *lis pendens* on any property subject to forfeiture in an indictment. *See*, Diaz v. Paterson, 547 F.3d 88, 98 (2d Cir. 2008) (effect of a *lis pendens* "is simply to give notice to the world of the remedy being sought" in a pending lawsuit; the owner of the property "continues to be able to inhabit and use the property, receive rental income from it, enjoy its privacy, and even alienate it"; thus, a *lis pendens* "is deemed one of the less restrictive means of protecting a disputed property interest," citing James Daniel Good[4]); United States v. Register, 182 F.3d 820, 836 (11th Cir. 1999) (because *lis pendens* is neither a seizure nor a restraint, it does not implicate property owner's due process rights; no post-filing hearing required to determine if *lis pendens* should be removed).

**Unindicted Properties**

As to the unindicted properties, the USAO has received numerous calls from attorneys representing sellers,  limited liability company members, financial institutions and prospective purchasers in  a number of scenarios concerning "Purchase and Sale Agreements" that were entered into by parties prior to the date of the Indictment (May 21, 2019). Understandably, purchasers are concerned with going forward with the sales and their attorneys are calling us in an attempt to discuss and reach a resolution that would

---

[4]United States v. James Daniel Good, 510 U.S. 43 (1993).

3

permit the sales to go forward. They have requested our assurances and guarantees that the government would not seek further action against the real properties going forward.

Our position to date has been to inform them that presently there is no Court action on these properties and they are free to act as they wish. However, we do point out that federal forfeiture law provides for a Bona Fide Purchaser provision and that they should be mindful of such risks. *See* Title 21, United States Code, Section 853(n)(6)(b) and Title 18, United States Code, Section 983(d)(3)(A).

**Bona Fide Purchasers**

When representatives seek assurances from our office that the purchasers will not be subject to any further legal action, the government has encouraged them to familiarize themselves with the parameters of Bona Fide Purchaser protection and further encouraged them to consider that, because they might be viewed to know of some taint in the financing of these properties — either through the existence of the Superseding Indictment, the SEC filings, press releases or their own due diligence — these factors could impact them in the future. When asked that the government guarantee on behalf of the Department of Justice (DOJ) or the Securities and Exchange Commission (SEC) that no entity will pursue action against them after the sale, any "extralegal statements" are to that very point. The government has advised that it cannot guarantee that future legal action will not take place but that, one reasonable solution to permit the sale to go forward might be to place the net proceeds in an escrow account. The government has encouraged counsel who have contacted us to familiarize themselves with case law holding that if a purchaser buys a property with a *lis pendens* recorded against it; such a purchaser does not qualify as a Bona Fide Purchaser (BFP). *See* Pacheco v. Serendensky, 393 F.3d 348, 351 (2d Cir. 2004) (person who is aware there is a *lis pendens* on the property cannot be a bona fide purchaser; but holding that the *lis pendens* did not relate to the property the third party was acquiring); United States v. Emor, 2013 WL 3005366, *12 (D.D.C. June 18, 2013) (entities defendant controlled could not satisfy the "without cause to believe requirement" [for BFP status] because defendant's knowledge of the underlying fraud is imputed).

The option to place the net proceeds in escrow to avoid the above entanglement on the pending, contracted sales is a reasonable one. We have provisionally agreed to seek the U.S. Attorney's approval to give the parties to the sale the assurances they seek from the government (DOJ) provided the net sales proceeds are placed in escrow accounts with either title insurance companies or the purchasers' attorneys. Any claims to those proceeds can then progress in an orderly fashion with or without the involvement of the Court depending on whether those properties become subject to civil or criminal forfeiture actions at a later date.

Mr. Cohen accuses the government of "blessing" or interfering with any sales of the indicted or unindicted properties. Such is not the case. When we have been contacted regarding pre-indictment sales contracts, we have merely attempted to come to agreements with the attorneys for the sellers and purchasers that maintains the status quo and protects

4

the government's interest in preserving criminally derived property for potential forfeiture pending future litigation.

It now appears that Mr. Cohen and his client do not wish us to provide any guidance or even return contacts nor engage in any discussion with any parties relating to any unindicted properties. Of course, pursuit of that approach would likely result in purchasers and title companies refusing to consummate transactions. Regardless, unless and until Mr. Cohen and his client — assuming that Mr. Cohen does in fact represent Robert Morgan now and has abandoned his purported "provisional" representation — file a motion before the Court, citing legal authority for the Court to consider and providing the government with the opportunity to respond with appropriate legal authority, none of these matters are properly placed before this Court or ripe for informed adjudication. The government as of the date of this letter will agree to cease any discussions as to reaching any type of agreement as to this category of properties unless further litigation is commenced.

**Restraining Order**

In his letter, Mr. Cohen insists upon the government obtaining a restraining order under 21 USC Section 853(e). To that point, in a June 11, 2019 telephone conversation, Mr. Cohen was asked whether his client would agree to a restraining order and/or the appointment of a monitor or receiver for the real properties named in the Indictment during pendency of the criminal prosecution. He indicated that he would not agree to such an order. We have yet to pursue a hard and fast restraining order given that our attempts were to focus on entering into mutual agreements as to pending and contracted for sales of Morgan Properties over the past four (4) weeks. We have the option of obtaining criminal seizure warrants for the sale proceeds from the sales of certain properties, including those contained in the Superseding Indictment. Again, we have yet to pursue seizure warrants given that we were working diligently toward an agreement with the sellers and purchasers over these properties.

To complicate matters even further we have been receiving assurances from attorneys who have represented that Robert and Todd Morgan would consent to having these sales go through and placing the net proceeds that they believe are owed to them in an escrow account pending further litigation or Order of the Court. Mr. Cohen's most recent letter seems to disagree with those views.

Yet again, the government maintains the position that unless and until Mr. Cohen confirms his representation of the defendant and files an appropriate motion before the

Court citing relevant legal authority and providing the government the opportunity to respond, none of these matters are appropriately before the Court for informed consideration, evaluation or adjudication.

Thank you for your consideration.

Respectfully submitted,

JAMES P. KENNEDY, JR.
United States Attorney

BY: *Mary Clare Kane*

MARY CLARE KANE
Assistant United States Attorney

MCK/mej

cc:  Joel M. Cohen, Esq.
     Gibson, Dunn & Crutcher, LLP
     200 Park Avenue
     New York, NY 10166-0193
     Via email