# Exhibit R

**U.S. Department of Justice**
Criminal Division
*Money Laundering and Asset Recovery Section*



# Asset Forfeiture Policy Manual

## 2019

# Foreword

The Money Laundering and Asset Recovery Section (MLARS) is pleased to release the 2019 edition of the *Asset Forfeiture Policy Manual*, a compilation of policies governing the Department of Justice Asset Forfeiture Program (Program). Since the *Policy Manual* was last published in 2016, the Department of Justice (Department) has issued a number of significant policy directives that are reflected in the *Policy Manual*. These include *The Attorney General's Guidelines on the Asset Forfeiture Program* (*AG Guidelines*), which set forth the Program's four primary goals:

(1) To punish and deter criminal activity by depriving criminals of property used in or acquired through illegal activities.

(2) To promote and enhance cooperation among federal, state, local, tribal, and foreign law enforcement agencies.

(3) To recover assets that may be used to compensate victims when authorized under federal law.

(4) To ensure the Program is administered professionally, lawfully, and in a manner consistent with sound public policy.

The purpose of the *Policy Manual* is to provide Department prosecutors, agents, and support staff with a reference manual containing the policies and procedures in support of the Program's goals.

The *Policy Manual* has been reorganized to more closely track the forfeiture process itself, and revised to reflect policy changes such as the new *AG Guidelines* and the Attorney General's July 2017 order on adoptive seizures. For example, the *Policy Manual* has incorporated more detailed guidance on seizures, devoting two chapters to this process, one on pre-seizure planning and one on seizure and restraint. The chapter on seizures by state, local, and tribal law enforcement incorporates the updated adoptions policy, and has been moved from the end of the *Policy Manual* to follow chapters on pre-seizure planning.

This *Policy Manual* replaces and supersedes all previous versions of the *Policy Manual* and all Policy Directives issued by MLARS, unless otherwise noted. The *Policy Manual* is published in hardcopy and available online at http://www.justice.gov/criminal-mlars/publications. Any future updates issued prior to the publication of the next *Policy Manual* will be issued as MLARS Policy Directives.

The *Asset Forfeiture Policy Manual* sets forth the policies of the Department of Justice. It does not, however, create or confer any legal rights, privileges, or benefits that may be enforced in any way by private parties. *See United States v. Caceres*, 440 U.S. 741 (1979).

We recommend that the following format be used in citing this *Policy Manual*: *Asset Forfeiture Policy Manual* (2019), Chap.___, Sec.___._____. (e.g., Chap. 1, Sec. I.A).

Deborah L. Connor
Chief
Money Laundering and
Asset Recovery Section

# Table of Contents: Asset Forfeiture Policy Manual

**Foreword** ................................................................................................1

**Approval, Consultation, and Notification Requirements**....................................11

**Custodial and Seizure Authority** ........................................................19
A.    Department of Justice Asset Forfeiture Program........................................19
B.    Department of the Treasury Asset Forfeiture Program ................................21

**Chapter 1: Pre-Seizure/Restraint Planning** ........................................23
I.    Guidelines for Pre-seizure/Restraint Planning.........................................23
    A.    Background...............................................................................23
    B.    Scope of assets covered by guidelines ........................................24
    C.    General policy guidelines .........................................................25
    D.    Pre-seizure planning questionnaires and documentation....................27
    E.    Quick release............................................................................34
II.    Pre-seizure Judicial Review.................................................................35
    A.    Pre-seizure judicial authorization of property seizures........................35
    B.    Pre-seizure judicial review favored for seizure of personal property .................35

**Chapter 2: Seizure/Restraint** ................................................................37
I.    Overview..............................................................................................37
II.    General Procedures for Seizing Property................................................38
    A.    Notification by seizing agency......................................................38
    B.    Forms of process to be used........................................................38
    C.    Responsibility for execution of process..........................................39
III.    Seizures for Criminal Forfeiture ........................................................39
    A.    When is a criminal seizure warrant or restraining order required?.....................39
    B.    Summary ................................................................................40
    C.    Discussion ..............................................................................40
IV.    Proper Use of Writs of Entry in Civil and Criminal Forfeiture cases..........................42
    A.    Overview.................................................................................42
    B.    Discussion ..............................................................................42
    C.    Conclusion ..............................................................................46
V.    Seizure of Financial Instruments ........................................................46
    A.    Certificates of deposit ...............................................................46
    B.    Cryptocurrency .......................................................................47
    C.    Life Insurance .........................................................................49
    D.    Money orders ..........................................................................50

E.   Personal and cashier's checks ..................................................52
F.   Prepaid Access Devices .........................................................53
G.   Securities...............................................................................55
H.   Traveler's checks ..................................................................56
I.   United States savings bonds...................................................57
VI.   Seized Cash Management ................................................................58
VII.   The Use of Asset Forfeiture Authorities in Connection with Structuring Offenses......59
A.   Link to prior or anticipated criminal activity .......................60
B.   No intent to structure ...........................................................61
C.   150-day deadline ..................................................................61
D.   Settlement ............................................................................61

**Chapter 3: Seizures by State and Local Law Enforcement ................................63**
I.   Forfeitures Generally Follow the Prosecution ................................63
II.   General Adoption Policy and Procedure..........................................63
A.   Policy regarding federal adoption of assets seized by state and local law enforcement..................................................................63
B.   Federal adoption procedure..................................................65
III.   Cases Initiated by a U.S. Attorney Directly with State and Local Law Enforcement without Federal Agency Involvement.........................67
A.   Direct adoption by the U.S. Attorney....................................67
B.   Direct referral by the U.S. Attorney......................................68
IV.   Jurisdiction.......................................................................................68
A.   Retention of custody by state or local agency during federal forfeiture proceedings..........................................................68
B.   Concurrent jurisdiction ........................................................69
C.   Use of anticipatory seizure warrants.....................................70

**Chapter 4: Real Property ..........................................................................71**
I.   Pre-forfeiture Considerations...........................................................71
A.   General policy.......................................................................71
B.   Real property valuation.........................................................71
C.   Seizure..................................................................................73
D.   Title conveyance ..................................................................73
E.   Contamination liability .........................................................74
II.   Ownership and Notice.......................................................................75
A.   Title search ...........................................................................75
B.   *Lis pendens*...........................................................................**75**
C.   Noticing the Mortgage Electronic Registration System (MERS)........76
III.   Third Party Interests.........................................................................76
A.   Occupancy agreements for tenants .......................................76

B.    Business/corporate owners................................................................76

C.    Lienholders ....................................................................................77

IV.   Taxes and Penalties..................................................................................77

A.    Payment of state and local real property taxes................................77

B.    Payment of interest and penalties on real property taxes...................77

V.    Real Property Transfers............................................................................78

A.    Equitable sharing transfer for official use ........................................78

B.    Weed & Seed Initiative ..................................................................79

C.    Operation Goodwill ......................................................................79

D.    Federal component transfers ...........................................................79

E.    Governor's request for historic, recreational, or preservation purposes..............80

**Chapter 5: Administrative and Judicial Forfeiture ...............................................81**

I.    Overview...................................................................................................81

A.    Seized property eligible for forfeiture should be forfeited ..................81

B.    Forfeiture should follow the prosecution .........................................81

II.   Administrative Forfeiture Guidelines ........................................................82

A.    Scope of property subject to administrative forfeiture .........................82

B.    Administrative forfeiture notice deadlines.........................................84

C.    Timeliness and content of claims in administrative proceedings .......88

D.    Decisions to forego administrative forfeiture proceedings in favor of civil or criminal judicial resolutions ...................................................89

E.    Plea and settlement negotiations involving property subject to administrative forfeiture.................................................................89

III.  Judicial Forfeiture Guidelines ...................................................................90

A.    Parallel administrative, civil, and criminal forfeiture proceedings ......90

B.    Deadlines for instituting civil judicial forfeiture proceedings ............90

C.    Providing notice of judicial forfeiture actions ..................................91

D.    Form of claim and content policies applicable to judicial forfeiture actions .......94

E.    Issues specific to civil judicial proceedings ....................................94

F.    Issues specific to criminal judicial proceedings.................................100

IV.   Firearms Forfeiture Policy .......................................................................101

A.    Preference for forfeiture ...............................................................101

B.    Stolen firearms ...........................................................................101

C.    Administrative and civil judicial forfeiture of firearms deadline issues ............102

D.    Firearms are treated differently........................................................102

**Chapter 6: Grand Jury............................................................................105**

I.    Disclosures of Grand Jury Information under 18 U.S.C. § 3322(a)..........................105

A.    Summary ....................................................................................105

B.    Discussion ..................................................................................105

C.   Conclusion ...................................................................................109
II.   Presenting Forfeiture to the Grand Jury...............................................109
A.   Summary .....................................................................................109
B.   Discussion ...................................................................................109

## Chapter 7: Litigation Issues: Legal and Ethical.................................**117**

I.   Avoiding Accusations of Vindictive Prosecution.....................................117
II.   Negotiating With Fugitives .................................................................118
A.   Summary .....................................................................................118
B.   Discussion ...................................................................................118
III.   Criminal Forfeiture and *Brady* Obligations ..........................................119
IV.   Fifth Amendment Advisements in Civil Forfeiture Cases .........................120
V.   Preservation Policy for Civil Forfeiture................................................121
A.   The legal obligation ......................................................................121
B.   Litigation holds ............................................................................122
C.   Information subject to preservation ..................................................123
D.   The litigation hold notice ..............................................................124

## Chapter 8: International Forfeiture ......................................................**127**

I.   Forfeiture of Assets Located Abroad Under United States Law..................127
II.   Forfeiture of Assets Located in the United States under Foreign Law .........127
III.   Policy on International Contacts..........................................................127
IV.   Foreign Property Management Issues....................................................128
V.   Publication of Notice Abroad..............................................................128
VI.   Consultation with MLARS or OIA When Seeking Repatriation of Forfeitable Assets Located Abroad...........................................................................129
VII.   Probable Cause Finding to Seize or Restrain Assets Abroad.....................130
A.   Criminal forfeiture cases................................................................130
B.   Civil forfeiture cases .....................................................................132
C.   Parallel civil and criminal cases.......................................................133
VIII.   Consultation for Civil Forfeiture of Property Located Overseas................133
IX.   Approval Process for Section 981(k) Seizure from Correspondent Bank Account....134
X.   Lack of Administrative Forfeiture Authority for Overseas Property.........135
XI.   Settlements, Plea Agreements, and Attorneys' Fees ................................135
XII.   Enforcement of Judgments ................................................................136
A.   Foreign enforcement of United States judgments................................136
B.   United States enforcement of foreign judgments and restraining orders............136
XIII.   International Sharing........................................................................137

**Chapter 9: Trustees, Monitors, Managers, and Custodians in Forfeiture Cases ..................................................................................139**

I.  Trustees, Monitors, Managers, and Custodians in Forfeiture Cases ..........139
    A.  Purpose ..................................................................................139
    B.  Statutory authority ...................................................................139
    C.  Special considerations ...............................................................140
    D.  Determining when a trustee, monitor, manager, or custodian should be engaged ...................................................................140

II. Prerequisites to the Selection of a Trustee, Monitor, Manager, or Custodian: Pre-seizure Planning and Other Requirements ...............................141

III. Qualifications of Trustees, Monitors, Managers, and Custodians ............142

IV. Trustee, Monitor, Manager, and Custodian Expenses ..........................143

**Chapter 10: Use and Disposition of Seized and Forfeited Property ................145**

I.  Management and Disposal of Seized Assets ...................................145
    A.  Role of the United States Marshals Service ...........................145
    B.  Department of Treasury property custodians .........................145
    C.  Pre-seizure planning ...........................................................145
    D.  Coordination of custody and disposition decisions ..............145

II. Use of Seized Property .............................................................146
    A.  Background ........................................................................146
    B.  Use of seized property .......................................................146
    C.  Use of seized property where custody is retained by the state or local seizing agency ..................................................146
    D.  Pre-forfeiture sale of seized property ..................................146

III. Disposition of Forfeited Property and Funds ................................146
    A.  Forfeiture orders ...............................................................146
    B.  Disposition of forfeited property in civil and criminal cases ..........147
    C.  Sale of forfeited property ...................................................148
    D.  Disposition of forfeited funds ............................................148

IV. Purchase or Personal Use of Forfeited Property by Department of Justice Employees .............................................149

**Chapter 11: Settlements ..........................................................................151**

I.  General Policy .......................................................................151
    A.  Scope ...............................................................................151
    B.  Principles .........................................................................151

II. Authority of the U.S. Attorney to Enter Into a Settlement .........................153

III. Authority of MLARS to Approve a Settlement .............................155
    A.  Examples ..........................................................................155

IV. Using Administrative Forfeiture to Effect a Settlement .............................156

A.   Settlement of forfeiture after a claim is filed in an administrative forfeiture proceeding, but before a judicial complaint is filed ............................................156

B.   Settlement of civil judicial forfeiture without prior administrative action .........157

C.   Using administrative forfeiture to settle a criminal forfeiture action ................157

V.   References to the Remission or Restoration Processes in Settlements ......................158

VI.   Settlements in Civil Judicial Forfeiture Cases ...........................................................158

VII.   Plea Agreements Incorporating Criminal Forfeiture ..................................................158

VIII.   Global Settlements and Dealing with Claimants and Witnesses ...............................159

A.   Ethical considerations .............................................................................159

B.   Global settlements ...................................................................................160

C.   Claimants and witnesses .........................................................................161

IX.   Acceptance of a Monetary Amount in Lieu of Forfeiture of Other Tangible Property ...........................................................................162

A.   Introduction ............................................................................................162

B.   Policy considerations ..............................................................................162

C.   Applicable procedures ............................................................................163

D.   Discussion ...............................................................................................164

X.   Agreements to Exempt Attorneys' Fees from Forfeiture ...........................................166

**Chapter 12: Attorneys' Fees ....................................................................167**

I.   Payment of Attorneys' Fees in Civil Forfeiture Cases ...............................................167

II.   Payment of Attorneys' Fees in Criminal Forfeiture Cases ........................................167

A.   Defendant's attorneys' fees ....................................................................167

B.   Third party petitioner's attorneys' fees ..................................................168

III.   Summary of Payment of Attorneys' Fees in Forfeiture Cases ...................................169

IV.   Forfeiture of Attorneys' Fees ....................................................................................170

**Chapter 13: Post-Forfeiture Third Party Interests ...........................................171**

I.   Petitions for Remission and Mitigation ......................................................................171

A.   Owners ....................................................................................................171

B.   Lienholders .............................................................................................172

C.   Mitigation ...............................................................................................172

D.   Procedure for notice and processing petitions .......................................172

E.   Priority of payments ...............................................................................173

F.   Cultural property ....................................................................................173

II.   Qui Tam Actions: Payment of a Relator's Share .......................................................173

A.   Overview of the False Claims Act ..........................................................173

B.   Forfeiture proceedings as alternate remedies ..........................................174

C.   The source of the relator's right to recover ............................................176

D.   The relator's share is a percentage of the net forfeiture recovery .....................176

E.   Procedure for paying relator's share ......................................................177

**Chapter 14: Forfeiture and Compensation for Victims of Crime ....................179**

I.      Overview...............................................................................................179

II.     Returning Forfeited Assets to Victims ...................................................180

    A.     Remission........................................................................................180

    B.     Restoration .....................................................................................183

    C.     Special considerations for federal government victims.....................186

    D.     Special considerations for victims of human trafficking crimes........186

    E.     Preservation of assets for victims ....................................................187

    F.     Hybrid remission and restoration review...........................................187

    G.     Termination of forfeiture and direct payment of assets to victims ....187

    H.     Comparison of judicial remission and restoration ............................188

III.    Constructive Trusts in Multiple-Victim Fraud Cases................................189

**Chapter 15: Federal Official Use and Equitable Sharing  .................................191**

I.      Federal Official Use .............................................................................191

    A.     Overview.........................................................................................191

    B.     Official use designations by the federal seizing agency ....................191

    C.     Official use requests by other federal agencies  ...............................192

    D.     Internal guidelines ..........................................................................192

    E.     Payment of liens on personal property placed into federal official use ...........193

II.     Equitable Sharing.................................................................................193

III.    Processing Applications for Equitable Sharing.........................................194

    A.     Eligible participants ........................................................................194

    B.     Equitable sharing allocations ..........................................................194

    C.     Agency field office..........................................................................195

    D.     Final decision maker .......................................................................195

    E.     Communication with the requesting agency .....................................197

    F.     Reimbursement of federal costs and expenses...................................198

IV.    Equitable Sharing Payments .................................................................198

V.     Compliance ..........................................................................................199

VI.    Federal Contribution Form ...................................................................200

VIII.  International Sharing of Forfeited Assets ................................................202

# Approval, Consultation, and Notification Requirements

For a list of abbreviations used below, *see* page 17.

| Adoption (State/Local Seizures) | | | |
|---|---|---|---|
| **Direct Adoption or Direct Referral by U.S. Attorney** | Approval | AFPM Chap. 3.III.A.1 and A.2 | **MLARS** must authorize direct adoption or direct referral by U.S. Attorney. |

| Attorneys' Fees | | | |
|---|---|---|---|
| **EAJA Awards** | Approval | AFPM Chap. 12.II.B; JM § 9-117.210 | **MLARS** must give approval to use funds to pay EAJA awards arising from third party petitioners in criminal forfeiture actions. |
| **Exempt Fees from Forfeiture** | Approval | AFPM Chap. 11.X, Chap. 12.IV; JM §§ 9-113.600, 9-120.116 | **AAG** must give approval to enter into a formal or informal, written or oral agreement, to exempt from forfeiture an asset transferred to an attorney as fees for legal services, including those restrained as substitute assets. |
| **Proceedings Against Fees** | Approval | AFPM Chap. 12.IV; JM § 9-120.112 | **AAG** must give approval for any action to institute a criminal or civil forfeiture proceeding against an asset transferred to an attorney as a fee for legal services. |

| Business Entities | | | |
|---|---|---|---|
| **Facilitating Property** | Approval | AFPM Chap. 5.III.E.1.b | **U.S. Attorney** must provide written authorization before the USAO: (1) seizes or files a civil forfeiture complaint against an ongoing business based on a facilitation theory, or (2) extends 60-day deadline to file civil forfeiture complaint against an ongoing business based on a facilitation theory. |
| **Facilitating Property** | Approval | AFPM Chap. 5.III.E.1.b | **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO may extend 60-day deadline to file civil forfeiture complaint against an ongoing business based on a facilitation theory. |
| **Losses or Liabilities, Post-Seizure** | Notify | AFPM Chap. 9.IV | USAO, USMS, or investigative agency must notify **MLARS** and **AFMS** when they learn that a restrained or seized business will lose money, has liabilities, or has insufficient equity. |
| **Net Losses, Pre-Seizure** | Approval | AFPM Chap. 1.I.D.1 and D.4, Chap. 9.IV | **AFMS** must give approval, in coordination with MLARS, if the restraint, seizure, or forfeiture of a business could create a deficit to the AFF for that business. |
| **Prior to Instituting Forfeiture Proceedings** | Consult | AFPM Chap. 1.I.D.4, Chap. 4.III.B; JM §§ 9-105.330, 9-111.124 | USAO must consult **MLARS** prior to filing indictment, information, or complaint in any forfeiture action against, seeking the seizure of, or moving to restrain an ongoing business.<br><br>(JM requires consultation prior to seeking forfeiture of a business on the theory that it facilitated money laundering.) |

## Civil Forfeiture Complaint

| Facilitating Property | Approval | AFPM Chap. 5.III.E | **U.S. Attorney** must provide written authorization before USAO files any civil forfeiture complaint based on a theory that the property facilitated or concealed underlying criminal activity. |
|---|---|---|---|
| Facilitating Property | Approval | AFPM Chap. 5.III.E | **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO files any civil forfeiture complaint based on a theory that the property facilitated or concealed underlying criminal activity. |

## Correspondent Accounts

| Restraining Order or Warrant | Approval | AFPM Chap. 8.IX; AAG Chertoff Memorandum; USA Patriot Act, § 319, codified at 18 U.S.C. § 981(k) | **MLARS** must give approval before serving a restraining order, seizure warrant, or warrant of arrest on a correspondent bank account under 18 U.S.C. § 981(k) (**MLARS Chief** will get concurrence from **OIA director**). |
| Subpoena or Summons | Approval | AAG Chertoff Memorandum; AG order delegating authority to AAG; USA Patriot Act, § 319, codified at 31 U.S.C. § 5318(k) | **MLARS** must give approval before AAG can issue summonses or subpoenas to foreign banks that maintain correspondent accounts in the United States to get records (**MLARS Chief** will get approval from **OIA** as well). |

## Equitable Sharing

| Assets Valued $1 to $5 Million | Approval | AFPM Chap. 15.III.D.3.a | **MLARS Chief** has authority to rule on equitable sharing requests for judicially and administratively forfeited assets in which: (1) the property to be shared is valued between $1 and $5 million, and (2) MLARS, seizing agency, and USAO agree on the sharing. |
| Assets Valued Over $5 Million | Approval | AFPM Chap. 15.III.D.3.b | **AAG** has the authority to rule on equitable sharing requests if: (1) the property is over $5 million, and (2) MLARS, seizing agency, and USAO all agree on the sharing. |
| International Sharing | Approval | AFPM Chap. 8.XIII, Chap. 15.VIII; JM § 9-116.400 | **Secretary of State** and **AG** approval required before forfeited assets can be shared internationally. In cases involving the AFF, (1) **AAG** approves uncontested international sharing proposals over $5 million; and (2) **MLARS Chief** approves uncontested international equitable sharing proposals for $5 million or less. |
| Multi-District / Real Property Transfer / Disagreement | Approval | AFPM Chap. 15.III.D.3 JM §§ 9-116.210 | **DAG** must approve equitable sharing in cases involving: (1) multiple districts, (2) real property transfers to a state or local agency for law enforcement related use, or (3) disagreement among USAO, MLARS, and seizing agency on the sharing, regardless of the property value.<br><br>(JM says that DAG must approve equitable sharing in cases involving: (1) $1 million or more in forfeited assets, (2) multi-district cases, or (3) cases involving real property transfers to a state or local agency for law enforcement related use. MLARS is coordinating with EOUSA to update the JM to reflect the new delegations.) |
| Transfer of Tangible Items | Approval | AFPM Chap. 15.III.D.3.c | **MLARS** must approve equitable sharing in cases involving the transfer of tangible items. |

## International Forfeiture

| | | | |
|---|---|---|---|
| **Businesses Located Abroad** | Consult | AFPM Chap. 8.IV | **MLARS** must be consulted before the United States asks a foreign government to restrain or seize an ongoing business or its assets, or appoint a guardian, or similar fiduciary for the same. |
| **Civil Forfeiture** | Consult | AFPM Chap. 8.VIII; JM § 9-13.526 | **OIA** (which will consult with **MLARS**) must be notified before filing an in rem forfeiture action based on 28 U.S.C. § 1355(b)(2). |
| **Enforcement/ Recognition in Foreign Jurisdiction** | Consult | JM § 9-13.526 | **OIA** (which will consult with **MLARS**) must be consulted before taking steps to present to a foreign government, for enforcement or recognition, any civil or criminal forfeiture order entered in the United States for property located within the foreign jurisdiction. |
| **Enforcement of Foreign Judgments and Restraining Orders** | Approval | AFPM Chap. 8.XII.B | **MLARS** must authorize: (1) foreign forfeiture or confiscation judgments under 28 U.S.C. § 2467(b)(2) where the amount is $5 million or less; and (2) all foreign forfeiture restraining orders under § 2467(d)(3)(B)(ii). |
| **Repatriation** | Consult | AFPM Chap. 8.VI | **MLARS** and **OIA** must be consulted when seeking repatriation of forfeitable assets located abroad. |

## Net Equity Thresholds

| | | | |
|---|---|---|---|
| **Decrease Thresholds** | Approval | AFPM Chap. 1.I.D.1; JM § 9-111.120 | Supervisory-level approval, in writing, from the **USAO** (for **judicial forfeitures**) or **seizing agency** (for **administrative forfeitures**) required for any downward departure from the seizing thresholds. Copy of the approval must be provided to **USMS**. |
| **Decrease Thresholds** | Notify | AFPM Chap. 1.I.D.1; JM § 9-111.120 | Supervisory-level approval, in writing, from the **USAO** (for **judicial forfeitures**) or **seizing agency** (for **administrative forfeitures**) required for any downward departure from the seizing thresholds. Copy of the approval must be provided to **USMS**. |
| **Increase Thresholds** | Consult | AFPM Chap. 1.I.D.1, Chap. 3.II.A. n.5; JM § 9-111.120 | **USAO** (which will consult seizing agencies affected by the change) may institute higher district-wide thresholds for judicial forfeitures. Written notice of such higher thresholds must be provided to **MLARS**. |
| **Increase Thresholds** | Notify | AFPM Chap. 1.I.D.1, Chap. 3.II.A. n.5; JM § 9-111.120 | **USAO** (which will consult seizing agencies affected by the change) may institute higher district-wide thresholds for judicial forfeitures. Written notice of such higher thresholds must be provided to **MLARS**. |

## Official Use

| | | | |
|---|---|---|---|
| **Property Value $50,000 or More** | Notify | AFPM Chap. 15.I.B | Seizing agency and/or USMS must notify **MLARS** where property requested for official use is valued at over $50,000. |
| **Asset Seized by Its Own Agency** | Decision | AFPM Chap. 15.I.B | **Head of the seizing agency**, or a **designated headquarters official**, decides whether to put assets seized by the agency into its own official use. |
| **Requests by Other Federal Agencies** | Approval | AFPM Chap. 15.I.C | **Lead federal seizing agency** approves requests for official use by other federal agencies. If more than one Department component seeks to retain the same forfeited property for official use, **MLARS** will determine which agency may place the property into official use. |

## Official Use

| | | | |
|---|---|---|---|
| **Payment of Liens on Personal Property Placed into Official Use** | Approval | AFPM Chap. 15.I.E | **MLARS Chief** must approve requests for exceptions for payment of liens on personal property placed into official use from the AFF. |

## Plea Agreements or Settlements

| | | | |
|---|---|---|---|
| **Interlocutory Sale of Cryptocurrency** | Consult | AFPM Chap. 2.V.B.3, Chap. 11.IX.D | Consultation with **MLARS** is required prior to seeking an order for the interlocutory sale of cryptocurrency. |
| **Administrative Forfeiture, Return of Property** | Consult | AFPM Chap. 5.II.E, Chap. 11.I.B.4; JM § 9-113.103 | **Seizing agency** must be consulted before entering into plea agreements or settlements returning property that is the subject of administrative forfeiture proceedings. USAO should not agree to return property that is the subject of a pending administrative forfeiture proceeding, unless: (1) **seizing agency** agrees to suspend administrative forfeiture, or (2) **MLARS** approves the decision to return the property. |
| **Administrative Forfeiture, Return of Property** | Approval | AFPM Chap. 5.II.E, Chap. 11.I.B.4; JM § 9-113.104 | **Seizing agency** must be consulted before entering into plea agreements or settlements returning property that is the subject of administrative forfeiture proceedings. USAO should not agree to return property that is the subject of a pending administrative forfeiture proceeding, unless: (1) **seizing agency** agrees to suspend administrative forfeiture, or (2) **MLARS** approves the decision to return the property. |
| **Administrative Forfeiture Used to Effectuate Agreement** | Consult | AFPM Chap. 11.IV; JM § 9-113.300 | **Seizing agency headquarters** must be consulted where an administrative forfeiture is necessary to effectuate an agreement. |
| **Negotiations** | Consult | AFPM Chap. 11.I.B.2, Chap. 10.I.D; JM § 9-113.103 | **USMS** and **seizing agency** must be consulted during settlement negotiation. |
| **Payment of Specific Amount** | Approval | AFPM Chap. 10.I.D | **USMS** approval must be obtained prior to execution of settlement that requires the payment of a specific amount, rather than an amount determined by the proceeds received from liquidation of the forfeited property. |
| **Settlement Over $2 Million and 15% of Amount Involved** | Approval | AFPM Chap. 11.III; JM § 9-113.200 | **DAG** must approve settlements where the amount to be released exceeds $2 million and 15 percent of the amount involved. |
| **Settlement over $1 Million, but under $2 Million, and 15% of Amount Involved** | Approval | AFPM Chap. 11.II–III; JM § 9-113.200 | **MLARS Chief** has authority to approve a forfeiture settlement over $1 million, unless the amount to be released exceeds 15 percent of the amount involved and is greater than $2 million. |

## Plea Agreements or Settlements

| | | | |
|---|---|---|---|
| **Settlement under $1 Million, or between $1 and $5 Million if Released Amount Under 15% of Original Claim** | Approval | AFPM Chap. 11.II; JM § 9-113.200 | **U.S. Attorney** may approve any settlement in a criminal or civil forfeiture claim if: (1) the amount involved is less than $1 million, regardless of the amount to be released, or (2) the amount involved is between $1 and $5 million, if the amount to be released does not exceed 15% of the original claim. (JM says that cases not in excess of $500,000 and cases between $1 and $5 million provided the amount released is not more than 15% of the amount involved. MLARS is coordinating with EOUSA to update the JM to reflect the new delegations.) |
| **Taxes** | Approval | AFPM Chap. 11.I.B.9 | USAO must obtain **IRS approval** prior to any settlement that allows forfeitable proceeds to settle a defendant's tax obligations. |
| **Unsecured Partial Payment** | Approval | AFPM Chap. 11.I.B.7; JM § 9-113.107 | USAO must obtain approval from **MLARS** (which will consult **USMS**) prior to any settlement that provides for unsecured partial payment. |
| **Unsecured Partial Payment** | Consult | AFPM Chap. 11.I.B.7; JM § 9-113.107 | USAO must obtain approval from **MLARS** (which will consult **USMS**) prior to any settlement that provides for unsecured partial payment. |

## Pre-seizure/Restraint Planning

| | | | |
|---|---|---|---|
| **Loss or Liabilities** | Consult | AFPM Chap. 1.I.D.1 and D.3.b; JM § 9-111.123 | USAO must consult with: (1) **USMS** and **seizing agency** (in **judicial forfeitures**), or (2) **agent in charge of field office** (in **administrative forfeitures**), where proceeding with seizure may result in losses and liabilities. |
| **Planning Discussions** | Consult | AFPM Chap. 1.I.A–D; JM § 9-111.110 | **USMS** must be consulted as part of the pre-seizure planning process prior to seizure/restraint and forfeiture of assets. |
| **Third Party Contractors** | Approval | AFPM Chap. 1.I.B | **USAO** must give approval prior to the release of sensitive law enforcement information to third party contractors for the purpose of pre-seizure planning. |

## Real Property

| | | | |
|---|---|---|---|
| **Contaminated Real Property** | Consult | AFPM Chap. 4.I.E; JM § 9-111.400 | **Seizing agency**, **USMS**, **MLARS**, and **AFMS** must be consulted prior to seizure of contaminated real property. (JM says USAO should exercise its discretion.) |
| **Liens or Mortgages** | Approval | AFPM Chap. 10.III.A; JM § 9-113.800 | **MLARS** must approve any requests for payment of liens and mortgages in excess of sale proceeds. |
| **Net Loss, Pre-Seizure** | Consult | AFPM Chap. 1.I.D.1, Chap. 4.I.A–B | Consultation between **MLARS**, **AFMS**, and **participating agencies** (USAO, seizing agency, USMS) is required if the restraint, seizure, or forfeiture of real property could create a deficit to the AFF for that property. |
| **Net Loss, Pre-Seizure** | Notify | AFPM Chap. 1.I.D.3.b.1, Chap. 4.I.B.2 | If USAO decides to continue with forfeiture, it must: (1) notify **MLARS** and **AFMS**, and (2) obtain approval in writing from supervisory-level official at **USAO**. |
| **Net Loss, Pre-Seizure** | Approval | AFPM Chap. 1.I.D.3.b.1, Chap. 4.I.B.2 | If USAO decides to continue with forfeiture, it must: (1) notify **MLARS** and **AFMS**, and (2) obtain approval in writing from supervisory-level official at **USAO**. |

## Real Property

| | | | |
|---|---|---|---|
| **Transfer: Equitable Sharing** | Approval | AFPM Chap. 15.II.D.3 n.14, Chap. 4.V.A | **AAG** must approve real property transfers to state or local agencies for official use in fulfilling a compelling law enforcement need. |
| **Transfer: Federal Purpose** | Approval | AFPM Chap. 4.V.D | **DAG** must approve a real property transfer to a federal agency for use in fulfilling a law enforcement need, or for serving a significant and continuing federal purpose. |
| **Transfer: Operation Goodwill** | Approval | AFPM Chap. 4.V.C | **AG** must approve real property transfers to state or local governmental agencies, or its transferees, for use in the Operation Goodwill Program. |
| **Transfer: Recreational, Historic Preservation purpose** | Approval | AFPM Chap. 4.V.E | **DAG** must approve real property transfers to a state for use as a recreational or historic site, or for the preservation of natural conditions. |
| **Transfer: Weed and Seed** | Approval | AFPM Chap. 4.V.B; JM § 9-116.500 | **DAG** must approve real property transfers to state or local agencies for further transfer to other government agencies or non-profit agencies for use in the Weed and Seed Program. |
| **Facilitating Property** | Approval | AFPM Chap. 5.III.E.1.c | **U.S. Attorney** must provide written authorization before USAO files a civil forfeiture complaint against personal residences based on a facilitation theory. **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO files a civil forfeiture complaint against personal residences based on a facilitation theory. |
| **Property Located in Another District** | Consult | AFPM Chap. 4.I | When USAO identifies real property for forfeiture that is located in a different district, the USAO should consult with the **USAO district** where the property is located to discuss any state-specific issues relating to the forfeiture. |
| **Property Located in Another District** | Notify | AFPM Chap. 11.I.B.6 | To settle a forfeiture action involving property located in another district, the USAO handling the forfeiture must notify and coordinate with **USMS** in the district where the property is located. |
| **Valuation** | Consult | AFPM Chap. 4.I.B | Federal seizing agency and USAO are required to consult **USMS** to discuss valuation products, lien information, occupancy issues, and other factors that may impact seizure and forfeiture decisions. |

## Seized Cash Management

| | | | |
|---|---|---|---|
| **Exceptions to Prompt Deposit** | Approval | AFPM Chap. 2.VI; JM § 9-111.600 | **MLARS** must give approval for exceptions to the policy requiring prompt deposit of any seized cash into the SADF, unless the seized cash is less than $5,000. |

## Structuring

| | | | |
|---|---|---|---|
| **Seizure** | Approval | AFPM Chap. 2.VII.A | If no criminal charges have been filed, **U.S. Attorney** must provide written authorization before the USAO seeks a warrant to seize structured funds where no probable cause that the structured funds were generated by unlawful activity or that the structured funds were intended for use in, or to conceal or promote, ongoing or anticipated unlawful activity. |

## Structuring

| Seizure | Approval | AFPM Chap. 2.VII.A | If no criminal charges have been filed, **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO seeks a warrant to seize structured funds where no probable cause that the structured funds were generated by unlawful activity or that the structured funds were intended for use in, or to conceal or promote, ongoing or anticipated unlawful activity.<br><br>The basis for linking the structured funds to additional unlawful activity must receive appropriate supervisory approval and memorialized in the prosecutor's records. |
|---|---|---|---|
| 150-day deadline | Approval | AFPM Chap. 2.VII.C | **U.S. Attorney** must provide written authorization before the USAO may extend the 150-day deadline by 60 days to file criminal charges or a civil complaint against the asset. |
| 150-day deadline | Approval | AFPM Chap. 2.VII.C | **MLARS Chief** must provide written authorization before the Criminal Division or other Department component not partnering with the USAO may extend the 150-day deadline by 60 days to file criminal charges or a civil complaint against the asset. |

## Terrorism

| State Sponsor of Terrorism | Consult | AFPM Chap. 1.I.D.5, Chap. 10.III.D.6 | Consult with **MLARS** as early as possible in any forfeiture case involving a state sponsor of terrorism that may require deposits to the USVSST Fund. |
|---|---|---|---|

## Trustees and Monitors

| Appointment | Consult | AFPM Chap. 9.I.C | USAO must consult with **MLARS** before seeking appointment of a trustee, monitor, or similar fiduciary in any forfeiture case. |
|---|---|---|---|

| AAG | Assistant Attorney General | JM | *Justice Manual* |
|---|---|---|---|
| AFF | Assets Forfeiture Fund | MLARS | Money Laundering and Asset Recovery Section |
| AFMS | Justice Management Division, Asset Forfeiture Management Staff | OIA | Office of International Affairs |
| AFPM | *Asset Forfeiture Policy Manual* (2019) | SADF | Seized Assets Deposit Fund |
| AG | Attorney General | Treasury | Department of the Treasury |
| DAG | Deputy Attorney General | USAO | U.S. Attorney's Office |
| Department | Department of Justice | USMS | U.S. Marshals Office |
| EAJA | Equal Access to Justice Act | USVSST Fund | United States Victims of State Sponsored Terrorism Fund |
| EOUSA | Executive Office for U.S. Attorneys | | |

# Custodial and Seizure Authority

## A.    Department of Justice Asset Forfeiture Program

For a list of abbreviations used below, *see* page 21.

| Agency/Component | Property Custodian | Seizure Authority | Statutory Jurisdiction |
|---|---|---|---|
| AFMS | N/A | N/A | 28 U.S.C. § 524(c)(1) |
| ATF | ATF, USMS, and Treasury contractor | 18 U.S.C. § 3051 | 18 U.S.C. §§ 981–82; 28 U.S.C. § 2461; 49 U.S.C. § 80304 |
| Criminal Division (Department) | USMS (for cases brought by Department Program participants) | N/A | All criminal and civil asset forfeiture statutes |
| Criminal Division (Department) | Treasury contractor (for cases brought by Treasury Program participants) | N/A | All criminal and civil asset forfeiture statutes |
| DCIS | USMS | 18 U.S.C. § 982(a)(6)(A) (criminal) | 22 U.S.C. § 2709—all criminal and civil asset forfeiture statutes. Primarily, but not limited to: 18 U.S.C. § 981(a)(1)(A) (civil) and 18 U.S.C. § 982(a)(6)(A) (criminal) |
| DEA | USMS | 18 U.S.C. § 981; 21 U.S.C. § 881; 46 U.S.C. § 70507; 49 U.S.C. § 46306 | 18 U.S.C. §§ 981, 982; 21 U.S.C. §§ 824, 853, 881; 28 U.S.C. § 2461; 46 U.S.C. § 70507; 49 U.S.C. § 46306 |
| EOUSA—USAOs | USMS (for cases brought by Department Program participants) | N/A | All criminal and civil asset forfeiture statutes |
| EOUSA—USAOs | Treasury contractor (for cases brought by Treasury Program participants) | N/A | All criminal and civil asset forfeiture statutes |
| FBI | USMS | 28 C.F.R. § 8.3(a) | 28 C.F.R. § 0.85(a)—all laws not specifically assigned to the sole jurisdiction of another agency.[1] |
| FDA-OCI | USMS, Treasury contractor (bulk evidence only) | FFDCA; 21 U.S.C. §§ 301–97; Title 21 statutes related to FFDCA. | Federal Food, Drug, and Cosmetic Act (FFDCA); 21 U.S.C. §§ 301–97; Title 21 statutes related to FFDCA. |
| State Dept., Bureau of Diplomatic Security | USMS | 18 U.S.C. § 982(a)(6)(A) (criminal) | 22 U.S.C. § 2709—all criminal and civil asset forfeiture statutes. Primarily, but not limited to: 18 U.S.C. § 981(a)(1)(A) (civil) and 18 U.S.C. § 982(a)(6)(A) (criminal) |
| USDA-OIG | Seizing agency identifies appropriate custodian. Animals seized under warrant authorized under this section shall be held by USMS or other authorized person pending disposition of the court. | N/A[2] N/A[3] | 7 U.S.C. §§ 2024, 2156, 2270a |
| USMS | USMS | 28 U.S.C. § 566 | N/A |

Custodial and Seizure Authority Charts: Department of Justice Asset Forfeiture Program

| Agency/ Component | Property Custodian | Seizure Authority | Statutory Jurisdiction |
|---|---|---|---|
| **USPIS** | USPIS (administrative forfeitures) USMS (judicial forfeitures)[4] | 18 U.S.C. § 3061(a) | Pursuant to 18 U.S.C. § 3061—all matters relating to the Postal Service and the mails. Statutes enforced include: **Child Exploitation** (18 U.S.C. §§ 1470, 2251–54, 2422, 2425); **Controlled Substances** (21 U.S.C. §§ 841, 843–44); **Counterfeit Stamps, Money Orders and Related Crimes** (18 U.S.C. §§ 500, 501, 503, 1720); **Destruction, Obstruction and Delay of Mail** (18 U.S.C. §§ 1700–03); **Electronic Crimes** (18 U.S.C. §§ 1029–30, 1037, 1343, 2701); **Extortion** (18 U.S.C. §§ 873, 876–77); **Forfeiture** (18 U.S.C.§§ 981–82); **Identity Fraud** (18 U.S.C. § 1028); **Lotteries** (18 U.S.C. §§ 1301–03; 39 U.S.C. § 3005); **Mail Fraud** (18 U.S.C. §§ 1341–42, 1345; 39 U.S.C. §§ 3005, 3007); **Money Laundering** (18 U.S.C. §§ 1956–57); **Obscenity and Sexually Oriented Advertising** (18 U.S.C. §§ 1461, 1463, 1735, 39 U.S.C. § 3010); **Theft of Mail** (18 U.S.C. §§ 1708–09) |
| **Non-AFF/ Non-TFF Federal Participant[5]** | USMS (if proceeds eligible for deposit into the AFF) | TBD | TBD |

## Notes

[1] A specific comprehensive list can be found in the Outline of Forfeiture Law and Procedures monograph published by FBI's Legal Forfeiture Unit.

[2] There is a Memorandum of Understanding (MOU) between OIG-USDA, Treasury, USPIS, and the Department establishing OIG-USDA's participation in the AFF. OIG-USDA submits the appropriate paperwork to the seizing agency to document participation. For cases in which USPIS and Treasury are the additional parties, the MOU provides for transfers to the AFF from the Postal Fund and the TFF in forfeitures worked with OIG-USDA.

[3] The federal animal fighting statute allows for the forfeiture of "any animal involved in a violation of [the statute]...." 7 U.S.C. § 2156(f). Forfeiture seizure authority under the statute was granted to USMS and "any person authorized under this section to conduct investigations...."

[4] There is an MOU between USMS and USPIS should USPIS want to retain judicial property for official use, the USPIS may keep custody. *Note*: Some judicial districts get a substitute custodial agreement for this.

[5] The analysis as to whether the AFF is or is not available comes down to whether the proceeds (if any) can be deposited into the AFF. If the forfeiture statute doesn't direct the disposition proceeds to go to another entity (e.g., Secretary of the Treasury or Interior) and 28 U.S.C. § 524(c)(4) does not prohibit the deposit of the funds into the AFF, then the AFF is available and USMS should take custody of the property. If the proceeds go elsewhere, then USMS can still manage the property (using the AFF) but must seek a reimbursable agreement with the lead agency to ensure the costs are reimbursed. If the proceeds do not cover costs, then it must come out of the agency's appropriation.

| | | | |
|---|---|---|---|
| AFF | Assets Forfeiture Fund | FDA-OCI | Food and Drug Administration-Office of Criminal Investigations |
| AFMS | Justice Management Division, Asset Forfeiture Management Staff | TFF | Treasury Forfeiture Fund |
| ATF | Bureau of Alcohol, Tobacco, Firearms and Explosives | Treasury | Department of the Treasury |
| DCIS | Department of Defense-Defense Criminal Investigative Service | Treasury Program | Treasury Asset Forfeiture Program |
| DEA | Drug Enforcement Administration | USAO | U.S. Attorney's Office |
| Department | Department of Justice | USDA-OIG | Department of Agriculture-Office of Inspector General |
| Department Program | Department Asset Forfeiture Program | USMS | U.S. Marshals Service |
| EOUSA | Executive Office for U.S. Attorneys | USPIS | United States Postal Inspection Service |
| FBI | Federal Bureau of Investigation | | |

## B.    Department of the Treasury Asset Forfeiture Program

| Agency/ Component | Property Custodian | Seizure Authority | Statutory Jurisdiction |
|---|---|---|---|
| TEOAF | N/A | N/A | 31 U.S.C. § 9705 |
| IRS-CI | Treasury contractor | Treasury Directive 15-42 | 18 U.S.C. §§ 981–82, 1956–57; 31 U.S.C. §§ 5317, 5324 |
| USCG | N/A[1] | 8 U.S.C. § 1324; 14 U.S.C. § 89; 16 U.S.C. §§ 1861, 3374; 18 U.S.C. §§ 981–82, 1028, 1594; 19 U.S.C. §§ 1581, 1590, 1594–95, 1595a, 1703; 46 U.S.C. §§ 70507, 70106, 70118; 50 U.S.C. §§ 191–92 | 14 U.S.C. §§ 89, 141, 143 |
| ICE | Treasury contractor | 8 U.S.C. §§ 1324, 1324(b), 1324a; 18 U.S.C. §§ 545, 981–82, 1028, 1594; 19 U.S.C. §§ 1581, 1590, 1594–95, 1595a, 1703; 22 U.S.C. § 401; 31 U.S.C. §§ 5317, 5332; 50 U.S.C. § 1701, et. seq.[2] | Tariff Act of 1789, as amended; Immigration & Nationality Act (1952), as amended; 18 U.S.C. §§ 981–82; Title 21 MOU (1994);[3] CAFRA (2000); USA PATRIOT Act (2001); Homeland Security Act (2002); PATRIOT Act Reauthorization Act (2006) |
| CBP | Treasury contractor | 8 U.S.C. §§ 1324, 1324(b), 1324a; 18 U.S.C. §§ 545, 981–82, 1028, 1594; 19 U.S.C. §§ 1581, 1590, 1594–95, 1595a, 1703; 22 U.S.C. § 401; 31 U.S.C. §§ 5317, 5332; 50 U.S.C. § 1701, et. seq.[2] | Tariff Act of 1789, as amended; Immigration & Nationality Act (1952), as amended; 18 U.S.C. §§ 981–82; Title 21 MOU (1994);[3] CAFRA (2000); USA PATRIOT Act (2001); Homeland Security Act (2002); PATRIOT Act Reauthorization Act (2006) |
| USSS | Treasury contractor | 18 U.S.C. §§ 981–82 | 18 U.S.C. § 3056 |

**Notes**

[1] USCG normally turns items seized over to other agencies, i.e., ICE, DEA, FBI, USMS. As such, those agencies would dictate the property custodian.

[2] The seizure authority for both ICE and CBP is extremely lengthy. Statutory authorities include administrative, criminal, and civil seizure and forfeiture statutes as well as (some limited) abilities found in Titles 8, 12, 13, 15, 18, 21, 22, 26, 28, 31, 33, 39, 42, 46 Appendix, 49, 50, and Appendix.

[3] Title 21 MOU (1994) remains in effect and negotiations are underway to update the MOU. The jurisdictional authority for ICE/CBP Title 21 use includes international, border nexus, and the functional equivalent of the border. It excludes domestic enforcement and administrative forfeiture activities.

| | | | |
|---|---|---|---|
| AFF | Assets Forfeiture Fund | TEOAF | Treasury Executive Office for Asset Forfeiture |
| CAFRA | Civil Asset Forfeiture Reform Act | TFF | Treasury Forfeiture Fund |
| CBP | U.S. Customs and Border Protection | Treasury | Department of the Treasury |
| DEA | Drug Enforcement Administration | Treasury Program | Treasury Asset Forfeiture Program |
| Department | Department of Justice | USAO | U.S. Attorney's Office |
| FBI | Federal Bureau of Investigation | USCG | U.S. Coast Guard |
| ICE | Immigrations and Customs Enforcement | USMS | U.S. Marshals Office |
| IRS-CI | Internal Revenue Service-Criminal Investigations | USSS | U.S. Secret Service |
| MOU | Memorandum of Understanding | | |

# Chapter 1:
# Pre-Seizure/Restraint Planning

## I.    Guidelines for Pre-seizure/Restraint Planning

### A. Background

The Department of Justice (Department) Asset Forfeiture Program (Program) encompasses the seizure and forfeiture of assets that represent the proceeds of, or were used to facilitate federal crimes. The Program has four primary goals:

(1)    Punish and deter criminal activity by depriving criminals of property used in or acquired through legal activities.

(2)    Promote and enhance cooperation among federal, state, local, tribal, and foreign law enforcement agencies.

(3)    Recover assets that may be used to compensate victims when authorized under federal law.

(4)    Ensure the Program is administered professionally, lawfully, and in a manner consistent with sound public policy.

These goals are accomplished by depriving criminals of the proceeds of crime and other assets used to perpetuate criminal activity against our society.

It is essential that the Program be administered in a fiscally responsible manner to minimize the costs incurred by the Program while maximizing its ability to deter criminal activity. These guidelines are intended to encourage practices that will accomplish the mission of the Program, while minimizing or avoiding the possibility that the Government might inadvertently file forfeiture actions against properties that lead to net losses to the Assets Forfeiture Fund (AFF) and/or cause the Government to assume unnecessarily difficult or insurmountable problems in the management and disposition of such properties.[1] In particular, these guidelines are meant to ensure that the U.S. Marshals Service (USMS), its headquarters Asset Forfeiture Division (AFD), and other agencies with responsibility for seizing, restraining, managing, and disposing of assets are consulted before legal action is commenced against forfeitable property.[2] Pre-seizure planning affords these agencies an opportunity to conduct financial analyses to determine net equities of identified assets and to review in advance title/ownership issues that may delay or prevent the Government from disposing of an asset in a timely manner following forfeiture. In addition, pre-seizure planning affords the USMS sufficient time to plan for the care of the assets, assess the level of difficulty in handling the assets, and identify any special requirements needed to preserve the assets.

These guidelines direct each U.S. Attorney's Office (USAO) (or in administrative forfeitures, the agents in charge of each field office) to establish specific procedures for their respective office or district to ensure that critical financial and property management issues are identified and addressed before seizing/restraining real property, commercial enterprises, or other types of property that may pose problems of maintenance and/or disposition (e.g., animals and aircraft). These guidelines are

---

[1]  References to seizure in this chapter include criminal or civil restraint unless plainly not applicable or appropriate.

[2]  References to USMS include other departments responsible for managing restrained and seized assets (e.g., the Department of the Treasury (Treasury) and the Department of Homeland Security (DHS)).

intended to be sufficiently flexible to enable each USAO (or in administrative matters, the agent in charge of a field office) to establish and utilize local procedures that clearly define and assign local pre-seizure/restraint planning responsibilities.

The USMS[3] should be advised promptly prior to all seizures/restraints or the filing of civil forfeiture complaints or the return of indictments containing forfeiture allegations, to afford the USMS sufficient time to conduct ownership/title and valuation analysis, and to identify all resources necessary to effectuate a problem-free forfeiture.

## B. Scope of assets covered by guidelines

These guidelines cover all assets considered for federal forfeiture.[4] The degree and nature of pre-seizure planning will vary depending upon the circumstances and complexity of each case.

In order for the USMS to best assist the USAOs and seizing agencies in a thorough, efficient, and most effective manner, the USMS must be involved in the investigation as soon as the USAO or seizing agency identifies assets that likely will be seized for forfeiture.[5] Formal pre-seizure planning should occur well in advance of filing a civil forfeiture complaint or the return of an indictment containing forfeiture allegations. Specifically, formal pre-seizure planning requires detailed discussion of all potential issues affecting the seizure, custody, and disposal arrangements specific to each asset identified for forfeiture. This discussion may take place either in person, by telephone, or electronically, and may be ongoing depending on the nature of the asset and stage of the forfeiture proceeding. These pre-seizure planning discussions are mandatory for assets in any of the categories listed below:

(1)   residential/commercial real property and vacant land;[6]

(2)   businesses and other complex assets;

(3)   large quantities of assets involving potential inventory and storage or security problems (e.g., multiple vehicles, drug paraphernalia to be seized from multiple "headshops" on the same day, and the inventory of ongoing businesses such as jewelry stores);

(4)   assets that create difficult or unusual problems (e.g., animals, perishable items, chemicals and pharmaceuticals, leasehold agreements, intellectual property, and valuable art and antiques); and

(5)   assets located in foreign countries.

---

[3]   References to USMS include USMS District Office representatives. USMS District Asset Forfeiture Coordinators (DAFC), assigned Deputy United States Marshals (DUSM), and where applicable, Asset Forfeiture Financial Investigators (AFFI) will serve as liaisons for effective coordination and communication amongst the USMS, USAO, and investigative agencies while providing the necessary research and analysis on ownership/financial interests, situational variables pertinent to the forfeiture, and forfeiture recommendations. Where assigned, the AFFI remains available to the USAO and the investigative agencies to conduct in-depth financial analysis on assets identified for forfeiture and to report investigative findings needed to make informed decisions.

[4]   *See* Chap. 3 of this *Manual* for a full discussion of the policies and procedures involving assets seized by state and local law enforcement agencies.

[5]   Assets in cases where a Department agency is not the lead agency may be handled by the independent contractors employed by non-Department agencies rather than the USMS (e.g., Treasury or DHS), and those independent contractors should participate in pre-seizure planning as appropriate.

[6]   For the purposes of this *Manual*, commercial real property means residential real property comprised of five or more units and any other real property held for commercial purposes.

Depending upon the complexity and scope of the case, formal pre-seizure planning may continue after this initial discussion as required by either the USAO or the USMS. In many instances, the USMS will be required to procure the professional assistance of commercial vendors during the covert stage of an investigation so that services such as inventories, appraisals, transportation, and storage will coincide with a scheduled takedown date. The USMS will take appropriate measures to protect sensitive law enforcement information while consultation occurs with the involved components.

No information will be released to third-party contractors without prior USAO approval.[7] The information provided to such contractors can be limited to that necessary to procure required contractor services and facilities (e.g., towing services and storage space for 50 vehicles required in a particular location by a certain date). At all times, those engaged in the pre-seizure planning process must be sensitive to operational security and at no time undertake any action that might jeopardize operational security or compromise ongoing covert criminal investigations. In addition, real property lien and title searches must be done as covertly as possible, such as through use of property websites, if available.

Examples of the types of services the USMS may provide upon the request of a USAO or seizing agency (as well as the usual time it takes to obtain the requested service) are as follows:

| Lien search and appraisal information | 3–4 weeks from date of request to return information (additional time necessary for full, non-"drive-by" appraisals) | USMS offers these services to provide USAOs and investigative agencies information during the pre-indictment, pre-seizure planning stage of a criminal or civil investigation. |
|---|---|---|
| Animal care | 2–3 months prior to seizure | Proper arrangements must be made to ensure health and daily care of the animals. USAOs should contact USMS and Asset Forfeiture Management Staff (AFMS) for further guidance involving the care of animals seized and forfeited in animal fighting cases. |
| Logistics services | 3–6 months prior to takedown date for unusual or complex assets | Federal contracting regulations and the time necessary to coordinate with commercial vendors make it imperative to involve USMS' AFD as soon as such services are anticipated. |
| Business recommended action plan | 2–4 months or longer in more complex cases | Forfeiture decisions by USAOs and seizing agencies should be made only after USMS' AFD conducts a documentary review of the business assets identified for forfeiture and their financial status. |

## C.  General policy guidelines

Broad pre-seizure planning policy guidelines for all agencies participating in the Program are defined below. Variations to these guidelines may be made following discussions with the Money Laundering and Asset Recovery Section (MLARS).

---

[7]  *See* also Chap. 6, Sec. I of this *Manual*.

### C.1  Lead responsibility

The U.S. Attorney[8] (or in administrative forfeiture cases, the agent in charge of a field office) is responsible for ensuring that proper and timely pre-seizure planning occurs in asset forfeiture cases within each federal judicial district. All pre-seizure planning meetings must include, at a minimum, as applicable, the Assistant U.S. Attorney (AUSA) or investigative agent in charge of the forfeiture matter (and, if applicable, the AUSA in charge of the related criminal matter), investigative agents, and the appropriate USMS representative (which should include a representative from the district where the property is to be seized and/or managed if different from the district where the action is to be filed). A federal regulatory agency representative may also attend in forfeiture cases involving federal regulatory matters, as appropriate.

As a general rule, the lead agency will process all the assets. The lead agency is the agency that initiates the investigation. Another agency may be designated a lead agency if provided for in a task force agreement or memorandum of understanding (MOU). Ordinarily, assets must be processed by the lead agency only and shall not be divided among multiple agencies. For instance, a cash seizure of $800,000 may not be divided into two $400,000 seizures to be separately credited to two agencies. Or, a seizure of two vehicles may not be divided into two seizures of one vehicle each to be credited to two different agencies. Although exceptions may be made in extraordinary circumstances to permit individual seizures to be allocated to different agencies, no such allocation may be made without the express consent of the lead prosecuting office.

In asset forfeiture cases involving more than one federal judicial district, the USAO instituting the forfeiture action shall have primary responsibility, in coordination with the lead investigative agency, to ensure that all Program participants are notified and that proper and timely pre-seizure planning occurs in all districts in which assets will be seized.

### C.2  Pre-seizure planning overview

The purpose of pre-seizure planning is to ensure the various components of the Department work together as a team, ensuring that asset forfeiture is used as an efficient and cost-effective law enforcement tool consistent with the public interest. To that end, pre-seizure planning provides the Government with the opportunity to make informed decisions on matters regarding the financial impact of seizing/restraining, forfeiting, and managing assets, and on all matters affecting the Government's ability to efficiently dispose of assets following forfeiture. Specifically, pre-seizure planning consists of anticipating issues and making fully informed decisions concerning what property should be seized or restrained, how and when it should be seized or restrained, and, most important, whether the property should be forfeited at all. Pre-seizure discussions should answer at least the following questions, depending on asset type and circumstance:

(1) **What is being seized, who owns it, and what are the liabilities against it?** Determine the full scope of the seizure to the extent possible. For example, if a house is being seized, are the contents also to be seized? If a business is being seized, are the buildings in which it operates, the property upon which it is located, the inventory of the business, and the operating or other bank accounts, accounts receivable, accounts payable, etc., also to be seized? All ownership interests in each asset must be identified to the extent possible as well as existing/potential liabilities involving the asset.

---

[8]  Unless otherwise noted, references to the "U.S. Attorney" in this *Manual* include other authorizing officials responsible for oversight of Criminal Division trial attorneys or Department components.

(2) **Should the asset be seized or even identified for forfeiture?** If the asset has a negative or marginal net equity at the time of seizure, should it be seized and forfeited? Over time, what is the likelihood that the asset will depreciate to a negative or marginal value? What law enforcement benefits are to be realized from seizure and forfeiture? Is a restraining or protective order an adequate alternative to seizure given the circumstances? Can any anticipated losses be avoided or mitigated through careful planning on the part of the participants? Will custody, forfeiture, and/or disposal of the asset impose unduly significant demands on USMS or USAO resources and/or require a considerable infusion of funds from the AFF?

(3) **How and when is the asset going to be seized/forfeited?** Determine whether immediate seizure is necessary or if restraint of the asset is sufficient to preserve and protect the Government's interest. The type and content of the seizing instrument and authority for both the investigative agency and the USMS to enter or cross private property must be identified and procured in advance of seizure or restraint to ensure that each agency has the necessary information and legal authority to effectuate its seizure and post-seizure responsibilities.

(4) **What management and disposition problems are anticipated, and how will they be resolved?** Any expected logistical issues involving the maintenance, management, or disposition of the asset should be discussed and resolved as early as possible.

(5) **If negative net equity, management, and disposition problems are identified, what are the alternatives to forfeiture?** That is, is it possible to instead release the property to a lienholder, allow tax foreclosure and identify any proceeds thereof, turn to state or local forfeiture action, etc.?

(6) **Is any negative publicity anticipated?** If publicity or public relations concerns are anticipated, appropriate public affairs personnel should be advised and consulted. Consider preparing a press release announcing the basis and purpose of the seizure, restraint, and forfeiture.

## D. Pre-seizure planning questionnaires and documentation

### D.1 Asset-specific net equity thresholds

These guidelines set minimum net equity levels that generally must be met, preferably before property is seized and certainly before federal forfeiture actions are instituted. The net equity values are intended to decrease the number of federal seizures, thereby enhancing case quality and expediting processing of the cases that are initiated. The thresholds are also intended to encourage state and local law enforcement agencies to use state forfeiture laws. In general, the minimum net equity requirements are:

(1) **Residential/Commercial real property and vacant land**—minimum net equity must be at least $30,000 or 20 percent of the appraised value, whichever amount is greater. No property with a net equity less than $30,000 should be identified for forfeiture, although individual districts may set higher thresholds to account for local real estate markets.[9] *See also* Chapter 4, Section I.B.2 of this *Manual*.

---

[9] As a general rule, the Department does not seize contaminated real properties. *See* Chap. 4, Sec. I.E of this *Manual*.

(2) **Vehicles**—minimum net equity must be at least $5,000 (based on National Automobile Dealers Association "Trade-In Value"). The value of multiple vehicles seized at the same time may *not* be aggregated for purposes of meeting the minimum net equity.[10]

(3) **Cash**—minimum amount must be at least $5,000, unless the person from whom the cash was seized either was, or is, being criminally prosecuted by state or federal authorities[11] for criminal activities related to the property, in which case the amount must be at least $1,000.

(4) **Aircraft**—minimum net equity must be at least $30,000. Note that failure to obtain the log books for the aircraft will reduce the aircraft's value significantly.

(5) **Vessels**—minimum net equity must be at least $15,000.

(6) **All other personal property**—minimum net equity must be at least $2,000 in the aggregate.

(7) **Businesses**—*see* Section D.4 below.

Exceptions from the minimum net equity requirements should not be made for any individual item if it has a value of less than $1,000. Such exceptions can be made if practical considerations support the seizure (e.g., 20 items of jewelry, each valued at $500, might be seized, as the total value of the items is $10,000 and the cost of storing 20 small items of jewelry is not excessive).

The U.S. Attorneys, in consultation with local federal law enforcement agencies, may institute higher district-wide thresholds for judicial forfeiture cases as law enforcement or management needs require. Similarly, a federal law enforcement agency may institute higher thresholds for administrative forfeiture cases. Written notice of any higher thresholds shall be provided to the Chief of MLARS, the USMS local office, and the special agents-in-charge of the federal law enforcement agencies in the affected judicial district. Any threshold higher than those described above must not be the basis for failing to assist in seized property in the local district when requested to do so by another district with lower monetary thresholds if the requesting district intends to file the judicial action.

It is understood that in some circumstances an overriding law enforcement interest may require the seizure/forfeiture of an asset that does not meet the criteria described above. Minimum value and net equity thresholds do not apply to firearms.[12] In individual cases, these thresholds may be waived when forfeiture of a particular asset—e.g., a crack house, a conveyance with after-market hidden compartments, a computer or internet domain name involved in a major fraud scheme, equipment connected to child exploitation and pornography, human trafficking or terrorism, or a vehicle used in alien smuggling seized at an international border—will serve a compelling law enforcement interest. The fact that the owner or person in possession of the property has been arrested or will be criminally prosecuted can be an appropriate basis for a waiver. Any downward variation from the above thresholds must be approved in writing by a supervisory-level official at the USAO (for judicial forfeitures) or agency (for administrative forfeitures) and an explanation of the reason for the waiver must be noted in the case file.

---

[10] This restriction does not apply in the case of seizures by Homeland Security Investigations (HSI) of vehicles used in the smuggling of aliens or in the case of vehicles modified or customized to facilitate illegal activity.

[11] Written communication from state or federal authorities of the intent to seek criminal prosecution in the future is also appropriate to trigger the $1,000 threshold.

[12] *See* Chap. 5, Sec. IV of this *Manual*.

If the restraint, seizure, and/or forfeiture of real property could create a net loss to the AFF for that property, further consultation between MLARS, AFMS, and the participating agencies (USAO, seizing agency, USMS) is required. *See* Section I.D.3.b.1 below; *see also* Chapter 4, Section I.B.2 of this *Manual*. If the restraint, seizure, and/or forfeiture of an ongoing business could create a net loss to the AFF for that business, prior approval from MLARS, in coordination with AFMS, is required. *See also* Section I.D.4 below.

### D.2   Pre-seizure planning questionnaires

The USMS' AFD has compiled a number of pre-seizure planning documents to assist stakeholders in making informed decisions when identifying assets for forfeiture. Obtaining the information required to complete these various documents will identify the issues that must be addressed during the pre-seizure planning phase of a case, so as to reduce the chance forfeiture of the asset may cause the AFF to incur a loss and/or to preserve the Government's ability to dispose of the asset in an efficient and cost-effective manner following forfeiture. Through consultation with the USMS, the costs of storage and maintenance of particular assets as well as the potential liabilities involving the assets may be assessed well in advance of forfeiture. Individual offices may supplement these forms as they see fit. However, the basic information called for in these forms is required for adequate planning.

### D.3   Net equity worksheet

When certain assets, especially residential/commercial and vacant real properties, are identifed for forfeiture, the potential net equity must be calculated as part of pre-seizure planning. In cases where information relating to titles and liens cannot be acquired without compromising the investigation, the financial analysis may be completed post-seizure.[13] A written financial analysis facilitates, documents, and informs pre-seizure planning decisions. The USMS net equity worksheets provide step-by-step formulas for computing net equity—the estimated total amount of money the Government expectsto recoup from the asset once the aggregate of all liens, mortgages, and management and disposal costs have been subtracted from the expected proceeds of the sale of the asset—and documents the results of this analysis. The USAO or the seizing agency is strongly encouraged to adopt the USMS net equity forms as they provide the most updated estimates for the management and disposal of properties based on current contract prices. These forms may be supplemented as conditions dictate.

### D.3.a   Ownership and encumbrances

The investigative agency is responsible for ensuring that current and accurate information on the ownership of, and any encumbrances against, personal property identified for forfeiture is compiled and made available to the USMS and the USAO prior to seizure whenever practicable. When this is not practicable prior to the seizure, such information must be compiled and made available as soon as possible following the seizure. In instances where real property and businesses are identified for seizure, the USMS will have primary responsibility for conducting a title search prior to seizure unless otherwise agreed in individual cases. The USMS cannot conduct a complete ownership analysis for a business unless the USAO obtains, by subpoena or otherwise, appropriate ownership documents (e.g., stock record books, stock certificates, partnership agreements, etc.).

---

[13] *See* Sec. I.D.3.b.2 below.

### D.3.b    Financial analysis: avoiding liability seizures

#### (1) Pre-seizure

In deciding how to proceed with the seizure and forfeiture of potential liability seizures during the pre-seizure phase in judicial forfeitures, the USAO must, in consultation with the seizing agency and the USMS (and, in administrative forfeitures, the agent in charge of the field office responsible for the administrative forfeiture), evaluate and consider the forfeitable net equity and the law enforcement purposes to be served in light of the potential liability issues and estimated costs of post-seizure management and disposition.

If the financial analysis indicates that the aggregate of all liens (including judgment liens), mortgages, and management and disposal costs approaches or exceeds the anticipated proceeds from the sale of the property, the USAO, or in administrative forfeiture actions the seizing agency, must either: (1) determine not to go forward with the seizure;[14] or (2) acknowledge the potential financial loss and document the circumstances that warrant the seizure and institution of the forfeiture action.

For real property, the USAO must: (1) notify MLARS and AFMS; and (2) obtain approval by a supervisory-level official at the USAO in writing with an explanation of the reason noted in the case file.[15]

#### (2) Post-seizure

In instances where pre-seizure planning is not possible and/or is not completed prior to seizure, the seizing agency may be responsible for custody and maintenance of the property until the USMS has had the opportunity to conduct an analysis of the assets. The USMS will complete a pre-seizure planning questionnaire as soon as practicable given the nature of the information required. Upon completion and reporting of the USMS pre-seizure analysis, a pre-seizure meeting should take place to address all issues identified. If the financial assessment indicates that the aggregate of all liens, mortgages, and management and disposal costs approaches or exceeds the anticipated proceeds from the sale of the property, the seizing agency in administrative forfeiture proceedings must either: (1) take immediate and expeditious action to terminate forfeiture of the asset (if any forfeiture proceeding has been commenced); or (2) acknowledge the potential loss and document the circumstances that warrant continued pursuit of the forfeiture notwithstanding the financial assessment. In judicial forfeiture cases, the USAO must either: (1) take action to dismiss the asset from the forfeiture action and to void any expedited settlement agreements involving the asset (if any have been entered into); or (2) acknowledge the potential loss and document the circumstances that warrant the continuation of the forfeiture action notwithstanding the loss.

---

[14]  The USAO may consider alternatives to seizure such as a *lis pendens* or restraint of certain assets.

[15]  *See* Chap. 4, Sec. I.B.2 of this *Manual*.

### D.4  Seizure/restraint of ongoing businesses and/or assets

The complexities of seizing an ongoing business, combined with the potential for substantial losses and liabilities resulting from a forfeiture of the business, mandate that before seizing, restraining, or otherwise seeking forfeiture of the business, the USAO notify and closely consult with MLARS.[16]

If the restraint, seizure, and/or forfeiture of a business could create a net loss to the AFF for that business, prior approval from AFMS, in coordination with MLARS, is required. Further, prior approval from the U.S. Attorney is required before seizing or filing a civil forfeiture complaint against an ongoing business based on a facilitation theory.[17]

The information necessary to make an informed decision about whether an operating business should be forfeited is typically not collected by the investigative agency as part of the underlying criminal investigation. Therefore, in almost all cases, MLARS and the USMS recommend that the USAO file a restraining order or protective order that allows normal operations to continue under the review and monitoring of the USMS, and concurrently allows the USMS on-site access to the business to inspect the premises, review financial records, and interview employees.[18] This business review is a time-consuming process that may take 30 days or longer to complete depending on the availability of records and willingness of the business principals and employees to cooperate in the process. Upon review and analysis of the information obtained through the restraining/protective order, the USMS will make an informed recommendation to the USAO as to whether seizure and forfeiture of the business is advisable. The USAO should include the USMS' recommendation in its consultation with MLARS.

Although there are many complex issues to consider in evaluating an operating business, the Government must first determine what it intends to restrain, and ultimately seize and forfeit. This determination requires analysis of the business entity itself (e.g., corporation, limited liability company, partnership, sole-proprietorship), the ownership structure of the business (e.g., the existence of other owners or partners), and whether the entity itself and/or other owners have been or will be indicted.

The USAO should be mindful of the intricacies in identifying an ownership interest in the business (e.g., shares of stock, membership interest, partnership shares), the financial and/or physical assets of the business (e.g., the bank accounts, accounts receivable, inventory, equipment, licenses),[19] or both. The wording of the restraining order and subsequent forfeiture order might impact the administration, management, and sale of the business. For example, the seizure of an ownership interest may have legal (e.g., business law, labor law, securities law, tax law) and regulatory implications that need to

---

[16]  *See Justice Manual* (JM) § 9-111.124 ("Due to the complexities of seizing an ongoing business and the potential for substantial losses from such a seizure, a United States Attorney's Office must consult with the [Money Laundering and Asset Recovery Section] prior to initiating a forfeiture action against, or seeking the seizure of, or moving to restrain an ongoing business."). *See also* JM § 9-105.330 (requiring consultation with MLARS before the USAO seeks to forfeit, seize, or restrain a business based on its involvement in money laundering). A copy of the *Justice Manual* is available at: www.justice.gov/jm/justice-manual.

[17]  *See* Chap. 5, Sec. III.E.1.b of this *Manual*.

[18]  It is generally desirable to utilize the least intrusive means to gain control over the business during the pendency of litigation. *See United States v. All Assets Statewide Autoparts*, 971 F.2d 896 (2d Cir. 1992) (hearing and consideration of less drastic alternatives required).

[19]  In cases where the business owns real property, a *lis pendens* should be placed on the real property in conjunction with the restraining order.

be identified in advance and fully considered. Alternatively, the seizure of all assets of a business might very well cause the ongoing business to fail, even if the business itself is not seized (e.g., a business that cannot use its operating bank account continue to operate, meet the next payroll for its employees, or pay independent entities that provide supplies, materials, or essential services to the business).

Protective orders and restraining orders are powerful tools because they can be drafted to authorize the USMS to monitor all financial and operational activities of the business, take signatory control over the business bank accounts, and approve certain business transactions. The authority granted by a protective order or restraining order should authorize the USMS to utilize internal resources to monitor and oversee operations of the business for a period of time so as to best formulate a recommendation on whether seizure and forfeiture of the business is advisable. In rare cases, a court-appointed trustee or monitor may be required.[20] The authority granted to the USMS under a restraining/protective order must not include—in fact, must expressly exclude—taking over the management responsibilities for operation of the business, at least during the assessment period; this must be considered an action of last resort and should normally be taken only after the USMS has completed a thorough business review pursuant to the protective order or restraining order and determined that the business should be forfeited and that there is no other option regarding management responsibilities of the business.

A pre-seizure review of a business will help a USAO answer the following questions:

- Who owns the building in which the business operates?

- Who owns the land?

- What is the cash flow of the business? What is the cash flow if income from the illegal activity ceases?

- What are the monetary values of accounts receivable and payable?

- What other valuable assets does the business own?

- Are there significant liabilities?

- Are there environmental concerns?

- Is the business highly regulated? Is the business currently in compliance with its regulatory obligations?

- Will the business require capital contributions to remain viable?

- What law enforcement or regulatory methods or alternatives to forfeiture may be effective (e.g., revocation of a license essential to operation of the business by state/local authorities)?

---

[20] *See* Chap. 9 of this *Manual*.

- Is the business being seized as facilitating property or as proceeds of crime? Once the source of illegal funding and the illicit customers are gone, the business may no longer be profitable. If the business is facilitating illegal activity and also engaging in legal but unseemly activity, is the Government in a position to prevent or monitor the activity (e.g., Government operation of a strip club that attracts illegal drugs and prostitution)? The public may have an expectation that if the Government is operating the business, it will be able to prevent all illegal activity.[21]

- What would it cost to hire either a business monitor or trustee and necessary staff?

- Can the business be disposed of efficiently and cost-effectively upon forfeiture, and how long will the forfeiture and post-forfeiture disposition process take?

A restraining order or protective order over a business should be served on the business itself, the owners, key employees (e.g., executive officers, accounting department), banking institutions holding business's accounts, and any other person or entity that has an interest in the ongoing operations of the business. Ideally, this service should occur simultaneously and in conjunction with service of any arrest or search/seizure warrants served by the investigative agency as part of the criminal investigation against the business, its principals, or any target conspiring or aiding/abetting the criminal activity supporting forfeiture of the business.

The USAO should be mindful that a criminal investigation that requires an in-depth analysis of business books and records will most likely require the investigative agency to seize records that are essential to both (1) the continued operation of the business (if anticipated); and (2) the initiation, conduct, and completion of the business review by the USMS. The USAO, investigative agency, and USMS should formulate a plan of action in advance of any seizure/restraint of the ongoing business outlining requirements and responsibilities of, and objectives to be achieved by, each office or agency.

During the pendency of such a restraining/protective order, the existing management personnel of the business will generally remain in place unless a compelling reason warrants otherwise and the USMS is authorized under the restraining order to remove and replace such personnel. In some instances, the business may be forced to shut down temporarily (or even permanently) once key defendants are arrested or indicted. In such instances, and particularly in dealing with a service-oriented industry as to which a large portion of the business's value consists of goodwill generated by the defendant(s), it may be advisable to limit forfeiture of the assets of the separable-but-forfeitable assets of the business only. In undertaking to do so, however, if the Government fails to achieve forfeiture and the business asset must be returned to the owner, it must be considered that the Government may be subject to substantial liability and adverse legal ramifications for depriving the business of the asset and for any failure to return the asset to the business owner in substantially the same condition in which it was seized. The practice of monitoring an operating business pursuant to a restraining order should help to mitigate this risk.

### D.5  Seizure of proceeds from violations involving a state sponsor of terrorism

As discussed in Chapter 10, Section III.D.6 of this *Manual*, the Consolidated Appropriations Act of 2016,[22] established new requirements for disposition of the proceeds of forfeitures, fines, and penalties arising from violations of the International Emergency Economic Powers Act (IEEPA), or

---

[21]  *See* Chap. 9, Sec. III of this *Manual* for a discussion of security measures.

[22]  Pub. L. 114-113, Dec. 18, 2015, 129 Stat 2242.

the Trading with the Enemy Act (TWEA), or related criminal conspiracies, schemes, or other federal offenses, that involve state sponsors of terrorism. All proceeds of these criminal forfeitures, and half of the proceeds of these civil forfeitures, are directed to the United States Victims of State Sponsored Terrorism Fund (USVSST Fund).[23] Please consult MLARS as early as possible in any case that involves a state sponsor of terrorism and may require deposits to the USVSST Fund.

### E.  Quick release

#### E.1  Before filing of any claim

Certain property may be released following federal seizure for forfeiture but prior to the filing of any claim pursuant to 28 C.F.R. § 8.7 ("quick release"). This may include property that does not meet asset-specific net equity thresholds (*see* Section I.D.1 above), property the seizing agency determines not to forfeit after post-seizure analysis (*see* Sections I.D.3 and I.D.4 above), property belonging to an innocent owner having an immediate right to possession, or other property the release of which serves to promote the best interests of justice or the Government (28 C.F.R. § 8.7(b)). While such issues ideally should be resolved in pre-seizure planning (*see* Section I.C.2 above), agencies may use post-seizure quick release whenever warranted.

When a seizing agency elects to use quick release, determining the appropriate party to whom the property should be released will depend on the nature of the seized property and the particular circumstances. If the property to be released is such that there is no registered owner, e.g., currency, it usually should be returned to the person from whom it was seized.[24] If there is a registered owner of the property, such as an automobile, the property should usually be returned to that party, regardless of whether there is a lien or other third party interest with ownership rights to the property. However, if a third party, such as a lienholder, has asserted its contractual rights in a judicial proceeding, obtained a final judgment, and provided satisfactory proof of the judgment and its ownership interest and right to immediate possession of the property, the seizing agency may return the property to that third party instead of the registered owner. Similarly, if a state court authorizes a state or local law enforcement agency to take possession of the seized property, the seizing agency may release the property in accordance with that court order. If the seizing agency is aware of a third party with an ownership interest in the property, regardless of whether it has asserted any contractual rights to immediate possession, it may notify the third party of the release in advance of releasing the asset to the registered owner.

#### E.2  Declination

There may be instances in which a prosecutor declines to proceed with a judicial forfeiture after a claim has been filed in an administrative forfeiture proceeding. Once that decision is made and the federal government no longer has a legal basis for holding the seized property (i.e., it is not evidence of a violation of law), the agency that seized the property becomes responsible for returning it to e appropriate party and/or initiating abandonment proceedings pursuant to 28 C.F.R. § 8.10(e). In determining the appropriate party to whom to return the seized property, the seizing agency should follow the same guidance for the return of property pursuant to quick release, including providing

---

[23] For more information about the USVSST Fund, visit: www.justice.gov/criminal-mlars/usvsst.

[24] In most cases, however, release of funds will be subject to the Treasury Offset Program (TOP). *See also* Chap. 11, Sec. I.B.9 of this *Manual*.

prompt notification to the appropriate party. A seizing agency may establish additional quick release and post-declination return policies and procedures unique to its agency, provided that they are consistent with the guidance set forth above.

## II.   Pre-seizure Judicial Review

### A.  Pre-seizure judicial authorization of property seizures

Pre-seizure judicial authorization of property seizures serves multiple purposes, including the following:

(1)   allowing neutral and detached judicial officers to review the basis for seizures before they occur;

(2)   enhancing protection for Department officers against potential civil suits claiming wrongful seizures; and

(3)   reducing the potential that the public will perceive property seizures to be arbitrary and capricious.

### B.  Pre-seizure judicial review favored for seizure of personal property

Whenever practicable, Department officials should obtain *ex parte* judicial approval prior to seizing personal property.[25]

---

[25]  This policy does not apply in circumstances where the owner of the property has consented to forfeiture of the property (e.g., if the owner has agreed to the forfeiture in connection with a plea agreement).

# Chapter 2:
# Seizure/Restraint

## I.   Overview

The seizure and restraint of assets is a critical step in any civil or criminal investigation. *Seizure* involves the physical restraint of an asset or its transfer from the owner or possessor to the custody or control of the government, primarily through a law enforcement agency. Seizure generally occurs: (1) incident to an arrest, (2) pursuant to a search warrant, or (3) pursuant to a civil or criminal seizure warrant for specific items subject to forfeiture. *Forfeiture* is the legal process by which individuals lose ownership of an asset because that asset was used to facilitate illicit activity, or received or derived from illicit activity. The vesting of title of the asset with the government follows a civil, criminal, or administrative forfeiture proceeding.

Law enforcement generally must obtain authority for seizures from a warrant issued by a federal magistrate and based upon a sworn affidavit that describes in detail the item for seizure and the evidence showing its connection to a crime. Federal Rule of Criminal Procedure 41 governs the authorization of seizure warrants. The basis for seizing an asset falls into one of four categories: (1) evidence of an offense; (2) contraband or items illegally possessed; (3) fruits of crime (profits and illegally obtained items); and/or (4) instrumentalities (property used in an illegal act).

Under certain circumstances, however, warrantless seizures may be necessary and appropriate. A warrantless seizure is valid if the seizing agency had probable cause at the time of seizure to believe that the property is subject to forfeiture and an exception to the warrant requirement applies. *See* 18 U.S.C. § 981(b)(2)(B). When a warrantless seizure is contemplated, it is important to be able to articulate the circumstances that justify the warrantless seizure. The potential for a warrantless seizure should be discussed with a government attorney in advance.

Investigators should begin pre-seizure planning once an investigation has identified assets for seizure or forfeiture. Pre-seizure planning helps agencies avoid potentially costly management or safekeeping issues and incomplete investigations that result in a dismissal of charges or the return of the asset prematurely to a criminal. The U.S. Marshals Service (USMS)—the primary federal agency responsible for seized asset management for the Department of Justice (Department)—has developed pre-seizure planning methodology and used it extensively. Pre-seizure planning should include a consideration of whether to seize the asset at all. In some cases, no compelling reason exists. Other issues officers must consider prior to a seizure include the warrant execution (and safety issues), storage and management concerns, and assurance that the property's value will remain stable or will not drop significantly. Investigators must address additional considerations, like ownership interests and potential claimants to the item. Officers also must identify the item's reasonable worth. The financial significance and equity of an asset—particularly real estate, vehicles, and aircraft—are important determinations. Investigators can enlist the help of experts, such as appraisers and valuation professionals. The value of cash is identified easily, unlike that of other items, such as houses.

## II.   General Procedures for Seizing Property[1]

### A.  Notification by seizing agency

Most U.S. Attorney's Offices (USAOs) can access reports of seizures by agencies participating in the Asset Forfeiture Program in their districts from the Consolidated Asset Tracking System (CATS) database. All non-Department agencies that do not report seizures in CATS must forward copies of seizure forms or a report of seizures to the pertinent USAO within 25 days of seizure unless an individual USAO chooses to not receive seizure notices.

### B.  Forms of process to be used

#### B.1  Warrant of arrest in rem

In most civil judicial cases, the court exercises its in rem jurisdiction over property by issuing warrants of arrest in rem, which are then executed by the seizing agency. The procedure for issuing an arrest warrant in rem is set forth in Rule G(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Under the Supplemental Rules, no arrest warrant is needed if the property is already subject to a pre-trial restraining order.[2] Restraint and seizure of real property is addressed in Chapter 4 of this *Manual*. In all other cases, however, the Government must obtain an arrest warrant in rem and serve it on the property, generally by actual or constructive seizure of the property, to ensure that the court obtains in rem jurisdiction.

The procedure for issuing the warrant differs depending on whether the property is already in the Government's custody at the time the complaint is filed. If the property is already in the Government's custody, the warrant may be issued by the clerk of the court without any finding of probable cause by a judge or magistrate judge, but if the effect of the warrant will be to take the property out of the hands of a non-Government entity, the warrant must be issued by a court upon a finding of probable cause. *See* Supplemental Rule G(3)(b). Once the warrant is issued, it must be delivered "to a person or organization authorized to execute it." Supplemental Rule G(3)(C). *See* Section III.A below.

#### B.2  Seizure warrant

A second form of process for seizing forfeitable property is the warrant of seizure authorized by 21 U.S.C. § 881(b) and 18 U.S.C. § 981(b)(2). This form of process requires a judicial determination of probable cause. While a seizure warrant may be issued pursuant to either the applicable criminal or civil forfeiture statute, it may be prudent to obtain a warrant under both the civil *and* criminal statute. Doing so eliminates the need to obtain any additional order authorizing the Government to hold the property if a criminal forfeiture is pursued where only a civil warrant has been obtained. *See* 18 U.S.C. § 983(a)(3).

---

[1] *See* Chap. 3 of this *Manual* for a full discussion of the policies and procedures involving assets seized by state and local law enforcement agencies.

[2] *See* Supplemental Rule G(3)(a)(iii).

### B.3  Seizure of real property

Real property is not normally physically seized by the Government prior to forfeiture.[3] The procedures for commencing a civil forfeiture action against real property are set forth in 18 U.S.C. § 985. *See* Chapter 4 of this *Manual* for the Department's policy on obtaining jurisdiction over real property.

### B.4  Seizure by state or local law enforcement

An adoptive forfeiture occurs when a state or local law enforcement agency seizes property and requests that a federal seizing agency adopt the seizure and proceed with federal forfeiture. *See* Chapter 3 of this *Manual* for a full discussion of the policies and procedures involving seizures by state and local law enforcement agencies.

## C.  Responsibility for execution of process

Generally, the USMS has primary responsibility for execution of warrants of arrest in rem, while the pertinent Department investigative agency has primary responsibility for execution of seizure warrants. It is recommended that the USMS and investigative agencies coordinate execution of process.

# III.  Seizures for Criminal Forfeiture

## A.  When is a criminal seizure warrant or restraining order required?[4]

Property subject to criminal forfeiture may be seized pursuant to a criminal seizure warrant issued under 21 U.S.C. § 853(f). The asset may already be seized by the Government because it was seized pursuant to a civil seizure warrant issued under 18 U.S.C. § 981(b), a warrant of arrest in rem under Supplemental Rule G(3)(b)(ii), a lawful warrantless seizure, or because it was seized as evidence in the underlying criminal investigation. If the property is already in the possession of the government the question that arises is whether it is proper for the Government to maintain possession of an asset subject to criminal forfeiture without obtaining a 21 U.S.C. § 853(f) seizure warrant in the following situations where the property was originally seized for some other purpose:

(1)  Where the initial seizure was pursuant to a civil seizure warrant or warrant of arrest in rem, and the U.S. Attorney elects to pursue criminal forfeiture after someone files a claim in the administrative forfeiture proceeding.

(2)  Where the initial seizure was without any warrant, but was based on probable cause to believe the property was subject to forfeiture when observed in plain view in a public place or pursuant to a lawful search.

(3)  Where the initial seizure was for evidence, but the evidentiary basis for the continued possession of the property has terminated.

---

[3]  For those limited situations involving seizures relating to real property, *see* Chap. 4, Sec. I.C of this *Manual*.

[4]  The question of whether a seizure warrant or restraining order is required does not arise where a combination civil/criminal seizure warrant is obtained pursuant to 21 U.S.C. § 853(f) and 18 U.S.C. § 983(b).

Property originally obtained by the state and handed over to the federal agency for criminal forfeiture is addressed in Chapter 3 of this *Manual*.

## B.  Summary

The Government is not required to secure property subject to criminal forfeiture during the pendency of the criminal case, but it is appropriate for the Government to restrain property prior to the entry of a preliminary order of forfeiture as long as it has a valid basis for holding the property. The criminal forfeiture action itself is a valid basis for maintaining possession of the property only if the Government has obtained a seizure warrant pursuant to 21 U.S.C. § 853(f) or a restraining order (mandating transfer of the property to Government control) pursuant to 21 U.S.C. § 853(e). Absent such authority, the Government may not continue to possess property subject to criminal forfeiture unless there is an independent basis for such possession.

A seizure warrant or warrant of arrest in rem issued in a parallel civil forfeiture case provides such independent basis as long as the civil action is pending. Similarly, an administrative forfeiture action is also an independent basis for maintaining custody of an asset. Likewise, property seized for evidence may remain in Government custody as long as the evidentiary basis remains. In such cases, the Government does not need to obtain a criminal seizure warrant or restraining order to maintain possession of the property. In the absence of an administrative or civil judicial forfeiture action, or if the civil forfeiture action ends or the evidentiary purpose for holding property terminates, then the Government must obtain either a criminal seizure warrant or a restraining order under § 853(f) or (e), respectively, to maintain custody of the property pending the outcome of the criminal case.

## C.  Discussion

It is not necessary for the Government to have the property subject to criminal forfeiture in its possession during the pendency of a criminal forfeiture proceeding. To the contrary, the criminal forfeiture statutes contemplate that the property may remain in the possession of the defendant— albeit pursuant to a pre-trial restraining order—until the court enters a preliminary order of forfeiture. *See* 21 U.S.C. § 853(g) ("Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all property ordered forfeited").

Often, however, the Government will have physical possession of the property subject to criminal forfeiture before any preliminary order of forfeiture is entered in the criminal case. Such possession may be the result of a seizure pursuant to a criminal seizure warrant issued under 21 U.S.C. § 853(f), civil seizure warrant issued pursuant to 18 U.S.C. § 981(b), a warrant of arrest in rem issued pursuant to Supplemental Rule G(3)(b)(ii), or a lawful warrantless seizure. It also could be the consequence of the seizure of the property as evidence of a crime, with or without a warrant. Where the Government obtained custody other than by a criminal seizure warrant, the question is whether its custody during the pendency of criminal forfeiture proceedings is proper absent the issuance of a criminal seizure warrant under 21 U.S.C. § 853(f) or a pre-trial restraining order under § 853(e).

Because the Government need not have possession of the property subject to forfeiture at all during the pendency of the criminal case, the Government need not obtain a criminal seizure warrant or restraining order pending trial so long as it has an independent basis for maintaining custody of the property. The following discussion focuses on three possible independent bases for maintaining physical possession of the property pending trial.

### C.1  Property seized pursuant to a civil seizure warrant or warrant of arrest in rem

So only as long as the civil forfeiture matter is pending, the seizure of property pursuant to a civil seizure warrant issued under 18 U.S.C. § 981(b) or warrant of arrest in rem under Supplemental Rule G(3)(b)(ii) provides a valid basis for the Government's physical possession of property pending the outcome of a criminal forfeiture proceeding. If someone files a claim in an administrative forfeiture proceeding, the Government has 90 days to:

(1)  commence a civil forfeiture action,

(4)  commence a criminal forfeiture action, or

(5)  return the property.

*See* 18 U.S.C. § 983(a)(3)(B). It is perfectly appropriate for the Government to file both a civil action and a criminal action within the 90-day period, or to file a civil action within such period and file a criminal action later. In such cases, the civil seizure warrant and arrest warrant in rem provide a valid basis for the Government's continued possession of the property.

However, § 983(a)(3)(C) provides that if "criminal forfeiture is the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute." In other words, if there are parallel civil judicial and criminal proceedings, the civil seizure warrant or the arrest warrant in rem will provide a sufficient basis for holding the property. However, if criminal forfeiture is the only judicial forfeiture action that is commenced and no administrative forfeiture action remains pending, the government must either obtain a criminal seizure warrant issued pursuant to 21 U.S.C. § 853(f), or an order issued pursuant to 21 U.S.C. § 853(e).[5]

The 90-day deadline provision in the Civil Asset Forfeiture Reform Act of 2000 (CAFRA),[6] of course, only applies to cases where the property was initially seized for the purpose of "non-judicial" (i.e., administrative) forfeiture. *See* 18 U.S.C. § 981(a)(1)(A). If the property was seized pursuant to a civil forfeiture seizure warrant under § 981(b) or a warrant of arrest in rem under Supplemental Rule G(3)(b)(ii), but it was not seized for the purpose of administrative forfeiture, the prescriptions found in 18 U.S.C. § 983(a)(3) regarding the 90-day deadline and the need to re-seize property already in Government possession do not apply. Nevertheless, even in such cases, if the Government proceeds only with a criminal forfeiture action, it may not lawfully maintain possession of the property pursuant to a civil seizure warrant alone, but must obtain either a criminal seizure warrant or a pre-trial restraining order.

### C.2  Property seized without a warrant

Under 18 U.S.C. § 981(b), property may be seized for civil or administrative forfeiture without a warrant if there is probable cause for the seizure and an exception to the warrant requirement applies.

---

[5]  One court has held that if property is already in Government custody, the proper procedure under 18 U.S.C. § 983(a)(3)(C) is not to issue a criminal seizure warrant under 21 U.S.C. § 853(f), but to issue an order under § 853(e). The order need not be a restraining order or an injunction, however. Rather, the court pointed out, 21 U.S.C. § 853(e) authorizes the court to issue any order that will "assure the availability of the property." *See In Re: 2000 White Mercedes ML320*, 220 F. Supp. 2d 1322, 1326 n.5 (M.D. Fla. 2001).

[6]  Pub. L. 106-185, § 10, Apr. 25, 2000, 114 Stat 202.

If those conditions are satisfied, the Government may maintain physical possession of the property pursuant to the § 981(b) seizure during the pendency of a criminal forfeiture case to the same extent as it could if the property had been seized with a warrant. That is, as long as the civil or administrative forfeiture case is ongoing, the continued possession may be based on the civil seizure. But if the civil case is terminated or not filed within the statutory deadline, the Government will have to maintain physical possession pursuant to a criminal seizure warrant or pre-trial restraining order.

### C.3  Property seized for evidence

The seizure of property for evidence in a criminal case provides an independent basis for the continued physical possession of property during the pendency of a criminal forfeiture proceeding as long as the evidentiary value of the property persists.[7] Thus, if property is seized for evidence, it may be named in a criminal forfeiture proceeding and held by the Government without the need to obtain a criminal seizure warrant or pre-trial restraining order. Once the property loses its evidentiary value, the Government must obtain a seizure warrant or restraining order to maintain custody of the property for the purpose of forfeiture.[8] The USMS does not store property held as evidence, even when it is subject to forfeiture. Such property is retained in the custody of the seizing agency until such time as it is no longer needed for evidence.

## IV.  Proper Use of Writs of Entry in Civil and Criminal Forfeiture cases

### A.  Overview

Writs of entry issued by the court and based upon a finding of probable cause may be used in both civil and criminal forfeiture cases by the Government in the following circumstances: (1) to enter onto the curtilage of private real property in order to inventory structures located thereon without entering those structures; (2) to enter onto private real property for the purpose of seizing personal property located thereon (such as an automobile) in plain view; and (3) to enter into the interior of a private structure subject to forfeiture to conduct an inventory limited to documenting the condition of the interior and inspecting for damage, and to conduct an appraisal. If a private structure is to be entered for the purpose of searching for and seizing (or inventorying) personal property located therein that is subject to forfeiture, it is recommended that a separate search warrant be obtained. Of course, warrantless seizures for forfeiture may be based on the automobile, plain view, exigent circumstances, and search incident exceptions to the Fourth Amendment.

### B.  Discussion

According to 18 U.S.C. § 985(b)(2), which addresses the civil forfeiture of real property, "the filing of a *lis pendens* and the execution of a writ of entry for the purpose of conducting an inspection

---

[7]  However, a warrantless seizure that is justified on the ground of exigent circumstances may not remain valid once the exigency has passed. *See United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015) ("the exigent circumstances exception only permits a seizure to continue for as long as reasonably necessary to secure a warrant"; invalidating under the Fourth Amendment the continued government custody of funds without a warrant two years after the funds were seized from bank accounts without a warrant on the grounds of exigent circumstances).

[8]  If a prosecutor declines to seek a criminal seizure warrant or a 21 U.S.C. § 853(e) order on the ground that this exception applies (i.e., on the ground that the property has evidentiary value but the seizing agency feels that the evidentiary value of the property is in doubt), the agency may request that the USAO provide the agency with a letter that it may use to protect itself from liability should someone later question whether there was a lawful basis for the agency's retention of the property.

and inventory of the property shall not be considered a seizure under this subsection." The term *writ of entry* appears nowhere else in CAFRA, nor in any other civil or criminal forfeiture statute. Section 985 provides no guidance of any kind as to the proper use and scope of a writ of entry. Answers to those questions must be gleaned from the scant case law discussing the scope of writs of entry in the context of Fourth Amendment searches and seizures.

As an initial matter, arguments can be made that the Government may seek and a district court has the authority to issue writs of entry in both civil and criminal forfeiture cases. Despite the phrase appearing only in 18 U.S.C. § 985, the use of a writ of entry is not restricted to the civil forfeiture of real property. A district court has the authority pursuant to 18 U.S.C. § 983(j)(1)[9] and 21 U.S.C. § 853(e)(1)[10] to take any action necessary to preserve the availability of property subject to forfeiture. Accordingly, the Government can make application for a writ of entry in any civil or criminal forfeiture case in order to preserve the availability of property subject to forfeiture, and the district court has the authority to issue such a writ for that purpose.

The limited pre-CAFRA case law potentially applicable to the proper use of a writ of entry is *United States v. Ladson*, 774 F.2d 436 (11th Cir. 1985) and *United States v. U.S. Currency in the amount of $324,225*, 726 F. Supp. 259 (W.D. Mo. 1989). The cases suggest that writs of entry based upon a finding of probable cause by the court may be used as a basis to enter, inspect, and search the interiors of structures subject to forfeiture. In *Ladson*, a civil forfeiture action was commenced against a house pursuant to 21 U.S.C. § 881(a)(6). At the time the action was commenced, the house was rented.

The Government requested and received from the district court an order entitled "seizure warrant/writ of entry," which authorized the seizure of the real property and directed the preparation of a "written inventory of the real estate and property thereon seized." Upon arriving at the home, the agent executing the seizure warrant/writ of entry, over the objection of the renters, entered the house and conducted a walk-through inventory of its contents. During the inventory, drugs were found. The renters were indicted and moved to suppress the drugs. The district court suppressed the evidence. The Eleventh Circuit affirmed. 774 F.2d at 438.

The court of appeals found that nothing in the seizure warrant/writ of entry authorized the agents to enter the house without permission. It permitted nothing more than a cursory examination of the lot. "The warrant authorized seizure of…*real estate* and ordered an inventory of the property *seized*. It would have been a simple matter to inventory the *seized* property—that is, the real estate and improvements on it—from outside the house." *Id.* at 439. Since the contents of the house were not subject to seizure, and the seizure warrant/writ of entry did not authorize an inventory of un-seized property, the agent had no legal right to enter the house. *Id.*[11]

---

[9]   Title 18, United States Code, section 983, general rules for civil forfeiture proceedings, provides at (j)(1), "Upon application of the United States, the court may enter a restraining order or injunction, require the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture."

[10]  Title 21, United States Code, section 853, a criminal forfeiture statute located in the drug code, provides at (e)(1), "Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property [subject to criminal forfeiture] under this section." Section 853 is applicable to the general criminal forfeiture statute found in Title 18 pursuant to 18 U.S.C. § 982(b)(2).

[11]  The Eleventh Circuit did not hold that the district court could not have authorized entry into the house if presented with probable cause sufficient to support a search warrant.

The Eleventh Circuit found that the writ of entry did not provide the Government with the legal authority to enter the house to inventory its contents or inspect for damage without a search warrant. The Fourth Amendment applies to searches for administrative purposes. 774 F.2d at 439–40. Absent exigent circumstances, the Government must obtain a warrant based upon probable cause to inspect a seized house and inventory its contents. 774 F.2d at 440.

The district court in *United States v. U.S. Currency in the Amount of $324,225*, 726 F. Supp. 259 (W.D. Mo. 1989), disagreed with the Eleventh Circuit's analysis in *Ladson*. Here, a motion was filed by the Government seeking authority for the USMS to enter, inspect, inventory, and secure the defendant property.[12] A magistrate judge would only grant the motion if the Government agreed not to use any contraband or evidence of a crime found inside the home against its owner. The Government appealed to the district court, which reversed the magistrate. 726 F. Supp. At 260.

> The *Ladson* decision ignores the basic purpose of the plain view doctrine which is to permit law enforcement personnel to seize evidence that is in plain view *without first obtaining a search warrant*. Under *Ladson,* the government cannot protect itself by inventorying and securing a house lawfully seized without surrendering its authority to seize evidence or contraband within plain view. Just as an arrestee's person may be searched and the discovered items inventoried without probable cause or search warrant…and as an impounded vehicle may be inventoried without probable cause or search warrant…the government should be permitted to conduct a limited inventory search of a building or house *lawfully seized*. The presence of law enforcement personnel inside the house for this limited purpose is undoubtedly lawful and proper. Therefore, if such an inventory should produce contraband or evidence of crime, the plain view doctrine's first requirement of a valid prior intrusion would be met. It is the Court's judgment that the government need not first agree not to use any contraband or evidence of crime that might be found during the inventory of the house. 726 F. Supp. at 261.

The district court went on to note that in cases such as the one at issue, the Government was not conducting the inventory on a whim. Such an inventory search would only be authorized after the Government made a showing of probable cause that the property is subject to forfeiture. Moreover, the Government could not do more than conduct an inventory search. If it engaged in a broader search, it would probably violate the Fourth Amendment and any evidence or contraband discovered would be subject to the exclusionary rule. "A lawful seizure only legitimizes a limited inventory search of the seized property and not a broad search for evidence or contraband." *Id*.

*See also United States v. Santiago-Lugo*, 904 F. Supp. 36 (D.P.R. 1995) (inventory of seized residence permitted where civil seizure warrant expressly authorizes an inventory of the contents of the residence); *United States v. One Parcel of Real Property*, 724 F. Supp. 668 (W.D. Mo. 1989) (where Government makes an initial probable cause showing that property is subject to forfeiture, basis exists for court to issue order that authorizes the Government to enter, inspect, inventory, and secure such property at the time of arrest).

Warrantless seizures for forfeiture may be based on the automobile, plain view, exigent circumstances, and search incident exceptions to the Fourth Amendment: *Florida v. White*, 526 U.S. 559 (1999) (warrantless seizure of automobile did not violate the Fourth Amendment where there was probable cause to believe the automobile was subject to forfeiture and it was found in a public place); *United States* v. *$557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66 (2d Cir. 2002) (structured money orders found in plain view by airport security could be detained temporarily

---

[12]   In addition to the cash, forfeiture was sought for 15 cars and a parcel of real estate.

as a *Terry* stop and ultimately seized on probable cause to believe the items were involved in a structuring offense; the test of whether the criminal connection was "immediately apparent" is objective—the Government does not have to establish that the seizing agent was trained to understand the significance of structured money orders); *United States v. $291,828 in U.S. Currency*, 526 F.3d 1234, 1237 (11th Cir. 2008) (if entry into a person's home without a warrant is justified by exigent circumstances, seizure of property found inside the home based on probable cause to believe it is subject to forfeiture is lawful under the exception to the warrant requirement in 18 U.S.C. § 981(b) (2)); *United States v. Warren*, 181 F. Supp. 2d 1232 (D. Kan. 2001) (items discovered during execution of search warrant, but not named in warrant, may be seized if there is probable cause to believe they are subject to forfeiture under state law); *United States v. Medina*, 301 F. Supp. 2d 322 (S.D.N.Y. 2004) (cash found in plain view in closet during a "protective sweep" of apartment to make sure no one else is present during criminal suspect's arrest may be seized if there is probable cause).

Post-CAFRA cases generally support the authority of the court to issue a writ of entry to allow agents to enter real property subject to forfeiture to inspect and inventory its contents. In *Mehner v. Department of Homeland Security*, 2012 WL 1664106, *8 (D. Neb. May 11, 2012), the Court dismissed a *Bivens*[13] action brought against the Assistant U.S. Attorney (AUSA) and agents who obtained a writ of entry under 18 U.S.C. § 985(b)(2) to enter real property the government alleged in a civil complaint was subject to forfeiture, entered the residence, and photographed its contents that were in plain view. Before the writ was executed, the AUSA gave the agent a copy of the writ and explained it was not a search warrant but only authorized him to enter the residence and record what he saw. The Court found that, contrary to plaintiff's contention, the agents who executed the writ followed the instructions of the AUSA and did not remove any documents or materials, but only took photographs, videotaped both the inside and the outside of the residence, and drew a diagram of the residence, all actions that were authorized by the writ of entry.

In *United States v. 40 Acres of Real Property*, 2008 WL 565333 (S.D. Ala. Feb. 27, 2008), the Court held that 18 U.S.C. § 983(j)(1) authorizes the issuance of a writ of entry to inspect real property, appraise its value and inventory its contents. The court stated that "Section 985(b)(2)'s provision that 'the execution of a writ of entry for the purpose of conducting an inspection and inventory of the property shall not be considered a seizure under this subsection' confirms that Congress contemplated the use of Section 983(j) for this purpose." The court also found that if a complaint has been filed, no prior notice to the property owner is required, even if the government has not yet posted the property nor served the owner with the forfeiture complaint. *See also United States v. Residence and Real Property Located at 24227 Gulf Bay Road*, 2006 WL 2091764 (S.D. Ala. July 25, 2006), which had the same holding.

In *United States v. Real Property Located at 11211 East Arabian Park Drive*, 379 F. Supp. 2d 1058 (D. Ariz. 2005), the court denied an *ex parte* application for a writ of entry the government sought to execute at the same time it gave notice of the pendency of the civil forfeiture action. Although the court acknowledged that the basis for judicial authorization of writs of entry for inspection and appraisal is 18 U.S.C. § 983(j)(1), which applies to real property and other forfeitures as well, the court applied the more stringent standards for issuance of the writ of entry set forth in § 983(j)(1)(B) in declining to issue the writ. The court found that the government had not satisfied the requirements of § 983(j)(1)(B), which by its terms is applicable prior to the filing of a civil forfeiture complaint. Although the case had been filed, because the owner was unaware of the filing and the application,

---

[13] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

and because all of the requirements for initiation of a civil forfeiture action against real property set forth in 18 U.S.C. § 985(c)(1) had not been satisfied, the application for the writ was no different than for one sought before commencement of the action. While the government in this case was unsuccessful in obtaining the writ, the important point to take from it and from the other post-CAFRA cases, is that authority for issuance of the writ of entry can be found in 18 U.S.C. § 983(j)(1) and 18 U.S.C. § 985(b)(2).

### C. Conclusion

In view of the limited and somewhat conflicting case law on this obscure writ, writs of entry issued by the court and based upon a finding of probable cause may be used in both civil and criminal forfeiture cases by the Government in the following circumstances: (1) to enter onto the curtilage and inventory structures located thereon without entering those structures; (2) to enter onto private real property for the purpose of seizing personal property located thereon (such as an automobile) in plain view; and (3) to enter into the interior of a private structure subject to forfeiture to conduct an inventory limited to documenting the condition of the interior of the structure, inspecting for damage, and conducting an appraisal. If a private structure is to be entered for the purpose of searching for and seizing (or inventorying) personal property located therein that is subject to forfeiture, it is recommended that a separate search warrant be obtained in conjunction with or in lieu of a writ of entry. In any case where a writ of entry is being sought, the application should be accompanied by a detailed agent affidavit setting forth the facts supporting a conclusion that the Government has probable cause to believe that: (1) the property being searched for, seized, and/or inventoried is subject to forfeiture; and (2) that the said property is located at or in the place to be searched.

## V.   Seizure of Financial Instruments

The following describes procedures and responsibilities for handling financial instruments seized for forfeiture.

### A. Certificates of deposit

#### A.1  Overview

A Certificate of Deposit (CD) is a savings deposit certificate with a fixed maturity date and a specified fixed interest rate. Essentially a promissory note from the issuer to repay the deposited funds plus interest at a future maturity date, CDs are usually issued by commercial banks maturing in as little as a month or as long as 10 years or more, in denominations ranging from $1,000 to "jumbo" CDs over $100,000. If issued by qualifying financial institutions, the principal amount is insured by the Federal Deposit Insurance Corporation (FDIC) and the National Credit Union Administration (NCUA) for up to $250,000 per person per account. Interest may be paid at regular intervals or all at once at maturity. Higher interest is available for larger deposits or longer maturity dates. There is usually a penalty for early withdrawal of the funds, but no-penalty CDs are available at an extremely low interest rate. Because there are no licensing or registration requirements, brokerage firms and independent salespersons may issue CDs, which may or may not be FDIC/NCUA-insured.

### A.2  Seizing procedures

Particularly because CDs are so variable, the seizing agency should immediately notify the issuer of the CD that it has been seized or restrained for forfeiture. The agency should instruct the issuer to take whatever steps are necessary to freeze the principal and accrued interest covered by the CD so it will be negotiable by the USMS after forfeiture. Most CDs issued today are not evidence by a paper certificate; they are simply an electronic bookkeeping entry.

### A.3  Disposition

The USMS will take appropriate action, in accordance with established procedures, to liquidate the certificate of deposit after forfeiture.

## B.  Cryptocurrency

### B.1  Overview

Cryptocurrency, a type of virtual currency, is a decentralized, peer-to peer, network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies. Examples of cryptocurrency are Bitcoin, Litecoin, and Ether. Cryptocurrency can exist digitally on the Internet, in an electronic storage device, or in cloud-based servers. Although not usually stored in any physical form, public and private keys (described below) used to transfer cryptocurrency from one person or place to another can be printed or written on a piece of paper or other tangible object. Cryptocurrency can be exchanged directly person to person, through a cryptocurrency exchange, or through other intermediaries. Financial Crimes Enforcement Network (FinCEN) Guidance issued on March 18, 2013, states that virtual currency administrators and exchangers, including an individual exchanger operating as a business, are considered money services businesses (MSBs).[14]

Most cryptocurrencies have a blockchain, which is a distributed public ledger containing an immutable and historical record of every transaction. Using open source or subscription analytical tools, cryptocurrency transactions can often be traced in their blockchains. However, some cryptocurrencies operate on blockchains that are not public and operate in such a way to obfuscate transactions, making it difficult to trace or attribute transactions.

Cryptocurrency is stored in a virtual account called a wallet. Wallets are software programs that interface with blockchains and generate and/or store public and private keys used to send and receive cryptocurrency. A public key or address is akin to a bank account number, and a private key is akin to a personal identification number (PIN) or password that allows a user the ability to access and transfer value associated with the public address or key.

Cryptocurrency wallets can be housed in a variety of forms, including on a tangible, external device (hardware wallet), downloaded on a PC or laptop (desktop wallet), with an Internet-based cloud storage provider (online wallet), as a mobile application on a smartphone (mobile wallet), printed

---

[14]  *See* FIN-2013-G001, "Application of FinCEN's Regulations to Person Administering, Exchanging, or Using Virtual Currencies" (Mar. 18, 2013), available at: www.fincen.gov/resources/statutes-regulations/guidance/application-fincens-regulations-persons-administering.

public and private keys (paper wallet), and as an online account associated with a cryptocurrency exchange.

## B.2  Seizing Procedures

### B.2.a   Agency/USMS Wallets

Each seizing agency should have a wallet or address for temporary storage of seized cryptocurrency prior to the transfer of custody to the USMS. Agencies typically set up one or more wallets for each seizure. Upon seizure of cryptocurrency, or prior to the seizure if circumstances allow, the seizing agency should request a cryptocurrency wallet or address from the USMS.

### B.2.b   Seizure of Cryptocurrency

Unless authorized by a search warrant or consented to by the owner, a seizure warrant should be obtained for the seizure of cryptocurrency.

In the case of cryptocurrency held in a hardware or desktop wallet—the seizing agency should obtain a seizure warrant for cryptocurrency possessed and controlled by the owner and serve the warrant on the owner and/or the owner's counsel. Many wallet-hosting services are located outside of the United States. Prosecutors should consult the Office of International Affairs (OIA) prior to conducting transactions or engaging in activities which may require access to servers or companies located internationally. Some activities may require a mutual legal assistance treaty (MLAT) or other similar authority even where the wallet company does not itself have access to or control of the cryptocurrency accounts.

In the case of cryptocurrency held in an account or wallet hosted by a United States-based institutional exchange, the seizing agency should obtain and serve a seizure warrant on the institutional exchange, similar to executing a seizure warrant on a bank account. Some exchanges located outside of the United States may have United States offices and/or United States points of contact and will also accept service of United States seizure warrants. Contact the Money Laundering and Asset Recovery Section (MLARS) for examples of warrants for cryptocurrency.

Regardless of the cryptocurrency wallet type, upon execution of a search or seizure warrant, the cryptocurrency should be moved immediately to an agency-controlled wallet. It should be held in "cold storage," i.e., in a secure offline device, until it is transferred to a USMS-issued wallet.

If the seizing agency has difficulty accessing the cryptocurrency for seizure, it should work with the owner or contact the Computer Crime and Intellectual Property Section (CCIPS) for assistance.

## B.3  Disposition

Because of the risks that early conversion may pose, in most cases, cryptocurrency should be kept in the form it was seized and not liquidated (i.e., converted to fiat currency or other cryptocurrency) until a final order of forfeiture is entered or an administrative forfeiture is final. Agencies or prosecutors may, however, seek an order for the interlocutory sale of virtual currency at the request and/or consent of all parties with an ownership interest in the cryptocurrency. Consultation with MLARS is required prior to any pre-forfeiture conversion and/or seeking an order for interlocutory sale of cryptocurrency.

Any liquidation of cryptocurrency should be executed according to established written policies of the seizing agency and the USMS. Prosecutors may contact MLARS or the USMS Complex Assets Unit (CAU) for guidance regarding disposition of any alternative cryptocurrencies (e.g., cryptocurrency other than Bitcoin) for which the USMS does not yet have a process in place to take custody or liquidate via auction.

## C. Life Insurance

### C.1 Overview

There are generally two types of life insurance—term life insurance and cash value/permanent life insurance. Term life insurance is referred to as basic life insurance. Term insurance provides coverage for a specific period of time and pays a lump sum upon the death of the policyholder. Once the term is over, coverage under this policy ends. It does not include a cash value that can be used in the future. However, some term insurance policies include an option to convert to a cash value policy.

Cash-life insurance is considered a form of permanent life insurance that pays out upon the policyholder's death but accumulates wealth during the policyholder's lifetime. The policyholder can use the cash value as a tax-sheltered investment, as a fund from which to borrow and as a means to pay policy premiums later in life, or they can pass it to their heirs. The cash-value account earns a modest rate of interest which is allowed to accumulate tax-free. Over time, the cash-value account grows, which reduces the mortality risk of the life insurer. Upon the death of the insured, the insurer is only obligated to pay the death benefit, not the cash value, which it retains. Whole life, variable life and universal life are all types of cash-value life insurance. Coverage under these policies stay in effect as long as the premiums are paid.

The cash value to be realized from the seizure and/or restraint of a life insurance policy is dependent upon the type of insurance policy at issue and its level of maturity. The account value of a life insurance policy that builds cash value is the amount that the investment portion of the policy is worth. The investment portion of the policy is paid out of the premiums paid by the insured. Some cash-value life insurance policies levy a surrender charge if cashed in before a certain length of time. Surrender charges generally become lower the longer the insured owns the life insurance policy. With most policies the surrender charges eventually disappear, and the account value and surrender value of the policy become the same.

The face value of the policy is the death benefit that it provides. This is the minimum that the beneficiary would receive from the policy, as long as there is not an outstanding loan against a cash-value policy. Some policies, typically universal life policies, pay more than the face value if the insured dies and their investments have gained in value. The policy might pay the surrender value of the policy in addition to the face value.

### C.2 Seizing procedures

The value to be realized from the seizure and/or restraint of a life insurance policy is dependent upon the type of insurance policy at issue and its level of maturity. There may be tax and other legal implications for early withdrawal. Thus, in order to preserve the value of policy, it may be more

appropriate for prosecutors to seek a restraining order, rather than a seizure warrant, for the funds. To maximize the value of the particular policy prosecutors should:

(1) Identify the type of insurance policy at issue.

(2) Identify the maturity date of the policy.

(3) Identify what the value of the policy is to be seized or restrained. You may be able to obtain this information various sources, including the attorney or fraud investigator for the insurance company.

(4) If seeking a restraining order, make sure that the order directs the insurance company to:

(a) maintain investments as they were as of the date of restraint, in the case of a restraining order; and

(b) change the beneficiary of the policy to the government.

(5) If seeking a seizure warrant, make sure that warrant directs insurance company to pay the requested value as set forth in the warrant.

(6) Serve the restraining order or seizure warrant on the insurance company and/or appropriate financial institution.

(7) Provide a copy of the restraining order or seizure warrant to the USMS at the time the funds are transferred to government custody.

### C.3  Disposition

The USMS will take appropriate action, in accordance with established procedures, to liquidate the life insurance policy after forfeiture.

## D.  Money orders

### D.1  Overview

The United States Postal Service (USPS) is the largest issuer of money orders. Other non-USPS private MSBs and financial institutions issue their own money orders either through thousands of agents or through their own branches.

The USPS sets a maximum purchase value of $1,000 for each domestic money order and $700 for most international money orders ($500 for El Salvador and Guyana). Other issuers set maximum purchase values of $500 to $1,000 for their money orders. Purchasers may use cash, debit cards, or travelers' checks to purchase most money orders. Because purchasers frequently use cash to buy money orders, criminals often misuse money orders as part of laundering schemes or to move illicit proceeds obtained from any number of criminal activities.

A purchaser who buys a money order also usually receives a receipt that includes a serial number for that money order which should be retained until the money order has cleared. Tracking a money order without a receipt or serial number can be difficult, if not impossible. The USPS offers an online money order inquiry service that allows purchasers to input the money order serial number

and receive an update on its status. To track any other type of money order, issuers usually require the inquirer to complete a tracking form and pay additional fees to determine whether a money order already has been cashed.

### D.2   Seizing procedures

Seizing a money order as evidence or for forfeiture does not necessarily seize the funds held on deposit by the issuer in order to satisfy payment of the money order. Because the purchaser may obtain a refund of the purchase funds by reporting money orders stolen, lost, or accidentally destroyed, physical possession of the money order is not required to dispose of the funds associated with it. In most instances, prosecutors should obtain a criminal or civil seizure warrant or criminal restraining order that not only authorizes seizure or restraint of the money orders themselves, but also obtain an order that authorizes seizure or restraint of the total amount of funds held by the issuer necessary to satisfy the money orders.

### D.2.a   USPS Money Orders

For USPS money orders, investigating agents or prosecutors may check the USPS online Money Order Inquiry System (MOIS) by selecting the "6401 Inquiry" option and entering the serial numbers to determine whether the payees already may have redeemed them. Another way to verify or track the money order is by calling the USPS automated money order verification system at: 1-866-459-7822. A final alternative is to email the USPS Help Desk at: helpdeskaccounting-st. louis@usps.gov, making sure to include a contact name and other contact information along with the money order amounts, serial numbers, and any other information requested, such as payment date or whether the money order has been reported lost or stolen.

Immediately following seizure, the seizing agency should send a request to hold the money orders seized to the following address:

> United States Postal Inspection Service
> Criminal Investigations Group
> National Money Order Coordinator
> 475 L'Enfant Plaza SW, Room 3800
> Washington, DC 20260-3800

The request must be submitted on agency letterhead and include: (1) the reason for the request; (2) the case number and/or seizure number; (3) statutory authority for seizure/possession; and (4) a money order list by serial number, issue office and monetary value. Original or copies of money orders are not required. Upon receipt of the above information, the United States Postal Inspection Service (USPIS) will flag the respective money orders to place them "on hold," pending further instructions. The timing of the issuance of a hold on the money orders is critical, as they can be replaced very quickly by the purchaser. Accordingly, the seizing agency should submit its written request as soon as possible. The seizing agency should also provide the USMS with a copy of this letter at the time the money orders are transferred to the USMS for custody. If further assistance is needed, contact the local office of the USPIS.

### D.2.b   Non-USPS Money Orders

Immediately after seizing non-USPS-issued money orders, the seizing agency should send correspondence to the money order issuer that includes the same information for USPS money orders and advise the issuer to place a hold on payment of the money orders pending further instructions.

### D.3   Disposition

When seeking a judicial order of forfeiture[15] for money orders and the funds held on deposit to satisfy them, the prosecutor should:

- forfeit the seized money orders as well as the funds held by the issuer on deposit for payment of the money orders; and

- authorize the USMS to take possession of the funds held by the issuer on deposit to satisfy the money orders.

The USMS will take appropriate action, in accordance with established procedures, to liquidate the money orders after forfeiture.

## E.   Personal and cashier's checks

### E.1   Overview

During the execution of a search, a seizing agency may seize a personal check, certified check, or cashier's check as evidence. A personal check is a check drawn on the personal account of the originator, which could be an individual or entity. A certified check is a check on which the bank has certified that the account holder has sufficient funds to cover the check and the check is drawn against that personal account holder's funds. In contrast, a cashier's check is a check issued by the bank itself and sold to a purchaser. Whereas a personal check or certified check is an obligation of the account-holder, a cashier's check is a direct obligation of a bank.

### E.2   Seizing procedures

Following the seizure of a check, the agency should immediately identify the source of funding for the check, investigate that source, and determine whether seizure of funds is appropriate.[16] Different processes for seizure and restraint of funds related to checks apply depending on whether a personal, certified, or cashier's check is seized.

If the source of funding for a personal or certified check is an account that contains property subject to forfeiture, then the seizing agency, working with the prosecutor, should immediately obtain a seizure warrant, under the applicable criminal or civil forfeiture statute, for the funds in the account; serve the seizure warrant on the financial institution; and advise the USMS of the warrant and seizure of funds, as well as the amounts held in the account and subject to forfeiture.

---

[15] For administrative forfeiture, please contact agency counsel for further guidance.

[16] Agencies should also note the date the check was drawn, in order to avoid a stale dated personal check (*see* U.C.C. § 4-404) or a certified check that may be considered to be abandoned property under state law.

On the other hand, if a cashier's check was purchased with funds subject to forfeiture, and if the seizing agency and prosecutor determines that the funds that support the check are subject to forfeiture, then the seizing agency, in conjunction with the USAO, should immediately:

(1)   obtain a judicial restraining order or seizure warrant, under the applicable criminal or civil forfeiture statute, directing the financial institution upon which the check is drawn to either:

(a) take necessary steps to maintain funds sufficient to cover the check and/or place a hold on or revoke the check, in the case of a restraining order; or

(b) release funds in the amount of the check, in the case of a seizure warrant;

(2)   serve the restraining order or seizure warrant on the financial institution; and

(3)   provide a copy of the restraining order or seizure warrant to the USMS at the time the check is transferred for custody.

### E.3   Disposition

The USMS will accept custody of all checks for which the investigative agency has contacted the bank from which they were drawn. The agency and USAO should ensure that any final order of forfeiture provides the USMS with authority to take or maintain custody of, deposit, and dispose of the funds that were restrained or seized to cover the check.

## F.   Prepaid Access Devices

### F.1   Overview

A prepaid access device is a card-based alternative to cash. In essence, it is a stored value card linked to an external account maintained by a financial institution. As will be discussed below, however, the device is not linked to an account held by the cardholder. Instead, the funds are in a pooled account. The prepaid access device acts as a debit card linked to that pooled account, and the program manager or processor allows the card to access only the amount of funds "loaded" on the device. The value stored on the device can be accessed using either the device's magnetic stripe or chip, or by entering the device number.

Prepaid access devices can be divided into two categories. Closed-loop devices may only be used for the issuer's products or other limited purposes (for example, a device that can be used at a specific retailer, restaurant, or utility provider); most closed-loop devices are issued for a fixed amount and cannot be redeemed for cash.[17] Open-loop devices, in contrast, are more general-purpose cards, that can be used to obtain cash, make purchases, or transfer funds. Open-loop devices are backed by an online electronic system for authorization, and often can be reloaded in person or online and used again. All open-loop devices are branded cards (e.g. Visa, MasterCard, Discover, American Express, JCB, and Union Pay) that allow the user to make purchases or conduct transactions anywhere the brand is accepted. However, there are also network branded devices (e.g. public benefits cards, bank

---

[17] Branded, closed-loop cards also exist. Examples include cards that can only be used at a particular place, such as a specific mall or university.

Automated Teller Machine (ATM) cards) that are linked to point-of-sale and ATM networks using PIN-based technologies for sales and withdrawals.

### F.1.a    Issuing Bank

An issuing bank is the financial institution that acquires a Bank Identification Number (BIN), or Issuer Identification Number (IIN), on behalf of a prepaid access device program manager and then "rents" the BIN to the program manager.[18] Only a financial institution can register a BIN, and it retains ultimate responsibility for use of the BIN. The issuing bank is a member of a card network for which it has an agreement to issue network branded cards. The issuing bank maintains cardholder funds that have been added, or loaded, onto the prepaid access device through the use of a "pooled account." These funds are held on deposit by the issuing bank until the cardholder uses the prepaid access device to make purchases or transfer/withdraw funds.

### F.1.b    Program Manager

A program manager is the company that oversees a prepaid access device program, and is responsible for card activation, cardholder verification, account servicing, records processing, establishing relationships with retail partners, and maintaining the relationship with the issuing bank, among other duties. The program manager, in most cases, also produce and distribute the prepaid access devices.

### F.1.c    Card Processor

Prepaid access device processors (issuing processors) are hired by a program manager, issuing bank, retail partner, or merchant to handle all or some program operation components as provided for in the processing contract. In order to effectively handle the payment processing component of any transaction involving a prepaid access device, a processor records transaction information (purchase, transfer, fees, and all other credits or debits to the card), tracks the card balance, and oversees all aspects of card usage, including chargebacks, returns, or payment disputes. Some processors also take responsibility for managing the card (card issuance, enrollment options, and loading), providing cardholder care (call centers, online account management, statement generation, balance inquiry capabilities, fraud mitigation monitoring, risk mitigation, security, and compliance), and other platform management functions.

The issuing processor is not the same as merchant processor, which work on behalf of the merchants accepting branded cards, providing the network to process the transaction through the card association.

## F.2   Seizing Procedures

A seizure of a prepaid access device is not a seizure of the funds associated with or loaded onto the card. Physical possession of the card is not required for disposing of its funds. To the contrary, funds associated with a prepaid access device easily can be spent or transferred while the card is held by law enforcement as evidence.

---

[18] The BIN or IIN, is the first 6 digits of a bank card number or payment card number and is part of ISO/IEC 7812, a standardized global numbering scheme used for the purpose of identifying institutions who assign unique account numbers to their customers, including for the issuance of payment cards. The Registration Authority for banks and other issuers is the American Banking Association, which maintains a complete listing of IINs/BINs.

In order to ensure that funds associated with a particular card are not spent or transferred, additional action is required. The seizing agency should first examine the card to determine the issuing bank and program manager or processing company.

The seizing agency should contact the issuing bank to determine if the card is a prepaid access device, and, the identity of the program manager. In some instances, the issuing bank is also the program manager, and will be able to provide all necessary balance and card information. If the card has been re-encoded with other account information, the seizing agency will want to contact the issuing bank associated with the re-encoded information.

The seizing agency must determine if the issuer, program manager, or processor can put a hold on the funds associated with the prepaid access device so that they are not spent or transferred while a warrant/restraining order is obtained and served (or even processed). The issuer, program manager, or processor may do this automatically as a risk management function upon contact by law enforcement or may request written documentation for its file.

Unless the owner consents, a seizure warrant or restraining order should be obtained for the seizure of all funds associated with seized prepaid access devices to ensure that the funds associated with the prepaid access device are available for forfeiture. Seizure of the card itself neither deprives the owner of control over the funds associated with the seized prepaid access device nor authorizes the government to take possession of the funds.

The government should issue a grand jury or a Federal Rule of Civil Procedure 45 subpoena to the program manager or processor for all customer account records, any customer interactive voice response account records, customer web log information reports, customer deposit information for account reports, customer account history reports, and any internal Know Your Customer/Anti-Money Laundering/Bank Secrecy Act (BSA) compliance documentation related to the customer or account activity.

### F.3   Disposition

The USMS will take appropriate action, in accordance with established procedures, to liquidate the prepaid access device after forfeiture.

## G.  Securities

### G.1   Overview

A security is a negotiable financial instrument that represents some type of financial value: an equity interest in a publicly-traded corporation (stock), a debt security used by a governmental body or a corporation to borrow money (bond), or rights to ownership as represented by an option. The company or entity that issues the security is known as the issuer.

### G.2   Seizure procedures

As a general rule, the USMS will accept custody of all stocks and bonds for which the seizing agency can document a significant worth. The seizing agency should consult with the USMS prior to the seizure of any stocks and/or bonds with questionable value. As a best practice, the USMS will

coordinate with the USAO to try to liquidate stocks and bonds through interlocutory sale whenever possible.

### G.2.a   Securities not held in a brokerage account

For publicly-traded securities, the seizing agency should contact a certified stock broker (state and national) immediately following seizure or restraint to establish the fair market value of the asset and determine how the instrument is traded. If the instrument has an insignificant or minimal value, it should not be seized or restrained. If the seizing agency does not have a brokerage account at an established securities firm, the agency should discuss with the USMS'CAU where the seized securities will be held.

For non-publicly-traded securities, the seizing agency should contact the USMS' CAU if the stock is that of a privately held company.[19] The stocks and bonds of closely-held corporations can present unique issues caused by illiquidity and lack of information. Closely-held financial instruments that have been determined to have an insignificant or minimal value should not be seized or retained, as the USMS will not take custody of them. In the event that closely held securities with material value are seized, the seizing agency must expeditiously seek a viable plan for their liquidation in consultation with the AUSA and the USMS.

### G.2.b   Securities held in a brokerage account

Securities that held are in a brokerage account will usually be seized or restrained in place. Any restraining order may provide that the funds will continue to be invested as they were on the date of restraint, unless such investment is modified by order of the court. Upon receipt of an interlocutory order or final order of forfeiture/declaration of administrative forfeiture, the USMS will instruct the broker to liquidate the account. The net proceeds after commission are deposited in the Seized Asset Deposit Fund (SADF) or Assets Forfeiture Fund (AFF). Pursuant to court order, brokerage accounts may be held in a different manner in order to preserve the value of the account.

## G.3   Disposition

Whether the forfeited securities were held in a brokerage account or not, the seizing agency and/or the prosecutor must immediately consult the USMS to effect the liquidation of the securities, and the deposit of proceeds (less broker or transfer agent commission) into the AFF. If closely held financial instruments (*see* Section G.2.a above) were not liquidated prior to forfeiture, prosecutors must consult with the USMS' CAU to ensure that liquidation is effected in an expeditious manner.

## H.  Traveler's checks

### H.1  Overview

Despite their rapidly declining use, traveler's checks occasionally may still be used to conceal or convert criminal proceeds and agents and prosecutors may encounter them during investigations. However, there are companies that offer their own travelers' checks, or will honor their no-longer

---

[19]  To the extent possible, the seizing agency should establish the value of all closely held financial instruments prior to seizure. If the determination cannot be made prior to seizure, it should be made as expeditiously as possible subsequent to seizure.

issued travelers' checks. Therefore, if agents locate older travelers' checks, they may still be redeemable for forfeiture even if the original issuer no longer offers travelers' checks for sale.

### H.2   Seizing procedures

Seizing a traveler's check as evidence or for forfeiture does not necessarily seize the funds held on deposit by the issuer in order to satisfy payment of the traveler's check. Because the purchaser may obtain a refund of the purchase funds by reporting a traveler's check or a series of travelers' checks stolen, lost, or accidentally destroyed, physical possession of the traveler's check is not required to dispose of the funds associated with it. In most instances, prosecutors should obtain a criminal or civil seizure warrant or criminal restraining order that not only authorizes seizure or restraint of the traveler's checks themselves, but also obtain an order that authorizes seizure or restraint of the total amount of funds held by the issuer necessary to satisfy the traveler's checks.

Upon seizing traveler's checks, the seizing agency should immediately identify and contact the issuer responsible for their payment to determine whether the checks are authentic and were validly issued. It should also notify the issuer that the checks have been seized for forfeiture and determine what procedures will be required in order to redeem them. If the checks can be redeemed before the forfeiture case is completed, the seizing agency should ask the issuer to liquidate and redeem them to allow the funds to be held by the USMS pending conclusion of the forfeiture case.

### H.3   Disposition

If the traveler's checks cannot be redeemed until after the forfeiture, the checks should be turned over to the USMS with verification that the issuing company has been notified of the forfeiture action. If necessary, the prosecutor may need to seek a restraining or freezing order from the court preventing the issuer from dissipating the funds held for redeeming the traveler's checks during the pendency of the forfeiture action.

In seeking a judicial order of forfeiture[20] of traveler's checks and the funds held on deposit to satisfy them, the prosecutor should request that the district court:

- forfeit the seized traveler's checks and the funds held by the issuer on deposit for their redemption; and

- authorize the USMS to take possession of the funds held by the issuer on deposit to satisfy the traveler's checks.

The USMS will take appropriate action, in accordance with established procedures, to liquidate the traveler's checks after forfeiture.

## I.   United States savings bonds

### I.1   Overview

U.S. savings bonds are debt securities issued by the Department of the Treasury (Treasury). Paper bonds were sold by the Treasury and virtually all financial institutions until 2012, when paper bonds were abolished and financial institutions stopped selling them.

---

[20] For administrative forfeiture, please contact agency counsel for further guidance.

Today, savings bonds may only be bought and redeemed online via accounts online.[21] Except for pre-2012 bonds, U.S. savings bonds today are issued only in electronic, book-entry form.

### I.2   Seizing procedures

Immediately following seizure, the seizing agency should notify the Treasury, by certified letter, listing the following:

(1)   serial numbers;

(2)   bond denominations;

(3)   to whom payable; and

(4)   the reason for which they were seized.

The seizing agency should send the above information to the following address:

> Treasury Retail Securities Site
> P.O. Box 214
> Minneapolis, MN 55480-0214
>
> Phone: 844-284-2676 (Toll Free)

The seizing agency should provide the USMS with a copy of this letter at the time the savings bonds are transferred for custody.

### I.3   Disposition

The USMS will accept custody of all savings bonds, maintain such bonds until forfeiture, and dispose of such bonds in accordance with established procedures.

## VI.  Seized Cash Management

The security, budgetary, and accounting problems caused by retention of large amounts of cash historically has caused great concern within the Department and Congress. In the past, agencies participating in the Department's Asset Forfeiture Program have held tens of thousands of dollars in office safes and other locations throughout the country. This raises both financial management and internal control issues. The Department must report annually to Congress on the amount of seized cash not on deposit.

Seized cash, except where it is to be used as evidence, is to be deposited promptly in the SADF pending forfeiture.[22] The Chief of MLARS may grant exceptions to this policy in extraordinary circumstances.

This policy applies to all cash seized for purposes of forfeiture.[23] Therefore, all currency seized that is subject to criminal or civil forfeiture must be delivered to the USMS for deposit in the SADF either

---

[21]   Available at: treasurydirect.gov.

[22]   28 C.F.R. § 8.5.

[23]   *See* Treasury Executive Office for Asset Forfeiture (TEOAF) Directive No. 4 "Seized Cash Management Policy," for cash seized by a Treasury member agency.

within 60 days after seizure or 10 days after indictment, whichever occurs first.[24] Photographs or videotapes of the seized cash should be taken for use in court as evidence.

If the amount of seized cash desired to be retained for evidentiary purposes is less than $5,000, permission need not be sought from MLARS for an exception; but any exception must be granted at a supervisory level within a USAO using the criteria below.

If the amount of seized cash to be retained for evidentiary purposes is $5,000 or greater, the request for an exemption must be forwarded to MLARS.[25] The request should include a brief statement of the factors warranting its retention and the name, position, and phone number of the individual to contact regarding the request.

Limited exceptions to this directive are very rare. Exceptions, such as extensions of applicable time limits, will be granted, on an interim basis, only with the express written permission of the Chief of MLARS.[26] Extensions of applicable time limits may be further extended upon request, but must be deposited in the SADF if subsequent requests are denied. Retention of currency will be permitted when it serves a significant independent, tangible, evidentiary purpose due to, for example, the presence of fingerprints, packaging in an incriminating fashion, or the existence of a traceable amount of narcotic residue on the bills.[27] If only a portion of the seized cash has evidentiary value, only that portion with evidentiary value should be retained. The balance should be deposited in accordance with Department policy.

The commingling of cash seized by the Government under 21 U.S.C. § 881(a)(6) will not deprive the court of jurisdiction over the res. Unlike other assets seized by the Government (e.g., real property, conveyances), cash is a fungible item. Its character is not changed merely by depositing it with other cash. While it is true that the jurisdiction of the court is derived entirely from its control over the defendant res, court jurisdiction does not depend upon control over specific cash. As stated in *United States v. $57,480.05 U.S. Currency and Other Coins and $10,575 U.S. Currency*, 722 F.2d 1457 (9th Cir. 1984): "Jurisdiction did not depend upon control over specific bits of currency. The bank credit of fungible dollars constituted an appropriate substitute for the original res."

It has never been a requirement that the Government segregate specific cash seized for forfeiture in one case from that seized for forfeiture in another. Commingling of such assets has been the rule and not the exception.[28]

## VII.  The Use of Asset Forfeiture Authorities in Connection with Structuring Offenses

Title 31, United States Code, section 5324(a) prohibits evasion of certain currency transaction-reporting and record-keeping requirements, including structuring schemes. Generally speaking,

---

[24]  This policy does not apply to the recovery of buy money advanced from appropriated funds. To the extent practical, negotiable instruments and foreign currency should be converted and deposited.

[25]  The criteria and procedure for obtaining exemptions remains the same for cash retained by other agencies participating in the Asset Forfeiture Program.

[26]  Requests for an exemption should be filed by the USAO or Criminal Division section responsible for prosecuting, or reviewing for prosecution, a particular case.

[27]  The authority to approve exceptions to the Department's cash management policy requiring that all seized cash, except where it is to be used as evidence, is to be deposited promptly into the SADF was delegated by the Assistant Attorney General, Criminal Division (AAG), to the Chief of MLARS on December 13, 1991.

[28]  *See American Bank of Wage Claims v. Registry of the District Court of Guam*, 431 F.2d 1215 (9th Cir. 1970).

structuring occurs when, instead of conducting a single transaction in currency in an amount that would require a report to be filed or record made by a domestic financial institution, the violator conducts a series of currency transactions, keeping each individual transaction at an amount below applicable thresholds to evade reporting or recording.

This guidance is intended to ensure that the Department's limited investigative resources are appropriately and effectively allocated to address the most serious structuring offenses, consistent with Departmental priorities. The guidance applies to all federal seizures for civil or criminal forfeiture based on a violation of the structuring statute, except those occurring after an indictment or other criminal charging instrument has been filed.[29]

## A. Link to prior or anticipated criminal activity

If no criminal charge has been filed and a prosecutor has not obtained the approval identified below, a prosecutor shall not move to seize structured funds unless there is probable cause that the structured funds were generated by unlawful activity or that the structured funds were intended for use in, or to conceal or promote, ongoing or anticipated unlawful activity. For these purposes, "unlawful activity" includes instances in which the investigation revealed no known legitimate source for the funds being structured. Also for these purposes, the term "anticipated unlawful activity" does not include future Title 26 offenses. The basis for linking the structured funds to additional unlawful activity must receive appropriate supervisory approval and be memorialized in the prosecutor's records.[30]

Where the requirements of the above paragraph are not satisfied, unless criminal charges are filed, a warrant to seize structured funds may be sought from the court only upon approval from an appropriate official, as follows:

- For AUSAs, approval must be obtained from their respective U.S. Attorney. The U.S. Attorney may not delegate this approval authority.[31]

- For Criminal Division trial attorneys or other Department components not partnering with a USAO, approval must be obtained from the Chief of MLARS. The Chief of MLARS may not delegate this approval authority.

The U.S. Attorney or the Chief of MLARS may grant approval if there is a compelling law enforcement reason to seek a warrant, including, but not limited to, reasons such as: serial evasion of the reporting or record keeping requirements; the causing of domestic financial institutions to file false or incomplete reports; and violations committed, or aided and abetted, by persons who are owners, officers, directors, or employees of domestic financial institutions.

If the U.S. Attorney or the Chief of MLARS approves the warrant, the prosecutor must send a completed "Structuring Warrant Notification Form" to MLARS.[32]

---

[29]  These guidelines apply to all structuring activity whether it constitutes "imperfect structuring" chargeable under 31 U.S.C. § 5324(a)(1), or "perfect structuring" chargeable under § 5324(a)(3).

[30]  In order to avoid prematurely revealing the existence of the investigation of the additional unlawful activity to the investigation's targets, there is no requirement that the evidence linking the structured funds to the additional unlawful activity be memorialized in the seizure warrant application.

[31]  Although this authority is ordinarily non-delegable, if the U.S. Attorney is recused from a matter or absent from the office, the U.S. Attorney may designate an Acting U.S. Attorney to exercise this authority, in the manner prescribed by regulation. See 28 C.F.R. § 0.136.

[32]  Contact MLARS for additional guidance regarding submission of the form.

These requirements are effective as of March 31, 2015. For any case in which seizure was effected prior to this date, the forfeiture may continue so long as it otherwise comports with all other applicable law and Department policy.

### B.  No intent to structure

There may be instances in which a prosecutor properly obtains a seizure warrant but subsequently determines that there is insufficient admissible evidence to prevail at either civil or criminal trial for violations of the structuring statute or another federal crime for which forfeiture of the seized assets is authorized. In such cases, within seven (7) days of reaching this conclusion, the prosecutor must direct the seizing agency to return the full amount of the seized money. Once directed, the seizing agency will promptly initiate the process to return the seized funds.

### C.  150-day deadline

Within 150 days of seizure based on structuring, if a prosecutor has not obtained the approval discussed below, a prosecutor must either file a criminal indictment or a civil complaint against the asset.[33] The criminal charge or civil complaint can be based on an offense other than structuring. If no criminal charge or civil complaint is filed within 150 days of seizure, then the prosecutor must direct the seizing agency to return the full amount of the seized money to the person from whom it was seized by no later than the close of the 150 day period. Once directed, the seizing agency will promptly initiate the process to return the seized funds.

With the written consent of the claimant, the prosecutor can extend the 150 day deadline by 60 days. Further extensions, even with consent of the claimant, are not allowed, unless the prosecutor has obtained the approval discussed below.

An exception to this requirement is permissible only upon approval from an appropriate official as follows:

- For AUSAs, approval must be obtained from their respective U.S. Attorney. The U.S. Attorney may not delegate this approval authority, except as discussed in footnote 29 (above).

- For Criminal Division trial attorneys or other Department components not partnering with a USAO, approval must be obtained from the Chief of MLARS. The Chief of MLARS may not delegate this approval authority.

If additional evidence becomes available after the seized money has been returned, an indictment or complaint can still be filed.

### D.  Settlement

Settlements to forfeit and/or return a portion of any funds involved in a structuring investigation, civil action, or prosecution must comply with the requirements set forth in Chapter 11 of this *Manual* and the *Justice Manual* (JM) § 9-113.000 et seq.[34] In addition, settlements must be in writing, include all material terms, and be signed by a federal prosecutor. Informal settlements, including those negotiated between law enforcement and private parties, are expressly prohibited.

---

[33]  This deadline does not apply to administrative cases governed by the independent time limits specified by CAFRA. *See also* Chap. 5, Sec. III.B.2.a of this *Manual*.

[34]  A copy of the *Justice Manual* (JM) is available at: www.justice.gov/jm/justice-manual.

# Chapter 3:
# Seizures by State and Local Law Enforcement

## I.    Forfeitures Generally Follow the Prosecution

As discussed in Chapter 5 of this *Manual*, when property is seized as part of an ongoing federal criminal investigation and the criminal defendants are being prosecuted in federal court, as a general rule, the federal seizing agency should commence an administrative forfeiture proceeding or forfeiture should be pursued civilly or criminally in federal court, regardless of whether the property was seized by a federal, state, or local law enforcement agency. Conversely, when a state or local agency has seized property as part of an ongoing state criminal investigation and the criminal defendants are being prosecuted in state court, any forfeiture action should generally be pursued in state court assuming that state law authorizes the forfeiture.

## II.   General Adoption Policy and Procedure

### A.   Policy regarding federal adoption of assets seized by state and local law enforcement

An "adopted" forfeiture—or "adoption" for short—occurs when a state or local law enforcement agency seizes property under state law, without federal oversight or involvement, and requests that a federal agency take the seized asset into its custody and proceed to forfeit the asset under federal law. Federal forfeiture law addresses the federal adoption of seizures by state and local agencies. *See, e.g.*, 18 U.S.C. § 981(b)(2)(C) (civil forfeiture statute includes an exemption to the warrant requirement if "the property was lawfully seized by a State or local law enforcement agency and transferred to a Federal agency"); 18 U.S.C. § 983(a)(1)(A)(iv) (extending the general requirement in 18 U.S.C. § 983(a)(1)(A)(i) that notice to "interested parties" be sent "no more than 60 days after the date of seizure" to 90 days in the case of adoptions).

On July 19, 2017, the Department of Justice (Department) issued Attorney General Order No. 3946-2017[1] to lift the restrictions issued in 2015.[2] The Department of the Treasury (Treasury) issued a substantially similar directive on July 26, 2017.[3] Please consult Treasury for procedures regarding adoptions by federal agencies participating in the Treasury Forfeiture Fund (TFF).

Under the Attorney General's order, federal adoption of all types of assets seized lawfully by state or local law enforcement under their respective state laws is authorized whenever the conduct giving rise to the seizure violates federal law.[4] The net equity and value thresholds found in Chapter 1 of this

---

[1]  *See* Attorney General Order No. 3946-2017, "Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies" (July 19, 2017), available at: www.justice.gov/criminal-mlars/adoptions-policy.

[2]  On January 16, 2015, the Department issued Attorney General Order No. 3488-2015 (Jan. 16, 2015), limiting situations in which participants in the Department's Asset Forfeiture Program were authorized to adopt assets seized by state or local law enforcement under state law in order for the property to be forfeited under federal law. Pursuant to this order, agencies were permitted to adopt the forfeiture of only those assets seized by state or local law enforcement agencies that directly impacted public safety concerns, namely firearms, ammunition, explosives, and property associated with child pornography. The order prohibited the adoption of all other property, such as vehicles, valuables, and cash.

[3]  *See* Treasury Executive Office for Asset Forfeiture (TEOAF) Directive No. 34 "Policy Regarding the Federal Adoption of Seizures by State and Local Law Enforcement Agencies," available at: www.justice.gov/criminal-mlars/adoptions-policy.

[4]  *See* Attorney General Order No. 3946-2017, "Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies" (July 19, 2017), available at: www.justice.gov/criminal-mlars/adoptions-policy.

*Manual* continue to apply.[5] Agencies and components should prioritize the adoption of assets that will advance the Attorney General's Crime Reduction Strategy.[6] Attorney General Order No. 3946-2017 applies prospectively to assets seized on July 19, 2017 and thereafter. Attorney General Order No. 3488-2017 will continue to apply to assets seized before July 19, 2017.

The Department, through legal counsel for federal investigative agencies as well as through U.S. Attorney's Offices (USAOs), will continue to ensure that adoptions are conducted in compliance with law and Department policies.[7] Specifically, the following safeguards, among others, shall be maintained and implemented to ensure that there is sufficient evidence of criminal activity and that the evidence is well documented:

- To ensure that adoptions involve property lawfully seized property, legal counsel at the federal agency adopting the seized property must continue to review all seizures for compliance with law, especially seizures made pursuant to an exception to the Fourth Amendment's warrant requirement;

- To assist federal legal counsel in this review process, the form used by state and local agencies seeking federal adoption of seized assets, *Request for Adoption of State and Local Seizure Form* (July 2017) (adoption form),[8] requires that the state or local agency provide additional information about the probable cause determination justifying the seizure. The additional information in the adoption form better documents probable cause in the first instance and provides federal legal counsel with the relevant information relating to probable cause for review. In addition, state and local agencies are required to certify on the adoption form that they have obtained a turnover order, if necessary, and that the adoption request complies with their state laws.

Adoptions of cash in amounts equal to or less than $10,000 may require additional safeguards. Those adoptions are permissible where the seizure was conducted: (1) pursuant to a state warrant, (2) incident to arrest for an offense relevant to the forfeiture, (3) at the same time as a seizure of contraband relevant to the forfeiture, or (4) where the owner or person from whom the property is seized makes admissions regarding the criminally derived nature of the property. If a federal agency seeks to adopt cash equal to or less than $10,000, and none of these safeguards are present, then the agency may proceed with the adoption only if the USAO first concurs.

---

[5] Chap. 1, Sec. I.D.1 of this *Manual* establishes minimum net equity thresholds of at least $5,000 for vehicles, and a minimum amount of $5,000 for cash seizures, or at least $1,000 if the person from whom the cash was seized either was, or is, being criminally prosecuted by state or federal authorities for criminal activities related to the property. USAOs, in consultation with federal law enforcement agencies, may continue to establish higher thresholds for judicial forfeiture cases in order to best address the crime threat in individual judicial districts.

[6] *See* Department Press Release 17-227, "Attorney General Announces Crime Reduction and Public Safety Task Force" (February 17, 2017), available at: www.justice.gov/opa/pr/attorney-general-announces-crime-reduction-and-public-safety-task-force.

[7] This Department policy does not affect the ability of state and local agencies to pursue the forfeiture of assets pursuant to their respective state laws. Moreover, when a state or local agency has seized property as part of an ongoing state criminal investigation and the criminal defendants are being prosecuted in state court, any forfeiture action should generally be pursued in state court assuming that state law authorizes the forfeiture. *See* Sec. I above.

[8] The adoption form is available at: www.justice.gov/criminal-mlars/adoptions-policy.

## B.  Federal adoption procedure

### B.1   Federal adoption request

All state and local seizures that qualify for adoption under the Attorney General's order and are presented for adoption to either a Department or Treasury federal agency must be reported on the adoption form. The adoption form should be completed by the requesting state or local agency, but federal personnel may, at their discretion, complete the adoption form for the requesting state or local agency. Information concerning any state forfeiture proceedings instituted against the property must be detailed in the adoption form. A federal agency should not adopt a seizure while the property remains subject to the jurisdiction of a state court.[9] The state or local agency also may be required to complete the federal agency's standard seizure form as part of the adoption request. All information provided must be complete and accurate. Copies of any investigative reports and of any affidavits in support of warrants pertinent to the seizure must be attached for review.[10] When requesting adoption, state and local agencies must certify that the request complies with state law, as some states prohibit the referral of certain categories of seizures for federal forfeiture.

State and local agencies are required to complete the adoption form only when seeking federal adoptions. Seizures made as part of joint federal-state investigations or pursuant to federal seizure warrants are not considered adoptions. Agency participants must review the circumstances of a seizure by state and local law enforcement to determine whether it is a federal adoption.

A federal forfeiture proceeding may appropriately arise in the following circumstances and is not considered an adoption:

(1)   seizures by state or local authorities who are federally deputized task force officers (TFOs) working with federal authorities on a joint task force (*see* Section II.B.1.a below); or

(2)   seizures by state or local authorities that are the result of a joint federal-state investigation or were coordinated with federal authorities as part of an ongoing federal investigation (*see* Section II.B.1.b below).

### B.1.a    Seizure by a federal task force officer

This category of seizure generally occurs when an asset is seized by a sworn law enforcement officer employed by a state or local law enforcement agency but assigned either part-time or full-time to a federal law enforcement agency as a TFO. In order for a seizure to qualify as a TFO seizure, the following criteria must be met:

• The TFO must have been a credentialed, deputized federal law enforcement officer at the time of the seizure;

• The TFO must have been assigned to a task force operated by a federal law enforcement agency at the time of seizure; and

---

[9]  *See* Sec. IV below.

[10]  State or local agencies may redact from investigative reports information which may disclose the identity of a confidential informant. However, disclosures ultimately may be required if information provided by the informant is needed to establish the forfeitability of the property in a subsequent judicial forfeiture proceeding.

- The TFO's actions and authorizations for those actions at the time of seizure were related to task force duties and were not conducted solely pursuant to duties and authorizations as a state or local law enforcement agent.

If the above criteria are not met, the forfeiture of an asset seized by a TFO may nonetheless meet the criteria for a joint investigation seizure (*see* Section II.B.1.b below). There is no circumstance that would warrant a blanket "federalization" of every seizure made by a state or local law enforcement agency simply because the state or local agency has an officer assigned to a federal task force or initiative (e.g., High Intensity Drug Trafficking Area (HIDTA) or Organized Crime Drug Enforcement Task Force (OCDETF)).

### B.1.b   Seizure by a state or local law enforcement officer as part of a joint investigation

This category of seizure occurs when an asset is seized under the following circumstances:

- Seizure is made at the direction of, or in coordination with, a sworn federal law enforcement officer in conjunction with a pre-existing federal criminal investigation; or

- Seizure seizure is made as part of a pre-existing joint federal-state or federal-local criminal investigation in which a federal law enforcement agency is actively participating for the purpose of pursuing federal criminal charges against one or more specific persons or entities; or

- Seizure is made as part of a pre-existing joint federal-state or federal-local criminal investigation in which a federal law enforcement agency is actively participating and the seizure arose from the joint investigation.

It can be appropriate to use state or local law enforcement officers to conduct seizures based on probable cause obtained during the course of a federal investigation.

In order for a seizure to qualify as a joint-investigation seizure, the following criteria generally must be met:

- The federal law enforcement agency had advance notice that the seizure would be made;

- The federal law enforcement agency concurred with the seizing state or local law enforcement agency that the seizure was appropriate and in furtherance of the goals of the relevant federal criminal investigation; and

- There was an open federal criminal investigation in which federal agencies were participating in at the time of seizure.

### B.2   Federal law enforcement agency review

The adopting federal agency must consider adoption requests promptly.[11] Absent exceptional circumstances, the request for adoption must be approved prior to the transfer of the property to federal custody.

---

[11]   *See also* Sec. II.B.3 below.

Only an attorney (e.g., the agency's office of chief counsel or other legal unit) outside the chain-of-command of operational officials may approve a request for adoption. The attorney review shall verify that:

(1)    the property is subject to federal forfeiture;

(2)    the state or local law enforcement agency has provided sufficient information about the probable cause determination justifying the seizure;

(3)    the property is not subject to the jurisdiction of a state court;

(4)    there is no other legal impediment to a successful forfeiture action; and

(5)    the state or local law enforcement agency has certified that the adoption complies with state law and that the appropriate state turnover order has been obtained, if applicable.

Federal law enforcement agencies will normally secure attorney review through their own offices of chief counsel or other legal unit but—at their discretion—may request that a federal prosecutor conduct this review. Any further review processes established in the future for federal seizures will also apply to adoptive seizures.

### B.3   Timing

Federal law requires agencies to commence administrative forfeiture proceedings by sending written notice to interested parties "not more than 90 days after the date of seizure by the state or local law enforcement agency."[12] In order to give individual property owners an opportunity to challenge the seizure as soon as practicable, the Department will expedite federal agencies' decisions regarding adoptions and their provision of notice to interested parties. State and local law enforcement agencies must request federal adoption within 15 calendar days following the date of seizure. The adopting federal agency must send notice to interested parties within 45 days of the date of seizure. These time limitations may be extended for good cause by the supervisory forfeiture counsel (or higher-level official) of the adopting agency, provided that such extensions are documented in writing and include a description of the circumstances justifying the extension. Any such extensions remain subject to statutory time limits pursuant to 18 U.S.C. § 983(a)(1)(A)(iv).

## III.   Cases Initiated by a U.S. Attorney Directly with State and Local Law Enforcement without Federal Agency Involvement

As a general rule, a lead federal seizing agency is required to be involved in a case. However, there are occasions when a federal agency declines involvement or federal prosecutors partner with state and local law enforcement directly and no federal seizing law enforcement agencies are involved.

### A.   Direct adoption by the U.S. Attorney

If no federal agency will adopt property seized by a state or local law enforcement agency, and the U.S. Attorney wants to include the property in a judicial forfeiture, the U.S. Attorney must request that the Money Laundering and Asset Recovery Section (MLARS) authorize direct adoption of the seizure.[13]

---

[12]   *See* 18 U.S.C. § 983(a)(1)(A)(iv); *see also* Chap. 5, Sec. II.B.1 of this *Manual*.

[13]   For direct referral of assets that do not qualify for adoption, *see* Sec. III.B below.

In order to receive approval for a proposed direct adoption, the U.S. Attorney must send a written request to MLARS. The request for direct adoption approval must include: (1) a written summary of the investigation; (2) a justification as to how the seizure qualifies as a federal case (3) a written declination from the federal seizing agency; (4) the current custody status of the asset; and (5) a copy of the state or local law enforcement adoption form.[14] MLARS may obtain input from the headquarters office of the seizing agency that declined to adopt the seizure.

MLARS shall notify the USAO and the U.S. Marshals Service (USMS) in that district when direct adoption is authorized. Where the property being adopted for federal forfeiture is a seized firearm, the state or local law enforcement agency that seized or is holding the firearm pending federal forfeiture is required to submit a tracing request to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Tracing Center (NTC) via eTrace, in accordance with the February 23, 2013, Attorney General Memorandum: "Tracing of Firearms in Connection with Criminal Investigations." Written acknowledgement from the state or local agency indicating that this action was completed is required before the USMS will accept custody.

### B.  Direct referral by the U.S. Attorney

In some instances, the USAO will partner directly with a state or local law enforcement agency regarding an asset that cannot be adopted because no seizure has occurred (i.e., money judgment, collection on a money judgment, real property).[15] If the U.S. Attorney wants to include the property in a judicial forfeiture, the USAO must not accept a direct referral from a state or local agency until a federal agency declines to process the asset for federal forfeiture. Once that happens, the U.S. Attorney must request that MLARS authorize direct referral of the asset. Prior MLARS approval is required in these instances to ensure proper communication and coordination between the USAO, state or local agency, and the USMS to process the asset and manage its liquidation and deposit into the Assets Forfeiture Fund (AFF).

In order to receive approval for a proposed direct referral, the U.S. Attorney must send a written request to MLARS. The request for direct referral approval must include: (1) a written summary of the investigation; (2) a justification as to how the seizure qualifies as a federal case; (3) a written declination from a federal seizing agency; and (4) the current custody status of the asset if a seizure has occurred. MLARS may obtain input from the headquarters office of the seizing agency that declined to process the asset for federal forfeiture. MLARS shall notify the USAO and USMS in that district when direct referral is authorized.

## IV.  Jurisdiction

### A.  Retention of custody by state or local agency during federal forfeiture proceedings

Where authorized by the USMS or Treasury, federal, state, or local agencies may maintain custody of designated assets pending forfeiture under a written substitute custodial agreement. Such agreements are contractual in nature and do not require district court approval. Substitute custodial agreements

---

[14]  The USAO is responsible for creating an "STL" adoption record in the Consolidated Asset Tracking System (CATS) for the asset before submitting a request to MLARS.

[15]  With regard to real property, Department officials should adhere to the Department's net equity thresholds for real property, (see Chap. 4, Sec. I.B.2 of this Manual) and in considering the forfeiture of personal residences where title or ownership lies with persons not implicated in illegal conduct. See Chap. 5, Sec. III.E.1.c. of this Manual.

shall detail requirements for proper storage and maintenance of specified assets under the care of the custodial agency. In all such cases, security of the assets and the preservation of their condition and value pending forfeiture is of primary concern. Substitute custodial agencies must provide USMS-approved secure storage for the specified assets and provide the USMS full access to the assets for inspection purposes on request. The USMS may terminate substitute custodial agreements at any time at its sole discretion if, in the sole determination of the USMS, a substitute custodian has failed to comply with any of the terms of the agreement.[16]

### B.  Concurrent jurisdiction

A federal forfeiture proceeding may not be initiated against property seized by state or local law enforcement while the property remains subject to the in rem or quasi-in-rem jurisdiction of a state court, as the court first assuming in rem jurisdiction over the property retains jurisdiction to the exclusion of all others.[17] In addition, the *Rooker-Feldman* doctrine acts as a jurisdictional bar to a federal court reconsidering matters finally decided by a state court, and this doctrine may be applicable in certain circumstances.[18] Finally, considerations of comity may counsel against a federal court asserting jurisdiction over an asset seized by the state even where there is no direct legal obstacle to federal in rem jurisdiction.

A state court may be deemed to acquire jurisdiction over property seized by a state or local agency in a variety of ways, including where a state or local agency seizes the property pursuant to a state search warrant or seizure warrant, where a state commences forfeiture proceedings against the seized property, where the property is subject to a state transfer order requirement or another state-imposed limitation on transfer of seized property for federal forfeiture, where a party files an action in state court seeking the return of the property, or even where a state or local law enforcement officer simply seizes the property in the absence of state process. If a state court has in rem jurisdiction over property, the state court must relinquish jurisdiction before any initiation of federal in rem forfeiture.

Assets seized pursuant to the authority of a state search or seizure warrant may be deemed to be within the actual or constructive in rem jurisdiction of the state court, thereby impeding federal adoption of those assets even in the absence of a formal turnover statute.[19] Where federal adoption is sought for assets seized through state process, federal prosecutors and agencies should be aware of state law and state practice concerning such assets, and may want to consider asking for the assistance of the appropriate state or local prosecutorial office in seeking an order from the state court either approving the transfer of the asset for adoption or formally releasing the asset from state jurisdiction.[20]

A number of states have statutes that require formal state court approval for the transfer or turnover of a state-seized asset for federal forfeiture. In these situations, the agency requesting to initiate federal

---

[16]  *See also* Chap. 10, Sec. II.C of this *Manual*.

[17]  *United States v. Timley*, 443 F.3rd 615, 627–28 (8th Cir. 2006).

[18]  *Id.* at 628 (*Rooker-Feldman* doctrine not applicable where the state court did not decide a transfer order proceeding on the merits).

[19]  In *Little v. Gaston*, 232 So.3rd 231 (Ala. Civ. App. 2017), the state appellate court held that assets seized pursuant to the authority of a state search warrant remained within the actual or constructive in rem jurisdiction of the court that had issued the search warrant, such that their provision for federal adoption was improper.

[20]  Quite often federal agents and federal TFOs will participate in the execution of a state search or seizure warrant. Assets seized by agents and TFOs pursuant to the authority of state process should normally be returned to the state court rather than taken in directly for federal forfeiture.

forfeiture, with the assistance of the appropriate state or local prosecutorial office, may be required to obtain a state court transfer order relinquishing jurisdiction and authorizing the transfer of the property to a federal law enforcement agency for the purpose of federal forfeiture.[21]

The turnover order must be obtained from the state court with jurisdiction over the seized property (i.e., the state court that issued the warrant allowing the seizure or before which the state forfeiture proceedings have been or could be commenced). The USAO should not seek such orders in state court, but may assist its state counterparts in doing so. Failure to obtain a transfer order may make it impossible for a federal court to take jurisdiction over the seized property in subsequent judicial forfeiture proceedings. In some cases, this may result in the dismissal or voiding of federal judicial forfeiture proceedings and the return of the property to the person from whom it was originally seized.

Some states have passed laws prohibiting the transfer of assets for federal forfeiture unless the asset exceeds a specific value, or unless other conditions are met, which may prevent or limit federal adoption of state-seized assets.

### C.  Use of anticipatory seizure warrants

If a state or local law enforcement agency commences a forfeiture action under state law, no federal forfeiture action may be commenced as long as the state court has in rem or quasi-in-rem jurisdiction over the subject property. If, however, the state or local authorities determine, for whatever reason, that the state action will be terminated before it is completed, and that the property will accordingly be released, or a federal seizing agency otherwise learns that the state court is about to order the release of property that is federally forfeitable, the property may be federally seized by obtaining an anticipatory seizure warrant from a federal judge or magistrate. The anticipatory seizure warrant must provide that it will be executed only after the state court has relinquished control over the property. For purposes of the notice requirements in 18 U.S.C. § 983(a)(1), property seized pursuant to an anticipatory seizure warrant in these circumstances is considered the subject of a federal seizure such that the period for sending notice of the forfeiture action is 60 days, commencing on the date when the anticipatory seizure warrant is executed.

However, given the rapidly changing landscape of state forfeiture laws described above, federal prosecutors must carefully consider whether an anticipatory federal warrant will create obligations that are directly inconsistent with state law, which may forbid state and local law enforcement from surrendering the asset for federal forfeiture.

---

[21]  State and local agencies are required to certify that they have obtained a turnover order where necessary. *See* Sec. II.A and II.B.2 above.

# Chapter 4:
# Real Property

## I.   Pre-forfeiture Considerations

All real property pre-seizure procedures rely upon the accurate calculation of value and the identification of ownership interests. While the U.S. Attorney's Office (USAO) works closely with the U.S. Marshals Service (USMS) district offices regarding pre-seizure and pre-forfeiture considerations for all types of assets, the USAO should coordinate closely with the USMS to address the unique issues that arise before and during forfeiture of real property.[1] Real property associated with an operating business,[2] for example, always presents unique issues requiring advance planning and coordination with the USMS. With regard to the management and disposal of assets seized by agencies operating under Department of the Treasury (Treasury) guidelines, please contact the appropriate property custodian. *See also* Chapter 10, Section I.B of this *Manual*. When the USAO identifies real property for forfeiture that is located in a different district, the USAO should consult with the district where the property is located to discuss any state-specific issues relating to the forfeiture.

### A.   General policy

The potential for substantial losses and other liabilities in forfeiting real property underscores the need for heightened planning and monitoring. If the USAO intends to forfeit real property that could create a net loss to the Assets Forfeiture Fund (AFF) for that property,[3] the Money Laundering and Asset Recovery Section (MLARS) must be consulted prior to initiation of any action in furtherance of the forfeiture. This policy is applicable to real property that the USMS projects will have, or will develop, a net loss to the AFF for that property after considering factors such as the costs of future maintenance, sale, and depreciation prior to forfeiture. Prosecutors must also obtain prior written approval from their U.S. Attorney before filing a civil forfeiture complaint against personal residences based on a facilitation theory.[4]

### B.   Real property valuation

In order to properly evaluate real property, the federal seizing agency and the USAO are required to consult with the USMS to discuss valuation products, lien information, occupancy issues, and other factors that may impact seizure and forfeiture decisions. Participating agencies must communicate with the USMS regarding information developed throughout the investigation that may assist the USMS with preparing an accurate estimate of valuation. The USAO and seizing agencies are responsible for providing the USMS with information obtained via subpoenas (such as mortgage payoff amounts) and other investigative tools, as well as any negotiated settlement agreements with

---

[1]   A general reference to *USMS* indicates the USMS district office. Reference to the USMS' Asset Forfeiture Division (AFD) indicates that USMS Headquarters should be contacted to obtain topical expertise and/or authority.

[2]   *See* Chap. 1, Sec. I.D.4 of this *Manual*.

[3]   *See* Sec. I.B.1 below and Chap. 1, Sec. I.D.1 of this *Manual*.

[4]   *See* Chap. 5, Sec. III.E.1.c of this *Manual*. For purposes of this policy, the term "personal residence" refers to a primary residence occupied by the titled owner(s).

lienholders to ensure that the USMS' net equity calculations are accurate.[5] Further consultation between participating agencies is required when seizing or forfeiting the property could create a net loss to the AFF for that property.[6] If multiple real properties are identified for forfeiture and/or more than one district is involved in the forfeiture, the USAO should consult with each USMS district office involved to develop a communication strategy between offices and to ensure adequate pre-seizure planning is conducted for properties located outside their district.

### B.1.  Net equity calculation

To determine ownership and the amount and validity of liens recorded against the real property, the USAO must order both a title report and a valuation[7] (appraisal) through the USMS district office as soon as practicable. Upon receiving these documents, the USMS will prepare a Net Equity Worksheet. A net equity minimum value must be calculated for each parcel of real property to determine whether the property is suitable for forfeiture. This analysis considers all potential expenses that may accrue from restraint through disposition, and contemplates market conditions, as well as existing clouds to title. Upon completing the calculation, the USMS will be able to recommend whether the real property meets established equity thresholds.

The most current equity information resides with the mortgagee. Pursuant to the Financial Right to Privacy Act of 1978, 12 U.S.C. § 3401 et seq., however, such information may only be obtained through use of a subpoena, or by agreement with the mortgagor.

### B.2.  Net equity thresholds

The established minimum net equity threshold for commercial/residential real property and vacant land is at least 20 percent of the appraised value, but in no circumstance less than $30,000. No property with a net equity of less than $30,000 should be considered for forfeiture, and individual districts may set higher thresholds to account for local real estate markets.

If the financial analysis indicates that the aggregate of all liens, mortgages, management costs and disposal costs approaches or exceeds the anticipated proceeds of sale, the USAO must either discontinue the forfeiture process, or acknowledge the potential for financial loss and document the circumstances that warrant the institution of the forfeiture action. Department of Justice (Department) officials should proceed with particular caution when deciding whether to waive the Department's net equity thresholds for real property.[8] If the USAO decides to continue the forfeiture process, consultation with MLARS and the Asset Forfeiture Management Staff (AFMS) is required.[9] In addition, MLARS will rely upon the USAO's documentation of the downward variation from the threshold, which must include a detailed explanation of the reason for variation. Following consultation with MLARS, if the USAO decides to continue with the forfeiture process: (1) MLARS

---

[5]  USMS will enter the information update in the Consolidated Asset Tracking System (CATS) on a continuing basis during the forfeiture process as expenses are incurred.

[6]  See Sec. I.B.2 below.

[7]  The USMS can recommend whether a Satellite Appraisal, Brokers Price Opinion, or Drive-By Appraisal is the appropriate type of instrument under the circumstances. Only when the Government has the legal right to enter property, or the consent of the property owner, may a comprehensive appraisal be obtained. In special circumstances, such as with high value or difficult to appraise property, the USAO may choose to engage the services of an appraiser with the necessary expertise.

[8]  See also Chap. 3, Sec. III.B of this Manual.

[9]  Under certain circumstances, the threshold may be waived where forfeiture will serve a compelling law enforcement interest. See Chap. 1, Sec. I.D.1 of this Manual.

and AFMS must be notified; and (2) approval from a supervisory-level official at the USAO must be obtained in writing, and an explanation of the reason must be noted in the case file.[10]

### B.3.  Use of a writ of entry

In order to document the current condition of a property and conduct a comprehensive appraisal during pre-seizure planning, the Government may require entry into the interior of a structure. The USAO may obtain a writ of entry based upon a finding of probable cause by the court. The district court has the authority to issue writs of entry in both civil and criminal forfeiture cases. *See generally* 18 U.S.C. § 983(j)(1) (in civil forfeiture cases, Government may move for restraining order and ask court to "take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture"); 21 U.S.C. § 853(e)(1) (in criminal cases, Government may seek restraining [or protective] order and ask court to "take any other action to preserve the availability of property...for forfeiture"). For a general discussion of writs, *see* Chapter 2, Section IV of this *Manual*.

### C.  Seizure

In general, real property is not seized[11] prior to forfeiture; nor is it served with an arrest warrant in rem.[12] Instead, the proper recording of a *lis pendens* pursuant to state law serves to inform the public that a Government action involving the real property has commenced.[13] For civil forfeiture cases, the Government files a complaint for forfeiture, posts notice of the complaint on the property, and serves notice on the property owner along with a copy of complaint. Actual seizure of the real property, absent exigent circumstances, occurs after the court issues an order of forfeiture in a civil case. *See* 18 U.S.C. § 985(b)(1).[14] With regard to criminal forfeitures, the USAO should work closely with the USMS in determining the proper timing to take real property into physical custody after entry of a preliminary order of forfeiture.[15]

For cases in which an ongoing business is targeted for seizure and the business entity owns real property subject to forfeiture, a *lis pendens* should be placed on the real property in conjunction with a restraining or protective order issued for other assets of the business.[16] The restraining or protective order should include language intended to prevent illegal activities from occurring on the real property pending forfeiture.

### D.  Title conveyance

Pursuant to 28 U.S.C. § 524(c)(9)(A), the Attorney General has the authority to warrant clear title upon transfer of forfeited real property. The authority to execute deeds and transfer title has been

---

[10]  *See* Chap. 1, Sec. I.D.1 and I.D.3.b.1 of this *Manual*.

[11]  Seizure indicates that the property is physically taken into custody or controlled by the Government.

[12]  Real property may be seized prior to the entry of a civil order of forfeiture only pursuant to 18 U.S.C. § 985(d)(1) and (2). *See also* Rule G(3) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

[13]  *See* Sec. II.B below.

[14]  The "Post and Walk" policy implemented following the Supreme Court's decision in *United States v. James Daniel Good Real Property*, 510 U.S. 43, 78 (1993), became irrelevant upon the enactment of 18 U.S.C. § 985. The current statute directs that a civil forfeiture case is commenced upon the filing of a complaint.

[15]  To avoid difficulties in obtaining title insurance and selling the property once forfeited, all filings and orders concerning real property shall include an accurate and complete property description.

[16]  *See also* Chap. 1, Sec. I.D.4 of this *Manual*.

delegated to the USMS pursuant to 28 C.F.R. § 0.156.[17] The USMS is responsible for determining the preferred means to transfer forfeited real property.[18] Despite the Attorney General having the authority to warrant clear title, the ability of the USMS to offer forfeited properties at market value is often predicated on obtaining a commercial title policy. Commercial title companies may often have more stringent noticing requirements, above those required by state or federal law, for issuing such title policies.

Real property may be transferred by a general warranty deed only in rare and exceptional circumstances. Any determination to transfer property by a general warranty deed must be approved by the USMS' Asset Forfeiture Division (AFD). The Attorney General's discretion to warrant clear title through the use of a general warranty deed may be exercised only in compelling circumstances.[19] The AFD shall also consider the cumulative potential liability that will accrue over time as a result of each successive use of a general warranty deed.

### E.  Contamination liability

#### E.1.  General policy

Certain federal and state statutory provisions may impose liability on the Government with regard to ownership of contaminated real property.[20] Consequently, extreme caution must be exercised in targeting real property for forfeiture if there are indications that the real property may be contaminated.

Real property that is contaminated or potentially contaminated with hazardous substances may be subject to forfeiture only upon determination by the U.S. Attorney in consultation with the seizing agency, USMS, AFMS, and MLARS. This policy is applicable to all forfeiture cases referred to the Department by any Government agency, regardless of the type or source of the hazardous substance(s) other than lead-based paint.

#### E.2.  Lead-based paint contamination

Real property that is federally owned, and for which the proposed use is residential, is subject to the regulations promulgated to implement the Lead-Based Paint Poisoning Prevention Act,[21] and the Residential Lead-Based Paint Hazard Reduction Act of 1992.[22] Residential property for which construction was completed on or after January 1, 1978, does not contain lead-based paint and is exempt.[23] Forfeited residential property constructed between January 1, 1960, and December 31, 1977, may be marketed and sold after complying with certain risk assessment and lead-based paint

---

[17]  The 28 C.F.R. § 0.156 delegation predates the Asset Forfeiture Program and applies to all court-ordered sales of property, not solely to forfeited property sales.

[18]  The type of deed is chosen by the USMS pursuant to existing contracts, regional preferences, and market indicators.

[19]  Such circumstances may exist where the financial advantage of offering a general warranty deed in a particular case, compared to the available alternatives, far outweighs both the potential cost of honoring the warranty and the potential effect of increased purchaser demand for general warranty deeds in future sales of other forfeited properties.

[20]  Although federal law may allow for transfer of contaminated real property without federal liability for cleanup,  applicable state law may continue to impose liability or render the real property unmarketable.

[21]  42 U.S.C. § 4821 et seq.

[22]  42 U.S.C. § 4851 et seq.; 24 C.F.R. § 35.100(a)(10).

[23]  24 C.F.R. § 35.115.

inspection.[24] If the sale is completed within 270 days of the final order of forfeiture, the Government is exempted from these abatement, risk assessment, and inspection requirements.[25] The Government may be required to undertake certain abatement actions of lead-based paint contamination for forfeited real property constructed prior to 1960.[26] Specific questions should be directed to the USMS' AFD.

## II.   Ownership and Notice

In order to satisfy the notice requirements of 18 U.S.C. § 985 and Rule G(4) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions, the USAO must identify all parties holding an interest in the real property.[27] The USMS has multiple types of title report products that are available based on the size and scope of the real property. The USAO may consult with the USMS to determine the type best suited to serve its needs.

### A.   Title search

The USAO must determine the identity of the borrower/purchaser, note-holder/mortgagee, and all others holding valid liens of record and the amount of each. To do so, the USAO or the seizing agency must request that the USMS order a preliminary title commitment. This preliminary title commitment identifies the original mortgagee and lienholders, and provides the amount of debt recorded against the real property. The preliminary title commitment also reflects whether the mortgage is registered with Mortgage Electronic Registration Systems (MERS). Additional notification of a forfeiture action must be provided if a mortgage servicer is registered with MERS.[28] The preliminary title commitment is prepared by a title company or an authorized title attorney on behalf of a title company.

If there has been a considerable lapse of time between the onset of an investigation and commencement of an ancillary proceeding or civil action,[29] the USAO must request an updated valuation and title search from the USMS.

### B.   *Lis pendens*

A *lis pendens* provides general notice that a property is involved in a pending civil or criminal legal action. A *lis pendens* typically is recorded in the real property records of the local jurisdiction. While recording a notice of a *lis pendens* is not a seizure of the real property,[30] it constitutes a cloud on the

---

[24]   USMS must inspect residences constructed from 1960 through 1978, but no abatement is required. 35 C.F.R. § 215.

[25]   "If a Federal law enforcement agency has seized a residential property and owns the property for less than 270 days," the regulations requiring the Government to inspect, assess and abate contamination shall not apply. 24 C.F.R. § 35.115(a)(10).

[26]   For pre-1960 construction, 35 C.F.R. § 210 allows the USMS to delegate the abatement, but not the inspection.

[27]   Examples include owners (pursuant to state law), mortgagees, lienholders, lessees, taxing authorities, business entities, trustees, and referees.

[28]   *See* Sec. III.C below. Mortgagees may not release private information about a mortgagor without notifying the mortgagor. In a civil case, the investigative agency may be able to issue an administrative subpoena to obtain detailed information from the mortgagee. In a criminal case, the USAO may use a grand jury subpoena to obtain an accurate mortgage balance. When a civil or criminal restraining order is entered, the USAO may seek to include language that directs lien holders to provide current payoff information.

[29]   Title reports and appraisals are considered current if dated not more than six months prior to the filing date of a charging instrument. It is recommended that an updated report be ordered before the issuance of a final order of forfeiture, in the event that more than six months has lapsed from the date of the most recent title report and appraisal.

[30]   *See* 18 U.S.C. § 985(b)(2).

title that could prevent the owner or claimant from succeeding in a disposal action, refinancing, or obtaining a secondary mortgage to reduce equity or avoid forfeiture.

In addition to federal law, actions involving real property are governed by state law. It is the responsibility of the USAO to ensure that a *lis pendens* is properly recorded in accordance with state law. The *lis pendens* may be recorded by the USAO, federal seizing agency, or USMS, as determined by the USAO. Duration of the *lis pendens* varies by state and may require periodic renewal.[31] The USAO is responsible for tracking all related recording deadlines and releasing the *lis pendens* when appropriate as governed by state law. If more than one USAO district is involved, the district that initiates the forfeiture action is responsible for tracking deadlines. When a parcel of real property is the subject of both a criminal and a civil forfeiture action, a separate *lis pendens* should be recorded in each action.

### C. Noticing the Mortgage Electronic Registration System (MERS)

MERS is a national electronic registration system that tracks the changes in servicing rights and beneficial ownership interests in residential mortgage loans on behalf of banks and other financial institutions[32] that service mortgages. While a title search may identify the original mortgage service provider, MERS captures the most current assignment of a mortgage instrument. Accordingly, providing notification of a forfeiture action involving real property with a MERS-registered mortgage constitutes notice reasonably calculated to apprise all parties holding an interest in the mortgage of the impending litigation. The USAO is required to provide notice directly to MERS concerning any forfeiture action involving MERS-registered real property. This requirement is in addition to providing notice to owners, lienholders, or third parties of record pursuant to Supplemental Rule G(4).

## III.  Third Party Interests

### A. Occupancy agreements for tenants

The seizing agency is responsible for determining whether a real property subject to forfeiture is occupied pursuant to a valid lease. In a criminal forfeiture action, a preliminary order of forfeiture must be entered before the Government may seek to enter into an occupancy agreement with tenants.[33] Once these obligations are met, and if deemed appropriate by the USAO, the USAO may advise the USMS to enter into an occupancy agreement, which may include the collection of rent, until forfeiture and disposition of the property.

### B. Business/corporate owners

Real property that is commercial or owned by a business entity may be subject to all policies that relate to the seizure/restraint of an ongoing business and/or assets.[34] In particular, the USAO must consult with MLARS prior to initiating a forfeiture against, seeking the seizure of, or moving to restrain an ongoing business.[35]

---

[31]  In Florida, for example, a *lis pendens* automatically expires after one year.

[32]  Not all financial institutions are members of MERS.

[33]  Civil forfeiture of real property precludes use of an occupancy agreement until the Government obtains a forfeiture order.

[34]  *See* Chap. 1, Sec. I.D.4 of this *Manual*.

[35]  *Id.*

When the Government seeks forfeiture of real property that is owned by a business, but not forfeiture of the business itself, all pre-forfeiture planning policies designated for real property as described in this chapter must be followed. The charging instrument (complaint or indictment) must identify the real property by address *and* legal description.[36]

### C.  Lienholders

The USAO must obtain a copy of the recorded mortgage instrument and the note that the mortgage secures. In the event that the Government is required to pay interest and penalties, the Department will recognize claims consistent with the terms of the note for recorded debt. The USAO is encouraged to require evidence of the payment history, including, but not limited to, fees, penalties, and escrows.

## IV.  Taxes and Penalties

### A.  Payment of state and local real property taxes

Notwithstanding the enactment of 18 U.S.C. § 983(d)(3), which bars assertion of the "innocent owner defense" recovery in certain civil forfeiture cases by persons who are not bona fide purchasers for value, it is Department policy that the Department pays state and local real property taxes that accrue up to the date of the entry of an order or judgment of forfeiture. The refusal to pay such taxes would draw the Department into conflict with state and local authorities, and would have the potential to complicate the interlocutory or post-judgment sale of real property. For the same reasons that it is the Department's policy in civil forfeiture cases to pay state and local taxes even if those tax liabilities accrue after the events giving rise to forfeiture, it is the Department's policy to also pay such taxes in criminal forfeiture cases.

### B.  Payment of interest and penalties on real property taxes[37]

To ensure consistent national treatment of the payment of interest and penalties on state and local taxes that have accrued on forfeited real property up to the date of entry of the final order of forfeiture, the Department will pay:

(1)   interest on overdue taxes that have accrued up to the date that the final order of forfeiture is entered and not thereafter; and

(2)   penalties on overdue taxes until the date of entry of the final order of forfeiture in the event that this does not conflict with local taxing authority requirements. If taxing authorities require a greater period for penalties, the Department will comply. A final order must be properly recorded.

Outstanding real property taxes (and interest and penalties thereon) may only be paid up to the amount realized from the sale of forfeited real property.

---

[36]  Failure to properly identify the parcel subject to forfeiture may prevent timely disposal or may lead to a dismissal of the forfeiture.

[37]  With regard to interest and penalties on real property taxes of forfeited real property seized by agencies operating under Treasury guidelines, please *see* Treasury Executive Office for Asset Forfeiture (TEOAF) Directive No. 12.

## V.   Real Property Transfers

The Attorney General may dispose of property "by sale or any other commercially feasible means."[38] In certain circumstances, the Attorney General may execute a non-sale transfer of federally forfeited real property for official use; to meet other federal needs; to serve state recreational, preservation or historic purposes; or to assist a state or local government, or public or non-profit agency, in carrying out educational, treatment, rehabilitation, housing, and other community-based initiatives.[39]

Applications for transfer must be provided to MLARS for review and recommendation before being submitted for final approval by the Attorney General (or a designee). Presently, five mechanisms exist to accommodate a non-sale transfer of forfeited real property. Although eligibility varies by program, the following requirements apply to all transfers:

(1)   the forfeiture must be final and no longer subject to appeal, clear title must be vested in the Government, and the real property must be vacant.

(2)   the requested use of the real property must comply with all applicable laws, including zoning and land-use restrictions.

(3)   environmental issues and costs of remediation must be addressed.

The five programs through which forfeited real property can be transferred are as follows:

### A.   Equitable sharing transfer for official use

The Attorney General may transfer forfeited real property to state and local law enforcement agencies for law enforcement use through the Equitable Sharing Program (Program) based upon the agency's participation in the underlying case, pursuant to 18 U.S.C. § 981(e)(2), 21 U.S.C. §§ 853(i)(4) and 881(e)(1)(A).[40] In order to qualify as a recipient, the state or local law enforcement agency must be an entity in good standing that participates in the Program, must have substantially participated in the investigation leading to the seizure, and must articulate a compelling law enforcement need for the real property that comports with established permissible uses. Further, the recipient must enter into a memorandum of understanding (MOU) with all parties to the transfer, and agree to use the real property as proposed for a specified period of time. Where appropriate, the MOU shall include a provision for reversion of title to the United States if the property is not used for the agreed upon purposes.

Transfers are initiated through an Application for Transfer of Federally Forfeited Property (Form DAG-71) provided by the requesting state or local law enforcement agency to the federal seizing agency. The federal seizing agency supplies the USAO with documentation supporting the transfer with the Form DAG-71. All transfer requests ultimately require the approval of the Assistant Attorney General for the Criminal Division (AAG), based upon the recommendation provided by MLARS.

---

[38]   *See* 21 U.S.C. §§ 853(h) and 881(e).

[39]   *See* *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018), Sec. V.H., available at: www.justice. gov/criminal-mlars/publications

[40]   While 21 U.S.C. § 853(i) governs forfeitures under the drug abuse prevention and control laws, it is incorporated by reference in 18 U.S.C. § 982(b)(1), which extends forfeiture authority to most other criminal offenses.

### B.  Weed & Seed Initiative

Real property forfeited for drug violations pursuant to 21 U.S.C. §§ 853(i)(4) and 881(e)(1)(A) may be eligible for transfer to the state or local law enforcement agency[41] that participated in the seizure or forfeiture of the real property, to then transfer to public agencies and non-profit organizations. The proposed use must support community-based drug treatment, crime prevention, and education; improve housing; enhance job skills; or perform other activities that will substantially further neighborhood rehabilitation and rejuvenation.

The transfers are initiated through a Form DAG-71 accompanied by a request from the U.S. Attorney of the district in which the real property is located. The real property must have an appraised value that is not greater than $50,000, or an appraised value of not more than $200,000 if the net equity value of the real property is $50,000 or less. The intended recipient must be vetted by the USAO, enter into an MOU with all parties to the transfer, and agree to use the real property as proposed for a period of five or more years. All transfer requests ultimately require the approval of the Deputy Attorney General (DAG), based upon a recommendation provided by MLARS.

### C.  Operation Goodwill

The Attorney General is authorized to transfer real property of limited or marginal value to a state or local government agency, or to its designated contractor or transferee, for use in support of community-based revitalization programs. *See* Pub. L. 108-199, Div. B, Title I, § 108, 118 Stat. 61 (Jan. 23, 2004) (reprinted in the "Historical and Statutory Notes" for 28 U.S.C. § 524). Such programs include drug abuse treatment, drug and crime prevention, education, housing, job skills training, and other community-based health and safety programs.

To be eligible, the property must have an appraised value of $50,000 or less, or have an appraised value of $200,000 or less if the net equity value of the real property is $50,000 or less.[42] The recipient must be vetted by the USMS, meet Operation Goodwill Program Guidelines, enter into an MOU with all parties to the transfer, be approved by the USMS' AFD, and use the real property as proposed for a period of five or more years. These transfers require the approval of the Attorney General, based upon the recommendation provided by MLARS. USAOs should contact the USMS' AFD with questions regarding the Operation Goodwill Transfer Program.

### D.  Federal component transfers

Any federal agency component may request the transfer or retention of forfeited real property pursuant to 21 U.S.C. §§ 853(i)(4) and 881(e)(1)(A),[43] and 18 U.S.C. § 981(e)(1).[44] A Department agency may request the transfer in order to use the real property for a law enforcement purpose. Non-Department agencies may request that real property be transferred to serve a significant and continuing federal purpose. There are no valuation limitations for eligibility; however, financial

---

[41]  *See* 18 U.S.C. § 981(e)(1) and (2), and 21 U.S.C. § 881(e)(1)(A).

[42]  The valuation limitation may be waived if the USMS and USAO determine that compelling law enforcement circumstances exist to warrant the transfer.

[43]  The Customs law provisions for disposition of forfeited property are incorporated by reference. *See* 19 U.S.C. § 1616a(c)(1)B)(i).

[44]  Any federal agency component requesting the transfer or retention of forfeited real property must have statutory authority to receive the real property.

impact to the AFF is factored into the approval decision. All transfer requests ultimately require the approval of the DAG, based upon the recommendation provided by MLARS.

### E.  Governor's request for historic, recreational, or preservation purposes

Pursuant to 21 U.S.C. § 881(e)(4)(B), the governor of a state in which forfeited real property is located may request that the Attorney General transfer the real property to the state. Real property is eligible only if it is used by the state as a public area reserved for recreational or historic purposes, or for the preservation of the real property's natural condition. The state official seeking a transfer must contact the USAO, which, in consultation with the USMS and the federal seizing agency, will ensure that all specific program requirements are satisfied.

The recipient state must enter into an MOU with all parties to the transfer, and agree to use the real property as agreed in perpetuity. All transfer requests ultimately require the approval of the DAG, based upon the recommendation provided by MLARS.

# Chapter 5:
# Administrative and Judicial Forfeiture

## I.   Overview

### A.  Seized property eligible for forfeiture should be forfeited

It is Department of Justice (Department) policy that when a statute authorizes forfeiture, its agencies and components obtain title to and dispose of such property pursuant to administrative or judicial forfeiture proceedings wherever practical.

### B.  Forfeiture should follow the prosecution

For legal and practical reasons, it is Department policy that regardless of whether a federal, state, or local law enforcement authority seizes property subject to forfeiture, forfeiture proceedings against that property should follow the criminal prosecution.[1]

A state forfeiture action that runs parallel to a pending federal criminal investigation or prosecution not only risks jeopardizing the federal proceedings, but may also create unnecessary confusion among potential claimants and law enforcement authorities. Federal administrative or judicial forfeiture should be pursued absent extraordinary circumstances where there is a pending federal criminal investigation or prosecution.

Under certain circumstances, however, state forfeiture proceedings may be appropriate where the investigation or prosecution is federal in nature. These circumstances include but are not limited to the following:

(1)   state authorities have commenced litigation against, conducted substantial litigation in, or concluded forfeiture proceedings against an asset seized before the federal agency joined an investigation.

(2)   an existing memorandum of understanding (MOU) between state and federal authorities provides for different procedures for effectuating seizures and forfeitures.

(3)   state or local authorities seized an asset, a turnover order is required by law to pursue federal forfeiture of it, and agency counsel and the federal prosecuting official elect not to seek such an order.

(4)   state or local authorities seized an asset, a turnover order is required by law to pursue federal forfeiture of it, and state court issues an adverse order, and the local prosecuting attorney, agency counsel, and the federal prosecuting official conclude that the public interests are best served by pursuing the state forfeiture.

(5)   the seized asset does not meet the Department's minimum monetary thresholds.

(6)   the pertinent federal prosecuting official has reviewed the case, declined to initiate forfeiture proceedings, and approved a referral for state forfeiture.

---

[1]  *See* Chap. 3 of this *Manual* for a full discussion of issues involving adoptive forfeitures.

When a federal agency believes a state forfeiture is appropriate, referring an asset for state forfeiture must be discussed with agency counsel and the federal prosecuting official responsible for asset forfeiture. If a federal agency refers significant assets for state forfeiture after a determination to seek federal prosecution has been made and without the prior consultation discussed above, a federal prosecuting official may decline to go forward with the federal prosecution.

In any event, when a state forfeiture relates to a federal criminal prosecution, federal equitable sharing decisions should account for both state and federal forfeitures in the investigation. Consequently, reviewing state and federal forfeitures stemming from a single investigation should be reviewed collectively before federal equitable sharing recommendations and decisions are made.

## II.   Administrative Forfeiture Guidelines

As discussed more fully in Section A.2 below, properties subject to administrative forfeiture are generally be forfeited administratively. The Civil Asset Forfeiture Reform Act of 2000 (CAFRA),[2] increased the speed and efficiency of uncontested forfeiture actions while ensuring that administrative forfeiture operates fairly. CAFRA also reflects Congressional confidence in the fairness and due process safeguards that are built into applicable administrative forfeiture laws. Consequently, administrative forfeiture should be pursued wherever possible/practical.

### A.   Scope of property subject to administrative forfeiture

In general, property subject to administrative forfeiture includes:

(1)   monetary instruments as defined by statute and implementing regulations[3] in any amount, and

(2)   personal property, including but not limited to vehicles, transporting conveyances,[4] jewelry, art, furniture, and antiquities valued at less than or equal to $500,000.[5]

(3)   a vessel, vehicle, or aircraft used to import, export, transport, or store any controlled substance or listed chemical.

(4)   merchandise the importation of which is prohibited.

---

[2]   Pub. L. 106-185, § 10, Apr. 25, 2000, 114 Stat. 202.

[3]   *See* 31 U.S.C. § 5312(a)(3) (United States coins and currency; coins and currency of a foreign country, travelers' checks, bearer negotiable instruments, bearer investment securities, bearer securities, stock on which title is passed on delivery, and similar material outlined in 31 C.F.R § 1010.100(dd), the applicable regulation; and checks, drafts, notes, money orders, and other similar instruments which are drawn on or by a foreign financial institution and are not in bearer form as outlined in that same regulation) and 31 C.F.R § 1010.100(dd) (designating currency; traveler's checks in any form; all negotiable instruments, including personal checks, business checks, official bank checks, cashier's checks, third-party checks, promissory notes as defined in the Uniform Commercial Code, and money orders, in bearer form, endorsed without restriction, made out to a fictitious payee, or otherwise in such form that title thereto passes upon delivery; incomplete instruments, including personal checks, business checks, official bank checks, cashier's checks, third-party checks, promissory notes as defined in the Uniform Commercial Code, and money orders, signed but with the payee's name omitted; and securities or stock in bearer form or otherwise in such form that title thereto passes upon delivery).

[4]   "Transporting conveyances" include "seized vessel, vehicle, aircraft, merchandise, or baggage." 19 U.S.C. § 1607.

[5]   Cryptocurrency valued at less than or equal to $500,000 may be forfeited administratively. Although any amount of cryptocurrency may be forfeited judicially, cryptocurrency valued at more than $500,000 must be forfeited judicially. The value of cryptocurrency is determined at the date of seizure. *See* Chap. 2, Sec. V.B of this *Manual* for more guidance regarding the seizure and forfeiture of cryptocurrency.

In contrast, administrative forfeiture is not authorized for the following classes of property:

(1)   real property;[6]

(2)   personal property valued at more than $500,000;[7] and

(3)   funds seized from a bank account in an amount of more than $500,000;[8] and

(4)   property subject to forfeiture pursuant to a statute that does not incorporate the Customs laws.[9]

### A.1   Practical and/or policy considerations can override the preference for administrative forfeiture

From time to time policy and/or practical circumstances militate in favor of foregoing administrative forfeiture in favor of civil or criminal judicial forfeiture. These circumstances can include the following:

(1)   when two or more items of personal property (not including monetary instruments) have a collective appraised value of $500,000 or more, a common owner, and are subject to civil forfeiture pursuant to the same statutory authority and on the same factual basis, seeking judicial forfeiture of the items in a single action is preferred.

(2)   where the items subject to forfeiture include some that can be forfeited administratively and others that must be forfeited judicially, the forfeitures may be combined in a single judicial action.

(3)   when pursuing administrative forfeiture might create the appearance that the Government is circumventing the time limits in 18 U.S.C. § 983(a), the forfeiture should be done judicially, as explained further in Section I.B.2 below.

(4)   when the U.S. Attorney[10] and the seizing agency agree that the forfeiture should proceed judicially in the first instance, administrative forfeiture is unnecessary.

(5)   as explained further in Section I.D below, when the U.S. Attorney requests that the seizing agency suspend the administrative forfeiture in favor of criminal judicial forfeiture and the seizing agency agrees to do so, the forfeiture may be pursued exclusively as part of the criminal case.

---

[6]   *See* 18 U.S.C. § 985.

[7]   *See* 19 U.S.C. § 1607(a).

[8]   Title 31, United States Code, section 5312(a)(3) defines "monetary instruments" as currency, traveler's checks, various forms of bearer paper, and "similar material." Neither that statutory definition nor the parallel definition in the applicable regulations encompasses the funds in a bank account. *See* 31 C.F.R 1010.100(dd) (eff. Mar. 1, 2011) (formerly § 103.11(u)) (defining monetary instruments). Consequently, funds seized from a bank account do not qualify as monetary instruments for the purposes of the exception to the $500,000 cap on administrative forfeitures.

[9]   *See, e.g.*, 18 U.S.C. § 492 (relating to counterfeiting).

[10]   References to the "U.S. Attorney" include other authorizing officials responsible for oversight of Criminal Division trial attorneys or Department components.

### A.2 The method of seizure does not affect the availability of administrative forfeiture

The overwhelming majority of agencies obtain custody of property that becomes the subject of administrative forfeiture proceedings using civil seizure warrants or valid warrantless seizures. Nonetheless, no bar, statutory or otherwise, prevents an agency from pursuing administrative forfeiture of property seized pursuant to a criminal seizure warrant issued pursuant to 21 U.S.C. § 853(f).[11]

## B. Administrative forfeiture notice deadlines

Both due process and Congressional intent demand that the United States make reasonable efforts to notify interested persons that a non-judicial forfeiture action has commenced. Toward that end, Congress enacted statutory deadlines to ensure that owners and other interest holders in seized property receive prompt notice of the right to contest a forfeiture, which includes guidance on the procedures for doing so.[12]

Although the pertinent statute authorizes delaying notice under limited circumstances, law enforcement agencies should seek extensions of notice deadlines only when necessary and in the manner described in the statute. *See* 18 U.S.C. § 983(a)(1)(B) and (C).

### B.1 18 U.S.C. § 983(a)(1)—The default rules

Section 983(a)(1) outlines the deadlines and other guidelines for notifying potential claimants of administrative forfeiture proceedings instituted against property seized for forfeiture. Section 983(a)(1)'s deadlines do not apply, however, to seizures of property to be used strictly for evidence, seizures undertaken only pursuant to an exclusively criminal seizure warrant, and seizures made pursuant to a statute that makes administrative forfeiture unavailable.

Pursuant to § 983(a)(1)(i), a federal agency that seizes property for forfeiture must send "written" notice to all known, interested parties "as soon as practicable" but no later than 60 days after the seizure date. *See* 18 U.S.C. § 983(a)(1). Section 983(a)(1)(A)(iv) extends that deadline to 90 days in cases where the forfeiture is adopted from a state or local law enforcement agency. In cases where an agency learns of a party's interest or identity after the date of the federal seizure or turnover from a state or local agency, but before the administrative forfeiture is effective, the agency must dispatch notice to the newly-identified interest holder within 60 days of the discovery. *See* 18 U.S.C. § 983(a)(1)(A)(v).

---

[11]  Most civil forfeiture statutes authorize the seizing agency to forfeit property administratively in accordance with the Customs laws. *See, e.g.*, 18 U.S.C. § 981(d) and 21 U.S.C. § 881(d) (incorporating the provisions of 19 U.S.C. § 1602 et seq. into the civil forfeiture statutes). Nothing in the incorporated provisions of Title 19 limits administrative forfeiture to property seized pursuant to a particular kind of seizure warrant. To the contrary, 19 U.S.C. § 1603(a) provides that property may be seized for administrative forfeiture "upon process issued in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure [i.e., Rule 41], [or] any seizure authority otherwise provided by law." *See also* 18 U.S.C. § 981(b)(2) (allowing for seizures made pursuant to a warrant "obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure"). Thus, nothing in the Customs laws themselves precludes instituting administrative forfeiture proceedings when property is seized pursuant to a criminal seizure warrant issued under 21 U.S.C. § 853(f).

[12]  Although federal law gives agencies up to 90 days to send notice to interested parties in the case of adoptive forfeitures, Attorney General Order No. 3946-2017, "Federal Forfeiture of Property Seized by State and Local Law Enforcement Agencies" (July 19, 2017), requires them to send notice not later than 45 days after seizure, unless a senior official at the federal agency approves such an extension (available at: www.justice.gov/criminal-mlars/adoptions-policy). *See* Chap. 3, Sec. II.B.3 of this *Manual*.

### B.2   Administrative forfeiture proceedings arising from criminal seizure warrants should ordinarily follow 18 U.S.C. § 983(a)(1)'s default rules

By its terms, 18 U.S.C. § 983(a)(1)'s notice deadlines apply only to "nonjudicial civil forfeiture proceedings under a civil forfeiture statute." *See* 18 U.S.C. § 983(a)(1)(A)(i). Because the statutory provision authorizing criminal seizure warrants, 21 U.S.C. § 853(f), is in a statute specifically designated as a criminal forfeiture statute, 18 U.S.C. § 983(a)(1)'s deadlines do not apply.

Nonetheless, routinely commencing administrative forfeiture proceedings against property seized with criminal process more than 60 days after seizure could create an appearance of misusing criminal forfeiture process to circumvent CAFRA's deadlines and frustrate Congressional intent. Consequently, absent unusual circumstances, agencies should send notice of administrative forfeiture proceedings against property seized pursuant to an exclusively criminal seizure warrant within the deadlines that 18 U.S.C. § 983(a)(1) would have imposed had the seizure occurred pursuant to a civil seizure warrant. If an agency does not send timely notice, it should refer the case to the U.S. Attorney for civil or criminal judicial proceedings in the manner described in Section I.B.4 below.

Despite the strong preference for adhering to the civil forfeiture statute's deadlines even when 18 U.S.C. § 983(a)(1) does not apply, rare circumstances could warrant instituting administrative forfeiture proceedings against property seized with exclusively criminal process more than 60 days after seizure (for example, a case where a defendant agrees to forfeit property administratively as part of a plea agreement).

Generally, decisions to pursue an administrative forfeiture of property seized with criminal process outside the deadlines that would have applied had the property been seized civilly should be extremely rare.

### B.3   Exceptions to the default rules

Three exceptions can provide relief from 18 U.S.C. § 983(a)(1)'s notice deadlines. The first, which requires exceptional circumstances, takes the form of an extension granted by a designated official within the seizing agency. The second exception, which also requires exceptional circumstances, consists of an extension granted by a federal court. The third exception is known as the "Customs carve-out." All three are discussed below.

### B.3.a   30-day seizing agency extension

Title 18, United States Code, section 983(a)(1)(B) authorizes designated officials within a seizing agency to issue a limited waiver of the 60-day notice deadline under exceptional circumstances. Outlined in § 983(a)(1)(D)(i)–(v), those exceptional circumstances are limited to situations where a reasonable belief exists that supplying notice may have an adverse result, including endangering the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, intimidation of a potential witness, or "otherwise seriously jeopardizing an investigation or unduly delaying a trial."

All extensions issued under § 983(a)(1)(B) must be written, describe the exceptional circumstances warranting the waiver, and be included and maintained in the administrative forfeiture case file. Moreover, any such waiver is valid for no more than 30 days, and any additional extension requires a judicial officer's approval. *See* 18 U.S.C. § 983(a)(1)(C).

### B.3.b   60-day federal court extension

Should a seizing agency's personnel conclude that continuing extraordinary circumstances warrant extending the 18 U.S.C. § 983(a)(1) notice deadline beyond the 30 days that its designated agency official(s) may grant, a federal court order is required. *See* 18 U.S.C. § 981(a)(1)(C). Obtaining such an order requires a motion filed by a concurring government prosecutor that is supported by the agency-designated official's written certification that extraordinary circumstances described in 18 U.S.C. § 983(a)(1)(D) continue to warrant delaying notice. *See* 18 U.S.C. § 981(a)(1)(C).

If the court concurs, any order that it issues may extend the deadline for no more than 60 days. Although the statute does not limit the number of extension orders a court may grant, the Government should remain cognizant that successive motions for extensions are contrary to policies favoring prompt notice to stakeholders and conducting expeditious forfeiture proceedings.

### B.3.c   The Customs carve-out

Although CAFRA imposed strict deadlines and notice requirements in the overwhelming majority of federal civil asset forfeiture proceedings, Congress expressly exempted administrative forfeiture proceedings commenced pursuant to the following five classes of civil forfeiture statutes from 18 U.S.C. § 983(a)'s notice deadlines:

- the Tariff Act of 1930 and all other civil forfeiture provisions codified in Title 19 of the U.S. Code,[13] statutes that are ordinarily enforced by Customs and Border Protection (CBP) and Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI);

- the Internal Revenue Code of 1986;

- the Federal Food, Drug, and Cosmetic Act, found at 21 U.S.C. § 301 et seq.;

- the Trading with the Enemy Act, found at 50 U.S.C. § 4301 et seq., the International Emergency Economic Powers Act (IEEPA), found at 50 U.S.C. § 1701 et seq., and the North Korea Sanctions Enforcement Act of 2016[14]; and

- Section 1 of Title VI of the Act of June 15, 1917, 40 Stat. 233, pertaining to unlawful exportation of war materials pursuant to 22 U.S.C. § 401.

*See* 18 U.S.C. § 983(i).

### B.4  Forfeiture proceedings to rectify inadvertent violations of 18 U.S.C. § 983(a)'s deadlines

Failure to comply with 18 U.S.C. § 983(a)(1) deadlines[15] triggers § 983(a)(1)(F), which provides as follows:

> If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted,

---

[13]  The reference to forfeitures commenced under Title 19 is to cases in which Title 19 provides the substantive basis for the forfeiture, not cases in which the procedures in Title 19 are incorporated into other forfeiture statutes. *See, e.g.,* 18 U.S.C. § 981(d).

[14]  Pub. L. 114-122, Feb. 18, 2016, 130 Stat 93.

[15]  The policies and procedures described in this section apply not only to 18 U.S.C. § 983(a)(1)'s deadlines for sending notice of administrative forfeiture proceedings but also to § 983(a)(3)'s deadlines for filing civil forfeiture actions after receipt of a claim in administrative proceedings.

*the Government shall return the property* to that person *without prejudice to the right of the Government to commence a forfeiture proceeding at a later time*. The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.
(Emphasis added.)

This provision shows Congress's intent to ensure that seized property does not remain in the Government's possession indefinitely without giving interest holders an opportunity to contest the forfeiture in court. Consequently, absent extraordinary circumstances, when § 983(a)(1)(A)'s applicable notice deadlines pass without the United States initiating judicial forfeiture action of any kind, the property at issue must be returned to the person from whom it was seized.

Nonetheless, 18 U.S.C. § 983(a)(1)(F) is not without ambiguity. For instance, although it explicitly reserves the Government's option to commence "a forfeiture proceeding" against property as to which an agency inadvertently missed a notice deadline "at a later time," § 983(a)(1)(F) leaves unclear whether forfeiture can be accomplished in a new administrative proceeding or whether a civil or criminal judicial action is required. Moreover, § 983(a)(1)(F) is silent as to whether the Government may seize property a second time after returning it to an owner when it commences whatever new proceeding is required. Absent extraordinary circumstances, it is the Department's policy not to pursue further administrative forfeiture proceedings against property returned pursuant to § 983(a)(1)(F). Specifically, returning property to a property owner after the Government has missed a notice deadline, only to re-seize the property and institute a "new" administrative proceeding with correspondingly "new" deadlines can create the appearance of an attempt to circumvent applicable statutory deadlines. Consequently, absent extraordinary circumstances, once the Government misses § 983(a)(1)(A)'s notice deadline for an administrative forfeiture proceeding and has returned the property pursuant to § 983(a)(1)(F), no new administrative forfeiture should be commenced against that same property based on the original violation.

Thus, when an agency and a federal prosecutor agree that circumstances warrant pursuing forfeiture of property despite a missed deadline, such forfeiture should be pursued pursuant to a judicial action, civil, criminal, or both. To institute a criminal judicial action, the Government may name the property in an indictment or information and obtain a criminal seizure warrant, a restraining order, or some other order under 21 U.S.C. § 853(e). To institute a civil judicial action, the Government must file a complaint, obtain an arrest warrant in rem or otherwise restrain the property pursuant to Rule G(3)(b) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions, and execute that warrant to ensure that it has a lawful basis for maintaining custody of the property pending resolution of the case. Thereafter, pursuant to the newly-executed civil or criminal process, the Government should be authorized to maintain custody and control over seized property pending resolution of any claims.

The Government does not have to release the property and then re-seize it, so long as the Government commences the appropriate civil or criminal judicial action as soon as practicable after the Government discovers the missed deadline. Physically returning and then re-seizing property is an empty gesture that serves neither the public interest nor a property owner's rights. More importantly,

proceeding immediately and directly to a judicial forfeiture action while maintaining custody of the property will, in most cases, allow individuals to have their claims heard sooner.[16]

## C.  Timeliness and content of claims in administrative proceedings[17]

### C.1   General rules

Section 983(a)(2) sets the deadlines for filing claims to contest administrative forfeiture actions and outlines applicable content required for such claims. A person contesting an administrative forfeiture proceeding must file a claim[18] with the seizing agency or online at www.forfeiture.gov no later than the deadline set forth in the notice letter or, if the potential claimant did not receive direct notice, no later than 30 days after the final day of publication of notice. *See* 18 U.S.C. § 983(a)(2)(B). Section 983(a)(2)(C) further requires that claims identify the specific property at issue, state the claimant's interest in that property, and be submitted in proper form, that is, "under oath" and "subject to penalty of perjury."[19] *See* 18 U.S.C. § 983(a)(2)(c).

When an agency receives no claims that conform to the requirements, it may enter a declaration of forfeiture pursuant to 19 U.S.C. § 1609. When an agency receives a timely claim that meets the statutory content and form requirements, it must refer the case to the U.S. Attorney, who in turn must either commence a civil or criminal forfeiture action in the district court within 90 days after the agency received the claim or return the property. *See* 18 U.S.C. § 983(a)(3)(A).

### C.2   Resolving disputes as to form and content

The difficulty arises where an agency receives a document that purports to be a claim but appears to be facially defective, untimely, or both. Deciding how to address claims of questionable timeliness or content requires balancing competing concerns. An agency that refers such claims to the U.S. Attorney for civil judicial forfeiture undermines policies favoring efficient administration and strict compliance with 18 U.S.C. § 983(a)(2)'s requirements, leaving claimants with scant incentive to follow the rules. In contrast, an agency that unilaterally issues a declaration of administrative forfeiture without referring the case to the U.S. Attorney runs the risk that the claimant will file a subsequent judicial proceeding in which the district court sides with the claimant. Moreover, if § 983(a)'s 90-day deadline for commencing a civil judicial forfeiture action has expired, a likely

---

[16]   Specifically, if a seizing agency sends notice of the administrative forfeiture action within the statutory period, the claimant has 30 days within which to file a claim to the property, after which the Government has 90 days to commence a civil or criminal forfeiture action in court. In contrast, presuming that the Government discovers its error within the 90-day deadline that would have applied had an administrative forfeiture claim been filed, claimants would have the day in court that Congress envisioned sooner than if they had received notice of the administrative forfeiture proceedings, filed a claim, and waited up to 90 days for the Government to file its civil complaint.

[17]   Subsection C's discussion applies only to claims filed in administrative forfeiture proceedings commenced under statutes subject to 18 U.S.C. § 983. While it does not apply to claims filed in administrative proceedings exempted under § 983(i)'s customs carve out provision, agencies addressing claims filed in such proceedings are encouraged, in general terms, to assess and resolve claims with questionable timeliness, content, or verification in the manner outlined herein.

[18]   The standard claim form is available at: www.forfeiture.gov/ClaimForm.pdf

[19]   Interestingly, to address the concern that eliminating the pre-CAFRA cost bond requirement would increase the number of attempts to contest forfeiture actions on false or frivolous grounds, Congress enacted a provision in CAFRA authorizing courts to impose a civil fine upon a finding that a claimant's "assertion of an interest" was "frivolous." *See* 18 U.S.C. § 983(h). Viewed against this backdrop, the reason for construing 18 U.S.C. § 983(a)(2)(c)'s mandate that claims be filed under a claimant's personal oath verified in a manner that subjects the claimant to the penalty of perjury becomes even more compelling.

circumstance, § 983(a)(3)(B)'s "death penalty" provision will bar further civil forfeiture proceedings against that property.

Given the availability of equitable tolling as a potential defense,[20] when a claimant asks a district court to set aside an administrative forfeiture declaration and order seized property returned, the seizing agencies should adhere to a policy of strict compliance by referring only timely and otherwise valid claims to the U.S. Attorney. In both cases where a claim's content or timeliness is questionable, and cases in which a putative claimant takes such a position, consulting with the U.S. Attorney before deciding whether to issue a declaration of forfeiture or refer the case is encouraged. Such consultations—particularly in cases where further litigation is likely—are favored because they give the U.S. Attorney, who could have to defend the agency's action in district court, the opportunity to give advice on the strengths, weaknesses, and risks associated with alternative courses of action. Moreover, the routine but discretionary practices that many agencies have adopted of returning questionable submissions to the putative claimant, with a request to clarify or supplement and an extended deadline for doing so, are also encouraged.

### C.3  Defending against a motion to set aside an administrative forfeiture declaration

When an agency rejects a claim as defective and issues an administrative forfeiture declaration, the putative claimant may seek federal district court intervention in the form of a motion to set aside the administrative declaration filed pursuant to 18 U.S.C. § 983(e). When confronted with such motions, U.S. Attorneys are advised to give thoughtful consideration to whether equitable tolling is properly raised as one of the defenses.

### D.  Decisions to forego administrative forfeiture proceedings in favor of civil or criminal judicial resolutions

The U.S. Attorney may have a reason why a forfeiture should not proceed administratively. Under such circumstances, the U.S. Attorney may ask the seizing agency to either forego or suspend such proceedings in favor of civil or criminal judicial forfeiture. In contemplating such requests, U.S. Attorneys should remain cognizant that the seizing agencies may have expended considerable resources toward effectuating an administrative forfeiture. Ordinarily, seizing agencies will comply with such a request, but the U.S. Attorney may then have to take steps to ensure that the 60-day deadline for commencing an administrative forfeiture proceeding under 18 U.S.C. § 983(a)(1)(A) is not violated. See 18 U.S.C. § 983(a)(1)(A)(iii) (no notice of administrative forfeiture is required if, before the 60-day period expires, a grand jury returns an indictment naming the property, and the Government takes steps to preserve its right to maintain custody of the property under the criminal forfeiture laws).

### E.  Plea and settlement negotiations involving property subject to administrative forfeiture

Prosecutors must bear in mind that although administrative forfeitures are generally more efficiently accomplished than judicial forfeitures, they still require investments of agency resources. Consequently, even when an agency has not yet issued a declaration of forfeiture against property in administrative forfeiture proceedings, a U.S. Attorney should not agree to return property as part of a plea agreement or civil settlement if the property is subject to ongoing administrative forfeiture

---

[20]  *See* discussion at Sec. II.C.3 below.

proceedings unless: (1) the seizing agency concurs with a request to suspend administrative forfeiture proceedings, or (2) the Money Laundering and Asset Recovery Section (MLARS) approves the decision to return the property.[21]

Once an agency has issued a declaration of administrative forfeiture, there are two primary reasons why a Government prosecutor should not agree to return seized property. First, a properly effectuated administrative forfeiture declaration vests title to property in the United States with "the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding." 19 U.S.C. § 1609(b). Because administratively forfeited property is, by definition, government property, and because attorneys litigating on behalf of the United States, including U.S. Attorneys themselves, are not authorized to unilaterally dispose of government property, entering into an agreement to return administratively forfeited property, either in a plea agreement or in any case resolution document, is almost always an *ultra vires* act. Second, as a practical matter, administratively forfeited property is often liquidated promptly. For these two reasons, neither criminal prosecutors nor other lawyers litigating on behalf of the United States should agree to return property that has already been forfeited administratively.

## III.  Judicial Forfeiture Guidelines

### A.  Parallel administrative, civil, and criminal forfeiture proceedings

It is well-settled that the Government may pursue forfeiture of an asset in administrative, civil and criminal judicial proceedings. Instituting one type of proceeding does not necessarily prevent the Government from pursuing another type. Moreover, 18 U.S.C. § 983(a)(1)(A)(iii)(I), enacted with CAFRA, specifically contemplates that the Government may pursue parallel administrative and judicial forfeiture actions.

### B.  Deadlines for instituting civil judicial forfeiture proceedings[22]

#### B.1  Statutory deadline for civil judicial forfeiture actions following administrative proceedings

Title 18, United States Code, section 983(a)(3), mandates that "not less than 90 days after a claim has been filed" in an administrative forfeiture proceeding, the Government must file a civil forfeiture complaint, include the property in a criminal indictment, return the property, or obtain an extension of time from the court. Since § 983(a)(3)(A) states that "a court in which the complaint will be filed may extend the period for filing a complaint," a court order should be obtained to extend the filing deadline even if the claimant has stipulated to the extension.

#### B.2  Preferred filing dates where no statutory deadlines apply

When Congress enacted CAFRA, it did not provide civil judicial filing deadlines for the following two sets of circumstances: (1) when an agency seized property that is eligible for administrative forfeiture but no administrative forfeiture proceedings are instituted,[23] and (2) when property is seized

---

[21]  *See also* Chap. 11, Sec. I.B.4 of this *Manual*.

[22]  This section does not apply to criminal forfeitures, which have no statutory deadline.

[23]  *See* Sec. III.B.2.a below.

that is ineligible for administrative forfeiture.[24] Section 983(a)'s 90-day deadline does not apply in either situation. Department policy provides *recommended* time limits for initiating a civil judicial forfeiture action against property in both of these situations.

### B.2.a   Property as to which the Government elects not to pursue administrative forfeiture[25]

Given the clear policies that Congress expressed when it enacted CAFRA, when the Government seizes property but elects not to pursue administrative forfeiture as a remedy, the Department recommends that U.S. Attorneys commence a civil judicial forfeiture action against that property within 150 days after the seizure. Because this guideline mirrors the total of the 60-day deadline applicable for commencing administrative forfeiture proceedings, added to the 90-day period allowed for instituting a judicial forfeiture, the 150-day policy not only honors CAFRA's spirit but also avoids allegations that the Government elected to forego administrative forfeiture to circumvent statutory deadlines and the policies that they embody.

### B.2.b   Property that is ineligible for administrative forfeiture

Where the seized property at issue is ineligible for administrative forfeiture pursuant to 19 U.S.C. § 1607, for the reasons described below, the Department recommends that U.S. Attorneys commence a civil judicial forfeiture action within 90 days after receiving a potential claimant's written request to release that property.[26] Some courts, reluctant to conclude that no deadline limits the period within which the Government must file a judicial forfeiture action against property ineligible for administrative forfeiture, may press the Department litigators to concede otherwise. Department employees should resist such pressure; given that Congress set no such deadline within CAFRA, adopting one is not necessary. Moreover, it is not true that no legal deadline applies—courts have applied the Due Process Clause to set limits on how long the Government may retain seized property absent the initiation of forfeiture proceedings. Accordingly, in a case where the agency or the Department receives a putative claimant's written request to return property that is ineligible for administrative forfeiture, the Department recommends where possible that the prosecutor commence a judicial forfeiture action within 90 days of receiving the request.

## C.  Providing notice of judicial forfeiture actions

Although different statutes and rules authorize and govern civil and criminal judicial forfeiture proceedings, as shown below, mechanics providing notice in both contexts are more similar than different.

---

[24]  *See* Sec. III.B.2.b below. *See also* Sec. II.B.3.c above, discussing 19 U.S.C. § 1607, which provides that administrative forfeiture is not available for personal property valued at $500,000 or more, including $500,000 or more seized from a financial account and other classes of property.

[25]  This policy applies only in cases where the U.S. Attorney, in consultation with the seizing agency, affirmatively decides at the outset of a case that the forfeiture of the seized property will be done judicially in the first instance. It does not apply to cases where the seizure should have been handled as a routine administrative forfeiture to which the 60- or 90-day deadlines in 18 U.S.C. § 983(a)(1)(A) apply, but where the notice was not sent due to inadvertence or error. The policy regarding the handling of forfeitures in that situation is set forth in Sec. I.B.4 above.

[26]  Nothing in this policy should be interpreted to allow a potential claimant to shorten the deadline for commencing an administrative forfeiture in a case where administrative forfeiture is authorized. In all events, in such cases the seizing agency will have 60 days (or 90 days in the case of adoptive forfeitures) to determine whether or not to proceed with the forfeiture proceeding. Although federal law gives agencies up to 90 days to send notice to interested parties in the case of adoptive forfeitures, Attorney General Order No. 3946-2017 requires them to send notice not later than 45 days after seizure, unless a senior official at the federal agency approves such an extension. *See* Chap. 3, Sec. II.B.3 of this *Manual*.

### C.1  General rules governing notice by publication and direct notice in civil and criminal judicial forfeiture proceedings

The charts below capture and compare the general rules governing direct notice and notice by publication in civil and criminal judicial forfeiture proceedings. Supplemental Rule G(4) and Federal Rule of Criminal Procedure 32.2(b)(6).[27] Government prosecutors should comply with the applicable provisions.

## COMPARISON OF DIRECT NOTICE REQUIREMENTS APPLICABLE TO CIVIL AND CRIMINAL JUDICIAL FORFEITURE PROCEEDINGS

| Direct Notice | Civil | Criminal |
|---|---|---|
| **Must be sent** | Per Supp. R. G(4)(b)(i), **to:** "any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under R. G(5)(a)(ii)(B)." | Per Fed. R. Crim. P. 32.2(b)(6)(A), **to:** "any person who reasonably appears to be a potential claimant with standing to contest the forfeiture." |
| **Content** | Per Supp. R. G(4)(b)(i) & (ii), **must contain:** **copy of the complaint**, and **document outlining: (1)** "the date when the notice is sent"; **(2)** the deadline for filing a claim falling at least 35 days after the notice is sent, and that an answer or Rule 12 motion is due no later than 21 days after claim is filed; **and (3) the name** of the government attorney upon whom to serve the claim and answer. | Per Fed. R. Crim.P 32.2(b)(6)(A), **must:** **describe** the forfeited property, **state** the times when a petition contesting the forfeiture must be filed, **and** **state** the name and contact information for the government attorney to be served with the petition (same as required for publication). |
| **Means** | Per Supp. R. G(4)(b)(iii), **notice:** **must** be "sent by means reasonably calculated to reach the potential claimant"; **may** be sent to "the potential claimant," or the "attorney representing" claimant, "with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case." **must** be sent to "the place of incarceration" **if potential claimant is in custody.** **may** be sent to "the address that person last gave to the agency that arrested or released the person," **if potential claimant was "arrested in connection with an offense giving rise to the forfeiture" but is no longer in custody** when notice is sent. **may** be sent to "the last address that person gave to the agency that seized the property," **if a person from whom the property was seized is not in custody** when notice is sent. | Fed. R. Crim. P. 32.2(b)(6)(D) incorporates and adopts means of direct notice specified in Supp. R. G(4)(b)(iii)–(iv). |

---

[27]  Effective December 1, 2009.

## COMPARISON OF PUBLICATION NOTICE REQUIREMENTS APPLICABLE TO CIVIL AND CRIMINAL JUDICIAL FORFEITURE PROCEEDINGS

| Publication | Civil | Criminal |
|---|---|---|
| **When** | Per Supp. R. G(4)(a)(i):<br>"**within a reasonable time after** filing the complaint or at a time the court orders." | Per Fed. R. Crim. P. 32.2(b)(6)(A), **after** "the court orders forfeiture of specific property" under Fed. R. of Crim. P. 32.2(b)(2). |
| **Content** | Per Supp. R. G(4)(a)(ii)(A)–(C), **must**:<br>**describe** the property with reasonable particularity,<br>**state** the deadlines for claims and answers, **and**<br>**name** the government attorney to be served with the claim and answer. | Per Fed. R. Crim. P 32.2(b)(6)(A), **must**:<br>**describe** the forfeited property,<br>**state** the times when a petition contesting the forfeiture must be filed, **and**<br>**state** the name and contact information for the government attorney to be served with the petition. |
| **Means** | Per Supp. R. G(4)(a)(iv), **must be:**<br>"reasonably calculated to notify potential claimants of the action"—<br>**by posting at www.forfeiture.gov** for at least 30 consecutive days; **OR**<br>**if the property is in the U.S.,** publication in a generally circulated newspaper in the district where the action is filed, where the property was seized, or where property that was not seized is located, **OR**<br>**if the property is outside the U.S.,** publication in a generally circulated newspaper in the district where the action is filed, in a generally circulated newspaper in the country where the property is located, or in generally published legal notices in the country where the property is located. | Fed. R. Crim. P. 32.2(b)(6)(C) incorporates and adopts the procedures outlined in Supp. R. G(4)(iv). |
| **Frequency** | Per Supp. R. G(4)(a)(iii), **notice must appear:**<br>Once a week for 3 consecutive weeks, **OR**<br>Once, if notice of administrative forfeiture proceedings against the same property were published at www.forfeiture.gov for 30 days, **OR**<br>Once, if notice of administrative forfeiture proceedings against the same property were published for 3 consecutive weeks in an authorized district. | Fed. R. Crim. P. 32.2(b)(6)(C) incorporates and adopts frequency specified in Supp. R. G(4)(b)(iii). |
| **Not Required** | Per Supp. R. G(4)(a)(i) if:<br>Property is worth less than $1,000, **and** direct notice dispatched as required by R. G(4)(b) to "every person the Government can reasonably identify as a potential claimant,"[28] **OR**<br>Court finds that publication cost exceeds property's value and "other means of notice would satisfy due process." | Per Fed. R. Crim. P. 32.2(b)(6)(A) **for**: generic forfeiture orders **or** money judgments.[29] |

---

[28] Because internet publication costs essentially nothing, litigators may decide to use this means in all judicial forfeiture cases rather than run the risk of challenges based on whether the value of the asset is actually below the $1,000 threshold.

[29] *See* Federal Rule of Criminal Procedure 32.2(b)(6)(A) (requiring publication only "[i]f the court orders the forfeiture of specific property").

## C.2    Notice policies specific to civil judicial forfeiture proceedings

Supplemental Rule G(4)(b)(i) requires that the Government send direct notice to "any person who reasonably appears to be a potential claimant on the facts known to the Government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." Department policy views anyone who appears likely to be able to show that he or she is an "owner" as defined in 18 U.S.C. § 983(d)(6) as entitled to direct notice of a civil forfeiture action. In contrast, because § 983(d)(6) excludes persons with general unsecured interests in, or claims against the property or estate of another from the definition of "owners," the Department's policy is to treat such persons as outside the class of persons entitled to receive direct notice of a civil forfeiture proceeding.

### C.3   Notice policies specific to criminal judicial forfeiture proceedings

Because Federal Rule of Criminal Procedure 32.2(b)(6) sets no deadlines for publishing notice of a preliminary order of forfeiture or for supplying direct notice to potential petitioners that a court has entered such an order, the Government should simply effectuate those measures as soon as practicable. Moreover, the Government should send direct written notice to any person who reasonably appears to be a potential petitioner with standing to contest the forfeiture of property at issue in the ancillary proceeding.

## D.   Form of claim and content policies applicable to judicial forfeiture actions

The statutes and rules governing the filing of claims in civil and criminal judicial forfeiture cases all require that claims or petitions be filed under oath, by the claimant or petitioner, and not by his or her attorney or other representative. *See* Supplemental Rule C(6) (applying to statements of interest filed in civil judicial forfeiture proceedings); 21 U.S.C. § 853(n) (applying to third party petitions in criminal forfeiture proceedings). Consequently, the policies set out in Section II.B (above) apply with equal force to both civil and criminal judicial proceedings.

## E.   Issues specific to civil judicial proceedings

### E.1   Initiating and pursuing civil forfeiture actions against facilitating property used or intended to be used to facilitate criminal activity

Property that was used to facilitate the commission of a crime or property that constitutes the instrumentalities of a crime is generally referred to as "facilitating property."[30] Unlike the proceeds of crime, which are acquired by the criminal wrongdoer as a direct result of the crime, facilitating property may be legally acquired but nonetheless subject to forfeiture because of how it is used. Thus, property such as an automobile, house, or the contents of a bank account may be forfeited on a theory of facilitation if it is used to commit, or subsequently conceal, illicit activity, even if the person who uses the property is not the owner. However, precisely because persons unrelated to criminal activity may lawfully own facilitating property, prosecutors must be mindful of the rights of property owners before filing a civil forfeiture complaint against facilitating property.

---

[30]  Statutes that provide for forfeiture of property "involved in" an offense, such as 18 U.S.C. § 981(a)(1)(A) (forfeiting property "involved in" various money laundering offenses), allow for forfeiture of both property facilitating the underlying offense and the proceeds of the offense. This guidance addresses only the facilitating property "involved in" those offenses. It does not apply to either (1) the proceeds or property traceable to proceeds of a money laundering offense; or (2) the proceeds or property traceable to proceeds of the underlying specified unlawful activity.

This policy is intended to ensure that the compelling law enforcement interest in civilly forfeiting facilitating property is appropriately balanced with the rights of property owners.[31] This guidance applies with respect to the filing of a civil forfeiture complaint that includes a theory of facilitation; it does not apply to the seizure or restraint of property (except the seizure of an ongoing business), to the filing of a complaint against the proceeds of a crime, or to a criminal forfeiture action involving facilitating property.[32]

### E.1.a   "Substantial connection" between the property subject to forfeiture and the underlying criminal activity

In any case in which the Government seeks to pursue a civil forfeiture action against facilitating property it must demonstrate a "substantial connection" between the property subject to forfeiture and the underlying criminal activity. *See* 18 U.S.C. § 983(c)(3). Although the statute does not define the phrase "substantial connection," at a minimum, the Government must show that use of the property made the prohibited conduct "easy or less difficult," or "more or less free from obstruction or hindrance." *See United States v. Approximately 50 Acres of Real Property Located at 42450 Highway 441 North Fort Drum, etc.*, 920 F.2d 902 (11th Cir. 1991) (per curiam) (internal quotations and citations omitted); *United States v. Real Property in Section 9*, 308 F. Supp. 2d 791, 806 (E.D. Mich. 2004) (after CAFRA's passage, substantial connection must be proven by preponderance of evidence). Prosecutors must consider at least the following factors, as applicable:

- whether the property had more than a negligible, inconsequential, incidental, tangential, or merely fortuitous role in facilitating or concealing the criminal activity;[33]

- whether the property was specifically designed, adapted, or modified to facilitate or conceal the criminal activity, or the property otherwise possessed unique features or characteristics making it particularly useful for facilitating or concealing the criminal activity; and

- the amount of time that the property was used, the frequency of such use, and total portion(s) of the property used in facilitating or concealing the underlying criminal activity.

Although the presence or absence of one or all of these factors will not be dispositive, collectively they provide a basic framework for prosecutors to assess whether there exists a "substantial connection" between the property and the underlying criminal activity.

To ensure that these factors are applied to address compelling law enforcement needs in a judicial district, prosecutors must obtain prior written authorization from their respective U.S. Attorney, or his or her designee, before filing any civil forfeiture complaint based on a theory that the property facilitated or concealed underlying criminal activity. The authorizing official may approve the filing of a complaint after determining that, based on a review of the case and the factors listed above, there

---

[31]  The terms "property owner" and "owner" refer not only to title owners of property, but also to persons or entities having a statutorily recognizable interest in all or a portion of the property subject to forfeiture, such as "a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6)(A).

[32]  Although some of the guidance provided in this memorandum may be useful in determining whether to initiate a criminal forfeiture action against facilitating property, this policy is limited specifically to civil forfeiture actions because of important distinctions in the two types of actions relating to the Government's standard of proof and a property owner's defenses. For example, unlike civil forfeiture actions, criminal forfeiture actions are predicated on the conviction of a criminal defendant, on proof beyond a reasonable doubt, for a criminal offense supporting the forfeiture.

[33]  As an example, use of a large parcel of property merely as a shortcut for transporting contraband from a property outside the parcel to another property outside the parcel generally would have only a fortuitous connection to the criminal activity. *See United States v. Two Tracts of Real Property with Bldgs., Appurtenances and Improvements Thereto, Located in Carteret County, N.C.*, 998 F.2d 204 (4th Cir. 1993).

is a substantial connection between the property and the underlying criminal activity. That written authorization must be retained in the forfeiture case file. For Criminal Division trial attorneys or other Department components not partnering with a U.S. Attorney's Office (USAO) in the prosecution, approval must be obtained from the Chief of MLARS.

### E.1.b   Civil forfeiture actions against ongoing businesses[34]

Because of the complexities of seizing and forfeiting an ongoing business,[35] and the potential for substantial losses to the owner, other persons such as shareholders and employees, and the Government itself, as well as the potential exposure to liabilities arising from the business, prosecutors must obtain prior written approval from their respective U.S. Attorney before seizing or filing a civil forfeiture complaint against an ongoing business based on a facilitation theory. The U.S. Attorney may not delegate this approval authority.[36]

Prosecutors must consider the following factors, as applicable, when evaluating whether to attempt to seize, or to file a civil forfeiture action against, an ongoing business based on a facilitation theory:[37]

- the nature, management structure, and ownership of the ongoing business;

- the nature and seriousness of the criminal activity, including the risk of harm to the public;

- the nature and extent of the ongoing business's involvement in the facilitation or concealment of the underlying criminal activity;

- the pervasiveness of wrongdoing within the business, including the complicity in, or the condoning of, the wrongdoing by its principals, including corporate management and/or ownership;

- collateral consequences, including whether there is disproportionate harm to shareholders, pension holders, employees, and others not proven personally culpable, as well as impact on the public arising from forfeiture of the ongoing business; and

- the adequacy of other remedies, such as a restraining order, protective order, or other court-approved remedy in lieu of seizure and forfeiture of the business. *See generally* Chapter 1, Section I.D.4 of this *Manual* (discussing use of protective orders).[38]

---

[34] This policy and the prior approval requirement applies only when a prosecutor seeks to civilly forfeit under a facilitation theory an ongoing business itself or all or most of the property necessary for an ongoing business to continue operations. Therefore, it would not apply when a prosecutor seeks to forfeit only an individual asset or some discrete property of an ongoing business, the forfeiture of which would not cause a substantial or complete disruption or discontinuance of business operations (e.g., a car when the business has multiple vehicles, an individual parcel, among many, of real property, or a single financial account among several).

[35] *See* Chap. 1, Sec. I.D.4 of this *Manual* for a full discussion of the policies and procedures involved in the seizure/restraint of an ongoing business and its property.

[36] Although this authority is ordinarily non-delegable, if the U.S. Attorney is recused from a matter or absent from the office, this authority may be exercised by an Acting U.S. Attorney selected in the manner prescribed by regulation. *See* 28 C.F.R. § 0.136.

[37] Before seizing or filing a complaint against an ongoing business under any available forfeiture theory, prosecutors should consult MLARS' guidance on the seizure and restraint of an ongoing business and/or its property. *See* Chap. 1, Sec. I.D.4 of this *Manual*.

[38] The *Justice Manual* (JM), which currently requires consultation with MLARS before seizing or initiating a forfeiture action against an ongoing business, will be updated to reflect this approval requirement. *See* JM § 9-111.124, available at: www.justice.gov/jm/justice-manual.

If a prosecutor obtains approval to seek an order authorizing seizure or restraint of an ongoing business before filing a civil forfeiture complaint, he or she will be required to file the complaint within 60 days of seizing or restraining that business subject only to the exceptions noted below. With the written consent of the owner, the prosecutor can extend the deadline by 60 days. Further extensions, even with consent of the owner, are not permitted unless the prosecutor has obtained the approval discussed below.

An exception to the 60-day requirement is permissible only upon approval from an appropriate official as follows:

- For Assistant U.S. Attorneys (AUSAs), approval must be obtained from their respective U.S. Attorney. The U.S. Attorney may not delegate this approval authority, except as discussed in footnote 32 (above).

- For Criminal Division trial attorneys or other Department components not partnering with a USAO in the investigation or prosecution, approval must be obtained from the Chief of MLARS. The Chief of MLARS may not delegate this approval authority.

If additional evidence becomes available after the affected business has been released from seizure or a restraining order, a civil forfeiture complaint may still be filed with applicable approval of the new action.

### E.1.c    Civil forfeiture actions against personal residences[39]

To reduce the potential risk of subjecting innocent third parties to litigation in order to protect their lawful interests in their own homes, prosecutors must obtain prior written approval from their respective U.S. Attorney before filing a civil forfeiture complaint against personal residences based on a facilitation theory. For purposes of this policy, the term "personal residence" refers to a primary residence occupied by the title owner(s). The U.S. Attorney may not delegate this approval authority, except as discussed in footnote 32 (above). For Criminal Division trial attorneys or other Department components not partnering with a USAO in the prosecution, approval must be obtained from the Chief of MLARS. The Chief of MLARS may not delegate this approval authority.

The factors that must be considered in determining whether the proposed forfeiture of a residence serves a compelling law enforcement interest include, but are not limited to:

- the nature of the underlying criminal activity being facilitated by the residence;

- the extent to which the property was used to facilitate or conceal the underlying criminal activity, including such factors as the amount of time that the property was used, the frequency of such use, and total portion(s) of the property used in facilitating or concealing the underlying criminal activity;

- whether the perpetrator or any other persons involved in the underlying criminal activity have an ownership interest in or reside at the residence; and

---

[39] *See* Chap. 4 of this *Manual* for a full discussion of the policies and procedures involving the unique issues that arise before and during forfeiture of real property.

- if the owner of the residence is neither the perpetrator or otherwise involved in the underlying criminal activity, whether he or she would likely prevail on an innocent owner defense, as discussed below in Section III.E.2.a, or otherwise meet the criteria in 18 U.S.C. § 983(d)(3)(B).

### E.2   Pre-filing due diligence on defenses to forfeiture

Even if the Government is able to meet its burden of establishing by a preponderance of the evidence a "substantial connection" between the facilitating property and the underlying criminal activity, property owners can still assert defenses to defeat or reduce the forfeiture. Prior to filing a complaint, prosecutors must take all reasonable steps to determine the likelihood of such a potentially meritorious defense. This analysis will depend in part upon whether the property subject to forfeiture is owned and/or controlled by the person or persons involved in the criminal activity, or is owned or otherwise controlled by a third party.

### E.2.a   Innocent owner

The law entitles any claimant with standing to assert a defense, after the Government has sustained its initial burden of proof on forfeitability, that the claimant qualifies as an innocent owner of the property as defined in 18 U.S.C. § 983(d). There are two different innocent owner defenses, one applicable to persons who owned their property interests while the illegal activity was occurring, and the other applicable to persons who acquired their interest in the property only after the illegal conduct occurred.

Persons who had an interest in the property at the time the illegal activity was occurring can defeat the Government's proven forfeiture claim by establishing one of the following:

- they did not know of the conduct giving rise to the forfeiture. *See* 18 U.S.C. § 983(d)(2)(A)(i); or

- upon learning of the conduct, they did all that reasonably could be expected, under the circumstances, to terminate such use of the property, including: (1) giving timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and (2) in a timely fashion, revoking or making a good faith attempt to revoke permission for those engaging in such conduct to use the property or taking reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property. *See* 18 U.S.C. § 983(d)(2)(A)(ii) and (B)(i)(I) and (II).[40]

Persons who acquired an interest in the property after the illegal conduct occurred can also defeat the Government's proven forfeiture claim by establishing that they qualify as a bona fide purchaser for value of the interest and that, at the time they acquired the interest, they did not know and were reasonably without cause to believe that the property was subject to forfeiture. 18 U.S.C. § 983(d)(3). When evidence available before filing a civil forfeiture complaint demonstrates that the likely owner of the property used to facilitate or conceal the underlying criminal activity was either the perpetrator of or knowing participant in the activity, that evidence should be sufficient to overcome any "innocent

---

[40]   However, such persons are not required to take steps they reasonably believe would be likely to subject any person (other than the person whose conduct gave rise to the forfeiture) to physical danger. *See* 18 U.S.C. § 983(d)(2)(B)(ii).

owner" defense.[41] If, however, the likely owner is not the perpetrator of, or knowing participant in, the underlying criminal activity, prosecutors must take all reasonable steps before filing a civil forfeiture complaint to ascertain whether the likely owner may have a viable "innocent owner" defense.[42] In making this determination, relevant factors that must be considered include whether the likely owner:

- has standing to maintain a claim in the forfeiture proceeding;

- is merely a nominee or straw owner for the perpetrator of the criminal activity;

- had knowledge of, consented to, or was otherwise willfully blind to illegal use of the property at the time of the criminal activity;

- learned of the illegal use after the fact, but failed to take reasonable and timely steps to properly notify law enforcement or to prevent further illegal use of the property;

- financially or otherwise benefitted from the property's involvement in the criminal activity; or

- would qualify as a bona fide purchaser for value if he/she acquired the property after the criminal activity subjecting the property to forfeiture had been completed.[43]

If a pre-filing investigation reveals that an owner with standing has a viable innocent owner defense, prosecutors should refrain from proceeding with a forfeiture action against that property. In a case where there may be more than one potential owner of the same property, it may be possible to proceed with the forfeiture but agree to mitigate the forfeiture to recognize the interests of the owners who would likely qualify as innocent owners.

### E.2.b   Grossly disproportional

A property owner may also challenge the forfeiture of facilitating property on grounds that the forfeiture is excessive. Specifically, 18 U.S.C. § 983(g) provides that civil forfeiture, regardless of the nature of the relationship between the property and the criminal activity, shall not be "grossly disproportional to the gravity of the offense." Supplemental Rule G(8)(e) requires that a property owner who seeks to mitigate the forfeiture based on excessiveness do so by pleading it in the answer in order to give the parties an opportunity to conduct discovery relating to the defense. In anticipation of such a defense, prosecutors must make reasonable efforts to develop evidence and articulate reasons why forfeiture of facilitating property, or a portion of the property, would not be grossly disproportionate to the underlying criminal activity. Relevant factors shall include:

- the seriousness of the underlying criminal activity;

- the extent of the owner's involvement in and/or knowledge of the use of the property in the commission or concealment of the criminal activity;

---

[41]  Before a forfeiture complaint is filed, it is not always readily apparent who may have an ownership interest in particular property. Nonetheless, reasonable efforts must be taken before the complaint is filed to identify any person or entity with a likely ownership interest.

[42]  In some cases, it will be difficult to anticipate the nature of a likely owner's innocent owner defense, or to investigate and develop evidence to evaluate the merits of such a defense before filing a complaint. Nonetheless, when time and resources permit, prosecutors must undertake such efforts in order to ensure that the case serves a compelling law enforcement interest.

[43]  The relevance of each of the various factors will depend on whether the likely owner had an interest in the property when it was used in the commission or concealment of underlying criminal activity or whether he or she acquired an interest after the property's involvement in the activity.

- the extent to which the property was involved in the criminal activity;

- the effect of the criminal activity, and the property's use in the activity, on the community and/or identifiable victims; and

- the value of/equity in the property.

After consideration of these and any other relevant factors, if a prosecutor determines that forfeiture of the facilitating property would be grossly disproportionate to the criminal activity, he or she must attempt to mitigate the forfeiture. For example, a prosecutor may seek to forfeit only a divisible portion of the property otherwise subject to civil forfeiture. When such mitigation is not possible it may be appropriate to forego the forfeiture action altogether, unless doing so would potentially deprive victims of recovery of their losses.

This is solely a policy regarding the exercise of investigative and prosecutorial discretion, and does not alter in any way the Department's authority to enforce federal law. Neither the policies set forth in this section, nor any state or local law provide a legal defense to a violation of federal law, including any civil or criminal violation. It applies prospectively to the exercise of prosecutorial discretion in future cases and does not provide defendants, claimants, or subjects of an enforcement action with a basis for reconsideration of any pending civil action or criminal prosecution.

## F.   Issues specific to criminal judicial proceedings

### F.1   Best practice when property identified as subject to forfeiture in a criminal proceeding is forfeited administratively

In cases where administrative and criminal forfeiture proceedings are instituted simultaneously, and no one files a claim in the administrative proceeding, the agency should complete the administrative forfeiture. Thereafter, the prosecutor handling the criminal case should file either a "motion" or "notice" in the criminal proceeding that reports the completed forfeiture and is served on the defense.

### F.2   Correcting errors of law in criminal judicial forfeiture actions[44]

To try to identify errors before sentencing, prosecutors should recommend to the court that it follow Federal Rule of Criminal Procedure 32.2(b)(2)(B) and issue preliminary orders of forfeiture "sufficiently in advance of sentencing to allow the parties to suggest revisions or modification before the order becomes final as to the defendant" at sentencing "unless doing so is impractical."

When errors occur during sentencing, the period for correcting such errors is potentially very short. The Supreme Court has ruled that filing a motion for reconsideration in a criminal case can suspend appellate deadlines. *See United States v. Ibarra*, 502 U.S. 1, 4–6 (1991) (noting the advantages of giving district courts the opportunity to correct their own alleged errors, and thus preventing unnecessary burdens from being placed on the courts of appeals); *United States v. Dieter*, 429 U.S. 6, 8 n.3 (1976). However, lower courts could distinguish this precedent and instead find that Federal Rule of Criminal Procedure 35(a), which does not toll appellate deadlines and instead requires that motions be filed and ruled upon within 14 days after sentencing, is the controlling authority. *See* Appellate Rule 4(b)(5) Advisory Committee Note to 2002 Amendment.

---

[44]   The Government may move to correct a clerical error at any time pursuant to Federal Rule of Criminal Procedure 36. For example, if the error was simply the district court's failure to make the order of forfeiture part of the judgment as required by Federal Rule of Criminal Procedure 32.2(b)(3), in most circuits the error could be corrected pursuant to Rule 36.

Consequently, until the courts or Congress resolve the issue, litigators should presume that courts will construe their motions to correct errors of law as Federal Rule of Criminal Procedure 35(a) motions to correct sentence that do not toll Appellate Rule 4(b)'s deadlines. When confronted with a forfeiture error of law at sentencing, a prosecutor should file a motion for reconsideration but urge the court to rule on it within 14 days of the sentence. In addition, no matter what title the motion bears, the litigator should not presume that filing it will toll appellate deadlines, but instead, should file a notice of appeal before the 30th day under Appellate Rule 4(b)(1)(B), regardless of the status of a pending motion for reconsideration. As a courtesy to the district court, the prosecutor may want to advise the court of this policy to ensure that the court understands what compels the Government to file a notice of appeal—which divests the district court of jurisdiction—even though the court may have scheduled a hearing on the Government's motion.

## IV.   Firearms Forfeiture Policy

This section provides a brief summary of policies concerning the forfeiture of firearms. It is Department policy to subject seized firearms and ammunition to formal forfeiture proceedings. Firearms are a unique type of personal property, and the forfeiture of firearms presents challenging issues involving complex firearms regulations, property ownership, and constitutional rights. For further details on firearms forfeiture matters, prosecutors and law enforcement agencies should consult MLARS.

### A.   Preference for forfeiture

As a practical matter, forfeiture is the best way to dispose of crime-related firearms and ammunition. Forfeiture is most consistent with congressional intent, as reflected in the many specific and general forfeiture statutes that apply to firearms. Forfeiture proceedings provide the best and clearest protections for the due process rights of firearms' owners,[45] including innocent third parties who may have a lawful interest in firearms that have been stolen or otherwise used without the owners' knowledge and consent. In any case where firearms or ammunition have been seized for forfeiture, any plea agreement should specifically address the forfeiture or other disposition of seized firearms or ammunition.

In criminal prosecutions where the Government has included the notice of forfeiture of firearms or ammunition as part of the indictment, any plea agreement must specifically address the forfeiture or other disposition of those items. The failure by the USAO to do so leaves the seizing agency in the difficult situation of determining how to dispose of personal property that cannot be returned to a possessor (typically, a prohibited person) and cannot be destroyed because the Government does not yet hold title to that property. This results in the unnecessary expenditure of Government resources and delays the destruction of or other disposition of the property.

### B.   Stolen firearms

The forfeiture process is the preferred way to secure title and dispose of stolen firearms seized in connection with criminal activity. Victims of theft have an interest in the recovered firearms and are

---

[45]   *See Henderson vs. United States*, 135 S.Ct. 1780, 1786–87 (2015) (holding that, although 18 U.S.C. § 922(g) bars courts from ordering firearms returned to their felon-owner, it permits the court-ordered transfer of firearms to a third party of the felon's choosing so long as the recipient will not grant the felon access to, or accede to the felon's instructions about, the future use of the firearm).

considered interested parties in administrative and judicial forfeiture proceedings for purposes of noticing and filing claims and petitions for remission or mitigation of forfeiture.

When a stolen firearm is included in the notice of forfeiture as part of a criminal indictment, the victim's interest in the stolen firearm should be addressed in an ancillary proceeding. The forfeiture of such firearms should only be dismissed from the criminal proceeding where forfeiture is not supported by the applicable law or the facts in that particular case.

In a criminal forfeiture proceeding where a firearm is identified as stolen *after* the district court has issued a Final Order of Forfeiture, the victim is limited to the filing of a Petition for Remission or Mitigation of Forfeiture with the USAO. The USAO may also move the district court to amend its final order to address the victim's interest in the stolen firearm(s).

### C.   Administrative and civil judicial forfeiture of firearms deadline issues

Firearms and ammunition are subject to specific deadlines for the commencement of forfeiture actions pursuant to the forfeiture authority in the Gun Control Act (GCA). The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has jurisdiction to pursue administrative forfeitures under the GCA. Under 18 U.S.C. § 924(d)(1), "[a]ny action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such a seizure." The commencement of an administrative forfeiture action within CAFRA deadlines has been held to meet this deadline. *United States v. Ninety-Three (93) Firearms*, 330 F. 3d 414 (6th Cir. 2003). However, courts have not reconciled the statutory one hundred twenty-day deadline in 18 U.S.C. § 924(d)(1) for forfeiture under the GCA with those situations where delay in sending notice of a forfeiture action is permitted under 18 U.S.C. § 983(a)(1)(D). As a precaution, it is recommended that the seizing agency commence administrative forfeiture prior to the one hundred twenty day deadline, or that the USAO seek a criminal indictment that includes a notice of criminal forfeiture for the firearm and/ or ammunition if possible.

### D.   Firearms are treated differently

Forfeited firearms and ammunition are treated differently from other types of forfeited property in several respects. As explained below, they are not equitably shared with state and local law enforcement, they are not sold, and most often, they are destroyed.

Forfeited firearms may be placed into federal official use (e.g., by a federal investigative agency for such purposes as federal law enforcement use, ballistics testing, or display). Firearms are not equitably shared with non-federal law enforcement agencies, nor are they sold.[46] In rare cases, firearms with significant educational, scientific or historic value may be placed into official use for display purposes, such as the Smithsonian Institution or another federally funded museum or at one of the United States military academy museums. ATF or the U.S. Marshals Service (USMS) may approve this type of official use only after the subject firearms have been rendered inoperable.

Minimum value and net equity thresholds do not apply to firearms. As explained in Chapter 1 of this *Manual*, the Department has established minimum monetary thresholds or most types of property subject to federal seizure and forfeiture, and generally will not seize property for forfeiture unless the

---

[46]  *See* Chap. 15 of this *Manual*.

net equity in the seized property meets or exceeds these thresholds. There is an exception to the net equity thresholds where a particular forfeiture serves a compelling law enforcement interest.

The Department has concluded that such a compelling interest applies to firearms and ammunition involved in crime. Therefore, unlike most forms of personal property, lawfully forfeitable firearms and ammunition should be forfeited regardless of their monetary value.

There are at least two reasons for exempting firearms and ammunition from the minimum equity thresholds. Because cheap firearms used criminally cause harm the same as expensive ones, there is a strong law enforcement interest in removing both types from circulation. Moreover, as discussed below, the Federal Government generally destroys forfeited firearms and ammunition, and never resells them. Therefore, their potential resale value is irrelevant to the determination whether to forfeit them.

In addition, firearms are included in the category of assets seized by state or local law enforcement that directly impact public safety concerns. Therefore, firearms may be adopted for federal forfeiture regardless of federal oversight or involvement at the time of seizure.[47]

Because Department policy prohibits the sale of federal forfeited firearms, prosecutors should not enter into any agreement calling for the sale of forfeited firearms and the distribution of proceeds from any such sale. Prosecutors should bring this prohibition on sale of forfeited firearms to the attention of the court whenever necessary to avoid entry of an order calling for such a prohibited sale. The overriding policy concern weighing against the sale or sharing of forfeited or abandoned firearms is that they may subsequently be resold and used in crime.

Unlike other types of forfeited property, federally forfeited firearms and ammunition may not be sold, except as scrap. Title 18, United States Code, section 3051(c)(3) provides: "[n]otwithstanding any other provision of law, the disposition of firearms forfeited by reason of a violation of any law of the United States shall be governed by the provisions of section 5872(b) of the Internal Revenue Code of 1986." 18 U.S.C. § 3051(c)(3). Title 26, United States Code, section 5872(b) provides that no notice of public sale is required as to forfeited firearms and that no forfeited firearm may be sold at public sale. 26 U.S.C. § 5872(b). Although § 5872(b) permits forfeited firearms to be retained for federal official use, forfeited firearms are not transferred to state or local law enforcement agencies through equitable sharing or otherwise. Although § 5872(b) indicates that the General Services Administration (GSA) could sell forfeited firearms to state or local governments, GSA has determined that it will not do so. GSA's National Property Management Regulations provide that "seized and forfeited firearms *shall not be sold* as firearms," but only as scrap. 41 C.F.R. § 101-48.303 (emphasis added). As a result, seized and forfeited firearms cannot be sold and are generally destroyed.

---

[47]   *See* Chap. 3, Sec. II. of this *Manual*.

# Chapter 6:
# Grand Jury

## I.   Disclosures of Grand Jury Information under 18 U.S.C. § 3322(a)

### A.   Summary

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA)[1] amended 18 U.S.C. § 3322(a) to allow criminal Assistant U.S. Attorneys (AUSAs) to disclose grand jury information to attorneys for the Government "for use in connection with any civil forfeiture provision of federal law." With this amendment, Congress legislatively overruled a portion of the holding in *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983), which interpreted Federal Rule of Criminal Procedure 6(e), to prohibit a criminal AUSA from disclosing grand jury information to a civil AUSA who was not part of the prosecution team. However, the amendment to 18 U.S.C. § 3322 did not make clear whether the "use" that the civil AUSA could make of the disclosed information included further disclosure to the public in the course of the litigation of a civil forfeiture case without obtaining a court order.

The matter is a sensitive one, as the penalty for violating the grand jury disclosure rules set forth in Federal Rule of Criminal Procedure 6(e) is contempt. For that reason, prosecutors will naturally want to act with caution in this area. However, based on fundamental rules of statutory construction and the practice regarding the use of grand jury information in criminal cases, the Money Laundering and Asset Recovery Section (MLARS) concluded that the intent of 18 U.S.C. § 3322 was to permit the civil AUSA not only to review and rely upon grand jury information in the preparation of civil forfeiture pleadings, but also to disclose that information in publicly filed documents and as evidence at trial.

Section 3322 does not, however, permit an AUSA to disclose grand jury information to seizing agency attorneys to use in administrative forfeiture proceedings. Seizing agency attorneys are not "attorneys for the government" as defined by Federal Rule of Criminal Procedure 1(b). Nor does 18 U.S.C. § 3322 explicitly authorize disclosure to government contractors without a court order pursuant to Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) or (E)(i).[2]

### B.   Discussion

#### B.1   AUSAs may use and disclose grand jury information on the public record during the course of civil forfeiture litigation without obtaining a court order

CAFRA amended 18 U.S.C. § 3322(a)[3] to allow a criminal AUSA to disclose grand jury information without obtaining a judicial order to a civil AUSA for "use in connection with any civil forfeiture provision of Federal law." This amendment was intended to address the Supreme Court decision in

---

[1]  Pub. L. 106-185, Apr. 25, 2000, 114 Stat 202.

[2]  Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) authorizes disclosure to "government personnel," which may include contract personnel, but only upon court order as discussed below. Rule 6(e)(3)(E)(i) authorizes disclosure "preliminary to or in connection with a judicial proceeding" and also requires a court order.

[3]  Section 3322(a) provides:
   a.   a person who is privy to grand jury information—
      1. received in the course of duty as an attorney for the government; or
      2. disclosed under Rule 6(e)(3)(A)(ii) of the Federal Rules of Criminal Procedure; may disclose that information to an attorney for the government for use in connection with any civil forfeiture provision of Federal law.

*United States v. Sells Engineering*, which held that [Federal Rule of Criminal Procedure 6(e)](#) does not authorize automatic disclosures of grand jury information to an attorney for the Government for use in a civil proceeding. The Supreme Court interpreted Rule 6(e) to allow automatic disclosures only to those attorneys and their supervisors who conduct the criminal matters to which the grand jury materials pertain.[4] An attorney with only civil duties, the court said, lacks both the prosecutor's special role in supporting the grand jury and the prosecutor's own crucial need to know what occurs before the grand jury.[5] Thus, criminal AUSAs were held to have access to grand jury materials only for criminal use.

The Supreme Court refined its decision in *United States v. John Doe, Inc. I*, 481 U.S. 102 (1987), which held that civil attorneys who were members of the prosecution team may, without prior court authorization, continue to use materials or information subject to Rule 6(e) in a companion or related civil proceeding.

The CAFRA amendment to [18 U.S.C. § 3322(a)](#) expanded the holding in *John Doe, Inc. I* to allow disclosure of grand jury information to another "attorney for the government" without a court order for "use in connection with any civil forfeiture provision of Federal law." Previously, under the version of § 3322 enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989,[6] Congress had authorized such disclosure only in cases involving bank fraud. However, the legislative history of CAFRA indicates that Congress recognized that *all* civil forfeiture actions are law enforcement actions, and that grand jury information therefore should be available without a court order to Government attorneys in all civil forfeiture cases.[7]

While it is clear that Congress intended to permit an AUSA who obtained grand jury information in connection with a criminal investigation to disclose that information to another AUSA who would be handling a related civil forfeiture matter, neither the statute nor the legislative history provides any guidance as to what the civil AUSA may do with the information once it is disclosed. In particular, it is not clear whether Congress intended to permit the civil AUSA only to review and rely upon the grand jury information while preparing a civil forfeiture case, or whether it intended that the civil AUSA would be permitted to disclose the grand jury information in publicly filed documents, such as complaints and applications for seizure warrants and restraining orders, and as evidence at trial.

A fundamental rule of statutory construction provides that the plain meaning of the words is given the greatest weight in statutory interpretation. *Browder v. United States*, 312 U.S. 335, 338 (1941). In the context of civil litigation, the plain meaning of the phrase "for use in connection with any civil forfeiture provision of federal law" would include using the information in applications for seizure warrants and court orders, in the body of the forfeiture complaint, and as evidence at trial. The more limited interpretation—that one "uses" information only to inform him or herself of the facts of a case—is contrary to common sense and experience. Moreover, the broader reading of the statute is consistent with the use that a criminal AUSA typically makes of grand jury information in a criminal case. It is well established that a criminal AUSA who is privy to grand jury information may use it not only to prepare a case for trial, but may also disclose it in the indictment and in the course of the criminal trial.

---

[4]  *United States v. Sells Engineering*, 463 U.S. at 429.

[5]  *Id.* at 431.

[6]  Pub. L. 101-73, Aug. 9, 1989, 103 Stat 183.

[7]  H.R. Rep. 105-358(I), 105th Cong., 1st Sess. 1997.

Accordingly, MLARS concludes that just as the criminal AUSA may disclose grand jury information in an indictment or other document filed in the course of a criminal prosecution, or as evidence introduced in the course of a criminal trial, so may a civil AUSA disclose grand jury information in the course of civil litigation without obtaining a judicial disclosure order.

### B.2  AUSAs may not disclose grand jury information to agency counsel for use in connection with an administrative proceeding

Title 18, United States Code, section 3322(a) provides for automatic disclosures of grand jury information by an AUSA who is privy to that information "to an attorney for the government… for use in connection with any civil forfeiture provision of Federal law." Federal Rule of Criminal Procedure 1(b) defines *attorney for the Government* as the Attorney General, an authorized assistant of the Attorney General, a U.S. Attorney, or an authorized assistant of a U.S. Attorney. Department of Justice (Department) attorneys may conduct grand jury proceedings when authorized to do so by the Attorney General. Agency or other non-Department attorneys may not be present unless they are appointed as special assistants.[8]

In *In re Grand Jury Proceedings*,[9] the Third Circuit emphasized that the "term 'attorneys for the government' is restrictive in its application." The court concluded that "if it had been intended that attorneys for administrative agencies were to have free access to matters occurring before the grand jury the rule would have so provided." The Sixth Circuit, addressing the definition of *attorney for the Government*, found that an attorney for the Department's Tax Division was not an attorney for the Government because he was not assigned to work on a particular criminal case in any "official" capacity.[10] Seizing agency attorneys and non-Department attorneys may obtain grand jury information without a disclosure order if they are appointed under 28 U.S.C. § 515 as a Special Assistant U.S. Attorney or Special Assistant to the Attorney General.[11] Otherwise, they are not considered *attorneys for the Government* and cannot receive grand jury information without a court order. As a result, MLARS concludes that 18 U.S.C. § 3322 does not authorize disclosure of grand jury information to a seizing agency counsel for use in connection with an administrative proceeding.

### B.3  AUSAs should consult district or circuit law to determine whether to disclose grand jury information to a Government contractor who is assisting in the preparation of a civil forfeiture case without a prior court order

As with agency counsel, depending on the law of a particular circuit, 18 U.S.C. § 3322 may not authorize disclosure without a court order to Government contractors who are assisting the civil AUSA with the preparation of the civil forfeiture case. At first glance, disclosure to the contractor paralegal or attorney who is doing the actual drafting of the document that the civil AUSA is planning to file in the civil forfeiture case would seem to fall within the scope of the use that the civil AUSA may make of the grand jury information. If the civil AUSA, for example, may disclose the grand jury information in the publicly filed civil forfeiture complaint, there would seem to be no reason he or she

---

[8]  *See Justice Manual* (JM) § 9-11.241–11.242, available at: www.justice.gov/jm/justice-manual

[9]  *In re Grand Jury Proceedings*, 309 F.2d 440, 443 (3d Cir. 1962).

[10]  *United States v. Forman*, 71 F.3d 1214, 1218 (6th Cir. 1995).

[11]  *In re Perlin*, 589 F.2d 260, 267 (7th Cir. 1978) (Commodity Futures Trading Commission); *United States v. Bates*, 627 F.2d 349 (D.C. Cir. 1980) (Federal Maritime Commission); *Bradley v. Fairfax*, 634 F.2d 1126, 1130–32 (8th Cir. 1980) (Parole Commission hearing officer).

could not first disclose it to the contractor who is drafting the complaint. Nonetheless, the practice in criminal cases cautions against this view.

Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) allows for disclosure of grand jury information without judicial order to "any government personnel…that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law." The term *government personnel* includes not only members of the prosecution support staff, such as economists, secretaries, paralegals, law clerks, and federal criminal investigators, but also employees of any federal agency who are assisting the Government prosecutor. However, it does not automatically include contractor personnel used in the Asset Forfeiture Program.

It is true that contract personnel have been considered Government personnel for purposes of Federal Rule of Criminal Procedure 6(e) in previous instances. In *United States v. Lartey*,[12] the Second Circuit held that a retired Internal Revenue Service (IRS) agent employed as a contractor to review financial records of the defendant, which were submitted to the grand jury, fell within the Government employee exception to the grand jury secrecy rule. Relying on *In re Gruberg*[13] and legislative history,[14] the court found that the exceptions to the grand jury rules were adopted to override decisions highly restrictive of the use of Government experts in grand jury investigations. In a similar case, the Tenth Circuit, relying on *Lartey*, held that an expert witness under contract with the Government was Government personnel within the class of Government personnel to whom disclosure is permissible.[15]

In *United States v. Pimental*,[16] the most recent appellate case to address this issue, the court concluded that temporary employees or persons under contract, including employees of a private company, can be "government personnel" for purposes of Rule 6(e)(3)(A)(ii), where the individuals in question are directly involved in assisting Government attorneys in the prosecution of cases. However, the court held that the prosecutor "must seek court authorization" prior to disclosure to such persons.[17]

Therefore, in both civil and criminal cases, the best practice is for the AUSA to first obtain a disclosure order pursuant to either Rule 6(e)(3)(A)(ii) or (E)(i) before disclosing grand jury information to a contract employee,[18] being mindful of any required showings under these provisions.[19] Accordingly, it is also best practice and, at least in some circuits, may be necessary to obtain a disclosure order before a civil AUSA, who is entitled under 18 U.S.C. § 3322(a) to use grand jury information in a civil forfeiture case, may disclose that information to a Government contractor

---

[12]  *United States v. Lartey*, 716 F.2d 955 (2d Cir. 1983).

[13]  *In re Gruberg*, 453 F. Supp. 1225, 1233–34 (S.D.N.Y. 1978).

[14]  S. Rep. No. 354, 95th Cong., 1st Sess. 7 (1977), reprinted in U.S. Code Cong. & Ad. News 527, 530.

[15]  *United States v. Anderson*, 778 F.2d 602 (10th Cir. 1985).

[16]  *United States v. Pimental*, 380 F.3d 575, 590–96 (1st Cir. 2004), *cert. denied*, 125 S. Ct. 1385 (Feb. 22, 2005).

[17]  380 F.3d at 596.

[18]  The practice in a number of districts has been to obtain a standing order from the district court, under either Federal Rule of Criminal Procedure 6(e)(3)(A)(ii) or (E)(i), or both, authorizing disclosure to specific contract personnel who are directly involved in assisting attorneys for the Government in the prosecution of cases. Such orders should be updated frequently to reflect any changes in conditions which were considered by the court in support of the order.

[19]  *Compare In re Grand Jury Matter*, 607 F. Supp. 2d 273, 276–77 (D. Mass. 2009) (denying disclosure to contractor on grounds that the contractor was not the equivalent of Government personnel and that particularized need had not been shown); with *In re Disclosure of Matters Occurring Before a Grand Jury to Litigation Technology Service Center*, 2011 WL 3837277 (D. Haw. Aug. 25, 2011) (authorizing disclosure on grounds that contractor employees are equivalent of Government personnel).

unless the information is first disclosed in a publicly filed document or in open court. As a result, AUSAs should review the law in their district/circuit to ensure compliance with local practice.

### C. Conclusion

Under the CAFRA amendment to 18 U.S.C. § 3322(a), criminal AUSAs may now disclose grand jury information to civil forfeiture AUSAs. This information may be used by the civil AUSAs in their complaints, restraining orders, and any other pleadings filed in a civil forfeiture case, and as evidence at trial, without getting a disclosure order. However, neither criminal nor civil AUSAs may disclose grand jury information to seizing agency attorneys to use in administrative forfeiture proceedings without obtaining a judicial order. Moreover, a disclosure order may also be required to share grand jury information with Government contract employees who may be assisting in the preparation of a civil forfeiture case.

## II.   Presenting Forfeiture to the Grand Jury

Federal Rule of Criminal Procedure 32.2(a) provides that the court may not enter a judgment of forfeiture in a criminal proceeding "unless the indictment or information contains notice to the defendant that the Government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute."

### A. Summary

Because forfeiture is neither an offense nor an element of an offense, but an indeterminate part of the criminal sentence not limited by any statutory maximum amount, the Constitution does not require that the grand jury find probable cause for forfeiture, either generally or with respect to particular property. In addition, the applicable statutes and rules do not mandate such a finding by the grand jury. For several reasons, however, the best practice is to present evidence to the grand jury that permits it to find probable cause to believe that the requisite nexus exists between the charged offenses and particular property alleged to be forfeitable, and to request that such a finding be made. The grand jury's finding with respect to forfeiture should be memorialized in the indictment and may then be represented to the court in support of pre-trial restraining orders or for other appropriate purposes, as the grand jury's probable cause finding on the forfeitability of the listed property.

### B. Discussion

#### B.1  The Constitution does not require a grand jury finding of probable cause for forfeiture

The authority to charge crimes in federal court, and the limits to that authority, derives from the Constitution. The Fifth Amendment provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." The grand jury clause of the Fifth Amendment serves the "dual function of determining if there is probable cause to believe that a crime has been committed, and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes*, 408 U.S. 665, 686–687 (1972). Thus, elements of the criminal offense must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt. *See*, *e.g.*, *Jones v. United States*, 526 U.S. 227, 232 (1999).

There is no constitutional right to have the grand jury make a probable cause determination as to criminal forfeiture because forfeiture is not an element of a substantive offense. Criminal forfeiture is, instead, part of a criminal sentence. *Libretti v. United States*, 516 U.S. 29, 38–41, 48–50 (1995). Indeed, for that reason, there is no Sixth Amendment right to jury trial on criminal forfeiture. *Id*. at 49–50.[20]

Notwithstanding recent Supreme Court decisions holding that certain facts bearing upon sentencing constitute elements of separate substantive offenses, *Libretti* is still good law. In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court applied the *Apprendi* rule to invalidate, under the Sixth Amendment, an upward departure under the Washington State sentencing guidelines system that was imposed on the basis of facts found by the court at sentencing. In *Southern Union Company v. United States*, 132 S. Ct. 2344 (2012), the Supreme Court held that *Apprendi* applies to the calculation of the maximum criminal fine where the fine varies depending on the facts of the case. Lower courts have uniformly held that these more recent Supreme Court cases do not apply to forfeiture because forfeiture has no maximum amount, and some lower courts have also noted that *Libretti* is controlling precedent unless it is explicitly overturned by the Supreme Court. *See*, *e.g.*, *United States v. Sigillito*, 759 F.3d 913, 934–36 (8th Cir. 2014).

Accordingly, a defendant has no constitutional right to have the grand jury find probable cause for forfeiture.[21]

### B.2   Criminal forfeiture statutes and the Federal Rules of Criminal Procedure do not require that the grand jury find probable cause for forfeiture

If the Constitution does not require the grand jury to find probable cause for forfeiture, does a statute or rule require it?

Criminal forfeiture statutes typically provide that the court, "in imposing sentence on a person convicted of [the predicate] offense…shall order that the person forfeit to the United States [specified types of property]," 18 U.S.C. § 982(a)(1), or its equivalent, "Any person convicted of a [predicate offense] shall forfeit to the United States [specified types of property]," 21 U.S.C. § 853(a). *See also* 28 U.S.C. § 2461(c) ("If a forfeiture of property is authorized in connection with a violation of an Act of Congress, and any person is charged in an indictment or information with such violation but no specific statutory provision is made for criminal forfeiture upon conviction, the government may include the forfeiture in the indictment or information in accordance with the Federal Rules of Criminal Procedure, and upon conviction, the court shall order the forfeiture of the property in accordance with…(21 U.S.C. § 853), other than subsection (d) of that section.").

---

[20]  As explained more fully below, the Federal Rules of Criminal Procedure provide that in a case where a jury returns a guilty verdict, either the defense or the prosecution may request that the jury also determine whether the Government has established the "requisite nexus" between the property alleged to be forfeitable and the offense committed by the defendant. Federal Rule of Criminal Procedure 32.2(b)(5).

[21]  Of course, the defendant *does* have a right to indictment and a grand jury finding on the elements of the substantive offense(s) that are predicates for forfeiture. As a reminder of the importance of charging all applicable substantive legal theories, and the effect upon forfeiture of a failure to do so, *see United States v. Iacaboni*, 363 F.3d 1, 7 (1st Cir. 2004) (reversing forfeiture judgment based on theory that assets had facilitated money laundering with intent to conceal where indictment charged only money laundering with intent to promote criminal activity).

Such criminal forfeiture statutes do not address grand jury process with respect to forfeiture; however, the Rules Committee determined that Federal Rule of Criminal Procedure 7(c)(2), dealing with the contents of the indictment, would only require notice of forfeiture, while Federal Rule of Criminal Procedure 31, dealing with jury verdicts at trial, required only the trial jury to return a special forfeiture verdict.

### B.3 Although the Constitution, statutes, and rules do not require a grand jury finding of probable cause for forfeiture, prosecutors should instruct the grand jury on forfeiture and request such a finding

Although neither the Constitution, nor the forfeiture statutes, nor the rules require it, prosecutors should instruct the grand jury on forfeiture and request a finding that there is probable cause to believe that the requisite nexus exists between the offenses charged in the indictment and the assets allegedly subject to criminal forfeiture, at least in cases where the indictment identifies specific forfeitable property. Such a finding serves several useful purposes.

First, the finding provides a basis for restraining directly forfeitable assets identified in the indictment. Title 21, United States Code, section 853(e)(1)(A) provides for entry of a post-indictment restraining order "upon the filing of an indictment or information charging a violation… for which criminal forfeiture may be ordered…and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section." 21 U.S.C. § 853(e)(1)(A). The legislative history of § 853 indicates that Congress intended for the grand jury's finding in support of forfeiture to be given considerable weight:

> For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.

S. Rep. No. 225, 98th Cong., 2d Sess. 203 (1984), reprinted in 1984 U.S. Code Cong. & Administrative News 3182, 3386.

Second, the grand jury's finding of a probable nexus between the property and the offense may be accorded deference in subsequent proceedings where probable cause is at issue, including challenges to pre-trial restraint of assets allegedly needed to pay a defendant's attorneys' fees. Although "the indictment itself establishes the merits of the government's case" for purposes of post-indictment restraints, other circuits recognize that in extreme situations, due process may require inquiry even into matters decided by the grand jury. *United States v. Real Property in Waterboro*, 64 F.3d 752, 755–56 (1st Cir. 1995); *see United States v. Monsanto*, 924 F.2d at 1191 (due process requires post-restraint hearing where assets needed for attorneys' fees are involved).

The current practice in the law is to continue post-indictment restraints based upon the grand jury's finding of probable cause for forfeiture[22] unless and until the defendant establishes both: (1) an actual need for the restrained assets for, among other important purposes, attorneys' fees or living expenses; and (2) that there is some substantial evidence that the assets are not forfeitable. *See United States v. Jones*, 160 F.3d 641, 647–48 (10th Cir. 1998) (defendant challenging pre-trial restraint of assets alleged to be forfeitable has initial burden of showing that she has no funds other than the restrained assets to hire private counsel, or to pay living expenses, and that there is bona fide reason to believe

---

[22] *See Kaley v. United States*, 134 S. Ct. 1090 (2014) (just as it is sufficient to support the issuance of a warrant for the defendant's arrest, the grand jury's finding of probable cause is sufficient to support the restraint of his property).

restraining order should not have been entered); *United States v. Farmer*, 274 F.3d 800, 804–05 (4th Cir. 2001) (defendant entitled to pre-trial hearing if property is seized for civil forfeiture and defendant demonstrates no other assets are available; following *Jones*).[23]

Third, the grand jury's finding of probable cause is arguably sufficient to trigger the bar on intervention by third parties set forth in 21 U.S.C. § 853(k)(2). Section 853(k)(2) prevents persons claiming interest in allegedly forfeitable property from

> commenc[ing] an action at law or equity against the United States concerning the validity of his alleged interest in the property *subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture* under this section.

21 U.S.C. § 853(k)(2) (emphasis added).

That the indictment alleges that property is subject to forfeiture indicates that the grand jury has made a probable cause determination. If the indictment only gives notice of forfeiture rather than alleging that particular property is forfeitable, and no explicit probable cause finding is included in the notice, then arguably the filing of the indictment would not bar collateral litigation over the property.

Fourth, that the grand jury has found probable cause to believe certain property is forfeitable increases the impact of the actual notice of forfeitability received by a hypothetical reasonable attorney or third party upon learning of the indictment. Such notice affects the ability of any such persons to continue to receive or retain forfeitable property of the defendant as "bona fide purchasers…reasonably without cause to believe that the property [is] subject to forfeiture." *See* 21 U.S.C. § 853(c) and (n)(6)(B); *United States v. McCorkle*, 321 F.3d 1292, 1295 n.4 (11th Cir. 2003) (attorney may lose bona fide purchaser status as to advance fee received from client "because the client is indicted and the attorney learns additional information about his client's guilt"); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 633 n.10 (1989) ("the only way a lawyer could be a beneficiary of § 853(n)(6)(B)['s bona fide purchaser provision] would be to fail to read the indictment of his client").

Fifth, the grand jury's probable cause finding may help insulate case agents and prosecutors from subsequent liability under *Bivens*[24] or the Hyde Amendment.[25] The grand jury's probable cause determination is at least some evidence tending to negate any inference that an action was commenced without probable cause. *See, e.g.*, *Robinson v. Cattaraugus County*, 147 F.3d 153, 163 (2d Cir. 1998) (in malicious prosecution action under 42 U.S.C. § 1983, district court did not err in instructing that grand jury's probable cause determination was evidence that trial jury could consider in deciding whether prosecution was commenced without probable cause).

---

[23] Securing a grand jury finding of probable cause for forfeiture is particularly advisable because a judge might erroneously assume from the presence of a forfeiture allegation in an indictment that the grand jury, in fact, found such probable cause. A case in point is *United States v. Cosme*, 796 F.3d 226 (2d Cir. 2015). The district court in *Cosme*, citing *Kaley*, *supra*, rejected a motion for relief from a restraining order on the ground that "[t]he Government [had] made a sufficient showing of probable cause by virtue of the indictment, which included [a] forfeiture allegation." *Id.* at 231 (quoting district court order). The defendant took an interlocutory appeal and the panel unanimously reversed and remanded for an adversarial probable cause hearing. The panel found that the district court relied on a "mistaken understanding" that "the grand jury had voted on the forfeiture allegation" after the Government conceded on appeal, that "the grand jury did not vote on the forfeiture allegations." Hence, the panel concluded that "*Kaley* does not apply, and the district court was required to make its own probable cause finding [since] none had been made" below. *Id.* at 234–35.

[24] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[25] Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes).

Finally, the practice of presenting forfeiture evidence to the grand jury, listing particular forfeitable assets in the indictment, and requesting that the grand jury find probable cause for forfeiture of those assets should help to defend indictments against future challenge if *Blakely* and its progeny are ultimately construed or extended to apply to criminal forfeiture and to require that the facts supporting forfeiture of particular assets be charged in the indictment and proven to the trial jury beyond a reasonable doubt.

For all of these reasons, prosecutors should ask the grand jury to find probable cause to believe that the requisite nexus exists between the crimes charged and any particular property alleged to be forfeitable.

### B.4   It is not necessary to ask the grand jury to determine the defendant's interest in forfeitable property

A separate issue is whether the prosecutor should also ask the grand jury to find probable cause to believe that "the defendant (or some combination of defendants [charged] in the case) had an interest in the property that is forfeitable under the applicable statute." *See* Federal Rule of Criminal Procedure 32.2(c)(2). Unlike the forfeiture nexus, this issue is not presented to the *trial* jury. Indeed, the court itself only reaches the issue of the defendant's interest in forfeitable property in cases where no ancillary claims to the property are filed. Moreover, unlike the nexus finding, which serves the various useful purposes outlined above, a finding of probable cause to believe that the defendant has an interest in particular property serves no comparable purpose in most cases. Therefore, it does not make sense to present this issue to the grand jury.

Nonetheless, in cases where the defendant has attempted to conceal an interest in property subject to forfeiture, it may be important to the grand jury's understanding of the case—and its ability to make necessary findings as to elements of charged offenses—to present evidence concerning the defendant's actual, although hidden, interest in forfeitable property. For example, in a case where the defendant acquires or transfers property in such a way as to "conceal or disguise the nature, the location, the source, the ownership, or the control" of criminal proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i), the prosecutor may be required to present evidence to the grand jury tending to show that the defendant in fact had ownership or control of the property involved in such a transaction.

In any event, because only property of the defendant can be forfeited in a criminal case, the prosecutor should make reasonable efforts to establish that any property alleged to be forfeitable, and particularly property sought to be restrained as forfeitable, is property of the defendants within the meaning of the applicable forfeiture statutes, including 21 U.S.C. § 853(c), which voids purported post-crime transfers of forfeitable property other than to bona fide purchasers for value reasonably without cause to believe the property was subject to forfeiture.

### B.5   Presenting forfeiture evidence to the grand jury

Just as most trial evidence relating to forfeiture is usually best, and most easily, presented as an integral part of the overall presentation of the Government's case-in-chief, most grand jury evidence bearing on forfeiture is best, and most easily, presented as an integral part of the evidence establishing probable cause to charge the underlying criminal offenses. Questions about assets and their links to criminal activity should be asked of all witnesses likely to have such knowledge, during both lengthy

grand jury investigations and the more abbreviated presentations appropriate to cases investigated primarily outside of the grand jury.

When this practice is followed, a case agent or other Government witness can be brought in shortly before an indictment is returned to summarize previous testimony and documentary evidence bearing on forfeiture. In addition to reminding the grand jury of such previously presented evidence, the summary witness should be prepared to present any additional documents and information necessary to identify and describe any particular assets to be alleged as forfeitable in the proposed indictment. It is usually best to have previously marked asset-related documents—such as certified copies of public real estate, business, and vehicle registration and title records, authentic photographs of major assets, and stipulated or authenticated bank and other financial account statements—available for examination by the grand jury during its consideration of the proposed indictment, including the forfeiture allegations.

Even if forfeiture has not been an ongoing focus of the investigation, the evidence necessary to establish the required link between the charged offenses and the particular forfeitable assets to be listed in the indictment can usually be presented by a Government agent witness in a simple and straightforward manner, not requiring much grand jury time. The focus in such a presentation, as in the summary presentation described above, should be upon: (1) the facts that identify the assets with particularity; and (2) the facts that make the assets forfeitable under all applicable theories of forfeiture—e.g., facts indicating that the assets "constitute, or were derived from, proceeds" of the offenses; that the assets were "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission" of the offenses; that the assets constitute "property, real or personal, involved in" the offenses or "property traceable to such property," etc. *See*, *e.g.*, 21 U.S.C. § 853(a) and 18 U.S.C. § 982(a)(1).

### B.6  Instructing the grand jury on forfeiture

If it is consistent with local practice to do so, the prosecutor may explain to the grand jury preliminarily that: (1) forfeiture is not a substantive offense, or an element of an offense, but rather a required part of the punishment imposed upon conviction for certain criminal offenses; (2) the forfeiture allegations in the proposed indictment will put the defendant on notice that the Government is seeking to forfeit certain property, or types of property, upon the defendant's conviction; and (3) the Government will seek to forfeit substitute assets of the defendant if some act or omission of the defendant makes the directly forfeitable property unavailable.[26]

The prosecutor should then instruct the grand jury with respect to the links that must be found to exist between the charged offenses and the assets alleged to be forfeitable. Generally, this may be done by reading and explaining the pertinent parts of the applicable forfeiture statutes, explaining how each listed asset falls within one or more of the forfeiture provisions.

---

[26]  Some districts have found it useful to cover these points in an introductory presentation to the grand jury outlining forfeiture law and procedures, as part of the grand jury's orientation during the first few weeks after a new grand jury is empaneled. This can be done by the district's forfeiture AUSA, who is in the best position to cover these issues and to address the grand jurors' questions. The orientation session also provides the prosecutor with the opportunity to explain to the grand jury that forfeiting the defendant's interest in a piece of property does not end the matter, but that an ancillary proceeding is held after a preliminary order of forfeiture is entered to allow third parties who claim to have an interest in the property to petition the court to establish that interest. While that issue is of no direct concern to the grand jurors in their deliberations, it is helpful that they understand that the Government is not seeking to forfeit the property of owners with superior interests to that of the defendant or property belonging to innocent bona fide purchasers of the property.

Finally, if the grand jurors have no questions about the forfeiture instructions, the prosecutor should ask the grand jury, during its process of considering the entire indictment, to find probable cause to believe that the listed assets have the required links to the charged offenses.

### B.7  Memorializing and describing the grand jury's probable cause finding

As explained in Section II.B.3 above, there are several good reasons for asking the grand jury to find probable cause for forfeiture of particular assets. If the grand jury was actually asked to make such a finding in the course of its deliberations on the indictment, prosecutors may properly represent to the court, in connection with an application for a post-indictment restraining order or otherwise, that the grand jury has found probable cause to believe that the requisite forfeiture nexus exists with respect to any other property listed in the indictment as forfeitable.

To make the grand jury's probable cause finding readily accessible for seeking and defending pre-trial restraints and the other purposes described in Section II.B.3, it is a good practice to memorialize the finding in the indictment itself. There are several ways to accomplish this.

The grand jury finding as to forfeitability may be set forth in the indictment in a way that simply parallels the presentation of the other substantive charges and allegations in the indictment as to which the grand jury also found probable cause. Practices vary from district to district with respect to whether phrases like "The grand jury charges" appear only at the beginning of the indictment or repeatedly, e.g., "The grand jury further charges," at the beginning of each count. In either case, introducing the forfeiture allegations in the same way as the substantive counts makes it reasonably plain on the face of the indictment that the grand jury has made a probable cause determination with respect to the entire indictment, including the forfeiture allegations.

In a district where there is frequent litigation over pre-trial restraints, the prosecutor may wish to give special emphasis to the grand jury's finding of probable cause for forfeiture of particular assets by making that finding explicit in the text of the indictment: "The grand jury further finds probable cause to believe that upon conviction of the offense[s] in violation of [  ] set forth in Count[s] [##] of this Indictment/Information, the defendant[s], [NAME(S)], shall forfeit to the United States of America, pursuant to [    ] U.S.C. [    ] all [insert statutory language], including, without limitation, $ [  ] in United States currency and the following other particular assets: " If this approach is used, it should be used consistently to avoid any negative implication that a grand jury returning an indictment with no such explicit finding did not find probable cause for forfeiture.

In districts that use the convention of merely giving notice of forfeiture in indictments rather than alleging forfeiture in forfeiture allegations or charging forfeiture in a forfeiture count, it is best practice to include an explicit probable cause finding of forfeitability in the notice section. Doing so will counter any possible implication or argument that the forfeiture notice was merely appended to the indictment without grand jury consideration and determination of probable cause.

# Chapter 7:
# Litigation Issues: Legal and Ethical

## I.    Avoiding Accusations of Vindictive Prosecution

Distinguishing between the burden of proof applicable to a criminal case from a civil case, the Supreme Court has held that an acquittal in a criminal case does not bar a subsequent civil forfeiture action. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984); *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232 (1972). However, prosecutors initiating a civil forfeiture proceeding after an acquittal in a concurrent criminal case should be mindful of the potential for a claim of vindictive prosecution.

In *United States v. Goodwin*, 457 U.S. 368 (1982), the Supreme Court held that prosecutors possess wide discretion in making charging decisions. In the few cases where the Court has found it necessary to presume vindictiveness, it has done so where the defendant has exercised some right, and there exists reasonable likelihood that the prosecutor acted vindictively in response to the assertion of that right.[1] The prosecutor can overcome this presumption by providing the court with objective evidence supporting the prosecutor's decision.[2]

Though it is difficult to generalize, the following considerations influence the vindictive prosecution analysis. One consideration is the timing of the prosecutorial decision at issue. Decisions made in a pre-trial setting, at a time when the prosecutor may still be discovering and assessing relevant information, are less likely to merit a presumption.[3] In contrast, a prosecutorial decision made after trial begins is more likely to merit a presumption.[4] A second consideration is the nature of the right the defendant seeks to invoke. If the defendant merely invokes pre-trial procedural rights, e.g., the right to a jury trial, to move to suppress, to plead an affirmative defense, or to challenge the sufficiency of the indictment, "it is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter."[5] In contrast, if the defendant invokes a right to a new trial to collaterally challenge the conviction, the likelihood of vindictiveness may be greater.[6]

However, even after decisive events have occurred in the criminal case, e.g., a jury has returned a verdict of acquittal against one or more of the defendants, there are often sound reasons why a prosecutor may decide to pursue civil forfeiture. For example, the Civil Asset Forfeiture Reform Act of 2000 (CAFRA)[7] grants the Government 90 days after a claim is filed contesting the forfeiture of an asset in which to commence a judicial forfeiture proceeding against that same asset. A prosecutor who elects to file a forfeiture case within that 90-day period—even if a decisive event occurs in the criminal case before the expiration of the 90-day period—would not be acting vindictively.

---

[1]  *United States v. Goodwin*, 457 U.S. 368, 373 (1982).

[2]  *Id*. at 376, n.8.

[3]  *Id*. at 377.

[4]  *Id*. at 381

[5]  *Id*.

[6]  *See Blackledge v. Perry*, 471 U.S. 21 (1974) (defendant exercised his right to a trial de novo and consequently, during the retrial, the state increased the charge from a misdemeanor to a felony; the Court held that although there was no evidence that the prosecution acted vindictively by increasing the misdemeanor charge to a felony, the concern is the defendant's "fear of such vindictiveness" may deter him from exercising his legal right to appeal, violating due process).

[7]  Pub. L. 106-185, Apr. 25, 2000, 114 Stat 202.

Given these considerations, care also should be exercised to avoid the appearance that the Government has pursued criminal charges because the defendant exercised a right in the parallel civil forfeiture proceeding.[8] If the criminal charge follows a routine pre-trial event in the civil forfeiture case, e.g., the filing of an administrative or judicial claim, the risk of a court indulging a presumption of vindictiveness is negligible.[9] In contrast, if the defendant prevails on the merits of a civil judicial forfeiture case, and criminal charges come afterwards, the prosecutor should be prepared to articulate the reasons for the timing of the criminal charges.

The vindictive prosecution issue can likely be avoided altogether if the civil forfeiture action is filed (and stayed) before the criminal case is concluded. While this involves extra work, if the prosecutor can anticipate that there is a substantial chance of acquittal, and that the Government will pursue civil forfeiture in such an event, filing the civil forfeiture case before adjudication of the criminal case can be a useful method to avoid the issue of vindictiveness altogether.

## II.   Negotiating With Fugitives

### A.  Summary

Absent compelling circumstances, prosecutors should not negotiate with fugitives. Before undertaking such negotiations, prosecutors should exhaust all potentially viable pre-trial motions, such as any possible fugitive disentitlement motion. In many instances, the policy considerations for declining to negotiate with fugitives will outweigh the potential benefit to an individual civil forfeiture case. Only in instances where other considerations, e.g., the cost of maintaining the asset subject to forfeiture, militate towards negotiating a settlement should prosecutors entertain fugitive negotiations. In such circumstances the prosecutor handling the negotiations should consult closely with the prosecutor handling the parallel criminal case.

### B.  Discussion

Periodically, a situation arises where an individual has been indicted, becomes a fugitive, and seeks to challenge or negotiate with the Government regarding a civil forfeiture case. Prior to the enactment of CAFRA, a fugitive in a related criminal case was not barred from opposing the civil forfeiture of property.[10] CAFRA reinstated the fugitive disentitlement doctrine with the passage of 28 U.S.C. § 2466, which permits a court to: "disallow a person from using the resources of the courts of the

---

[8]  *See United States v. Bouler*, 799 F. Supp. 581 (W.D.N.C. 1992) ("A defendant may be able to prove vindictive prosecution in a case such as the instant one in which the Government prosecutes the defendant after he files a claim in a civil forfeiture action." However, the defendant did not pursue such a claim, and thus, the court did not address it further).

[9]  *United States v. White*, 972 F.2d 16 (2d Cir. 1992) (prosecution indicted defendant after he subsequently challenged the forfeiture of his vehicle; court declined to hold that by opposing the Government's forfeiture, the Government should be precluded from bringing criminal charges).

[10]  *See Degen v. United States*, 517 U.S. 820 (1996) (fugitive disentitlement doctrine cannot be created by case law); *United States v. Funds Held in the Name of Wetterer*, 17 F. Supp. 2d 161 (E.D.N.Y. 1998) (because of *Degen*, claimant that is alter ego of fugitive may file claim challenging forfeiture of bank account held by perpetrator of mail fraud/child sex abuse scheme who is resisting extradition in Guatemala); *United States v. One 1988 Chevrolet Cheyenne Half-Ton Pickup Truck*, 357 F. Supp. 2d 1321 (S.D. Ala. 2005) (tracing the history of the fugitive disentitlement doctrine and discussing the impact of *Degen*).

United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any criminal forfeiture action," if certain conditions are met.[11]

If a court agrees to apply the fugitive disentitlement doctrine, the Government should be able to obtain a default judgment, at least as to the fugitive's interest, in most cases. Thus, there would be no reason to negotiate with a party who is barred from challenging a forfeiture, and negotiation is thus discouraged in that circumstance.

Even in cases where a court may decline to apply the fugitive disentitlement doctrine, the Government may be able to prevail on a pre-trial motion.[12] For example, fugitives often will decline to appear for deposition or otherwise participate in discovery. Federal Rule of Civil Procedure 37(b)(2) allows the court to order a party to comply with a discovery request, and if the party fails to comply, the court can impose sanctions that include: (1) an order that certain facts shall be taken as established; (2) an order refusing to allow the disobedient party to support or oppose designated claims or defenses or introduce matters in evidence; and (3) rendering judgment by default against the disobedient party.

Where pre-trial motions are not viable or are unsuccessful, prosecutors should pursue negotiations with fugitives only as a last resort. As a general matter, it is rarely in the Government's interest to negotiate with fugitives.[13] Prosecutors should be sensitive to these considerations and not take any actions that may undermine the policy considerations noted in the *Rich* case (*see* footnote 12), and should in all circumstances coordinate closely with prosecutors handling the parallel criminal case.

In the exceptional case where negotiations with a fugitive are appropriate, prosecutors should limit the factors that influence the conduct of the negotiations. It is legitimate to take into account the Government's litigation risk at trial, or expenses the Government may incur in maintaining an asset if the case would otherwise be delayed indefinitely. For example, if the forfeiture involves tangible property that is incurring storage expenses or property where a lien is continuing to accrue and erode the equity, it may be in the Government's financial interest to resolve the forfeiture matter quickly. If a court declined to invoke the fugitive disentitlement doctrine, negotiation may be necessary in order to resolve the matter. But in no circumstances should a prosecutor agree to exchange assets for a defendant's agreement to surrender and face criminal charges.

## III.   Criminal Forfeiture and *Brady* Obligations

In criminal forfeiture matters, the Government has not only an ethical but also a legal duty to disclose information favorable to the defendant as to either guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83 (1963) ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment

---

[11]   *See Collazos v. United States*, 368 F.3d 190 (2d Cir. 2004) (section 2466 is Congress's response to the Supreme Court's decision in *Degen*; it does not violate the claimant's constitutional right to due process); *One 1988 Chevrolet Cheyenne Half- Ton Pickup Truck*, 357 F. Supp. 2d at 1326 (section 2466 is a "forceful legislative response" to the void created by *Degen*).

[12]   Section 2466 "'does not mandate the court to disallow the claimant,' but rather confers upon the Court discretion to determine whether or not disentitlement is warranted." 357 F. Supp. 2d at 1328.

[13]   *See In re Grand Jury Subpoenas Dated March 9, 2001*, 179 F. Supp. 2d 270, 277 (S.D.N.Y. 2001) (noting a response by the U.S. Attorney's Office (USAO) in the Southern District of New York in the Marc Rich case that "it is our firm policy not to negotiate dispositions of criminal charges with fugitives. Such negotiations would give defendants an incentive to flee, and from the Government's perspective, would provide defendants with the inappropriate leverage and luxury of remaining absent unless and until the Government agrees to their terms.").

irrespective of the good faith or bad faith of the prosecution").[14] Forfeiture is an element of the sentence, and thus forms part of the punishment imposed on the defendant. *Libretti v. United States*, 516 U.S. 29, 38–39 (1995). Accordingly, *Brady* requires the Government, even absent a request by the defendant, to disclose evidence favorable to the defendant that relates to criminal forfeiture.

## IV.   Fifth Amendment Advisements in Civil Forfeiture Cases

The procedural safeguards established by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), protect the Fifth Amendment rights of a person not to be compelled in a criminal case to be a witness against himself. The Court held that unless a suspect in a *custodial* interrogation is first warned of his or her right to remain silent, and to have an attorney, provided at no cost, if necessary, before questioning, statements made by the suspect would not be admissible at trial. *Id*. at 492. The Court's primary concern was the coercive atmosphere surrounding a person in custody who is subject to interrogation by the police. *Id*. at 457–58. Because these conditions typically are not present in the context of a deposition of a witness or claimant in a civil forfeiture case, the Constitution does not require prosecutors to warn the witness of his or her rights against self-incrimination prior to questioning in a civil deposition. *See, e.g.*, *United States v. Solano-Godines*, 120 F.3d 957 (9th Cir. 1997) (*Miranda* warnings are not required before questioning in a civil deposition hearing). Consequently, statements, including those which might be self-incriminating, made in the course of a deposition in a civil forfeiture case are admissible in the proceeding even in the absence of *Miranda* warnings because deposition proceedings are civil in nature and are not criminal prosecutions.

Nonetheless, in civil forfeiture cases where the deponent is known to the Government to be a target or subject of a parallel criminal investigation or prosecution, Government attorneys may wish to consider either deferring the deposition, or taking the deposition but giving an advisement that draws elements from those advice of rights that prosecutors routinely give targets and subjects in federal grand jury practice. For example, before taking the deposition in a civil forfeiture case of an unrepresented claimant or witness who is a target of a parallel criminal investigation, the advisement may state simply:

> You are advised that you are a target of a parallel federal criminal investigation.[15] You may refuse to answer any question in this proceeding if a truthful answer to the question would tend to incriminate you. Anything that you do or say may be used against you in this proceeding, in a criminal proceeding, or in any other subsequent legal proceeding.

Include if applicable:

> If you are represented by appointed counsel in a related criminal case, you have a right to ask the court to appoint counsel for you in this proceeding.

---

[14]  *United States v. Agurs*, 427 U.S. 97, 110–11 (1976) (extended the rule announced in *Brady* to apply to evidence that "is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request").

[15]  Where the civil forfeiture is being litigated by an attorney other than the criminal prosecutor, the forfeiture attorney may not be authorized to disclose the existence of the criminal investigation to the deponent. At the same time, the attorney's duty of candor may preclude her from denying the existence of an ongoing criminal investigation if asked by the deponent or his counsel. In those instances, it is still the better course to advise the deponent of his Fifth Amendment rights, but to do so without confirming or denying the existence of a criminal investigation.

Or:

> If you are using the real property which this case seeks to forfeit as your primary residence, you
> have a right to ask the court to appoint counsel for you in this proceeding provided you show that
> you are financially unable to obtain counsel.

In contrast, before taking the deposition of a deponent who is a target, and who is represented,
the advisement may simply state: "You are advised that you are a target of a parallel criminal
investigation."

The suggestion that a Government attorney may want to give an advisement to a deponent in certain
civil forfeiture cases rests on several considerations. In grand jury practice, Department of Justice
(Department) policy requires prosecutors to give criminal targets and subjects Fifth Amendment
advisements in a target letter, and repeat those advisements on the record before the grand jury. *See*
*Justice Manual* (JM) § 9-11.151; *Criminal Resource Manual* 160 (sample target letter).[16] In the case
of targets, the Department's policy goes further. Prosecutors must advise targets that they are a target
of a criminal investigation. These policies exist notwithstanding the lack of a clear constitutional
imperative requiring prosecutors to give any advisements to targets or subjects in the context of
grand jury practice. *See* JM § 9-11.151. While there is no constitutional right to an attorney in a civil
forfeiture proceeding, certain indigent claimants may have a statutory right to counsel. The court may
authorize counsel for an indigent claimant with standing to contest the forfeiture who is represented
by court-appointed counsel in a related criminal case. *See* 18 U.S.C. § 983(b)(1)(A). And, upon the
request of an indigent party in a civil forfeiture action brought by the Government to forfeit that
person's primary residence, the court "shall ensure that the person is represented by an attorney"
*See* 18 U.S.C. § 983(b)(1)(B). An advisement also enhances the likelihood that if the testimony is
offered in a criminal prosecution, it will be admitted. Finally, the advisement helps rebut a claimant's
subsequent arguments that he was not aware of the Fifth Amendment right, or, in the case of certain
indigent claimants, was not aware that he may have the right to counsel in the civil forfeiture case.
*See* 18 U.S.C. § 983(b); *see also* 18 U.S.C. § 981(g)(2) (authorizing a claimant to move to stay a civil
forfeiture proceeding based on Fifth Amendment concerns).

## V.   Preservation Policy for Civil Forfeiture

### A.  The legal obligation

There is a legal duty to preserve potentially relevant evidence once a party reasonably anticipates
litigation, whether the Government is the plaintiff or defendant. *Zubulake v. UBS Warburg LLC.*,
220 FRD 212, 218 (S.D.N.Y. 2003); Federal Rule of Civil Procedure 37, Advisory Committee Note,
2006 Amendments, Subdivision (f). Although a litigation hold is the primary method of preservation,
reasonableness and good faith are the ultimate standards by which an alleged breach of the duty to
preserve is judged. A breach of the duty to preserve may be the basis for discovery sanctions if the
Government fails to produce relevant electronically stored information (ESI) or tangible items.

Preservation should be distinguished from production under the Federal Rules of Civil Procedure
that govern discovery and from admissibility under the Federal Rules of Evidence. The fact that
information may be work product, otherwise privileged, or inadmissible does not obviate the duty
to preserve and the fact that information is preserved does not necessarily mean it will be produced.

---

[16]  The *Justice Manual* is available at: www.justice.gov/jm/justice-manual; the *Criminal Resource Manual* is available at:
www.justice.gov/jm/criminal-resource-manual.

The practical guidance below applies equally to Department attorneys (including Assistant U.S. Attorneys (AUSAs)) and to investigative agency counsel. The guidance does not apply to attorneys at independent agencies. Mentions of "the Department" or "a Department attorney" do not refer to investigative agency counsel, regardless of that fact that investigative agencies such as the Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and their attorneys, fall under the Department umbrella. Thus, there is a distinction drawn between "the Department" and "agencies" or "agency counsel" for the purposes of this policy.

Except where this policy clearly addresses the particularities of a situation where a Department attorney is assigned to a case and initiates the call for a litigation hold, agency counsel may still wish to take note of the practical guidance in Sections V.A.–D. below, in the event that they enact a litigation hold in the administrative context, to the extent that it does not contradict internal agency procedure relating to litigation holds.

## B. Litigation holds

The obligation to preserve evidence arises when a party has notice that evidence is relevant to litigation or when a party reasonably anticipates litigation and foresees that the evidence may be relevant to that future litigation. When a Department attorney assigned to a case determines that an event triggers the obligation, the attorney should advise participating agency counsel to implement a litigation hold. In administrative forfeiture cases, relevant agency counsel should determine whether a litigation hold is necessary and appropriate and follow the guidance below, as applicable.

Where a case has been assigned to a Department attorney, the attorney should advise the relevant agency or agencies to enact a litigation hold no later than:

(1) **Seizure/Restraint:** The time at which a seizure warrant is obtained for property that, by statute, may not be administratively forfeited or for which the seizing agency lacks administrative forfeiture authority.

(2) **Claimant Action:** Upon service or actual notice, whichever is earlier, of the filing of a complaint or other pleading; or, upon receipt of a motion for return of property or notice of other action regarding seized or forfeited property.

(3) **Reasonable Certainty:** When the Department attorney receives a referral to file a judicial forfeiture action, the time when it is reasonably certain that the Department will indeed file a complaint or a motion for extension of time to file a complaint (as opposed to declining the matter or pursuing criminal forfeiture instead).

(4) **Special Circumstances:** When the Department attorney advises, if the attorney determines that special circumstances exist that warrant the immediate preservation of relevant information.

Administrative seizures do not often lead to litigation, and in most cases, will not trigger a litigation hold. However, there may be situations where agency counsel develops a reasonable belief that litigation will ensue. In those circumstances, agency counsel may wish to consider the propriety of a litigation hold or other method of preserving relevant information, proportional to the threat of future

litigation. Events that *may* lead an agency to reasonably believe that litigation will occur include the following:

(1) The filing of a claim

(2) The investigation of a certain target and/or certain assets:

- does anything in the pre-seizure planning stage suggest that litigation is reasonably foreseeable?

(3) Seizure:

- were the assets seized particularly large, valuable, or rare?

- was there considerable publicity surrounding the seizure or the parties involved?

- did the owner or his or her attorney make it known to agents that a claim would likely be filed, either through words or actions?

- based on prior experience, is defense counsel known to aggressively file claims?

## C.  Information subject to preservation

### C.1  Scope

The scope of the litigation hold defines what information is relevant and defines the sources (physical locations) of such documents, tangible items, and ESI. Relevant information is anything that the Government knows, or reasonably should know, relates to the foreseeable claims or defenses of any party or is likely to lead to the discovery of relevant information. There is no duty to retain every piece of paper. The Department attorney should determine relevance in consultation with the custodians of information, who, in an asset forfeiture matter, include persons at agencies in possession of the relevant case files. Scope is a fact-specific inquiry, the parameters of which should be explained in detail by the Department attorney on a case-by-case basis. The initial decision to preserve and the subsequent mechanisms chosen to fulfill the obligation should be guided by reasonableness and proportionality.

Relevant information should be preserved as it is kept in the usual course of business. Duplicates do not need to be retained. ESI should be maintained in native format.[17] Any agency advised to implement a litigation hold should ensure that all materials designated by the Department attorney as within the scope of the hold are, in fact, retained, and retained in the form specified.

### C.2  Relevant time frame

All relevant information in existence at the time when the duty to preserve attaches should be retained, as well as relevant information created thereafter, until the Department attorney or agency

---

[17] "Native format" answers the need to produce "reasonably accessible metadata that will enable the receiving party to have the same ability to access, search, and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case." *See* The Sedona Conference Commentary on Legal Holds: The Trigger and the Process, 11 *Sedona Conference Journal* 265, 278 (2010), available at: thesedonaconference. org/publication/Commentary_on_Legal_Holds.

counsel advises otherwise. The starting point for information that should be captured by the litigation hold is no later than:

- the date the investigation began; or

- the date of the relevant seizure.

The point at which information will no longer require preservation under the litigation hold is no earlier than:

- the date when the forfeiture decision is final and non-appealable;

- the date upon which the time for filing an appeal or petition for a writ of certiorari expires; or,

- another date as the Department attorney or agency counsel advises.

## D.  The litigation hold notice

### D.1  Who issues

The Department attorney or agency counsel advises the relevant agency or agencies to implement the litigation hold. The Department attorney should be responsible for: (1) preserving documents created or received by that attorney; (2) guiding other members of the office; and (3) advising and monitoring preservation efforts at the agency or agencies.

The practical duty of preservation remains on agency staff, except as it relates to documents within the possession of Department. Proper execution of the duty to preserve includes consulting with information technology (IT) personnel, guiding the individual custodians of information, and following the instructions in the litigation hold notice as provided by the Department attorney or agency counsel.

### D.2  Who receives

All agencies should designate an attorney within the agency as the preservation point person to receive litigation holds from the Department attorney and to transmit such notices to custodians of relevant information.

Key custodians should receive the litigation hold notice from their preservation point persons at the agencies. These custodians may include, non-exclusively, counsel's office attorneys assigned to the case, case agents, and any other players who may have produced or received information relevant to the case. The list of key custodians may be amended and the hold notice should be sent to new persons as needed. The Department attorney should be notified of all key custodians and any changes to that list made by the agency preservation point persons.

The Department attorney and agency preservation point person should take particular care that the relevant documents and information are retained when key custodians leave their respective agencies or are reassigned. New employees should be apprised of existing litigation holds relevant to their assignments when they assume their positions.

### D.3   Multiple agency situations

When more than one investigative agency works on a particular case—whether in a task force setting, through informal coordination, or under seizures from state and local agencies—the Department attorney should consult with the lead agency to ascertain which entities, exactly, participated in the investigation. The Department attorney should inquire as to which other agencies may be involved and communicate with the designated preservation point persons at all additional participating agencies. The lead agency point persons should provide the Department attorney with the contact information of the preservation point persons at the other agencies involved in the case no later than the date specified by the Department attorney so that attorney can determine the scope of the hold and send the litigation hold notice to the lead and all other participating agencies.

### D.4   Format

Best practice entails a *written* litigation hold ("urgent" email is the preferred method). The Department attorney should attach a written (electronic) agreement to comply along with the litigation hold notice and require an affirmative response from all recipients by a certain date. In a multiple agency situation, all litigation hold recipients should be able to view the entire list of addressees. Such access enables the recipients to identify an agency that may have relevant information in its files, but was erroneously overlooked in the Department attorney's initial email advising the agency or agencies to implement a litigation hold.

### D.5   Content

At a minimum, the litigation hold notice should contain:

- names of any foreseeable parties in the anticipated litigation;

- time frame during which relevant information has been or will be created;

- affirmative directions to preserve information and prohibitions on destruction/deletion;

- instructions to initially separate information believed to be privileged from other preserved information;

- expectations for compliance, consequences of non-compliance, and method of monitoring compliance;

- instructions on how to proceed when the recipient believes the hold inadvertently excludes relevant information, sources of data, or entities likely to possess information;

- an agreement to comply with the hold, to be signed and returned by a certain date;

- a summary of the claims, defenses, or issues raised by the anticipated litigation and/or trigger;

- scope of the hold and any limitations on it;

- mechanisms for the collection of preserved ESI, tangible items, and documents;

- any technological aspects of IT systems that could help/hinder preservation;

- procedure for how the hold may be expanded, diminished, and terminated; and

- contact information of the advising attorney.

### D.6  Ongoing duty

The Department attorney who advises an agency to issue a litigation hold should:

- keep a log of all steps taken to initiate and maintain a litigation hold, including a record of communication with agency point persons and a concise statement of the reason any significant decision on preservation was made;

- periodically review the litigation hold to determine whether to maintain, diminish, or expand its scope in light of the evolving claims, defenses, and issues in the case;

- document changes made to the scope of the litigation hold or list of key custodians;

- periodically review compliance with the hold, in consultation with the preservation point person at the agency (agencies);

- send a reminder notice, electronically, to all recipients of the litigation hold notice, including agency preservation point persons, every 90–120 days; and

- promptly notify, electronically, all recipients of any modifications to the scope of the hold.

### D.7  Removing a hold

The advising Department attorney should not make the decision to lift a litigation hold until after the time for filing direct appeals in the case (and related or ancillary proceedings) or a petition for a writ of certiorari has passed. If a Department attorney was never assigned to the case but agency counsel issued a litigation hold independently, the hold may be removed when the time for a claimant to file a claim contesting the forfeiture has passed. The Department attorney or agency counsel should electronically notify all recipients of the litigation hold notice that the need for the hold has ended and that they may cease preserving information related to the case.

# Chapter 8:
# International Forfeiture

## I.    Forfeiture of Assets Located Abroad Under United States Law

Federal law enforcement should include in its priorities the pursuit and recovery of forfeitable assets beyond the borders of the United States. Federal investigators and prosecutors who seek to restrain and forfeit illicit assets located abroad should seek the advice of the Money Laundering and Asset Recovery Section (MLARS). It is advisable that this contact be made as soon as foreign assets are identified as potentially subject to forfeiture under United States law. The extent and speed of forfeiture assistance afforded by the foreign nation in which the assets are located may vary greatly depending upon the applicable treaty obligations and laws of the foreign nation. Moreover, international requests for legal assistance occasionally may implicate issues of diplomatic sensitivity and/or require coordination with other related investigations, domestic or foreign. MLARS, in conjunction with the Office of International Affairs (OIA), will help guide Assistant U.S. Attorneys (AUSAs) and agents through this often complicated, but fruitful, process.

## II.    Forfeiture of Assets Located in the United States under Foreign Law

The Department of Justice (Department) assigns high priority to requests by foreign countries for assistance in restraining, forfeiting, and repatriating assets found in the United States that are forfeitable under foreign law. Additionally, it is important for the United States to act affirmatively on such incoming requests so that it is not wrongly perceived as becoming a safe haven for proceeds of foreign crime and other property forfeitable under foreign law. MLARS executes incoming requests for forfeiture assistance under 28 U.S.C. § 2467 in consultation with in coordination with OIA. In some circumstances, it may be necessary for MLARS to file an 18 U.S.C. § 981(a) action against an asset to assist a foreign government's forfeiture efforts. MLARS will work with the established forfeiture contact(s) within each district where forfeitable assets are located to accommodate the legal assistance needs of the requesting jurisdiction.

## III.    Policy on International Contacts

The Department, by long-standing policy, has required that all incoming and outgoing international contacts by or with AUSAs regarding criminal justice matters be coordinated with and through OIA. OIA is the designated entity through which the United States must make all formal requests for legal assistance to foreign governments. Federal prosecutors must adhere to established procedures for international contacts and should not contact foreign officials directly on case-related matters unless such contacts have been approved by, are under the supervision of, or are in consultation with OIA. Often, OIA will permit prosecutors to have direct contact with foreign officials provided OIA is copied on, or informed about, all of the relevant communications. Federal investigators and prosecutors should consult with OIA regarding the official policy on contact with foreign officials.

In addition to regulating formal contacts between United States prosecutors and foreign officials, MLARS and OIA do encourage the legal exchange of law enforcement information via the appropriate law enforcement liaison officers and Department attachés stationed in the United States and abroad whenever this is operationally feasible. Prosecutors and agents should also utilize secure law enforcement networks to obtain or share information relevant to forfeiture efforts. For example,

the United States is a member of the Camden Assets Recovery Interagency Network (CARIN), an international asset forfeiture practitioners' network of 56 jurisdictions, which includes access to an additional 50 satellite jurisdictions participating in CARIN-style regional bodies located in the Caribbean, Latin America, Africa, and the Asia-Pacific region. CARIN points-of-contact can provide investigatory assistance and legal advice to support ongoing United States forfeiture efforts before statutory or treaty-based assistance is invoked. MLARS can process outgoing CARIN requests for United States prosecutors and agents. Other channels would include the Egmont Group[1] channel, via the Financial Crimes Enforcement Network (FinCEN), which permit the exchange of financial intelligence and inquiries through the Egmont Group's rules of engagement.

## IV.   Foreign Property Management Issues

Tangible assets located abroad may present unique property management issues. Federal prosecutors and investigators should keep in mind that, although many countries are willing to restrain or seize assets in support of United States forfeiture efforts, some of them lack the resources, experience, or legal authority that allow for adequate management of the seized or restrained property pending resolution of the United States forfeiture proceeding. Thus, extensive pre-seizure or pre-restraint planning may be required as to certain property located abroad, which is likely to require affirmative post-seizure or post-restraint preservation or management. Foreign governments may be willing to assume responsibility of preserving assets, or they may ask the United States to do so, and the United States or the foreign government may need to hire, or legally appoint, guardians, monitors, trustees, or managers for certain assets. Prosecutors should be aware that the costs of storing, maintaining, and disposing of certain assets, particularly depreciating assets such as vehicles, vessels, or aircraft, located in a foreign country may, in protracted international forfeiture cases, exceed the value of the asset itself.

When faced with the seizure of tangible assets abroad that may require affirmative management, a federal prosecutor or investigator should promptly contact the U.S. Marshals Service (USMS). In cases in which the lead law enforcement agency is a Department of the Treasury (Treasury) or Department of Homeland Security (DHS) agency, the federal prosecutor or investigator should contact the Treasury Executive Office for Asset Forfeiture (TEOAF). MLARS must be consulted before the United States asks a foreign government to restrain or seize an ongoing business or its assets or to appoint or hire a guardian, monitor, trustee, or manager for same.

Finally, in order to accurately track assets restrained abroad, it is important to create a "Frozen, Indicted, Restrained, Encumbered (FIRE) asset" entry in the Consolidated Asset Tracking System (CATS) prior to requesting restraint of assets abroad. In cases in which the lead law enforcement agency is a Treasury or DHS agency and the asset is tracked in the applicable Treasury or DHS asset tracking system, the federal prosecutor or investigator should nonetheless ensure that a parallel FIRE asset entry is created in CATS.

## V.   Publication of Notice Abroad

In both civil and criminal forfeiture proceedings, the United States is required to provide notice by publication which may occur on the Government forfeiture website: www.forfeiture.gov.[2] Publication

---

[1]  Contact MLARS for additional guidance.

[2]  *See* Rule G(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and Federal Rule of Criminal Procedure 32.2(b)(6).

on the internet provides more effective (and cost-efficient) notice than newspaper publications because the notice is available 24 hours a day, is reachable throughout the globe by anyone with Internet access, and is searchable by the user by use of search terms. Therefore, in the absence of a compelling reason to use print publication, publication on the internet should be considered the norm and print publication the exception.

Publication on www.forfeiture.gov is limited to English at this time. However, depending on the facts of the case it may be appropriate to publish notice in a newspaper of general circulation in the country in which the assets are restrained or seized and/or via legal notices, in the appropriate foreign language, in the country in which known potential claimants are located. Publication abroad should be requested in the same manner and format that complies with the requirements of domestic publication in the United States and, as much as is possible, in the manner requested by the foreign government providing assistance with the publication. Some foreign governments will assist with publication, while other governments require the United States to make its own arrangements. In many instances, reliance may be placed on United States law enforcement officers or Department attachés stationed in foreign countries to arrange for publication. Some foreign governments will not assist the United States with publication but still require that we obtain governmental permission before we publish in their jurisdictions. Other countries insist that there be no publication at all within their borders. Where foreign publication does occur, the United States typically pays the costs of publication. MLARS should be consulted to ascertain the foreign government's preferences regarding publication of notice within its borders before attempting publication in the country.

## VI. Consultation with MLARS or OIA When Seeking Repatriation of Forfeitable Assets Located Abroad

In cases where a foreign government has restrained or seized assets based upon the formal request of the United States, the prosecutor and investigators must consult MLARS and the OIA attorney handling the case, before seeking repatriation of restrained or seized assets. MLARS, in consultation with OIA, is usually aware of foreign legal constraints on repatriation of forfeitable assets, as well as any sensitivity against repatriation on the part of the foreign government, and, therefore, must be consulted before taking any action to repatriate such frozen assets. Repatriation of frozen assets also generally requires that any foreign restraint or seizure order be lifted or modified, as needed, which can only be done with the consent of and action by the appropriate foreign country. In some cases, resolution of the United States forfeiture action may not alone be sufficient cause for lifting the foreign restraint; for example, the seizure or restraint may remain in place pending the outcome of a related prosecution in jurisdictions having mandatory prosecution laws. *See* discussion in Section XI. below.

Further, federal prosecutors and investigators, before seeking an order compelling the repatriation of specific assets pursuant to 21 U.S.C. § 853(e)(4), should always consult with MLARS or OIA before negotiating or ratifying an agreement with a defendant to repatriate criminally derived assets from abroad, even as to property that is not seized or restrained by the foreign government. Such consultation is advisable because, for one thing, the property in question may be subject to domestic proceedings in the foreign jurisdiction. For another, certain countries deem another government's efforts to repatriate assets located in their jurisdictions to constitute a violation of their sovereignty, and in rare instances, such nations may deem any person who instigates or is involved in the effort to repatriate to be involved in committing a criminal offense, such as money laundering. Similarly, many countries may not object to a negotiated voluntary repatriation of assets and allow such transfers to

occur pursuant to a plea agreement or settlement, but often object to court-ordered, non-voluntary repatriations because they regard the repatriation order as a "coercive measure" that violates the property owner's civil rights under their domestic law. Other countries take the position that a failure to inform them of forfeitable assets located in their jurisdiction is a violation of applicable treaty obligations. Finally, in matters in which the United States previously has asked a foreign government to restrain an asset, a voluntary repatriation by the defendant will obviously require the lifting or modification of the foreign restraint of seizure, which, although legally permissible, may subject the foreign nation to unintended legal liabilities under its law, such as attorneys' fees.

## VII.  Probable Cause Finding to Seize or Restrain Assets Abroad

In *Kim v. Department of Justice*,[3] a federal district court held that the United States must demonstrate probable cause of forfeitability of the subject assets before requesting another country to seize or restrain the assets. As a result, MLARS and OIA, in the exercise of caution and solely as a matter of policy, and without conceding that *Kim* is properly decided, advise prosecutors seeking the seizure or restraint of property located abroad to first obtain a probable cause finding from a United States court regarding the forfeitability of the property in question before asking OIA to make the request.[4] As discussed below, there are a number of ways to obtain such a probable cause finding.[5] Again, nothing in this section is intended to suggest or concede that such a probable cause finding is necessary, and the discussion reflects only a matter of policy.

### A.  Criminal forfeiture cases

In a criminal forfeiture case, there are at least three options for obtaining a probable cause determination regarding forfeitability: (1) naming the foreign-based asset in the forfeiture allegation in the indictment and requesting the grand jury to find probable cause for forfeiture; (2) obtaining a restraining order; and (3) obtaining a criminal seizure warrant.

#### A.1  Indictment

If a pending indictment contains a criminal forfeiture allegation relating to property located abroad, and the grand jury has made a finding of probable cause to believe that the *specific property* located abroad is subject to forfeiture, the indictment itself will serve as the necessary probable cause finding for purposes of the Mutual Legal Assistance Treaty (MLAT) request.[6]

#### A.2  Restraining order

Once the indictment is returned, the United States may obtain a post-indictment *ex parte* restraining order pursuant to 21 U.S.C. § 853(e). Such a restraining order requires a finding of probable

---

[3]  No. CV 05-3155 ABC (FMOx) (C.D. Cal. July 11, 2005) (unpublished). *See also Collello v. Securities and Exchange Commission*, 908 F. Supp. 738 (C.D. Cal. 1995), on which the *Kim* court heavily relied.

[4]  Under rare circumstances, OIA may authorize a prosecutor to move forward with a treaty request to seize or restrain assets abroad without the prosecutor first obtaining a finding of probable cause.

[5]  OIA will consider making a formal request without a probable cause determination where the assets located in a foreign state are held by a person "with no voluntary attachment to the United States," rendering the Fourth Amendment inapplicable. *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). If the facts support this conclusion, the prosecutor should discuss this possibility with OIA.

[6]  A general or "generic" description of assets, such as "all property of the defendant located in Switzerland" will probably not satisfy the particularity requirement for probable cause under the Fourth Amendment.

cause; therefore, the issuance of the restraining order will provide the necessary probable cause determination so long as the asset located abroad is specifically identified in the restraining order.

The restraining order may be obtained in either of two ways. First, if the property is specifically listed in the indictment and the grand jury actually finds probable cause for the forfeiture allegation, most courts hold that the grand jury's finding of probable cause is alone sufficient to support the issuance of a restraining order without further submission by the United States.[7] However, it should not be necessary to obtain such an order solely for purposes of complying with "the *Kim* policy" where the property located in the foreign nation is listed in the indictment and the grand jury specifically found probable cause for forfeiture of the property. Moreover, property that was not specifically listed in the forfeiture allegation of the indictment but is later identified as subject to forfeiture in a bill of particulars, will meet the requirements of "the *Kim* policy" if the United States supports its application for modification of the restraining order to include the overseas property with a probable cause affidavit regarding the property.

### A.3   Criminal seizure warrant

The legal authority for the issuance of a criminal seizure warrant against foreign-based property is not explicit. Title 21, United States Code, section 853(f) authorizes an AUSA to obtain a seizure warrant from the court in the same manner as a search warrant under Federal Rule of Criminal Procedure 41, and 21 U.S.C. § 853(l) provides that a federal court has "jurisdiction to enter orders as provided in this section *without regard to the location of any property which may be subject to forfeiture*" (emphasis added). However, 21 U.S.C. § 853(f), which governs issuance of criminal seizure warrants, is not as broad as the corresponding authority for civil seizure warrants under 18 U.S.C. § 981(b).[8] It provides that criminal seizure warrants may be obtained only if it appears that a restraining order would be inadequate to preserve the availability of the property for forfeiture. The outcome of a foreign nation's deliberative process on applying for a preventive measure to secure the property under foreign law seldom turns on whether the United States obtained a seizure warrant or restraining order as a means of establishing probable cause for forfeiture. Thus, the United States, for the most part, will be unable to assert a strong argument to a United States court that a Federal Rule of Criminal Procedure 41 seizure warrant is required because a restraining order pursuant to 21 U.S.C. § 853(e) would not be sufficient for preservation of the property subject to forfeiture; this is because foreign governments rarely, if ever, execute the warrant or restraining order issued by a United States court but instead obtain and enforce orders under foreign law, using the United States order as evidence to establish probable cause. Refraining from use of criminal seizure warrants also avoids the issue of whether a United States district court has the authority to issue an extraterritorial seizure warrant pursuant to Rule 41(b). Rule 41(b)(3) permits a federal court to issue warrants for foreign-based property only in domestic and international terrorism investigations and not for any other types of investigations. Title 18, United States Code, section 981(b) expressly overrides the conflicting language in Rule 41(b), whereas 21 U.S.C. § 853(l) does not. For purposes of satisfying "the *Kim* policy" in criminal cases, therefore, it seems advisable to obtain a restraining order rather than risk

---

[7]   *See United States v. Jamieson,* 427 F.3d 394, 405 (6th Cir. 2005) (initial issuance of restraining order may be based on grand jury's finding of probable cause); *United States v. Bollin,* 264 F.3d 391, 421 (4th Cir. 2001) (the grand jury's finding of probable cause is sufficient to satisfy the government's burden).

[8]   It may be advisable to obtain both a criminal and civil seizure warrant, in the alternative, in the same application so that the court's extra-territorial jurisdiction over the assets is clear and unassailable. *See* discussion in Sec. VII.B.2 below.

litigating the scope of Rule 41(b) or attempting to make the higher showing required to obtain a seizure warrant under 21 U.S.C. § 853(f).

### B.  Civil forfeiture cases

In a civil forfeiture case, there are at least three options for obtaining a probable cause determination: (1) a warrant of arrest in rem, (2) a seizure warrant, and (3) a restraining order.

#### B.1   Warrant of arrest in rem

The preferred means of obtaining the requisite probable cause finding is to obtain a warrant of arrest in rem from the district court after a civil forfeiture complaint has been filed. Rule G(3)(b)(ii) and (c)(iv) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions requires a probable cause finding by a judge or magistrate judge before any warrant of arrest in rem is issued for property that is not already in the custody of the United States and provide for sending the warrant to a foreign country if the property is located abroad. Obtaining a warrant of arrest in rem under Supplemental Rule G is the best and easiest means of obtaining the required probable cause finding in support of MLAT requests asking another country to seize or restrain property abroad in civil forfeiture proceedings.

#### B.2   Civil seizure warrant

Another option is to obtain a civil seizure warrant for the property pursuant to 18 U.S.C. § 981(b)(2) in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure. Such a warrant requires a finding of probable cause and may be obtained on an *ex parte* basis.

Section 981(b) applies to all property subject to civil forfeiture under both § 981(a) (the forfeiture statute applicable to most federal crimes) and any other forfeiture statute containing language incorporating the procedures of Chapter 46 of Title 18 of the United States Code, such as 21 U.S.C. § 881(a) (the civil forfeiture statute for drug offenses), and/or 8 U.S.C. § 1324(b) (the civil forfeiture statute for the smuggling or harboring of illegal aliens).[9] Accordingly, 18 U.S.C. § 981(b) provides a means for obtaining a probable cause finding under the vast majority of federal civil forfeiture statutes; however, where a given civil forfeiture statute does not incorporate § 981(b), the prosecutor will have to identify an alternative statutory basis for obtaining a pre-complaint finding of probable cause of forfeitability as to the foreign property sought to be forfeited. MLARS can assist in this endeavor before seeking an order actually compelling the repatriation of specific assets pursuant to 21 U.S.C. § 853(e)(4).

In seeking such a warrant, it may be helpful to explain to the magistrate or judge the statutory scheme authorizing federal courts to order the seizure of assets in a foreign country. A court has the authority to issue seizure warrants for assets located in a foreign jurisdiction pursuant to 18 U.S.C. § 981(b)(3). Section 981(b)(3) provides that a seizure warrant may be issued by a "judicial officer in any district in which a forfeiture action against the property may be filed under [28 U.S.C. § 1355(b)], and may be executed in any district in which the property is found, *or transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement.*" 18 U.S.C. § 981(b)(3) (emphasis added). Pursuant to 28 U.S.C. § 1355(b), a forfeiture action may be brought

---

[9]  *See also* 18 U.S.C. § 1594 (forfeiture provisions for human trafficking).

in any district court where any of the acts giving rise to the forfeiture occurred, even as to property located in a foreign jurisdiction.

One concern about obtaining such a seizure warrant is that 18 U.S.C. § 981(b) arguably incorporates all the provisions of Federal Rule of Criminal Procedure 41, which, in turn, might require that the warrant be executed within 14 days. However, 18 U.S.C. § 981(b)(3) states that, notwithstanding the provisions of Rule 41(a),[10] a seizure warrant may be "transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement." Thus, once a seizure warrant is obtained under 18 U.S.C. § 981(b) and a formal request is made to the foreign country through OIA to execute that warrant, the requirements of both § 981(b)(3) and Rule 41 are completely satisfied once the warrant has been transmitted for service. Prosecutors attempting to obtain such a seizure warrant are encouraged to first consult with MLARS.

### B.3   Restraining order

Finally, whether or not a complaint has been filed, the United States may ask the court to issue a restraining order pursuant to 18 U.S.C. § 983(j). A restraining order may be issued on an *ex parte* basis. Restraining orders may only be issued upon a showing of probable cause—usually in the form of an affidavit submitted along with the application for the order.[11] Thus, the issuance of a restraining order will constitute the probable cause finding required to support the MLAT request.

### C.   Parallel civil and criminal cases

Perhaps the best option of all is simply to initiate both civil and criminal forfeiture actions against property located abroad and then stay the civil proceeding pursuant to 18 U.S.C. § 981(g)(1) until the conclusion of the parallel criminal proceedings. In addition to allowing you a choice of options for restraining assets abroad, you will also have preserved your options should the criminal forfeiture fail for any reason.

## VIII. Consultation for Civil Forfeiture of Property Located Overseas

Many countries cannot enforce civil forfeiture orders or judgments or are very uncertain that enforcing same under their laws is legally sound. Thus, if possible, prosecutors should first pursue the criminal forfeiture of assets located abroad. Prosecutors should attempt the civil forfeiture of assets located abroad only when obtaining a criminal forfeiture judgment against those assets does not appear to be, or no longer appears to be, a viable option. According to § 9-13.526 of the *Justice Manual* (JM),[12] AUSAs shall consult with OIA before filing an in rem forfeiture action based on 28 U.S.C. § 1355(b)(2). OIA and MLARS will then determine whether the foreign country where the assets are located can assist in the United States civil forfeiture action. The number of jurisdictions that can enforce civil forfeiture judgments is rapidly increasing as new international standards require

---

[10]   Prior to the 2002 Amendments to Federal Rule of Criminal Procedure 41, section (a) addressed the jurisdictional reach of Rule 41 search warrant, which, arguably, was limited to locations within the United States. The Rule 41 reference in 18 U.S.C. § 981(b), added by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. 106-185, Apr. 25, 2000, 114 Stat 202, was express Congressional intent to give United States courts jurisdiction to issue seizure warrants with an extra-territorial reach. After 2002, Rule 41(a) contains scope and definitions provisions not relevant for jurisdictional reach and, hence, the 18 U.S.C. § 981 reference to Rule 41 is confusing.

[11]   *See United States v. Melrose East Subdivision,* 357 F.3d 493 (5th Cir. 2004) (applying the probable cause requirement in *United States v. Monsanto,* 491 U.S. 600 (1989), to 18 U.S.C. § 983(j)(1)(A)).

[12]   A copy of the *Justice Manual* (JM) is available at: www.justice.gov/jm/justice-manual.

governments to do so when a perpetrator is unavailable by reason of death, flight, or absence, or when the perpetrator is unknown.

## IX.  Approval Process for Section 981(k) Seizure from Correspondent Bank Account

Title 18 of the United States Code, section 981(k) authorizes the United States, in a civil forfeiture action, to "constructively" restrain, seize, and forfeit funds on deposit in foreign bank accounts located abroad by restraining, seizing, and forfeiting an equivalent amount of funds from a correspondent/interbank account held in the United States by the foreign financial institution with which the aforementioned foreign bank account is maintained. *See* 18 U.S.C. § 981(k). It is irrelevant for purposes of § 981(k) whether the tainted funds on deposit in the foreign bank account ever transited through the foreign bank's United States correspondent account that is subject to the § 981(k) forfeiture effort. Thus, § 981(k) can be used to "constructively" restrain, seize, and forfeit funds on deposit abroad without resort to a treaty or letter rogatory request. Even so, use of this provision must be formally approved by MLARS and approval will be granted only in extraordinary cases in which the government of the nation in which the foreign account is located is unable or unwilling to provide assistance regarding United States efforts to forfeit funds directly from the foreign account.

Approval authority for use of 18 U.S.C. § 981(k) rests with the Chief of MLARS in consultation with the appropriate officials of OIA, Treasury, and the Department of State.

These officials should be viewed as "stakeholders" in the serious policy implications raised by the potential use of 18 U.S.C. § 981(k) and need an opportunity to closely review the § 981(k) request and consider the ramifications of granting the request. Thus, formal approval to use § 981(k) should be sought well in advance of any attempt to restrain or seize assets from a foreign bank's correspondent accounts in the United States. Applications requesting approval to use § 981(k) should be submitted in writing to the Chief of MLARS, who has responsibility for coordinating the approval process. Sample § 981(k) approval requests may be obtained from MLARS. Prosecutors should be mindful that requests for authority to use § 981(k) as the basis for "constructively" forfeiting funds on deposit in foreign accounts will be approved only if there are no other viable alternative means of effecting forfeiture of the tainted funds in the foreign bank account. It, therefore, should be considered only as a last resort. An application will not be approved simply because it is deemed more expedient than utilizing the treaty or letters rogatory mechanism.

Section 981(k) requests will be approved only in limited cases, such as when there is:

(1)   no applicable treaty, agreement, or legal process in the foreign nation that would allow it to restrain, seize, or forfeit the target assets for the United States;

(2)   a treaty or agreement in force, but the foreign nation does not recognize the United States offense that gives rise to forfeiture;

(3)   a treaty or agreement in force, and in spite of its treaty obligation, in the past the foreign nation has failed to provide requested forfeiture assistance, or provided untimely or unsatisfactory forfeiture assistance;

(4)   a treaty or agreement in force, but the foreign nation has no domestic legislation authorizing it fully to execute United States forfeiture orders or judgments; or

(5)   some other significant reason that, in the view of the policy stakeholders, justifies use of § 981(k) (e.g., corruption within the foreign government that may compromise the execution of a treaty request, or the inability to repatriate or return victim money to the United States after forfeiture).

Prosecutors should take special care, once permission is granted to seize funds from a United States correspondent account pursuant to 18 U.S.C. § 981(k), to ensure that only the amount of tainted funds traceable to, and on deposit in, the foreign bank account are seized from the correspondent account.

## X.   Lack of Administrative Forfeiture Authority for Overseas Property

Forfeiture of assets located abroad must be initiated as part of a pending judicial forfeiture action, civil or criminal. There is no authority under federal law to commence an administrative forfeiture of property that is not physically located in the United States or its territories or possessions.

Administrative forfeiture can, of course, be pursued against property repatriated to the United States pursuant to Section VI. above, assuming the property is otherwise eligible for administrative forfeiture.

## XI.   Settlements, Plea Agreements, and Attorneys' Fees

Federal prosecutors should not agree to, or enter into, any settlement or plea agreement affecting assets located abroad, or make any representation concerning the availability of assets located abroad to pay the legal fees incurred by a criminal defendant without first speaking to MLARS about the foreign consequences of such decisions. *See* JM § 9-111.700.[13] In addition, prosecutors should be aware of limitations on negotiating with fugitives or persons fighting extradition. The policy considerations that underlie the consultation and approval requirements applicable to settlement and plea agreements and agreements to use forfeitable funds to pay for attorneys' fees in purely domestic cases apply with even greater force in the international context, particularly in light of the problems inherent in releasing property held abroad. *See* Section VI. above. In some cases, a United States request to restrain or seize foreign assets will necessarily precipitate the initiation of a foreign criminal investigation, as many jurisdictions are required to prosecute all criminal matters brought to their attention. Thus, it may not be possible to make any meaningful or binding commitments to defendants or claimants regarding the disposition of funds restrained or seized abroad because the property may remain restrained or seized, or even ordered forfeited, under foreign law following conclusion of the United States forfeiture proceeding. Furthermore, the United States has no authority to bind a foreign government regarding the disposition of assets ordered forfeited in any United States proceedings. In addition, all plea and settlement agreements should include broad waiver and indemnification language that protects both United States and foreign officials, and their governments, from any liability arising from seizing, restraining, or forfeiting assets located abroad.

Finally, prosecutors should seek and, if possible, obtain from a defendant or claimant an agreement to specifically waive any right to an award of costs and/or attorneys' fees under foreign law and, from the defendant, and persons acting in concert with the defendant, an agreement not to oppose any legal

---

[13]   Available at: www.justice.gov/jm/justice-manual

action in any foreign jurisdiction relating to United States forfeiture efforts or to any United States request to a foreign government for related financial records.

## XII. Enforcement of Judgments

### A. Foreign enforcement of United States judgments

With increasing frequency, nations are able to afford full faith and credit to United States forfeiture judgments affecting property within their borders. Before transmitting a United States forfeiture judgment via OIA to a foreign jurisdiction to be given effect, prosecutors should verify that the judgment is final under United States law. In other words, the judgment must be final and no longer subject to direct appeal either because all opportunities for direct appeal have been taken and exhausted or the time for filing a direct appeal has expired. These facts should be noted in the legal assistance request to the foreign authority for the jurisdiction in which the judgment is sought to be enforced. In criminal cases, great care should be taken to obtain a final order or judgment of forfeiture. In no case should a preliminary order of forfeiture, which is only valid as to the convicted criminal defendant, be sent to a foreign authority for execution; only the completed final order of forfeiture should be submitted. This is particularly true of cases in which an asset forfeited to the United States is not titled in the name of the convicted defendant; the convicted defendant has a legal or common law spouse with a possible interest in the forfeited property; or another person could conceivably claim a valid interest in the forfeited property—and this remains true even if the convicted defendant has agreed to forfeit the asset in a plea or settlement agreement. Prosecutors should be mindful that third parties who did not appear in the United States proceedings may still be permitted to challenge enforcement of the United States forfeiture orders under foreign law. Thus, when transmitting a United States forfeiture judgment for execution by a foreign country, it is advisable always to demonstrate to the foreign jurisdiction that third parties were provided or sent notice of the United States forfeiture proceedings, had an opportunity to challenge the United States forfeiture, and either failed to avail themselves of the right to contest the forfeiture or were unsuccessful in their challenges.

### B. United States enforcement of foreign judgments and restraining orders

Pursuant to 28 U.S.C. § 2467, the United States can enforce foreign forfeiture judgments. Before a federal court may enforce any foreign forfeiture or confiscation judgment, or enforce a foreign restraining order under § 2467, the "Attorney General or a designee of the Attorney General" must certify that enforcing the order is "in the interest of justice." 28 U.S.C. § 2467(b)(2) and (d)(3)(B)(ii). In 2006, the Attorney General delegated this authority to the Assistant Attorney General for the Criminal Division (AAG).[14] That delegation order provides that the AAG may delegate the certification authority to "any subordinates."[15] In October 2018, the AAG delegated to the Chief of MLARS the certification authority for: (1) foreign forfeitures or confiscation judgments under 28 U.S.C. § 2467(b)(2), where the amount involved is $5 million or less; and (2) all foreign forfeiture restraining orders under 28 U.S.C. § 2467(d)(3)(B)(ii).[16]

---

[14]  *See* Attorney General Order No. 2820-2006.

[15]  *Id.*

[16]  The amount involved for certification purposes should be determined based on the expected fair-market value of the assets, unless the amount of the forfeiture judgment itself (or expected judgment) is under $5 million. *Cf.* Chap. 11, Sec. II of this *Manual*.

# XIII. International Sharing

The Attorney General (or a designee) may transfer any forfeited assets, as authorized by statute, to a foreign country that participated in the seizure or forfeiture of assets.[17] It is the policy of the United States in those forfeiture matters that do not involve victims to encourage international asset sharing and to recognize all foreign assistance that facilitates United States forfeitures so far as consistent with United States law. International sharing is governed by 18 U.S.C. § 981(i), 21 U.S.C. § 881(e)(1)(E), and 31 U.S.C. § 9705(h)(2), and is often guided by standing international sharing agreements or may be the subject of bilateral case-specific forfeiture sharing arrangements to be negotiated by MLARS and approved by the Department of State. The decision to share assets that have been forfeited to the United States with a foreign government is a completely discretionary function of the Attorney General or the Secretary of the Treasury. However, this decision also requires the concurrence of the Secretary of State and, in certain circumstances, may be vetoed by Congress. A 1992 international sharing Memorandum of Understanding (MOU) between the Departments of State, Justice, and Treasury expressly prohibits investigators or prosecutors from making representations to foreign officials "that assets will be transferred in a particular case, until an international agreement and commitment to transfer assets have been approved by the Secretary of State and the Attorney General or the Secretary of the Treasury." Prosecutors and federal law enforcement agencies should always be mindful that any international sharing is given priority and any domestic sharing can occur only after all international sharing is completed. Moreover, in all cases, both international and domestic, sharing comes from the net sale proceeds of forfeited property following the deduction of all case-related expenses. Thus, federal prosecutors and investigators should refrain from making any representations, to representatives of either a foreign government or any domestic law enforcement agency that provided assistance, regarding any sharing tied to the forfeiture of assets located abroad or any domestic forfeiture accomplished with the assistance of a foreign government.

Foreign governments are not required to follow a specific process for submitting a sharing request to the United States. This may be done pursuant to a treaty or sharing agreement, or, less formally, through other diplomatic or law enforcement channels. Prosecutors and law enforcement agencies can and should make sharing recommendations whenever they have received foreign assistance that facilitated the forfeiture of an asset in a United States case, particularly as to assets located in the United States. When the United States forfeits assets in a judicial forfeiture case with the assistance of a foreign state and the seizing agency is a Department component or participant in the Assets Forfeiture Fund (AFF), the federal prosecutor assigned to the case is responsible for sending a formal sharing recommendation to MLARS. For assets forfeited administratively, the seizing agency is responsible for submitting the recommendation.

In cases involving a recommendation for sharing involving the AFF, MLARS previously prepared the sharing recommendations for approval by the Deputy Attorney General (DAG). In May 2013, the DAG delegated the authority to: (1) the AAG to make final determinations on uncontested international equitable sharing proposals involving assets valued at more than $5 million; and (2) the Chief of MLARS to make final determinations on uncontested international equitable sharing proposals involving forfeited assets valued at $5 million or less.[18] If the seizing agency, U.S.

---

[17] *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018), Sec. V.E., available at: www.justice.gov/criminal-mlars/publications.

[18] *See* Deputy Attorney General delegation dated May 27, 2013.

Attorney's Office (USAO), and MLARS do not agree on the sharing allocations, the final decision must be made by the DAG.

In cases implicating the Treasury Forfeiture Fund (TFF), the seizing agency (e.g., Internal Revenue Service (IRS), U.S. Secret Service (USSS), or Homeland Security Investigations (HSI)) is responsible for submitting a sharing recommendation to TEOAF. However, the seizing agency should first consult the AUSA responsible for the case. In such cases, the Director of TEOAF approves the sharing recommendations. MLARS and TEOAF also obtain concurrence from each other and the State Department for each proposed sharing transfer to a foreign government after it is approved by their respective designees. This interagency approval and consultation process may be lengthy.

To avoid delays, it is advisable to make the international sharing recommendation as soon as practicable, or immediately after the final order forfeiting the foreign assets is obtained. At the earliest possible time and definitely before the asset has been liquidated, the seizing agency should note in any electronic asset tracking system, such as CATS, that a particular asset might be, is, or will be subject to an international sharing request or recommendation. In order to place a "hold" on an asset intended for international sharing, the seizing agency must either: (1) select "international sharing anticipated" when creating the Standard Seizure Form (SSF); or (2) enter a sharing recommendation in the international sharing module. Either of these actions will prevent the asset from being shared domestically until a pre-approval or approval ruling is entered by MLARS.

If forfeitable assets located overseas are repatriated, forfeited under United States law, and placed into the AFF, they may not be eligible for domestic sharing with participating state, local, and tribal agencies. However, funds shared with the United States by the foreign government that have not been forfeited under United States law may not be eligible for domestic equitable sharing.[19] Nevertheless, if United States prosecutors or investigators assisted in a foreign case that resulted in a foreign forfeiture, they are encouraged to contact MLARS' International Unit to determine if it might be fruitful to submit a sharing request to that country, as such funds still may be deposited into the AFF and be applied for Asset Forfeiture Program purposes. All requests to foreign countries for asset sharing must be submitted by the MLARS' International Unit in coordination with the OIA.

Similarly, funds shared with the United States by a foreign government that have not been forfeited under United States law may not be eligible to be used for victim remission or restoration via MLARS. However, depending upon the circumstances of the case, it may be possible to employ other mechanisms for using such shared funds to make victims whole.[20] If United States prosecutors or investigators assisted in a foreign case involving victims that resulted in a foreign forfeiture, they should also contact the MLARS' International Unit for guidance on potential alternative mechanisms and submission of a sharing request to that country.

---

[19]   *See also* Chap. 15, Sec. VIII of this *Manual*.

[20]   *See also* Chap. 14, Sec. I. n.2 of this *Manual*.

# Chapter 9:
# Trustees, Monitors, Managers, and Custodians in Forfeiture Cases

## I. Trustees, Monitors, Managers, and Custodians in Forfeiture Cases[1]

### A. Purpose

The purpose of this policy is to provide guidance regarding the use of trustees, business monitors, property managers, and/or custodians or other third party (together "third party experts") to assist the Department of Justice (Department) in property management in federal forfeiture cases involving complex assets, business enterprises, and/or international seizures.

In cases where the lead law enforcement agency is a Department of the Treasury (Treasury) or Department of Homeland Security (DHS) agency, the federal prosecutor or investigator should consult the Treasury Executive Office for Asset Forfeiture (TEOAF) for guidance.

Historically, the Department has used a variety of experts to accomplish its law enforcement objectives in complex forfeiture cases. Because an expert's role may vary based on the facts of each case and the nature of the asset or business entity involved, there is no single method of selecting such third party experts that should necessarily be employed in every case.

Due to the cost and labor-intensive nature of monitoring and administering third party expert assistance, and the potential for litigation extending beyond entry of a final order of forfeiture, third party experts should be appointed only when absolutely necessary, after all other alternatives have been considered and rejected, and where there is clearly sufficient net equity in the asset(s) to cover the total estimated cost of utilizing the third party expert and any necessary staff. As a general rule, the Government generally should avoid seizing or forfeiting ongoing businesses and other complex assets that will require third party expertise or supervision, continuing capital investment for the business or other complex asset to remain viable, competitive and marketable, or the assumption of direct or contingent liabilities. In rare cases, compelling law enforcement or policy considerations may warrant the appointment of third party experts even though there is insufficient equity in the business enterprise or complex assets to cover the costs.

### B. Statutory authority

Statutory authority, both specific and general, for the appointment of a third party expert in federal forfeiture cases is found in 18 U.S.C. § 983(j) (civil forfeiture) and 18 U.S.C. §§ 1963(d) and (e), and 21 U.S.C. § 853(e)–(g) (criminal forfeiture), as well as 18 U.S.C. § 1956(b)(4) and 18 U.S.C. § 983(j), which permit a court to act to preserve property.[2]

---

[1] This chapter does not apply to the responsibility or authority of independent bankruptcy trustees, financial institution receivers, and foreign liquidators not otherwise directly engaged in forfeiture case activities on behalf of the Government. U.S. Attorney's Offices (USAOs) and agencies interested in utilizing the services of a trustee to support the remission and restoration processes should refer to Chap. 14, Sec. I.A.4 of this *Manual*.

[2] Title 18, United States Code, section 1964(a) and (b) grants courts broad injunctive and remedial authority in RICO cases.

### C. Special considerations

In cases requiring the assistance of third parties to effectuate the forfeiture and liquidation of complex assets, comprehensive pre-seizure planning is mandatory. In certain instances, procurement of the services not covered under existing contracts may require a new solicitation under Federal Acquisition Regulations (FAR).[3]

The U.S. Attorney's Office (USAO) must consult with the Money Laundering and Asset Recovery Section (MLARS) before seeking the appointment of a third party expert in any forfeiture case. The U.S. Marshals Service (USMS) field office must notify Asset Forfeiture Division (AFD) headquarters when it becomes aware that a third party expert may be required.

### D. Determining when a trustee, monitor, manager, or custodian should be engaged

In almost all forfeiture cases, the value of an ongoing business can be preserved through the issuance of a protective order without appointment of a third party expert. Generally, a protective order must be sought any time an ongoing business entity or other complex asset is targeted for forfeiture prior to seeking appointment of a third party expert. This order should seek to restrain the owners from further encumbering the business, dissipating its assets, or selling the business except as authorized by court order. The business must be determined to have current and long-term financial viability well before appointment of a third party expert is even considered. Appointment of a third party expert will occur only when clearly necessary and after all other alternatives have been considered and rejected. In rare cases, compelling law enforcement or policy considerations might warrant appointment of a third party expert even though there is not or may not be sufficient equity in the business enterprise or complex asset to cover the costs of employing the third party expert. In such cases, the USAO must thoroughly document for MLARS the reasons for rejecting all alternatives to the appointment of a third party expert.

In the typical forfeiture case where business property or other complex assets have been restrained criminally or civilly, the USMS is capable of managing and selling assets either with its own resources or under its existing property management contracts for managing and selling property without resort to appointment of third party experts. Moreover, the owners and internal management of an ongoing business are often able to continue operating the business pending forfeiture except, of course, where probable cause exists to believe that they have been or are engaged in criminal conduct involving the business. In cases in which third party expert assistance is required, the USAO, USMS, and MLARS must work together to determine how best to obtain the assistance of a qualified third party expert.

Appointment of a third party expert may nonetheless be appropriate depending on the nature of the criminal conduct involving the business or complex asset and other factors discussed herein. The scope of oversight required in such cases will depend on the stage of the forfeiture litigation when the third party expert is to be appointed and the extent and nature of the ownership interest targeted for forfeiture (e.g., stock interests, partnership interests). For example, it is usually preferable simply to monitor a minority partnership or stock interest in the business or complex asset; in any event, trustees generally should not be appointed to represent a minority interest because the minority interests may conflict with or diverge from the interest of the Government. When appointing a third

---

[3]  *See* 48 C.F.R. Part 1.000 et seq.

party expert is determined to be the best approach, consider making the third party expert a fiduciary of the court as well as the business itself.

Alternatives to the appointment of a third party expert must always be considered with an eye to selecting the least intrusive and most cost-effective means of protecting the Government's interests while achieving a successful forfeiture. Such alternatives include, without limitation, one or more of the following:

(1) obtaining a protective/restraining order, perhaps providing for USMS oversight, that specifies the consequences for violations of the order (such as the appointment of a third party expert in addition to a contempt citation);

(2) appointment of a business or property manager through an existing contract;

(3) restraint or seizure of specific valuable assets, equipment, or inventory (restraint is preferred) in lieu of the entire business;

(4) oversight and/or management by state or local regulatory agencies;

(5) filing of a *lis pendens*;

(6) interlocutory sale;

(7) foreclosure by a lienholder;

(8) retention of a professional, upon the consent of the business and to be paid at its own cost, to oversee business operations and finances while ensuring against future criminal violations during the pendency of the forfeiture action;

(9) enforcement of state or local nuisance or business regulatory laws;

(10) seizure of property by federal or state tax authorities to satisfy outstanding tax obligations; and

(11) securing a performance bond.

The Department must strive to avoid managing any business or complex asset where such management may require the taking of extraordinary action, significant capital investment from the Assets Forfeiture Fund (AFF) to keep the business competitive or asset marketable, or the assumption of considerable risk or liabilities. It is permissible to restrain or seize such a business only if there is no effective alternative for accomplishing the Government's objectives.

## II.   Prerequisites to the Selection of a Trustee, Monitor, Manager, or Custodian: Pre-seizure Planning and Other Requirements

The appointment of a third party expert is to be made only after the all interested components (MLARS, USAO, USMS, and investigative agencies) agree on a pre-seizure plan, as discussed below. The USAO is required to notify the USMS either through a local district office or direct communication to the USMS' Complex Asset Unit (CAU) as soon as it becomes aware that a third party appointment is being contemplated. In cases involving complex assets that require a third party expert, pre-seizure planning with the USMS is mandatory.

The guidelines for pre-seizure planning before seeking appointment of a third party expert require that a USAO:

(1)   contact the USMS to engage in formal pre-indictment or pre-complaint planning prior to seizing or restraining complex assets, including businesses and real property;

(2)   consult with the USMS prior to the submission or filing of any proposed court orders to a court to restrain, seize, or impose property management and/or financial management obligations on property in USMS custody;

(3)   consult with MLARS before commencing any action seeking forfeiture of, or seeking any form of restraint or protective order over an ongoing business; and

(4)   consult with MLARS concerning the need for a third party expert.

Pre-seizure planning must include an assessment of the financial viability of any business or long-term marketability of any complex asset as to which forfeiture is contemplated, including, for example, determination as to whether continued operation, or even a take-over, of the business is in the Government's best interest. The pre-seizure plan must develop (or include) an estimate, to the extent feasible, of the: (1) net equity of the business or business assets as to which forfeiture is contemplated; (2) current and projected cash flow of the business; (3) anticipated fees and other costs of the third party expert and the source(s) for paying these fees; and (4) likely duration of the third party expert assistance.

If it is contemplated that a targeted business will continue in operation pending forfeiture, a business review must be undertaken once the USAO and USMS' CAU secure a protective order to obtain access to business records and other information relating to the financial viability of the business and the challenges facing the business pending forfeiture, and the capital that will be required for it to remain viable pending the forfeiture have been identified and fully assessed. The business review must identify and consider key historic financial data for the business, its current operating environment (including financial activity), and financial projections for the next two years. These projections should include both best- and worst-case scenarios for the business operations as well as "exit strategies" should conditions change for the worse. If the business is likely to lose money or be sold at a loss, the business plan should include plans to mitigate such losses or liquidate all or parts of the business.

During the pre-seizure phase or while an indictment is under seal, diligent care should be taken to maintain confidentiality and secrecy, particularly as to any grand jury information. While agency components are reviewing investigative business and financial records to develop a proposed business plan, appropriate measures must be taken to ensure that sensitive law enforcement information remains protected and that all required disclosure orders are obtained for grand jury information.

## III.   Qualifications of Trustees, Monitors, Managers, and Custodians

The necessary qualifications required of a third party expert will vary depending on the nature and purpose of the contemplated third party expert assistance. For example, if the singular purpose of the assistance is to manage a business and prevent dissipation of its value, the qualifications will likely include a business management and accounting background as well as expertise in the particular industry or specialized operational activity. It will often be necessary for the third party expert

to comply with various reporting and legal requirements (e.g., taxes, securities, environmental) pertaining to the business. If a third party expert detects or suspects ongoing criminal activity or evidence of past criminal conduct, the expert should be directed to contact and coordinate with the designated prosecutor or supervisory case agent.

The restraining order or other order appointing a third party expert engaged by the Government must define the goals of the third party expert. Prior to appointment, an initial assessment must be made by the Government to determine the purpose of and need for the assistance (i.e., to prevent dissipation of the asset or to prevent the enterprise from engaging in illegal activity, or both), as well as its goals.

The theory of forfeiture under which the property is seized and the nature of the business itself will inform the goals and duties of the third party expert. For example, if the business subject to forfeiture was acquired with proceeds of illegal activity and is self-supporting or is subject to forfeiture as a substitute asset, the goal of the Government generally is to prevent dissipation of the business and its assets. Monitorship or trusteeship of such an asset usually requires less oversight and more often results in a profitable forfeiture than the forfeiture of an enterprise used to facilitate illegal activity.

## IV.   Trustee, Monitor, Manager, and Custodian Expenses

MLARS and the Asset Forfeiture Management Staff (AFMS) must be notified as soon as the USAO, investigative agency, or USMS learns or anticipates that a seized or restrained business will lose money, has contingent or direct liabilities which the Government will be responsible for, or has insufficient equity.[4] If the restraint, seizure, and/or forfeiture of a business could create a net loss to the AFF for that business, prior approval from MLARS, in coordination with AFMS, is required.[5] Once it is determined that operation of the business is not financially viable, the USAO should exclude or seek to dismiss the business from the forfeiture action, if possible, or close and wind up the business as soon as practicable, obtain any necessary court orders to accomplish this end, while giving due regard for the ownership rights of the defendant/owner (prior to forfeiture) and other partners, shareholders, and parties of interest. Alternatively, the business and/or its assets might be sold by interlocutory sale, with the assets of the business sold and disposed of, even if such sale may result in a loss.

In general, the Government should not enter into a contract to pay for the services of a third party expert from the AFF unless or until a determination is made that forfeiture is likely and the business revenues and/or proceeds from the eventual sale justify those costs in addition to any assumed and contingent liabilities and disposal costs.

---

[4]   *See Justice Manual* (JM) § 9-111.124 ("Due to the complexities of seizing an ongoing business and the potential for substantial losses from such a seizure, a USAO must consult with MLARS prior to initiating a forfeiture action against, or seeking the seizure of, or moving to restrain an ongoing business."). *See also* JM § 9-105.330 (requiring consultation with MLARS before the USAO seeks to forfeit, seize, or restrain a business based on its involvement in money laundering). A copy of the *Justice Manual* is available at: www.justice.gov/jm/justice-manual.

[5]   *See* Chap. 1, Sec. I.D. of this *Manual*.

# Chapter 10:
# Use and Disposition of Seized and Forfeited Property

## I.   Management and Disposal of Seized Assets

### A.   Role of the United States Marshals Service

The U.S. Marshals Service (USMS) has primary authority over the management and disposal of assets in its custody that have been seized for forfeiture or forfeited by law enforcement agencies of the Department of Justice (Department) and, by agreement, certain other federal law enforcement agencies.[1] Arrangements for property services or commitments pertaining to the management and disposition of such property are the responsibility of the USMS. The authority of the Attorney General to dispose of forfeited real property and warrant title has been delegated to the USMS Director by 28 C.F.R. § 0.111(i).[2]

### B.   Department of Treasury property custodians

Management and disposal of assets seized by agencies within the Department of Treasury (Treasury)[3] and other agencies included by agreement (including certain agencies moved from Treasury to the Department of Homeland Security (DHS)) are handled by property custodians (generally contractors) operating under Treasury guidelines.[4] The Treasury agency case agent or the Asset Forfeiture Coordinator in the agency's field office is generally the initial point of contact for issues relating to seized property custody, management, and disposal.

### C.   Pre-seizure planning

As soon as possible after assets other than cash are identified for seizure/forfeiture in a federal case, the U.S. Attorney's Office (USAO) or agent in charge of the field office responsible for an administrative forfeiture case should contact the USMS (or Treasury in cases involving Treasury seizing agencies) to discuss pre-seizure planning.[5]

### D.   Coordination of custody and disposition decisions

Prior to taking any action (e.g., making a commitment in a settlement or plea agreement) concerning the management or disposition of property, the USAO or agent in charge of the field office responsible for an administrative forfeiture case should contact the USMS in cases involving Department seizing agencies (or Treasury in cases involving Treasury seizing agencies) to discuss any management or disposition issues which may need to be addressed. USMS approval must be obtained prior to the execution of a settlement or plea agreement that requires the payment of a

---

[1]   The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has primary authority over the custody and disposition of firearms and ammunition forfeited by Department agencies.

[2]   *See also* Chap. 4, Sec. I.D of this *Manual.*

[3]   For a current list of agencies participating in the Treasury Forfeiture Fund (TFF), *see* 31 U.S.C. § 9705(o).

[4]   References to the USMS include other departments responsible for managing restrained and seized assets. Please consult Treasury for procedures involving assets seized by agencies within Treasury.

[5]   *See* Chap. 1, Secs. I.A–D of this *Manual.*

specific amount, rather than an amount determined by the proceeds received from the liquidation of the forfeited property.

## II.   Use of Seized Property

### A.  Background

Absent an order of forfeiture or declaration of administrative forfeiture affirmatively vesting title to seized property in the United States, the Government does not have title to the property. Thus, any use of property held pending forfeiture raises potential issues of liability and creates the appearance of impropriety. Therefore, the use of such property pending forfeiture is prohibited except in the limited circumstances indicated below. The following general policies govern the use of seized property pending forfeiture.

### B.  Use of seized property

Property under seizure and held pending forfeiture may not be utilized for any reason by Government or contractor personnel, including for official use, until a final order of forfeiture is issued. Likewise, Government or contractor personnel may not make such property available for use by others, including persons acting in the capacity of substitute custodians, for any purpose, prior to completion of the forfeiture. However, court authority may be sought for use of seized property, after consultation with the USMS, in situations such as the seizure of a ranch or business where use of equipment under seizure is necessary to maintain the ranch or business.

### C.  Use of seized property where custody is retained by the state or local seizing agency

Any use of vehicles or other property being stored under an authorized substitute custodial agreement is strictly prohibited until such time as the forfeiture is completed and title of the asset has been transferred to that agency.

### D.  Pre-forfeiture sale of seized property

Pre-forfeiture sale of property (e.g., interlocutory or stipulated sale) is favored as a means of preserving asset value and mitigating asset expenses. The USAO shall consult with the seizing agency and the USMS to determine the status of any petitions for remission or requests for equitable sharing prior to seeking a pre-forfeiture sale of property pending judicial forfeiture.

Proceeds from any pre-forfeiture sale shall be promptly deposited into the Seized Assets Deposit Fund (SADF) unless otherwise ordered by the court.

## III.   Disposition of Forfeited Property and Funds

### A.  Forfeiture orders

The disposition of property forfeited to the United States is an executive branch decision and not a matter for the court. Consequently, preliminary and final orders of forfeiture should include language directing forfeiture of the property to the United States "for disposition in accordance with law."

In addition, the orders of forfeiture should specifically address any third party claims against the forfeited property that are recognized by the United States. If the interests of claimants are to be satisfied in whole or in part by payments from the proceeds of a sale of property by the USMS (or Treasury), the proposed forfeiture order should provide specific guidance for the USMS (or Treasury) concerning such payments and, where possible, specify that such claims shall be paid only after the costs of the United States are recovered, and shall be paid only up to the amount realized from the proceeds of the forfeited property.

The comptroller general has determined that judgments in excess of the proceeds of sale are to be paid from the Judgment Fund.[6] However, 28 U.S.C. § 524(c)(1)(D) also provides that the Assets Forfeiture Fund (AFF) is available for the payment of valid liens and mortgages "subject to the discretion of the Attorney General to determine the validity of any such lien or mortgage and the amount of payment to be made." The USMS is authorized to pay a lien or mortgage in excess of the proceeds of sale if such payment will facilitate the liquidation of the property and, thus, reduce expenses of such property's continued custody. Requests for approval of liens and mortgages in excess of the proceeds of sale shall be submitted to the Money Laundering and Asset Recovery Section (MLARS) for approval.

## B. Disposition of forfeited property in civil and criminal cases

The Attorney General has been given the authority under 21 U.S.C. §§ 881(e) and 853(h) and other statutes[7] to dispose of forfeited property "by sale or any other commercially feasible means," without subsequent court approval. This is called a "forfeiture sale" of the property.[8] It is clear from the language of the forfeiture statutes, from their legislative history, and from the cases and other authorities that have addressed this issue that the Attorney General has complete authority to dispose of forfeited property.

Forfeiture divests an owner of property of all his or her right, title, and interest therein and vests such right, title, and interest in the Government. Accordingly, because of the property's or its owner's involvement in criminal activity, forfeiture extinguishes all of the former owner's interests in that criminally derived or criminally involved asset, and vests title in the United States.[9] While the relation back doctrine found in 21 U.S.C. § 853(c) provides that all right, title, and interest in forfeitable property vests in the United States upon the commission of the criminal act giving rise to the forfeiture, the Government's ownership interest therein is not confirmed to the world until a final order of forfeiture is entered by a court.

Since the forfeiture process vests title to the property in the United States, a forfeiture sale is a sale by the Government of property it owns. The forfeiture statutes give the power to the Attorney General, on behalf of the United States as owner, to dispose of the property however he or she deems suitable. After the final order of forfeiture, the court is not involved in the sale or disposal process.

---

[6]   More information on the Judgment Fund is available at: fiscal.treasury.gov/judgment-fund.

[7]   *See* 18 U.S.C. §§ 1467(g), 1963(f), and 2253(g).

[8]   The Department takes the position that 28 U.S.C. § 2001 does not apply to judicial forfeiture sales and no judicial confirmation is required.

[9]   *See United States v. Real Property Located at 6124 Mary Lane Drive, San Diego, California*, 2008 WL 3925074, at *2 (W.D.N.C. Aug. 20, 2008); *United States v. Grundy*, 7 U.S. (3 Cranch) 337, 350–351 (1806); *cf. Republic National Bank of Miami v. United States*, 506 U.S. 80, 89–92 (1992); *United States v. Real Property Located at 185 Hargraves Drive (In Re Newport Saving and Loan Association)*, 928 F.2d 472, 478 (1st Cir. 1991); 21 U.S.C. §§ 881(h) and 853(c); 18 U.S.C.§ 1963(c).

### C.  Sale of forfeited property

Upon the successful completion of the forfeiture action the property shall be promptly sold and the proceeds of the sale promptly deposited into the AFF. The property may not be sold and the proceeds of the sale may not be deposited in the AFF if there is a pending owner or lienholder petition for remission or a pending request to place the property into official use or transfer to a federal, state, local, or tribal law enforcement agency.

Seizing agencies and the USAO shall promptly notify the USMS of all relevant facts affecting the forfeited property, such as:

- outstanding bills, invoices, pending requests for mitigation and remission;

- requests to transfer to federal, state, local or tribal agencies;

- requests for official use by Department components, if known; and

- appraisals not provided by the USMS.

Based upon these and other relevant factors, the USMS shall promptly and appropriately dispose of the property.

### D.  Disposition of forfeited funds

The USAO securing a forfeiture and the seizing agency are responsible for initiating the disposal of funds forfeited to the United States. In cases involving a Department seizing agency, the USAO and the seizing agency should provide prompt notification to the USMS of the events, which should lead to a transfer of forfeited funds from the SADF to the AFF by entering the forfeiture decision and amount in the Consolidated Asset Tracking System (CATS) and providing the forfeiture documentation to the USMS.[10] USMS will transfer the funds when assets appear on the CATS Forfeited Asset Pending Disposal report and/or upon receipt of forfeiture documentation.

#### D.1  Administrative forfeitures

Seizing agencies are responsible for initiating the transfer of funds from the SADF to the AFF by entering the forfeiture decision and amount into CATS. USMS will transfer the funds based on the entry of the forfeiture in CATS. Receipt of hard copy of forfeiture order by the USMS is not necessary to transfer forfeited cash in administrative cases.

#### D.2  Civil forfeiture cases concluded by either a consent judgment or default judgment

In the case of either a consent judgment or a default judgment, the forfeited cash should be transferred to the AFF immediately upon the forfeiture date being entered in CATS and/or receipt of forfeiture documentation. The transfer of funds to the AFF does not affect the availability for post-forfeiture distributions where appropriately authorized.

---

[10]  For cases involving assets seized by a Treasury agency, the USAO should provide prompt notification to the Treasury custodian for transfer to the TFF.

### D.3  Civil forfeiture cases concluded by summary judgment or judgment after trial

There is an automatic stay of execution of a judgment of 14 days. *See* Federal Rule of Civil Procedure 62(a).[11] The final forfeiture decision should be entered in CATS within 10 business days of its entry by the court or no later than the last day of the fiscal quarter. If an appeal is filed or the judgment is stayed, the appeal sequence or stay must be added to CATS within 10 business days of the filing of the notice of appeal or entry of the stay order. USAOs must record the final decision on the appeal within 10 days of entry of the final judicial document by the appellate court or no later than the last day of the fiscal quarter. The USMS will proceed with transferring the forfeited cash once the forfeiture decision is final, including if applicable when the stay is lifted or the appeal is resolved.[12]

### D.4  An additional stay (civil or criminal judicial forfeitures)

If the district court or court of appeals grants an additional stay, the funds will remain in the SADF until the termination of the stay.

### D.5  Criminal forfeiture cases

In criminal forfeiture cases, the USMS will not transfer criminal proceeds to the AFF until a final order of forfeiture has been entered by the court and the USAO has made the appropriate entries into CATS authorizing the transfer.

### D.6  Violations involving a state sponsor of terrorism

As discussed in Chapter 1, Section I.D.5 of this *Manual*, the Consolidated Appropriations Act of 2016[13] established new requirements for disposition of the proceeds of forfeitures, fines, and penalties arising from violations of the International Emergency Economic Powers Act (IEEPA), or the Trading with the Enemy Act (TWEA), or related criminal conspiracies, schemes, or other federal offenses, that involve state sponsors of terrorism. All proceeds of these criminal forfeitures, and half of the proceeds of these civil forfeitures, are directed to the United States Victims of State Sponsored Terrorism Fund (USVSST Fund).[14] Please consult MLARS as early as possible in any case that involves a state sponsor of terrorism and may require deposits to the USVSST Fund.

## IV.  Purchase or Personal Use of Forfeited Property by Department of Justice Employees

Under 5 C.F.R. § 3801.104, Department employees are prohibited from purchasing, either directly or indirectly, or using any property if the property has been forfeited to the Government and offered for sale by the Department or its agents. In addition, Department employees are prohibited from using such property that has been purchased, directly or indirectly, by a spouse or minor child.

---

[11]  *See* Federal Rule of Civil Procedure 6(a)(1) (providing guidance in computing the length of the stay).

[12]  Even absent the filing of a motion for a stay of the judgment pending appeal pursuant to Federal Rule of Civil Procedure 62(d) and the transfer of forfeited funds from the SADF to the AFF, the courts of appeals will be deemed to retain in rem jurisdiction to hear any direct appeal. *See Republic National Bank of Miami v. United States*, 506 U.S. 80, 93 (1993) (holding that the transfer of *res* from the district to the AFF does not divest the court of in rem jurisdiction over the case).

[13]  Pub. L. 114-113, Dec. 18, 2015, 129 Stat 2242.

[14]  Information about the USVSST Fund is available at: www.justice.gov/criminal-mlars/usvsst.

This policy is intended to ensure that there is no actual or apparent use of inside information by employees wishing to purchase such property. The purpose of this policy is to protect the integrity of the Asset Forfeiture Program and avoid problems before they develop. It is important to the integrity of the Department's Asset Forfeiture Program that we preclude even the appearance of a conflict of interest that would otherwise arise should a Department employee purchase forfeited property.

A written waiver to the aforementioned restrictions may be granted by the agency designee upon a determination that, in the mind of a reasonable person with knowledge of the circumstances, purchase or use by the employee of the asset will not raise a question as to whether the employee has used his or her official position or nonpublic information to obtain or assist in an advantageous purchase or create an appearance of the loss of impartiality in the performance of the employee's duties. A copy of this waiver must be filed with the Deputy Attorney General (DAG).

# Chapter 11:
# Settlements

## I.   General Policy

### A.  Scope

For purposes of this chapter, the term *settlement* includes the following:

- In a criminal forfeiture case:

  (1)   A plea agreement with a criminal defendant that includes a criminal case in which there is an agreement regarding the forfeiture of property; or

  (2)   An agreement to resolve a third party claim in the ancillary proceeding in a criminal case.

- In a civil forfeiture case, the resolution of a claim filed by any claimant in a civil forfeiture case, either before or after the judicial complaint is filed.

- The term *settlement* also includes an agreement to dismiss a civil forfeiture case or forfeiture in a criminal case, or to release property seized or restrained for forfeiture, where the agreement includes a provision for the payment of a sum of money to the federal government or a federal agency as, for example, a fine or a penalty.

### B.  Principles

Settlements to forfeit property are encouraged to conserve the resources of both the United States and claimants in situations where justice will be served. The following principles must be observed when negotiating and structuring settlements.

#### B.1  Factual basis

There must be a statutory basis for the forfeiture of the property and sufficient facts stated in the settlement documents and any related pleadings to satisfy the elements of the statute.

#### B.2  Consultation

All settlements must be negotiated in consultation with the seizing agency[1] and the U.S. Marshals Service (USMS).[2] The seizing agency's input is essential in order to reach a settlement that is based on a common understanding of the facts and circumstances surrounding the seizure. Moreover, settlements occasionally require that administrative action be taken by the agency to implement those settlements, including, on occasion, a referral of the case back to the agency for administrative forfeiture of all or some of the seized property. Input from the USMS should always be sought to

---

[1]  It is important to realize that the agency to be consulted regarding the terms of the settlement may not be the "seizing agency" (e.g., U.S. Customs and Border Protection (CBP) is responsible for processing all seizures made by either CBP or Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI)), so it is essential for the prosecutor to consult both agencies in those cases.

[2]  In Department of the Treasury (Treasury) cases where the USMS is not the custodian of the property, the independent contractor will serve as the property manager, and the USMS need not be consulted. It is the responsibility of the seizing agency (and authorized designee, i.e., CBP in ICE-HSI seizures) to contact the independent contractor when appropriate, and inform it of any settlement proposals.

determine any current and prospective expenses to ensure that the settlement is fiscally sound from the Government's perspective, and that ownership interests and title issues are adequately addressed in the settlement agreement, allowing the USMS to carry out the terms of the settlement.

### B.3   Recovery of investigative and other costs

In general, the Government should not attempt to use a settlement to recover the costs of its investigation. It may be appropriate in unusual circumstances, however, to recover extraordinary expenditures, such as funds needed to clean up environmental damage to the forfeited property.

### B.4   Status of administrative forfeiture

As discussed in Chapter 5, Section II.E of this *Manual,* before discussing any settlement, the prosecutor and the investigating agent must determine what property, if any, is presently being processed for administrative forfeiture or has previously been declared administratively forfeited. Prosecutors may not reach agreements with defendants or their counsel in a criminal case regarding the return of property that is the subject of a pending administrative forfeiture proceeding without first consulting the seizing agency.[3] Property that has been administratively forfeited belongs to the Government and, therefore, cannot be returned to a defendant or used to pay restitution or other obligations of the defendant as part of a plea agreement.

### B.5   Disagreements

If the seizing agency or the USMS disagrees with the U.S. Attorney's recommended settlement proposal, it may refer the matter to the Chief of the Money Laundering and Asset Recovery Section (MLARS) for resolution.

### B.6   Property located in another district

To settle a forfeiture action involving property located in another judicial district, the U.S. Attorney's Office (USAO) handling the forfeiture must notify and coordinate with the USMS in the district where the property is located. It is the responsibility of the USAO in the district that forfeits property located in another district to comply with the requirements for forfeiture in the district where the property is located. Failure to comply with such requirements may result in a cloud on the Government's title that may interfere with the disposal of assets in accordance with settlement terms; coordination will minimize this possibility.

### B.7   Partial payments

Settlements shall not provide for partial payments, except upon the advice and approval of MLARS in consultation with the USMS, Headquarters Asset Forfeiture Division (AFD).[4] For purposes of this provision, the subsequent forfeiture of assets to satisfy a money judgment is not considered a partial payment.

---

[3] There have been instances in which prosecutors have arranged plea agreements providing for the disposition of administratively forfeitable property without consulting the appropriate seizing agency. There also have been instances in which prosecutors have agreed to return to a defendant property that has already been forfeited administratively. Such agreements are improper and these arrangements cause great difficulty for the seizing agencies.

[4] In Treasury and Department of Homeland Security (DHS) cases, the advice and approval of MLARS should also be sought.

### B.8   Reacquiring the property

The settlement should state that the claimant/defendant may not reacquire the forfeited property directly or indirectly through family members or any other agent. Family members who already own a partial interest in the forfeited property may, however, purchase the forfeited interest with legitimate funds.

### B.9   Effect on taxes and other obligations

Settlement documents should clearly state that the terms of the settlement, unless specified, do not affect the tax obligations, fines, penalties, or any other monetary obligations of the claimant/defendant owed to the Government. Under no circumstances will the settlement document allow forfeitable proceeds to settle the defendant's tax obligations without the prior approval of the Internal Revenue Service (IRS).

USAOs are obligated, pursuant to 28 U.S.C. § 547(4), to "institute and prosecute proceedings for the collection of fines, penalties, and forfeitures incurred for violation of any revenue law, unless satisfied on investigation that justice does not require the proceedings." Therefore, in order that appropriate actions may be taken when a proposed forfeiture settlement will release assets to a claimant/defendant who is known or likely to have other outstanding obligations to the United States (e.g., taxes), Assistant U.S. Attorneys (AUSAs) should routinely notify the appropriate agency (e.g., IRS) of the proposed settlement.

The Debt Collection Improvement Act of 1996 (DCIA) requires the Department of the Treasury (Treasury) and other disbursing officials to offset federal payments to collect delinquent non-tax debts owed to the United States and to collect delinquent debts owed to states. The Treasury Offset Program (TOP) is designed to offset payments related to the DCIA. Accordingly, settlements should also notify the claimant/defendant that any funds currently on deposit in the Seized Asset Deposit Fund (SADF) or Assets Forfeiture Fund (AFF) will have to be processed through TOP before being returned to the claimant/ defendant, with the possibility that any of the claimant/defendant's outstanding and delinquent obligations to the federal or a state government might be offset against the payment.

## II.   Authority of the U.S. Attorney to Enter Into a Settlement

The authority of the U.S. Attorney to settle a forfeiture matter is circumscribed by Attorney General Order No. 1598-92, which, *inter alia*, authorizes the Assistant Attorney General for the Criminal Division (AAG) to re-delegate the maximum amount of his or her settlement authority to U.S. Attorneys. Accordingly, the AAG may re-delegate to U.S. Attorneys up to $1 million to settle civil and criminal cases, subject to the approval of the Deputy Attorney General (DAG). 28 C.F.R. §§ 0.168(b) and (d). Pursuant to that authority, the AAG has delegated, with the approval of the DAG, the following settlement authority to U.S. Attorneys.[5]

(1)   except as provided in Section IX. below, U.S. Attorneys have the authority to settle any civil or criminal forfeiture case in which the amount involved does not exceed $1 million, regardless of the amount to be released to the claimant or defendant; or

---

[5]   *See* Attorney General Order No. 1598-92, Appendix Subpart Y, Part O, Title 28, Code of Federal Regulations, establishing the settlement and compromise authority re-delegated to the U.S. Attorneys from the AAG, in accordance with the requirements of 28 C.F.R. § 0.168(d).

(2)   except as provided in Section IX. below, U.S. Attorneys also have the authority to settle any civil or criminal forfeiture case in which the amount involved is between $1 million and $5 million, if the amount to be released to the claimant or defendant does not exceed 15 percent of the original claim. The maximum settlement under the second scenario is at $750,000, which is 15 percent of $5 million.

(3)   in all other cases, the U.S. Attorney must obtain approval of the settlement from the Chief of MLARS.

For the purposes of this provision, the term *amount involved* is defined as follows:

(1)   In a civil forfeiture case, the *amount involved* is the fair market value of the interest claimed by the person with whom the Government is attempting to reach a settlement. If the person is claiming an interest in more than one asset, the amount involved is the aggregate of those interests. For example, if the defendant property is a dwelling with a fair market value of $1.2 million, and the claimant is a lienholder asserting a $400,000 lien, for purposes of reaching a settlement with the lienholder the amount involved is $400,000. In the same case, if the claimant is the owner who acknowledges the validity of the lien but is contesting the forfeiture of the equity in the property, for purposes of reaching a settlement with the owner the amount involved is $800,000. But if the claimant is the owner who is also contesting the forfeiture of three other assets with a combined value of $350,000, the amount involved would be $1.15 million.

(2)   In a criminal forfeiture case, the *amount involved* is the fair market value of the defendant's interest in the aggregate value of any property that has been seized, restrained, or specifically identified as property subject to forfeiture in any forfeiture count, allegation, or bill of particulars, including substitute assets, but does not include the amount of a money judgment to the extent that there are no known assets available to satisfy the judgment. For example, if the Government has seized several assets and restrained other assets for the purpose of forfeiture in connection with a criminal prosecution, and has also alleged in the indictment that the defendant is liable for a $2 million money judgment, for purposes of negotiating a plea agreement with the defendant the amount involved is the aggregate value of the defendant's interest in all the assets that have actually been seized or restrained, but would not include the $2 million unless it appears that there are assets currently available that may be forfeited in satisfaction of the judgment.

(3)   In the ancillary proceeding in a criminal case, the *amount involved* is the fair market value of the interest in the forfeited property that is claimed by the third party with whom the Government is attempting to reach a settlement.

The *amount to be released* means the value of the property that a claimant, defendant, or third party in an ancillary proceeding would recover or would be permitted to retain. For purposes of this provision, the *fair market value* of real property means the appraised value of the property less the amount of any outstanding mortgages, liens, and/or unpaid property taxes.

## III.  Authority of MLARS to Approve a Settlement

The Chief of MLARS[6] has the authority to approve any settlement that must be submitted to that office pursuant to Section II. above. If the amount to be released exceeds 15 percent of the amount involved *and* is more than $2 million, the settlement must be approved by the DAG.[7]

MLARS considers four basic criteria in determining whether a settlement is appropriate: (1) whether the litigation risks justify the settlement; (2) whether the settlement employs forfeiture best practices and is consistent with overall Department of Justice (Department) goals; (3) whether the proposed settlement is made merely to induce a criminal plea, or conversely, gives the appearance that a defendant is avoiding or receiving a reduction in criminal penalties in exchange for agreeing to the proposed forfeiture; and (4) whether, in cases involving complex assets, the economic analysis is sound.

### A.  Examples

(1)  The Government brings a civil forfeiture action against a piece of real property with a market value of $1.5 million but in which the sole claimant has only claimed an interest in $250,000 of the equity in the real property. The Government settles with the claimant by agreeing to pay $125,000 out of the proceeds of the sale of the real property. Because the total value of the equity involved—claimant's $250,000 claim—is less than $1 million, the U.S. Attorney has authority to approve the settlement.

(2)  The Government files a civil forfeiture action against seized bank accounts and currency in the amount of $1.8 million, but agrees as part of a settlement to release 20 percent ($360,000) to the claimant. Because the total value of the property exceeds $1 million, the U.S. Attorney does not have authority to settle the case without approval from the Department; but because the amount to be returned does not exceed $2 million, the Chief of MLARS would have the authority to approve the settlement without having to consult with the DAG, even though the amount to be returned is more than 15 percent of the total value.

(3)  A criminal indictment alleges that the defendant must forfeit, upon conviction, various assets in which the defendant has claimed an interest in $3 million of equity in the assets. The assets are neither seized nor restrained, but are listed in the forfeiture allegation in the indictment. As part of a plea agreement, the Government agrees not to go forward with the forfeiture of most of the assets but instead agrees to accept a lump sum payment of $750,000 in lieu of forfeiture. Because the defendant is being allowed to retain assets worth more than $2 million and representing more than 15 percent of the total value of the property subject to forfeiture, the plea agreement must be approved by the DAG.

---

6  The authority of the AAG pursuant to 28 C.F.R. § 0.160 for settlement of forfeiture cases is delegated to the Chief of MLARS by paragraph (c) of Attorney General Order No. 1598–92.

7  This policy is based on 28 C.F.R. §§ 0.160 and 0.161. Section 0.160 provides that "Assistant Attorneys General are authorized, with respect to matters assigned to their respective divisions, to: (1) Accept offers in compromise of claims asserted by the United States in all cases in which the difference between the gross amount of the original claim and the proposed settlement does not exceed $2 million or 15 percent of the original claim, whichever is greater." Section 0.161 provides that matters that cannot be approved at the Criminal Division level must be approved by the DAG.

## IV. Using Administrative Forfeiture to Effect a Settlement

The following procedures apply to settlement agreements in civil judicial forfeiture cases and to criminal forfeiture plea agreements where an administrative forfeiture is necessary to effectuate the agreement. In such cases, the headquarters of the seizing agency involved must be consulted by the USAO prior to finalizing an agreement in order to ensure the agency can accommodate the terms of the agreement. The Department's policy is to pursue an agreed upon administrative forfeiture where it is possible and economically efficient to do so.

### A. Settlement of forfeiture after a claim is filed in an administrative forfeiture proceeding, but before a judicial complaint is filed

The following requirements must be met where a claim has been filed in response to a notice of administrative forfeiture and the case has been referred to the U.S. Attorney, but a settlement is reached before a civil judicial complaint is filed.

(1) The terms of the settlement should be reduced to writing by the U.S. Attorney and include the following:

   (a) a provision whereby the claimant/defendant identifies his or her ownership interest in the property to be forfeited;

   (b) a provision whereby the claimant/defendant gives up all of the right, title, and interest in the property so identified;

   (c) a provision whereby the claimant/defendant agrees not to contest the Government's administrative forfeiture action and waives all deadlines under 18 U.S.C. § 983(a);

   (d) a provision whereby the claimant/defendant agrees and states that the property to be forfeited administratively was connected to the illegal activity as proscribed by the applicable civil forfeiture statute (e.g., money to be forfeited is in fact proceeds from illegal drug trafficking);

   (e) specific reference to the withdrawal of the claim, any pending petitions for remission in accordance with Section V. below;

   (f) a "hold harmless" provision and a general waiver of Federal Tort Claims Act (FTCA) rights and *Bivens*[8] actions, as well as a waiver of all constitutional and statutory defenses and claims; and

   (g) where funds are to be returned to the claimant as part of the settlement, a statement that the return of funds may be subject to offset for any active debts the claimant may have in the TOP.

---

[8] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971).

(2)   The case should promptly be referred back to the seizing agency to reinstitute the administrative process. The seizing agency shall reinstitute the administrative forfeiture process to effectuate the agreement upon receipt of a referral in compliance with this policy, consistent with its lawful authority. Where the agreement provides for the claimant to withdraw the claim to all property subject to forfeiture, the entire case will be referred back to the agency for administrative forfeiture unless, of course, other claims have been filed as to the same property.

Where the agreement provides for the claimant to withdraw the claim to all property subject to forfeiture, the entire case will be referred back to the agency for administrative forfeiture unless, of course, other claims have been filed as to the same property.

Where the agreement provides for the claimant to withdraw only a part of a claim, the case will be referred back to the agency for administrative forfeiture of that portion of the forfeitable property named in the agreement, and the agency may release the remainder to the claimant consistent with the settlement. Republication of the notice or of the administrative forfeiture action is not necessary, provided publication covering the property to be forfeited occurred prior to the filing of the claim.

## B.   Settlement of civil judicial forfeiture without prior administrative action

The following requirements must be met where the judicial action was commenced without a prior administrative forfeiture action, and a settlement agreement has been reached involving a proposed administrative forfeiture of seized property.

(1)   the headquarters of the seizing agency must concur in that part of the settlement that would obligate the agency to commence administrative forfeiture proceedings;

(2)   the complaint must be dismissed or amended so as to strike the assets to be administratively forfeited; and

(3)   the jurisdiction of the district court over the assets to be administratively forfeited must be relinquished before referral may be made to a seizing agency under this policy.

The seizing agency shall initiate the administrative forfeiture process to effectuate such an agreement upon receipt of a referral in compliance with this policy, consistent with its lawful authority.

## C.   Using administrative forfeiture to settle a criminal forfeiture action

In cases where property has been seized or restrained for forfeiture under criminal statutes, and an agreement relating to a proposed administrative forfeiture of the property has been reached between the U.S. Attorney and the claimant/defendant prior to entry of a preliminary order of forfeiture against the defendant's interest in the subject property,

(1)   the headquarters of the seizing agency must concur in that part of the settlement that would obligate the agency to commence administrative forfeiture proceedings;

(2)   the seizure or restraining orders must be dismissed or vacated as to the property to be administratively forfeited; and

(3)   the jurisdiction of the district court over the property to be administratively forfeited must be relinquished. The seizing agency shall initiate the administrative forfeiture process to effectuate such an agreement upon receipt of a referral in compliance with this policy, consistent with its lawful authority.

## V.   References to the Remission or Restoration Processes in Settlements

No agreement—whether a settlement in a civil judicial action, or a plea agreement resolving both criminal charges and the forfeiture of assets in a criminal case, or settlement of a claim in an ancillary proceeding—may contain any provision binding the Department and the agencies to a particular decision on a petition for remission or request for restoration, or otherwise contain terms the effectiveness of which is contingent upon the making of such a particular decision. The remission and restoration processes, like the pardon process in criminal cases, are completely independent of the litigation and case settlement process.

MLARS, however, in appropriate cases upon request, will adjudicate a properly filed petition for remission or mitigation prior to the negotiation of a forfeiture settlement or entry of a final order of forfeiture. It is proper to include in a settlement agreement a provision that expressly leaves open or expressly forecloses the right of any party to file a petition for remission or mitigation.

## VI.   Settlements in Civil Judicial Forfeiture Cases

Any settlement that purports to forfeit property binds only the parties to it and forfeits only the interest in the property that the settling claimant possesses. The following procedures must be followed to ensure that a valid and complete civil judicial forfeiture of the interest occurs through the settlement occurs:

(1)   a civil verified complaint for forfeiture of the property must be filed in the U.S. district court to establish the court's jurisdiction. Filing an action as a "miscellaneous docket" and any other attempts to avoid filing a complaint violates the Department's policy requiring that a complaint be filed in each civil forfeiture case;[9]

(2)   all known parties in interest must be given written notice, and notice by publication must be made;

(3)   if no timely claim has been filed pursuant to the Supplemental Rules for Certain Admiralty or Maritime and Asset Forfeiture Claims, a default judgment pursuant to Federal Rule of Civil Procedure 55 must be sought as to all interests in the property other than the interest(s) subject to the settlement agreement; and

(4)   proposed orders of forfeiture should fully incorporate the terms of all settlement agreements (such as any lien or mortgage per diem rates and payoffs, spousal ownership interests, etc.).

## VII.  Plea Agreements Incorporating Criminal Forfeiture

In any plea agreement, a defendant may consent to forfeiture. A plea agreement that purports to forfeit the property may only bind the parties thereto and transfers only the interest that the settling claimant/

---

[9]  *See* Chap. 5, Sec. II.B.4 of this *Manual*.

defendant possesses. The following procedures must be followed to ensure that a valid forfeiture results from a plea agreement:

(1) there must be a forfeiture count or allegation in the indictment or information, or that requirement must be waived in the plea agreement. To the extent property is known to be subject to forfeiture, it should be listed in the indictment, information, or in a subsequent bill of particulars. The USAO must ensure that its criminal pleadings are in compliance with Federal Rule of Criminal Procedure 32.2;

(2) the AUSA must comply with the requirements applicable to third party interests (e.g., 21 U.S.C. § 853(n)(1)–(7)), and the provisions of Federal Rule of Criminal Procedure 32.2, including affording third parties with notice of the forfeiture and of their right to obtain an post-conviction adjudication of their interests in the property;

(3) the settlement to forfeit property must be in writing, and the defendant must expressly stipulate to all facts supporting the forfeiture and waive all statutory and constitutional defenses to the forfeiture; [10]

(4) the court must issue a preliminary order of forfeiture that incorporates the settlement and must include the forfeiture order in the oral pronouncement of the sentence in the presence of the defendant and in the written judgment of conviction at sentencing; and

(5) wherever possible, in order to avoid protracted litigation of ownership issues in the context of ancillary hearings, the United States should accept unencumbered property, with the exception of valid financial institution liens, or at the very least, the plea agreement should require the defendant to convey clear title to the Government.[11] Short of this, the Government should seek to obtain from the settling defendant, as part of the plea agreement, sworn factual stipulations that may be useful against any non-pleading codefendants who might assert an interest in the same property in the "forfeiture phase" of the criminal prosecution or any claims that might be filed by third parties as to the same property in either the ancillary proceeding or any parallel civil forfeiture action.

## VIII. Global Settlements and Dealing with Claimants and Witnesses

### A.  Ethical considerations

In situations where both a civil forfeiture proceeding and a related criminal investigation or charges are pending, forfeiture attorneys may face various ethical issues. Issues generally arise in the context of settlements and plea agreements, and in dealings with witnesses. Some of these issues are set out below, with references to certain pertinent authority; however, in addition to the materials identified here, prosecutors should consult the rules that apply in the state in which they are licensed as well as the state and court(s) in which the proceedings are pending.[12]

---

[10]  To the extent that the defendant is preserving any rights, exceptions should be explicitly expressed and the rights observed should be identified.

[11]  *See also* Sec. IV.A above.

[12]  *See* 28 U.S.C. § 530B (Department attorneys are "subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.").

### B. Global settlements

The term *global settlement* is often used to describe a situation whereby the Government concludes a civil or administrative forfeiture action in conjunction with the resolution of the criminal charges involving the same activity that gave rise to the forfeiture of the property. While such agreements are often recommended, being both effective and efficient in resolving disputed matters, they raise ethical issues that should be considered. The following principles should be observed in negotiating such a global settlement:

(1) No settlement agreement should be used to gain an improper advantage in a related civil or criminal case. The Government should *not* agree to release property subject to forfeiture (civil or criminal) in order to *coerce* a guilty plea on the substantive charges, nor should the Government agree to dismiss criminal charges in order to *coerce* a forfeiture settlement.[13] To the maximum extent possible, the criminal plea and forfeiture should conclude the defendant's business with the Government. Delaying consideration of the forfeiture until after the conclusion of the criminal case unnecessarily extends the Government's involvement with the defendant and diminishes the effectiveness and efficiency of forfeiture enforcement.

(2) If a plea agreement in a criminal case does not resolve the criminal forfeiture or a related civil forfeiture case, express language to this effect should be included in the plea agreement so as to remove any doubt or ambiguity on this point.

(3) Where a defendant who is also a claimant in a related civil forfeiture action has negotiated a plea agreement in the criminal case and concurrently wishes to forfeit the property in the related civil forfeiture action, the plea agreement should state that the claimant/defendant is waiving any and all rights—constitutional, statutory, or otherwise—with respect to the civil forfeiture.[14] Any civil settlement should be documented independently of the plea agreement and should include the following information:

   (a) the claimant/defendant's interest in the property;

   (b) an admission of the facts supporting forfeiture;

   (c) that the claimant/defendant forfeits all rights to the property; and

   (d) that the claimant/defendant waives any and all right to contest the forfeiture of the property.

(4) The defendant, in the plea agreement, must admit to facts sufficient to support the forfeiture. The Government, however, should expressly reserve its right to reopen the civil forfeiture action in the event it is later determined that the settlement was based on false information or where the defendant violates the plea agreement or the agreement is invalidated for any other reason.

---

[13] *See Justice Manual* (JM) § 9-113.106, available at: www.justice.gov/jm/justice-manual..

[14] To the extent that the defendant is preserving any rights, exceptions should be explicitly expressed and the rights observed should be identified.

Care should be taken to avoid any plea/settlement agreement that risks undermining faith in the fairness of those who administer the criminal process, such as an agreement which appears to reduce prison time in exchange for forfeiture, or vice versa.[15]

A prudent practice followed by many government attorneys is that of not introducing or suggesting a global settlement disposition. If opposing counsel raises the issue, it may be responded to and pursued by government attorneys in close consultation with supervisors, and being mindful of the relevant ethical issues.

## C. Claimants and witnesses

The same ethical considerations as those which apply in global settlements, above, also apply in situations where the Government attorney is interacting with claimants and witnesses in civil forfeiture litigation in circumstances which may raise issues of fairness and proper conduct.

These issues may occur in all situations where the line between the Government's civil litigation and prosecutorial functions may become blurred, and where there may be potential for consolidating governmental power against individuals in a way which could become abusive. While there is no ethical prohibition on conditioning the subject's status in a prosecution on that person's cooperation, care should be employed when the subject's cooperation is sought solely in connection with a civil forfeiture matter.

Where, for example, a civil forfeiture action and a related criminal investigation or charges are pending at the same time, a claimant or witness may be required to take action in the civil forfeiture case, such as providing testimony in a deposition, where there is a perceived threat of criminal prosecution. In such cases care should be taken not to coerce cooperation or the providing of testimony in the civil case by threats or promises relating to the criminal proceedings.[16] Nor should civil forfeiture discovery or other proceedings be used solely to obtain information or benefit for the criminal proceeding.[17]

Ethical issues may arise in a situation where an individual, not currently charged with a crime but involved in the offense, has relevant information that would aid the Government in pursuing a civil forfeiture case. Clearly if the situation arose in a criminal case there would be nothing improper about the prosecutor advising the witness that if he did not tell the truth about what he knew, he could be charged for his own involvement in the crime, assuming there was evidence to support a prosecution. Generally, the same should be true in a civil case scenario. However, even though there is no blanket prohibition against threatening a prosecution to persuade someone to take a particular action in a civil

---

[15] *See Town of Newton v. Rumery*, 480 U.S. 386, 400 (1987) (O'Connor, J., concurring).

[16] A claimant or witness in a civil forfeiture proceeding who is also a defendant in a pending criminal case may want to cooperate in the civil case in the hope that such cooperation may be a factor in supporting a motion by the Government for reduction of sentence pursuant to § 5K1.1 of the Sentencing Guidelines (Guidelines); however, it is not clear whether or to what extent cooperation in a civil forfeiture case would constitute a factor under § 5K1.1, though it is clear that the Guidelines expressly separate a defendant's sentence from his/her forfeiture of property. *See U.S. v. Hendrickson*, 22 F.3d 170, 175 (7th Cir. 1994) (section 5E1.4's explicit language that "[f]orfeiture is to be imposed upon a convicted defendant as provided by statute" makes it "readily apparent that forfeiture was considered by the Sentencing Commission and was intended to be imposed in addition to, not in lieu of, incarceration"); *cert. denied*, 513 U.S. 878 (1994).

[17] *See, e.g., In re Phillips, Beckwith & Hall*, 896 F. Supp. 553, 558 n.5 (E.D. Va. 1995) (law firm moved to stay forfeiture action in view of potential criminal charges against firm personnel; court denied stay, noting that allegation of "bad faith on the Government's part by, for example, pursuing a civil lawsuit solely for the purpose of aiding a criminal investigation, or threatening or delaying bringing criminal charges in order to extract an advantage in the civil case by keeping the cloud of criminal prosecution overhead" would have produced different outcome (citing cases)).

matter, government attorneys must take care to ensure that any threat of prosecution is not solely to gain an advantage in the civil matter (i.e., to ensure that the criminal charges would be brought for some legitimate purpose in addition to gaining an advantage in the civil action), that it is related to the criminal case, and that it is well-founded.

In the context of settling civil forfeiture cases, care should be taken by the government attorney handling the civil case not to harm the Government's criminal prosecution, such as in a case where, for example, we compromise a civil forfeiture case to the benefit of a defendant/witness who has already entered into a cooperation agreement with the Government. In that circumstance the civil forfeiture settlement may be viewed as a benefit to the cooperating witness which we have to disclose, and which may be used to impeach the cooperating witness on cross-examination. Prior to negotiating a civil forfeiture settlement with a cooperating witness/defendant in a pending criminal case, the government forfeiture attorney should consult with the government attorney prosecuting the criminal case.[18] Ethical issues may also arise where government attorneys include cooperation provisions in civil forfeiture settlements. Such provisions, which may provide for assistance or cooperation by the claimant in other civil forfeitures or in related criminal proceedings, create no ethical problems so long as the settlement agreement itself stands on its merits, and if it calls for cooperation in a criminal case, does not run afoul of ethical considerations relating to the interplay of civil and criminal cases noted above.

Again, ethics rules vary from state to state, and it is strongly recommended that each attorney dealing with related civil forfeiture and criminal cases consult the rules that apply to the states in which the attorney is licensed and the action is pending, as well as consulting the ethics advisor in the USAO.

## IX. Acceptance of a Monetary Amount in Lieu of Forfeiture of Other Tangible Property

### A. Introduction

The Government may accept and agree to replace directly forfeitable property that has been seized with an agreed amount of money in lieu of seized property and then proceed to forfeit the sum of money under the same legal theory that applied to the directly forfeitable property. In a judicial forfeiture case, the Government may also accept and forfeit an agreed amount of money even as to directly forfeitable property, including real estate, that has not been seized. However, the replacement of directly forfeitable property with a sum of money should be done only when the interests of justice so require and subject to the limitations set forth below which are imposed as a matter of policy, not as a statutory requirement. Accepting and forfeiting a sum of money in place of directly forfeitable property and releasing the forfeitable latter property effectively moots any unsettled forfeiture claims against the released property. It is imperative, therefore, that *all* interests in the property be resolved before the property is released.

### B. Policy considerations

The many federal forfeiture statutes reflect congressional policy that property constituting or derived from criminal proceeds and property used to commit crime should be taken away from those who took it from victims or illicit customers, committed crimes with it, or let others use it to commit

---

[18] *See* Sec. I.B.2 above (stating that the seizing agency or authorized designee must also be consulted in connection with settlement negotiations).

crime. Forfeiting the "tainted" property itself accomplishes this goal more directly and clearly than forfeiting an agreed sum of money while leaving the "tainted" property itself in the hands of those whose acts or failures to act made it forfeitable. Thus, Department policy is to forfeit all available directly forfeitable property rather than a replacement sum of money unless the interests of justice clearly favor forfeiture of the replacement sum of money.

There are, for example, limited circumstances where accepting and forfeiting an amount of money in lieu of the property directly linked to an underlying offense is in the interests of justice, such as cases where innocent owners own all but a small portion of the property, where forfeiture of the particular property will cause an undue hardship on innocent owners, and where, after balancing the costs and risks of continued litigation, the Government determines that settling for part of the value of allegedly forfeitable property is just and appropriate.

The following discussion of accepting money in lieu of forfeitable property is applicable to cases where the directly forfeitable property is available for forfeiture, and forfeiting a replacement sum of money will leave the directly forfeitable property in the hands of some or all of its present owners.

The policy concerns discussed in this section do not arise when the Government either (1) forfeits substitute assets in a criminal case under 21 U.S.C. § 853(p), because directly forfeitable property is unavailable because of some act or omission of a criminal defendant; or (2) sells property, either before or after forfeiture, to persons not involved in or associated with the underlying criminal activity.

### C.  Applicable procedures

The following procedures must be followed when the Government accepts and forfeits money in lieu of other property:

(1)  **Administrative forfeitures:** 19 U.S.C. § 1613(c), as incorporated by, e.g., 18 U.S.C. § 981(d), 21 U.S.C. §§ 853(j) and 881(d), permits federal seizing agencies, as a form of relief from administrative forfeiture, to accept and forfeit a sum of money in lieu of directly forfeitable seized property. *See also* 19 U.S.C. § 1614. As a matter of policy and discretion, however, the Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI) limit their use of this authority to cases where such substitution is determined to be in the interests of justice and a timely claim for the forfeitable property has been filed pursuant to 18 U.S.C. § 983(a)(2) and referred by the seizing agency to the USAO for initiation of judicial forfeiture proceedings. After consultation with the seizing agency (*see* Section I.B.2 above), the USAO may accept a monetary amount in lieu of forfeiture of the seized property and refer the matter back to the seizing agency to effect the settlement (*see* Section IV. above).

(2)  **Judicial forfeitures:** In a judicial forfeiture case, the Government may accept and forfeit an agreed sum of money in lieu of directly forfeitable property. This is true regardless of whether or not the directly forfeitable property has been seized.

### D. Discussion

When it is in the interest of justice, the Government may forfeit a sum of money in place of directly forfeitable property or a directly forfeitable partial interest in otherwise non-forfeitable property. Parties often agree to substitute forfeiture of a sum of money in place of directly forfeitable property in connection with a settlement.[19] When courts order an interlocutory sale of forfeitable property, by agreement or otherwise, the net sale proceeds also typically become a substitute res in a civil forfeiture proceeding or a replacement for directly forfeitable property in a criminal forfeiture proceeding. Legal authority to forfeit money in lieu of other property is found in the applicable statutes, rules, regulations, and case law summarized below.

Subject to applicable regulations[20] and the policy restrictions described herein, which have been imposed as a matter of policy, an agency in an administrative forfeiture proceeding may accept and forfeit a sum of money in lieu of directly forfeitable property that has been seized. The authority for doing this is found under 19 U.S.C. § 1613(c), which terms such replacement as a form of "relief" from the forfeiture, and under 19 U.S.C. § 1614, which authorizes agencies to release property seized for administrative forfeiture upon payment of "the value of" such property. These statutes specify that the replacement sum of money is "treated in the same manner as the proceeds of sale of a forfeited item." 19 U.S.C. § 1613(c).

The customs laws, including §§ 1613(c) and 1614, are incorporated by reference into most civil and criminal forfeiture statutes. *See, e.g.*, 18 U.S.C. § 981(d), 21 U.S.C. §§ 853(j) and 881(d). Therefore, 19 U.S.C. §§ 1613(c) and 1614 also authorize forfeiture of a sum of money in place of directly forfeitable property that has been seized in most judicial forfeiture cases, although, of course, in judicial forfeiture cases, both the replacement of money for the directly forfeitable property with the sum of money and the forfeiture of the replacement sum of money require the court's approval.[21]

Although 19 U.S.C. §§ 1613(c) and 1614 apply by their terms only to "seized" property, substituting and forfeiting an agreed amount of money in lieu of directly forfeitable property has not been so limited. Courts have recognized, generally without reference to particular statutory authority that parties to a forfeiture case may agree to replace the directly forfeitable property with a sum of money, and then may settle or litigate the forfeiture on the same legal theory that applied to the directly forfeitable property, with the money serving as substitute res. In *Republic National Bank of Miami v. United States*, 506 U.S. 80, 82–83 (1992), the Court noted, without comment, that by agreement and with court approval, forfeitable real property had been sold and the proceeds treated as a substitute res. In *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 855 (9th Cir. 2005) (a private in rem action to enforce a lien on vessels), the court, like the Supreme Court in *Republic National Bank*, assumed it was proper to replace substitute money for the defendant vessels with a sum of money and a bond, and focused instead upon whether the district court lost in rem jurisdiction when the substitute

---

[19] Consultation with MLARS is required prior to seeking an order for the interlocutory sale of cryptocurrency. *See* Chap. 2, Sec. V.B of this *Manual*.

[20] Payments in lieu of forfeiture are addressed at 28 C.F.R. § 8.14(a).

[21] *See, e.g.*, *United States v. Approx. 64,695 Pounds of Shark Fins*, 353 F. Supp. 2d 1095, 1098–99 (S.D. Cal. 2005) (court permitted claimant to post bond as substitute res in exchange for release of seized shark fins, which claimant was then permitted to sell).

replacement money and bond were transferred out of the district after the claimants prevailed in the district court.[22]

Similarly, in *United States v. Real Property Located at 22 Santa Barbara Drive*, 264 F.3d 860, 866–67 (9th Cir. 2001), the forfeitable real property was sold in 1991, the proceeds became a substitute res, and litigation over a variety of issues—but never the propriety of the substitution—continued for another 10 years. In *United States v. An Article of Drug Consisting of 4,680 Pails*, 725 F.2d 976, 983 n.20 (5th Cir. 1984), which focused upon whether the district court lost jurisdiction when seized animal drug powder was mistakenly released and then removed from the district, the court of appeals described selling forfeitable property and using the sale proceeds as a "substitute *res* for jurisdictional purposes" as "an often-used and legitimate practice."[23]

In addition to the common law, there is statutory authority for substitution in many cases. In all criminal forfeitures, and most civil forfeitures, courts have broad power to take any action necessary to preserve the forfeitable value of property. *See* 21 U.S.C. § 853(e)(1); 18 U.S.C. § 983(j) (1). Liquidation of the property, replacing it with a sum of money, is often an effective means of preserving forfeitable value. In criminal forfeitures, substitution of money for tainted property is authorized under the substitute assets provision, 21 U.S.C. § 853(p), if the defendant has transferred or commingled interests in directly forfeitable property in a way that makes liquidation and forfeiture of the property itself difficult.

Particularly in criminal forfeiture cases, it is important that counsel refer to the replacement sum of money as "cash in lieu" and not as a "substitute asset." The phrase "substitute asset" is a term of art referring to substitute property forfeitable under 21 U.S.C. § 853(p) and 18 U.S.C. § 1963(m). "Substitute assets" are legitimate assets that are subject to forfeiture in place of directly forfeitable property that has been made unavailable for forfeiture solely because of some act or omission of the criminal defendant. Purely as a matter of statutory construction, such "substitute assets" may not be restrained or seized in most jurisdictions prior to the conviction of the criminal defendant. By contrast, "cash in lieu" is a sum of money that replaces directly forfeitable property prior to forfeiture, either by consent of the parties and/or court order, does not replace property that has been made unavailable for forfeiture by some act or omission of the defendant. Rather, it replaces directly forfeitable property that is currently available and does so by consent and/or court order; thus, the replacement sum of money should be subject to restraint and seizure the same as the directly forfeitable property it replaces.

In civil judicial forfeiture cases, interlocutory sales are specifically authorized by Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture, which provides that the sale proceeds "are a substitute res subject to forfeiture in place of the property that was

---

[22]   Both the Ninth Circuit in *Ventura Packers*, 424 F.3d at 864, and the Supreme Court in *Republic National Bank*, 506 U.S. at 92–93, held that transferring the "substitute res" out of the district did not deprive the district courts of in rem jurisdiction.

[23]   *See also United States v. Twelve Pieces of Real Property*, 54 F. App'x. 461, 463–64 (9th Cir. 2003) (affirming forfeiture of money that replaced facilitating real property in a drug trafficking case); *United States v. $180,893*, 39 F. App'x. 570, 571–73 (same); *United States v. 250 Lindsay Lane*, 2005 WL 1994762 at *5 (W.D. Ky. Aug. 16, 2005) (by agreement, proceeds from sale of real property allegedly purchased with healthcare fraud proceeds became substitute res); *United States v. $1.5 Million Letter of Credit as a Substitute Res for Seized Bank Accounts*, 1992 WL 204357 at *2 (S.D.N.Y. Aug. 7, 1992) (by stipulation, parties substituted $1.5 million letter of credit for approximately $4.3 million contents of seized bank accounts); *United States v. An Article of Drug Consisting of 4,680 Pails*, 725 F.2d 976, 983 n.20 (5th Cir. 1984) (dictum describing the pre-judgment sale of forfeitable property and use of the sale proceeds as a "substitute *res* for jurisdictional purposes" as "an often-used and legitimate practice"; citation omitted).

sold." Supplemental Rule G(7)(b)(iv). Supplemental Rule G(7)(b) codified preexisting law approving the practice of treating interlocutory sale proceeds as a substitute res under Supplemental Rule E(9)(b).[24]

Under many forfeiture statutes, the proceeds from sale of forfeitable property are directly forfeitable without the need for formal "substitution" because the scope of direct forfeiture under such statutes is "derived from" or "traceable to" the forfeitable property. *See, e.g.*, 18 U.S.C. § 981(a)(1)(A) (authorizing forfeiture of property traceable to property "involved in" money laundering which includes any property traceable to otherwise forfeitable property); 18 U.S.C. § 981(a)(1)(C) (property derived from "traceable to" property constituting the proceeds of any "specified unlawful activity" proceeds); 21 U.S.C. § 881(a)(6) (property traceable to drug proceeds). "Substitution" of untainted property for forfeitable property is only necessary in the interlocutory sale context where the proceeds from sale of forfeitable property are not themselves directly subject to forfeiture. *See, e.g.*, 21 U.S.C. § 881(a)(7) (authorizing forfeiture of facilitating real property, but not of property derived from or traceable to such property).

In judicial forfeiture cases, the Government should request that any interlocutory order substituting money for a forfeitable asset direct the USMS or the appropriate Treasury agency or other property custodian to accept and hold the money, after paying any expenses incurred with respect to the seizure and maintenance of the asset being liquidated or released, pending further orders of the court. Once a substitute res has been forfeited, the USMS or the appropriate Treasury agency must dispose of it in the same manner as other forfeited property.

## X.   Agreements to Exempt Attorneys' Fees from Forfeiture

Any agreement to exempt an asset from forfeiture so that it can be transferred to an attorney as fees must be approved by the AAG.[25]

---

[24]   *See United States v. One Parcel Lot 41, Berryhill Farm*, 128 F.3d 1386, 1390 (10th Cir. 1997) (interlocutory sale of residence while civil case was stayed pending criminal trial avoided waste and expense and allowed government to satisfy mortgage); *United States v. Haro-Verdugo*, 2006 WL 1990843, at *2 (D. Ariz. July 13, 2006) (magistrate judge recommended interlocutory sale under Supp. Rule E(9)(b) where transient drug dealers were using vacant property and property was deteriorating); *United States v. 2540 Chadwick Way*, 2005 WL 2124539, at *3 (N.D. Ill. May 12, 2005) (over claimant's objection, court ordered interlocutory sale of real property pursuant to § 983(j) to avoid mortgage foreclosure); *Aguilar v. United States*, 1999 WL 1067841, at *5 (D. Conn. Nov. 8, 1999) (despite claimant's objection, exigent circumstances justified interlocutory sale of real property to prevent vandalism and to pay off mortgage). *See generally* MLARS' *Guide to Interlocutory Sales and Expedited Settlement*.

[25]   *See* Chap. 12, Sec. IV of this *Manual*; *see also* JM § 9-120.116, available at: www.justice.gov/jm/justice-manual.

# Chapter 12:
# Attorneys' Fees

## I.   Payment of Attorneys' Fees in Civil Forfeiture Cases

Title 28 United States Code, section 2465(b) provides for an award of attorneys' fees and other litigation costs to any claimant in a civil forfeiture case who "substantially prevails" in a civil forfeiture proceeding, regardless of whether the Government was justified in bringing the forfeiture action. To be eligible for attorneys' fees, however, the claimant must pursue the claim in court and obtain a judgment that the Government is liable for attorneys' fees under 28 U.S.C. § 2465.[1] Such awards will be paid out of the Judgment Fund.[2]

When there is a judgment awarding attorneys' fees, interest, and costs in a civil forfeiture case, the U.S. Attorney's Office (USAO) should submit a request for payment of the award to the Department of the Treasury's (Treasury) Financial Management Service (FMS), which manages the Judgment Fund. The FMS website[3] has links to procedures for submitting a request for an award of costs and fees and to the appropriate forms. In addition to the forms and instructions, the FMS website also contains general information about the Judgment Fund.

## II.   Payment of Attorneys' Fees in Criminal Forfeiture Cases

### A.   Defendant's attorneys' fees

The defendant in a criminal forfeiture action may file for an award of attorneys' fees only under the Hyde Amendment.[4] A motion for fees and costs filed in a civil forfeiture case under the Civil Asset Forfeiture Reform Act of 2000 (CAFRA)[5] cannot include fees and costs incurred in even a directly related criminal proceeding.[6] The Hyde Amendment provides that the court may award attorneys' fees to defendants in criminal actions in which the Government's position was vexatious, frivolous, or in bad faith.[7] To prevail on a Hyde Amendment claim, the defendant must prove that: (1) defendant was the prevailing party on the underlying action; (2) the Government's position was vexatious, frivolous, or in bad faith; and (3) there are no special circumstances that would make the award unjust. This burden is heavier than the one the Government must meet under the Equal Access to

---

[1]  In civil forfeitures of firearms and ammunition pursuant to 18 U.S.C. § 924(d) where a claimant substantially prevails, CAFRA's attorneys' fees provision applies and the Government is liable for reasonable attorneys' fees and other litigation costs. 28 U.S.C. § 2465(b) (2000).

[2]  Forms for requesting payments out of the Judgment Fund are available at: fiscal.treasury.gov/judgment-fund and should be submitted directly to the office that handles Judgment Fund matters.

[3]  The FMS website can be found at: fiscal.treasury.gov/judgment-fund.

[4]  "During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of enactment of this Act [Nov. 26, 1997], may award to the prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust." The Hyde Amendment to the Department of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1998, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), *reprinted in* 18 U.S.C. § 3006A, historical and statutory notes.

[5]  Pub. L. 106-185, Apr. 25, 2000, 114 Stat 202.

[6]  *See United States v. Certain Real Property, Located at 317 Nick Fitchard Road, N.W., Huntsville, AL,* 579 F.3d 1315 (11th Cir. 2009).

[7]  Hyde Amendment, above footnote 3.

Justice Act (EAJA), 28 U.S.C. § 2412, for civil actions.[8] When a request for attorneys' fees under the Hyde Amendment is made based on the criminal prosecution, it should be submitted directly to the Hyde Amendment Committee and the Executive Office for U.S. Attorneys (EOUSA). If the request specifically addresses the criminal forfeiture, a copy should also be submitted to the Chief of the Money Laundering and Asset Recovery Section (MLARS). Hyde Amendment claim awards are paid from the Judgment Fund.

Despite arising from a criminal action, most courts have found a Hyde Amendment action to be a civil proceeding. As a result, the Federal Rules of Civil Procedure apply to Hyde Amendment actions.[9] Moreover, the Hyde Amendment provides that the procedures and limitations for granting an award shall be derived from those set forth in the EAJA.[10] In pertinent part, the EAJA requires the parties seeking an award to file their claims within 30 days of final judgment of the underlying civil action.[11] The EAJA also provides for the determination of reasonable attorneys' fees and other expenses.[12]

## B.  Third party petitioner's attorneys' fees

Since CAFRA strictly applies to civil forfeiture proceedings, the third party petitioner in an ancillary proceeding to a criminal forfeiture, pursuant to 21 U.S.C. § 853(n), must assert payment for attorneys' fees under the EAJA.[13] The EAJA provides for the award of attorneys' fees to prevailing parties in any civil action against the Government in which the Government's position was not substantially justified.[14] A third party claimant's ancillary proceeding to a criminal forfeiture is considered a "civil action" under the EAJA.[15] Payment of attorneys' fees awarded under the EAJA is made from the Assets Forfeiture Fund (AFF) upon approval from the Chief of MLARS. If the Chief of MLARS denies authorization for the payment from the AFF, the attorneys' fees awarded under the EAJA may be paid from the operating budget of the federal government participants in the case.

---

[8]  *See United States v. Gilbert*, 198 F.3d 1293, 1299–1302 (11th Cir. 1999) (discussing legislative history of the Hyde Amendment). In its original form, the Hyde Amendment tracked the EAJA in its burden and standard of proof, but was changed prior to enactment by switching the burden from the Government to the plaintiff and heightening the standard of misconduct that must be shown. *Id.* at 1302. *See also United States v. Wade*, 255 F.3d 833, 839 n.6 (D.D.C. 2001) (discussing in footnote that the Hyde Amendment is a heavier burden for petitioner than the EAJA standard); *see also* Sec. II.B below.

[9]  *United States v. Braunstein*, 281 F.3d 982, 994 (9th Cir. 2002); *United States v. Holland*, 214 F.3d 523 (4th Cir. 2000); *United States v. Truesdale*, 211 F.3d 898, 902–904 (5th Cir. 2000); *United States v. Wade*, 255 F.3d 833, 839 (D.D.C. 2001). *But see United States v. Robbins*, 179 F.3d 1268, 1270 (10th Cir. 1999) (finding a Hyde Amendment action was a criminal proceeding to which the appellate rule for criminal actions applies).

[10]  "Such awards shall be granted pursuant to the procedures and limitations (but not burden of proof) provided for an award under Title 28, U.S.C. § 2412." Hyde Amendment, above footnote 3.

[11]  28 U.S.C. § 2412(d)(1)(B).

[12]  28 U.S.C. § 2412(d)(2)(A).

[13]  *See United States v. Moser*, 586 F.3d 1089, 1092–96 (8th Cir. 2009) (prevailing third party in ancillary proceeding is not entitled to recover attorneys' fees under CAFRA). *Accord United States v. Nolasco*, 354 F. App'x. 676, 679–81 (3d Cir. 2009).

[14]  "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

[15]  *United States v. Douglas*, 55 F.3d 584, 587 (11th Cir. 1995); *United States v. McAllister*, 1998 WL 855498, at *3 (E.D. Pa. 1998); *United States v. Bachner*, 877 F. Supp. 625, 627 (S.D. Fla. 1995).

The EAJA requires the court to award fees upon finding that: (1) the applicants were the prevailing parties; (2) the Government's position was not substantially justified; and (3) no circumstances exist that would make an award unjust.[16] The general test for determining whether an applicant is a prevailing party is if the parties "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."[17] The Supreme Court has held that a party must secure a judgment on the merits or by judicial consent decree in order to prevail under statutes awarding attorneys' fees.[18] The court stated that these results create the "material alteration of the legal relationship of the parties' necessary to permit an award of attorneys' fees."[19] Therefore, to meet the prevailing party requirement under the EAJA, a petitioner must achieve some benefit of the litigation either through a judgment on the merits or a judicial consent decree.

For the Government's position to be substantially justified, the Government must show it was "justified to a degree that could satisfy a reasonable person";[20] that is, its position had a "reasonable basis both in law and fact."[21] Relevant factors that may be considered in determining whether the Government's position was reasonable include: (1) the legal merits of its position; (2) the clarity of the governing law at the time the action was instituted; (3) the stage at which the litigation was resolved; and (4) the consistency of the Government's position.[22]

## III.   Summary of Payment of Attorneys' Fees in Forfeiture Cases

| Forfeiture Type | Funding Source | Payment Authority | Approval Authority | Standard |
| --- | --- | --- | --- | --- |
| **Civil** | Judgment Fund | CAFRA, 28 U.S.C. § 2465(b) | FMS | Mandatory award of attorneys' fees and other litigation costs to non-Government parties who substantially prevail in a civil forfeiture proceeding. |
| **Criminal** | Judgment Fund | Hyde Amendment[23] | EOUSA and Hyde Amendment committee | Award of attorneys' fees to defendants in criminal actions in which the Government's position was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. |
| **Third Party Petitioners in Ancillary Proceeding to Criminal Forfeiture** | AFF | EAJA, 28 U.S.C. § 2412(d)(4) | MLARS Chief | Award of attorneys' fees to prevailing parties in any civil action against the Government in which the Government's position was not substantially justified, and no circumstances exist that would make an award unjust. A third party claimant's ancillary proceeding to a criminal forfeiture is considered a "civil action" under EAJA. |

---

[16] *Jean v. Nelson*, 863 F.2d 759, 765 (11th Cir. 1988).

[17] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Rhoten v. Brown*, 854 F.2d 667, 669 (4th Cir. 1988); *Sims v. Apfel*, 238 F.3d 597, 600 (5th Cir. 2001).

[18] *Buckhannon Board and Care Home, Inc. v. West Va. Dept. of Health and Human Resources*, 532 U.S. 598, 604–605 (2001); *see also Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 944–48 (D.C. Cir. 2005).

[19] *Buckhannon Board and Care Home, Inc.* at 604.

[20] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[21] *Id.*

[22] *Id.* at 568–70.

[23] Pub. L. 105-119, § 617, Nov. 26, 1997, 111 Stat. 2519, codified as a note following 18 U.S.C. § 3006A.

## IV.   Forfeiture of Attorneys' Fees

The policy on the forfeiture of attorneys' fees is set forth in the *Justice Manual* (JM).[24] As set forth in those sources, any action to forfeit attorneys' fees in a civil or criminal case, as well as any agreement *not* to seek forfeiture of attorneys' fees in such case, requires the approval of the Assistant Attorney General for the Criminal Division (AAG)

---

[24]   *See* JM § 9-120.000 et seq., available at: www.justice.gov/jm/justice-manual.

# Chapter 13:
# Post-Forfeiture Third Party Interests

## I.   Petitions for Remission and Mitigation

Once assets have been forfeited, the authority to distribute them to owners, lienholders, and victims rests solely with the Attorney General.[1] Congress granted complete discretion to the Attorney General to remit or mitigate forfeitures as an "act of grace," and no judicial review of remission decisions is available.[2] The federal regulations governing the remission of civil or criminal forfeiture are found at 28 C.F.R. Part 9. The authority to decide petitions for remission in judicial cases has been delegated by the Attorney General to the Chief of the Money Laundering and Asset Recovery Section (MLARS). 28 C.F.R. § 9.1(b)(2). In administrative forfeitures, the authority to decide petitions for remission or mitigation rests with the seizing agency.[3]

Questions regarding administrative forfeiture policies and procedures should be directed to the forfeiting agency. *See* Chapter 14 of this *Manual* for a discussion of the policies and procedures governing the remission and restoration of forfeited property to victims.

### A.  Owners

An innocent owner's right to file a petition for remission or mitigation is distinct from their right to file a claim in an administrative or judicial forfeiture proceeding. Consequently, the Department of Justice (Department) must rule on petitions for remission filed by petitioners that claim that they have an owner or lienholder interest in a forfeited asset, notwithstanding the fact that they may have already filed an unsuccessful judicial claim. If a claimant consents to a judicial forfeiture, U.S. Attorney's Offices (USAOs) are encouraged to include petition withdrawal language in their plea agreements and forfeiture stipulations so that MLARS may summarily extinguish any pending petitions that have been rendered moot.

Remission may be granted if the petitioner demonstrates that he or she has a valid, good faith, and legally cognizable interest in the seized property as an owner. The petitioner must further demonstrate that he or she is an "innocent owner" as defined by 18 U.S.C. § 983(d)(2)(A) or (3)(A). 28 C.F.R. § 9.5(a)(1). The ruling official shall presume a valid forfeiture and shall not consider whether the evidence is sufficient to support the forfeiture. 28 C.F.R. § 9.5(a)(4). The petitioner has the burden of establishing the basis for granting a petition for remission or mitigation of forfeited property. 28 C.F.R. § 9.5(a)(3).

Because owners typically petition for the forfeited property itself, property should not be sold before a remission decision is issued if there is a pending owner petition. However, if the property is sold before remission is granted, an owner will receive the proceeds of the sale, less any costs incurred by the government. The ruling official may waive these costs. 28 C.F.R. § 9.7(a)(3).

---

[1]  *See, e.g.*, 18 U.S.C. § 981(d) (civil forfeitures); 21 U.S.C. § 853(i)(1) (pertaining to controlled substances violations), incorporated by reference in 18 U.S.C. § 982 (criminal forfeiture); 21 U.S.C. § 881 (controlled substances violations); *see also* 28 C.F.R. Part 9.

[2]  *See United States v. One 1957 Buick Roadmaster*, 167 F. Supp. 597, 601 (E.D. Mich. 1958).

[3]  *See, e.g.*, 19 C.F.R. Parts 171 and 172.2; 26 C.F.R. Part 403, Subpart D; 28 C.F.R. § 9.1(b)(1).

## B. Lienholders

Lienholders may only qualify for remission if they can also demonstrate that they are innocent as defined by 18 U.S.C. § 983(d)(2)(A) or (3)(A). 28 C.F.R. § 9.5(a)(1). If remission is granted to an innocent lienholder, the lienholder may receive: (1) the property itself, or (2) a payment up to the lienholder's net equity, less the expenses and costs incident to the forfeiture and sale of the property. If the lienholder opts to claim the property itself, the lienholder must pay the United States the costs and expenses incident to the forfeiture and any value of the property exceeding the lienholder's net equity. The ruling official, at his or her discretion, may waive costs and expenses incident to the forfeiture. 28 C.F.R. § 9.7(b)(2)(ii).

A general creditor holding an unsecured debt may not be granted remission or mitigation unless it otherwise qualifies as an owner, lienholder, or victim. 28 C.F.R. § 9.6(a). A creditor holding a judgment against the owner of the forfeited property will only be recognized as a lienholder if: (1) the judgment was duly recorded before the seizure of the property for forfeiture; (2) under applicable state or local law, the judgment constitutes a valid lien on the property that attached to it before the seizure of the property for forfeiture; and (3) the petitioner had no knowledge of the commission of any act giving rise to the forfeiture at the time that the judgment became a lien on the forfeited property. 28 C.F.R. § 9.6(f)(1). A judgment creditor's lien must be registered in the district where the property is located if the judgment was obtained outside the district. 28 C.F.R. § 9.6(f)(3).

## C. Mitigation

Mitigation is an alternative remedy for owners and lienholders. 28 C.F.R. § 9.5. The ruling official may mitigate a forfeiture when an owner or lienholder has not met the minimum conditions for remission, but the ruling official finds that some relief should be granted to avoid extreme hardship, that mitigation will promote the interests of justice, and that mitigation will not diminish the deterrent effect of the law. 28 C.F.R. § 9.5(b)(1)(i). The ruling official may also grant mitigation to an owner or lienholder who has met the minimum conditions of remission, but the overall circumstances do not warrant complete remission. 28 C.F.R. § 9.5(b)(1)(ii).

Non-innocent owners may qualify for mitigation. The ruling official may grant mitigation to an owner or lienholder involved in the offense underlying the forfeiture when certain mitigating factors exist, including but not limited to the lack of a prior record or evidence of similar criminal conduct; if the violation does not include drug distribution, manufacturing, or importation, the fact that the violator has taken steps, such as drug treatment, to prevent further criminal conduct; the fact that the violation was minimal and not part of a larger criminal scheme; the fact that the violator cooperated with law enforcement investigations relating to the criminal conduct underlying the forfeiture; or the fact that complete forfeiture of an asset is not necessary to achieve the legitimate purposes of forfeiture. 28 C.F.R. § 9.5(b)(3).

## D. Procedure for notice and processing petitions[4]

In an administrative forfeiture case, it is the responsibility of the agency to notify potential owners and lienholders of the opportunity to file a petition for remission. 28 C.F.R. § 9.3(a). It is the responsibility of the USAO to notify potential owners and, lienholders of the opportunity to file

---

[4] A standard online petition for remission form is available at: www.forfeiture.gov/FilingPetition.htm.

petitions for remission in judicial forfeitures. Petitioners are not required to re-file a petition for remission if the USAO institutes judicial forfeiture proceedings.

Once a seizing agency or USAO receives a petition for remission, the seizing agency must conduct an investigation of the petition and issue a decision in administrative forfeitures, or a report and recommendation in judicial forfeitures. If the forfeiture is judicial, the USAO then must compose its own recommendation on the petition and send the petition, report, and recommendations to MLARS, along with any necessary supporting documentation. Although the USAO and seizing agency must provide their recommendations as to the allowance or denial of a petition for remission for judicially forfeited assets, the final determination rests with MLARS. MLARS will notify the petitioner of its decision. Petitions are decided on the basis of written documentation; there is no right to a hearing on the petition. 28 C.F.R. § 9.4(g). Unsuccessful petitioners are entitled to one request for reconsideration, which is reviewed and decided by a different ruling official.

### E.  Priority of payments

If the seizing agency and USAO receive multiple petitions, innocent owners have first priority, followed by lienholders, federal financial institution regulatory agencies not constituting owners or lienholders, and finally, victims. 28 C.F.R. § 9.9(a). All pending petitions for remission must be ruled on before any official use or equitable sharing of forfeited proceeds occurs.

### F.  Cultural property

When the government forfeits cultural property that has been removed from a foreign country, a customary goal is to return the property to its country of origin. A foreign government may submit a petition for remission for forfeited cultural property if it can demonstrate a valid, good faith, and legally cognizable ownership interest in the forfeited cultural property; this is usually accomplished by citing foreign laws that establish governmental ownership of cultural property. Agencies and USAOs should determine whether an appropriate cultural patrimony law exists before planning to return forfeited cultural property to a foreign government.[5] When obtaining a petition for remission, agencies and USAOs should coordinate any communications with a foreign governmental representative with either the Office of International Affairs (OIA) or the seizing agency attaché.[6]

In judicial cases involving forfeitures pursuant to 19 U.S.C. § 2609 (Convention on Cultural Property Implementation Act (CPIA)), the government must first offer to return forfeited property to countries who are parties to the Act. In such cases, MLARS will conduct a summary review of the case and issue a concurrence letter. USAOs should submit CPIA requests to MLARS just as they would submit typical remission petitions.

## II.   Qui Tam Actions: Payment of a Relator's Share

### A.  Overview of the False Claims Act

The False Claims Act (FCA), 31 U.S.C. §§ 3729–3733, imposes civil liability on any person who submits a false or fraudulent claim to the Government. An action may be filed by the Attorney

---

[5]  Information about applicable cultural patrimony laws can be found in the UNESCO Database of Cultural Heritage Laws is available at: www.unesco.org/culture/natlaws.

[6]  *See* *Criminal Resource Manual* (CRM) 286, available at: www.justice.gov/jm/criminal-resource-manual.

General, or by a private person on behalf of the United States. *Id*. 31 U.S.C. § 3730(a)–(b); *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769–78 (2000). An action filed by a private person is known as a *qui tam* suit, and the private party filing the action is referred to as the relator. The United States can intervene in and take over the litigation of a *qui tam* suit, or permit the relator to pursue the *qui tam* suit on his or her own. *Id*. 31 U.S.C. § 3730(b)(4). If the *qui tam* suit is successful, the United States recovers the judgment and pays part of it to the relator. The relator's share of any recovery depends, in part, on whether the United States intervenes in the action. *Id*. 31 U.S.C. § 3730(d)(1)–(2).[7]

The FCA permits the relator to object to a settlement of the relator's claim. 31 U.S.C. § 3730(c)(2)(B). However, the United States may settle notwithstanding a relator's objection if the court determines after a hearing that the settlement is "fair, adequate, and reasonable." *Id*.

In addition, the FCA provides that in *qui tam* suits the United States "may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." *Id*. 31 U.S.C. § 3730(c)(5). The FCA further provides that "the person initiating the action shall have the same rights in such proceeding as such person would have if the action had continued under this section." *Id*.

The purpose of this "alternate remedy" provision is to provide the United States with maximum flexibility to choose the best forum for pursuing its fraud claims against the defendant. *See* S. Rep. 99-345, 99th Cong., 2d Sess. 27, *reprinted in* 1986 U.S.C.C.A.N 5266, 5292. Thus, the alternate remedy provision authorizes the United States to stay the relator's FCA action, and choose instead to pursue its fraud claims against the defendant through an alternative proceeding. *Id*. Congress envisioned that the alternative proceeding would be in lieu of the relator's action under the FCA. *Id*. ("While the Government will have the opportunity to elect its remedy, it will not have an opportunity for dual recovery on the same claim or claims.") To ensure that the relator is not prejudiced in the event the United States pursues an alternate remedy, the relator is granted the same rights in the alternative proceeding that the relator would have had in the civil action under the FCA, including the right to participate in the proceedings, to object to any settlement of the proceeding, and to receive a share of any recovery as described in Section II.D below.

## B. Forfeiture proceedings as alternate remedies

The Department's view is that a forfeiture proceeding does not qualify under the FCA as an alternate remedy giving rise to a relator share.[8] The principal basis for this view is that the alternate remedy provision encompasses only those proceedings that are properly viewed as a substitute for the relator's civil claims under the FCA. Thus, the alternate remedy provision is limited to alternative proceedings to redress the submission of false or fraudulent claims, and does not extend to forfeiture or other criminal proceedings that do not serve as a substitute for such claims.

Three district courts have considered the question of whether a criminal proceeding qualifies as an alternate remedy under the FCA. In *United States v. Lustman*, 2006 WL 1207145 (S.D. Ill. May 4, 2006), the court rejected the relators' motion to intervene in, and obtain a share of the proceeds of, a

---

[7]  Under the FCA, a relator is entitled to between 15 and 25 percent of the proceeds of the action if the United States intervenes in the action, and to between 25 and 30 percent of the proceeds if the United States does not intervene. 31 U.S.C. § 3730(d)(1) and (2).

[8]  If a relator seeks to intervene or file a claim in any forfeiture proceeding, government counsel on the FCA action and/or the Director of the Commercial Litigation Branch (Fraud Section), Civil Division, should be consulted immediately.

criminal proceeding instituted against one of the defendants named in their *qui tam* action. As part of that criminal proceeding, the defendant was ordered to pay restitution. The court concluded that the alternate remedy provision did not encompass criminal proceedings. The court also concluded that the relators' motion was moot, because the restitution paid by the defendant had already been disbursed.

In *United States ex rel. Oehm v. National Air Cargo, Inc. et al.*, No. 05-CV-242S (W.D.N.Y. Feb. 15, 2008), the United States executed a global settlement with the defendant that resolved the FCA claims as well as separate criminal and civil forfeiture proceedings. The court rejected the relator's request for a share of the global settlement attributable to the criminal and civil forfeiture proceedings, reasoning that "the existence of an 'alternate remedy' can be found only if the government has not pursued the [FCA] claims instituted by the relator." *Id.* at 7–8.

Finally, in *United States v. Bisig*, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005), the United States sought to freeze the defendants' assets, and then subsequently filed an indictment against the defendants, which included a criminal forfeiture allegation. One of the defendants named in the indictment was also named in a *qui tam* suit, which the United States had declined to take over.

The relator in the *qui tam* suit argued that the criminal forfeiture proceeding constituted an alternate remedy to her FCA action, and the court agreed. The court noted that the relator was the first to uncover the fraud, the Government had stayed the relator's case pending a resolution of the criminal proceeding, and the Government's forfeiture action would leave the defendant without any assets. The court concluded on these facts that the United States "had made an actual monetary recovery by the relator in the *qui tam* action either impossible or futile" and thus "in effect, elected to pursue its claim through an alternate remedy under [31 U.S.C.] § 3730(c)(5)." The court held that the alternate proceeding in that case, however, was just the criminal forfeiture proceeding, and thus the relator's right to participate as a party was limited to that proceeding, and not the entire criminal prosecution. The court agreed that allowing a relator to participate in criminal proceedings generally "would be an undesirable result."

Although the Department disagrees with the court's ruling in *Bisig*, this case shows that the courts may be inclined to find an alternate remedy where a criminal proceeding will recover most or all of a *qui tam* defendants' assets, particularly if the Government also stayed the relator's *qui tam* suit in favor of the criminal case. Under such circumstances, the courts may conclude, as the *Bisig* court did, that the Government deprived the relator of any meaningful opportunity to pursue her *qui tam* suit, and therefore the criminal proceeding was effectively a substitute for that suit. Accordingly, in such circumstances (i.e., where the criminal proceeding will render the defendant without assets to satisfy an FCA judgment and particularly where the Government has stayed the *qui tam* case to pursue the criminal case) it may be appropriate to consider a negotiated resolution of the alternate remedy issue, provided that other bases to challenge the relator's entitlement to a share do not exist.[9]

---

[9]   A threshold requirement for a relator to assert a claim under the alternate remedy provision is that the relator has filed a valid *qui tam* action. *See* Department briefs filed in *U.S. ex rel. Hefner v. Hackensack Medical Center*, 495 F.3d 103 (3d Cir. 2007); *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634 (6th Cir. 2003). One reason why the relator's suit may not be valid is that the relator's allegations are based on a "public disclosure" and the relator does not qualify as an original source of those allegations. 31 U.S.C. § 3730(e)(4). There may also be other jurisdictional and non-jurisdictional reasons (for example, where a relator is not the first to file or has failed adequately to plead a FCA claim) why a relator has failed to file a valid action. Moreover, even where a relator's action is proper, the relator may be entitled only to a reduced share. For example, even where a relator qualifies as an original source, if the relator's action is based primarily on certain disclosures as enumerated in the FCA, then the court may award no more than 10 percent of the proceeds. 31 U.S.C. § 3730(d)(1). The relator's share may also be reduced if the relator "planned or initiated the violation," unless relator is "convicted of criminal conduct" arising from relator's role in the violation, in which case the relator is not entitled to any share. 31 U.S.C. § 3730(d)(3).

### C.  The source of the relator's right to recover

To the extent that a relator is awarded a share of any forfeiture proceeds under the FCA's alternate remedy provision, the relator's entitlement to the proceeds arises strictly out of the FCA and does not constitute a claim of ownership or interest in the specific property forfeited. Consequently, a *qui tam* relator does not qualify as a third party entitled to relief pursuant to 21 U.S.C. § 853(n) or 18 U.S.C. § 983(d). *See Bisig*, 2005 WL 3532554 at *6–7 (granting relator's motions to intervene and for adjudication of relator's interest in forfeited property despite the fact that relator does not qualify for relief under 21 U.S.C. § 853(n) because relator has a valid claim under the FCA). Likewise, the *qui tam* relator is not a victim or third party generally entitled to recovery pursuant to the regulations governing petitions for remission. *See* 28 C.F.R. § 9.4(b) (providing that only petitioners as defined in 28 C.F.R. § 9.2(o) or attorneys and guardians on their behalf may file a petition for remission); 28 C.F.R. § 9.2 (defining *petitioner* to include an owner, a lienholder, or a victim as defined in other subparts of 28 C.F.R. § 9.2).

### D.  The relator's share is a percentage of the net forfeiture recovery

If a court orders—or the Commercial Litigation Branch of the Civil Division (Fraud Section) decides—that the forfeiture is an alternate proceeding and the relator is entitled to a share of the recovery, then the relator must be awarded a percentage of the net forfeiture recovery.[10] Determining the exact percentage share to be received by the relator should be determined in the FCA action by agreement of the parties or by adjudication.[11] While it is preferable for this determination to be made prior to the final disposition of the forfeited assets, this may not always occur. In fact, where the FCA action will be litigated after the forfeiture proceeding, it is unlikely that the relator's share will be determined prior to the final disposition of the forfeited assets. In such instances, the relator might request that up to 25 percent of the total forfeiture recovery be escrowed in case such funds are later needed to satisfy the relator's share.[12] Because the proceeds of the forfeiture will be deposited into the Assets Forfeiture Fund (AFF), an escrow is not necessary and should be opposed.[13] Determining the dollar value of the relator's share is more complicated. In the context of a forfeiture, "the proceeds of the action" would be the amount of money available for deposit into the AFF—i.e., the net recovery, which can be defined as the value of the forfeited property less the value of any valid claims and the

---

[10]   Under the FCA, the percentage of the proceeds that the relator is entitled to recover varies depending on whether the United States intervenes in the relator's action, as well as other factors. 31 U.S.C. § 3730(d)(1) and (2). Assuming that the relator is not otherwise barred from claiming a share of the proceeds, determination of the relator's share will involve two related inquiries: first, the "percentage" of the proceeds of the action to be awarded to the relator, and second, the value of those "proceeds." Section 3730(c)(5) makes these inquiries applicable to a proceeding qualifying as an alternate remedy. The Civil Division has issued guidelines governing the determination of relator share percentages. The Fraud Section or government counsel in the FCA action, not forfeiture counsel, is responsible for determining or litigating the relator's share issue.

[11]   Where the issue of the relator's share is addressed may well depend on the forum in which the relator chooses to pursue it; however, the Government should advocate for the determination to be made in the FCA action whenever such litigation remains viable.

[12]   Relators have made similar requests regarding the escrow of funds paid toward restitution and criminal fines. Where the restitution is payable to governmental victims, the Government may consider such requests, particularly where the FCA action will not be completed. Requests for an escrow of funds due to individual victims or for criminal fines, however, always should be opposed.

[13]   Until the relator's share is determined, the Department will not know the amount of funds that will remain in the AFF. Therefore, final decision on any petition for remission or mitigation should be deferred until the relator's share is determined unless the total value of all petitions for remission or mitigation is less than 75 percent of the net forfeiture recovery.

costs associated with the seizure, forfeiture, and disposal of the property. Consequently, the dollar value of the relator's share cannot be determined until all claims and expenses are paid and the amount available for deposit into the AFF is fixed.[14]

The dollar value of the relator's share is calculated in the same fashion when the forfeiture action is resolved by settlement. Where possible, the United States should obtain the relator's agreement to the forfeiture settlement. Pursuant to 31 U.S.C. § 3730(c)(2)(B), however, the United States may settle the action with the defendant notwithstanding the objection of the relator "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances."

### E.  Procedure for paying relator's share

Since the relator's share is mandated by Congress, it is a necessary expense incident to the forfeiture of the property as provided for in 28 U.S.C. § 524(c)(1)(A). Section 524(c)(1), governing the AFF, provides that the AFF:

> shall be available to the Attorney General…for the following law enforcement purposes—(A) the payment, at the discretion of the Attorney General…of *any necessary expense incident to the* seizure, detention, *forfeiture*, or disposal of such property [forfeited pursuant to any law enforced or administered by the Department of Justice].

28 U.S.C. § 524(c)(1)(A) (2005) (emphasis added).The United States should obtain an order in the FCA action that reflects the percentage share of the net recovery to be paid to the relator. A copy of the order should be forwarded to the U.S. Marshals Service (USMS), directing the USMS to pay the relator's share.

---

[14] Upon request of the relator, the United States may provide the total expenses incurred in connection with a forfeiture action. In the Department's view, relators have no right to challenge forfeiture expenses or intervene in property management issues, and therefore, are not entitled to a detailed itemization of forfeiture expenses, even if the forfeiture action is determined to be an alternate remedy.

# Chapter 14:
# Forfeiture and Compensation for Victims of Crime

## I.   Overview

Forfeiture is a critical tool in the recovery of illicit gains arising from financial crimes such as fraud, embezzlement, and theft. Returning forfeited assets to victims through the remission and restoration processes is one of the four primary goals of the Department of Justice's (Department) Asset Forfeiture Program.[1] Remission and restoration authority exists for virtually all offenses for which a related administrative declaration of forfeiture or civil or criminal forfeiture order is obtained.[2] The federal regulations governing the remission of civil or criminal forfeiture are found at 28 C.F.R. Part 9.

The Department's Criminal Division initiated a procedure in 2002 called restoration. This procedure enables the Attorney General to transfer forfeited funds to a court for satisfaction of a criminal restitution order, provided that all victims named in the order otherwise qualify for remission under the applicable regulations. While remission/restoration and criminal restitution are not directly related, they may serve similar functions. Remission and restoration are discretionary procedures for victim recovery from forfeitures for persons who have incurred a pecuniary loss from the offense underlying the forfeiture, or a related offense. Restitution is an equitable remedy that is intended to make crime victims whole and prevent unjust enrichment to the perpetrator. In many cases, restoration—the use of forfeited funds to pay restitution—is desirable, since the defendant may be left without assets to satisfy his or her restitution obligation following forfeiture.

The Treasury Forfeiture Fund (TFF) has a similar procedure for remission and restoration.[3] Please consult the *Guidelines for Treasury Forfeiture Fund Agencies on Refunds Pursuant to Court Orders, Petitions for Remission, or Restoration Requests* (*Treasury Blue Book*).[4]

---

[1]  *See The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018), Sec. II, available at: www.justice.gov/criminal-mlars/equitable-sharing-program

[2]  *See, e.g.,* 18 U.S.C. § 981(e)(6) (civil forfeiture); 21 U.S.C. § 853(i)(1) (while § 853(i) governs forfeitures under the drug abuse prevention and control laws, it is incorporated by reference in 18 U.S.C. § 982(b)(1), which extends forfeiture authority to most other criminal offenses). Funds shared with the United States by a foreign government that have not been forfeited under United States law may not be eligible to be used for victim remission or restoration via the Money Laundering and Asset Recovery Section (MLARS). However, depending upon the circumstances of the case, it may be possible to employ other mechanisms for using such shared funds to make victims whole. If United States prosecutors or investigators assisted in a foreign case involving victims that resulted in a foreign forfeiture, they should also contact the MLARS' International Unit for guidance on potential alternative mechanisms and submission of a sharing request to that country. *See also* Chap. 8, Sec. XIII of this *Manual*.

[3]  TFF member agencies include the Internal Revenue Service-Criminal Investigation (IRS-CI), U.S. Immigration and Customs Enforcement-Homeland Security Investigations (ICE-HSI), U.S. Customs and Border Protection (CBP), U.S. Secret Service (USSS), and U.S. Coast Guard (USCG).

[4]  A copy of the *Treasury Blue Book* is available at: treasury.gov/resource-center/terrorist-illicit-finance/Asset-Forfeiture/pages/index.aspx.

## II.   Returning Forfeited Assets to Victims

### A.   Remission

Once assets have been judicially forfeited, the authority to distribute them to owners, lienholders, and victims rests solely with the Attorney General. *See* 28 C.F.R. Part 9. The authority to decide petitions for remission in judicial cases has been delegated by the Attorney General to the Chief of the Money Laundering and Asset Recovery Section (MLARS). 28 C.F.R. § 9.1(b)(2). In administrative forfeitures, the authority to decide petitions for remission or mitigation rests with the seizing agency.[5] Questions regarding administrative forfeiture policies and procedures should be directed to the forfeiting agency.

The determination of whether a victim may receive remission is governed by regulation. *See* 28 C.F.R. § 9.8. Petitions are decided on the basis of written documentation; there is no right to a hearing on the petition. 28 C.F.R. § 9.4(g). Unsuccessful petitioners are entitled to one request for reconsideration, which is reviewed and decided by a different ruling official within MLARS. 28 C.F.R. § 9.4(k)(3). Judicial review of a denial of remission is not available. *See United States v. One 1970 Buick Riviera Bearing Serial No. 494870H910774*, 463 F.2d 1168, 1170 (5th Cir. 1972), *cert. denied*, 409 U.S. 980 (1972) (Attorney General has unreviewable discretion over remission or mitigation of forfeitures). Although the U.S. Attorney's Office (USAO) and seizing agency must provide their recommendations as to the allowance or denial of a judicial petition for remission, the final determination rests with MLARS. USAOs or seizing agencies must take care not to make representations to the court or potential victims as to whether remission will be granted.

When petitions have been filed for both administratively and judicially forfeited assets in the same case, the seizing agency must coordinate with MLARS and the forfeiture Assistant U.S. Attorney (AUSA) assigned to the case to ensure consistency in ruling.

Many forfeiture cases begin administratively and become judicial when a party files a claim challenging the agency forfeiture. In such cases, if the party files a claim along with a petition, the petition must be adjudicated by MLARS. However, the petitioner need not submit a second petition. The seizing agency should forward the petition to the USAO to further submit to MLARS.

### A.1   Standards for victims, 28 C.F.R. Part 9

The factual basis and legal theory underlying the forfeiture will determine who qualifies as a victim under 28 C.F.R. Part 9. "The term victim means a person who has incurred a pecuniary loss as *a direct result of the commission of the offense underlying a forfeiture*." 28 C.F.R. § 9.2 (emphasis added).[6] Federal agencies can qualify as victims under the regulations.

Victims may also recover losses caused by a related offense. 28 C.F.R. § 9.8(a)(1). *Related offense* means: "(1) Any predicate offense charged in a Federal Racketeer Influenced and Corrupt Organizations Act (RICO) count for which forfeiture was ordered; or (2) An offense committed as part of the same scheme or design, or pursuant to the same conspiracy, as was involved in the offense for which forfeiture was ordered." 28 C.F.R. § 9.2.

---

[5]  *See, e.g.*, 19 C.F.R. Parts 171 and 172.2; 26 C.F.R. Part 403, Subpart D; 28 C.F.R. § 9.1(b)(1).

[6]  A *person* is "an individual, partnership, corporation, joint business enterprise, estate, or other legal entity capable of owning property." 28 C.F.R. § 9.2.

### A.2   Qualification to file

A victim may be granted remission of the forfeiture of property if the victim satisfactorily demonstrates that:

> (1) a pecuniary loss of a specific amount has been directly caused by the criminal offense, or related offense, that was the underlying basis for the forfeiture, and the loss is supported by documentary evidence including invoices and receipts; (2) the pecuniary loss is the direct result of the illegal acts and is not the result of otherwise lawful acts that were committed in the course of the criminal offense; (3) the victim did not knowingly contribute to, participate in, benefit from, or act in a willfully blind manner towards the commission of the offense, or related offense, that was the underlying basis for the forfeiture; (4) the victim has not in fact been compensated for the wrongful loss of the property by the perpetrator or others; and (5) the victim does not have recourse reasonably available to other assets from which to obtain compensation for the wrongful loss of the property.

28 C.F.R. § 9.8(b).

"The amount of the pecuniary loss suffered by a victim for which remission may be granted is limited to the fair market value of the property of which the victim was deprived as of the date of the occurrence of the loss." 28 C.F.R. § 9.8(c). This provision presents three issues to be determined in connection with calculating a victim's loss: (1) what property did the victim lose as a direct result of the illegal activity; (2) when was the victim deprived of it; and (3) what was the fair market value of that property at that time. The term "fair market value" is not defined in 28 C.F.R. Part 9. When the loss is property other than money, the date of the victim's loss, and the fair market value of the property on that date, must be decided in order to determine the victim's recoverable loss.

A victim's pecuniary loss must be supported by documentary evidence. 28 C.F.R. § 9.8(b)(2). Losses that are secondary to the principal loss, such as "interest foregone or for collateral expenses incurred to recover lost property or to seek other recompense," are not eligible for remission. 28 C.F.R. § 9.8(c).[7]

Losses are also ineligible for remission if they result from property damage or physical injuries, or from a tort associated with illegal activity that formed the basis for the forfeiture, unless the tort constitutes the illegal activity itself. 28 C.F.R. § 9.8(d). Victims who "knowingly contribute to, participate in, benefit from, or act in a willfully blind manner towards the commission of the offense or related offense that was the underlying basis for the forfeiture" are also ineligible for remission. 28 C.F.R. § 9.8(b)(3).

A victim need not show that his or her funds are among the funds that have been forfeited in order to establish eligibility for remission. Similarly, the tracing of a particular victim's funds into a forfeited account does not give that victim priority over other victims whose funds cannot be traced.

---

[7]  For example, attorneys' fees or other investigative expenses are not compensable losses.

### A.3   Priority in multiple-victim remission cases

Priority in the distribution of forfeited assets is given to valid owners, lienholders, federal financial regulatory agencies,[8] and victims (in that order), who in turn have priority over official use requests and equitable sharing requests. Victim recovery is limited to the net proceeds of all assets in the case or related cases. In cases involving more than one victim, the ruling official will generally grant remission on a pro rata basis where the amount to be distributed is less than the value of the victims' losses. Additional exceptions are permitted only in rare situations, such as when pro rata distribution would result in extreme hardship to a victim or when a victim has better evidence of loss than other victims.[9] However, the tracing of a particular victim's funds into a forfeited account does not give that victim priority over the victims whose funds cannot be traced.

### A.4   Trustees

MLARS may opt to hire a trustee/claims administrator in large, multiple-victim cases to assist in notifying potential victims of the opportunity to seek remission, in processing the petitions, and in making decision recommendations. 28 C.F.R. § 9.9(c). MLARS will coordinate with the USAO and lead seizing agency as necessary during the selection process. In addition, if a trustee has been appointed in parallel regulatory or bankruptcy actions, MLARS may approve transfer of funds for distribution to the trustee for ultimate payment to the identified victim pool.

USAOs and agencies interested in utilizing the services of a trustee or claims administrator to support the remission and restoration processes are encouraged to consult early with MLARS. MLARS awarded a contract to three vendors to provide claims administration support services in cases that will result in forfeited funds being returned to victims through the remission or restoration processes. This national contract simplifies procurement actions, and also streamlines petition review and payment distribution in victim cases where highly experienced and expert firms are required to handle the volume of petitioners. Costs of an administration contract will be deducted from the forfeited funds prior to any distribution.

### A.5   Additional grounds for denial of remission to victims

Remission to victims may be denied: (1) if determination of the pecuniary loss to be paid to individual victims is too difficult; (2) if the amount to be paid to victims is small compared to the expense incurred by the Government in deciding the victims' claims; or (3) if the total number of victims is large and the amount available for payment to victims is so small as to make granting payments to victims impractical. 28 C.F.R. § 9.8(e).

---

[8]  A federal financial regulatory agency is generally entitled to priority of distribution over non-owner victims for losses and expenses incurred in its capacity as receiver of a failed institution. This priority, codified in the federal regulations at 28 C.F.R. § 9.8(h), is applicable only for reimbursement of the Federal Deposit Insurance Corporation's (FDIC) payments to claimants and creditors of the institution and/or reimbursement of insurance fund losses under 18 U.S.C § 981(e)(3), and for fraud losses associated with the sale of assets held in receivership pursuant to § 981(e)(7).

[9]  28 C.F.R. § 9.8(f).

### A.6  Timeliness

Victims should file petitions for forfeited assets within the time period detailed in the notice.[10] However, when a victim fails to submit a timely petition, exceptions may be allowed for good cause based on the particular circumstances of the case.

## B.  Restoration

Restoration is designed to simplify and accelerate the return of forfeited property to victims. These procedures apply where: (1) both restitution to compensate victims and a related forfeiture (either civil, criminal, or administrative) have been ordered; (2) the victims and amounts listed in the restitution order essentially conform to the victims and amounts that would have been paid through the remission process; and (3) other property is not available to fully satisfy the order of restitution.

The restoration procedures permit victims to obtain compensation from the forfeited assets, in accordance with the court's restitution order, without having to file petitions for remission with the Government and await decisions on the same. Restoration is a standardized alternative procedure to petitions for remission, designed to accommodate victims and the courts to the furthest extent possible, while still meeting the statutory and regulatory requirements for remission.

### B.1  Background

Because forfeited assets are property of the Government, courts and defendants lack authority to use them to satisfy a defendant's criminal debts, including fines or restitution obligations. *See United States v. Trotter*, 912 F.2d 964 (8th Cir. 1990). In many cases, defendants are left with little or no property after the forfeiture is completed. Thus, prior to the issuance of the restoration procedures, the Department often seized property, and then made it available to satisfy court-ordered restitution rather than complete the forfeiture. This process, while cumbersome, worked where the seized assets were cash or bank accounts, and where there were no competing claims for the property.

However, where assets needed to be maintained and sold, or where third parties claimed an interest in the property, completion of the forfeiture was necessary, and victims were generally required to take the additional step of filing petitions for remission in order to recover any part of the forfeited assets. Under the restoration procedures, the Department may now forfeit property and transfer the proceeds to the court in satisfaction of the defendant's order of restitution. The Attorney General's restoration authority has been delegated to the Chief of MLARS, pursuant to Attorney General Order No. 2088-97 (June 14, 1997).

### B.2  How the restoration process works

The restoration procedures require both a court order of restitution *and* an order (or declaration) of forfeiture. Because restoration decisions must be approved by the Chief of MLARS (as delegated by the Attorney General), the USAO or court may not unilaterally direct forfeited assets to be applied to restitution, or decrease restitution orders by the value of forfeited assets. However, the restoration procedures allow, when requested by the USAO, preliminary review of the expected restitution and forfeiture order by MLARS so that prosecutors may advise the court of the Government's intended distribution of the property.

---

[10]  If direct notice is provided, it can be sent by the USAO, seizing agency, or claims administrator as appropriate.

To use the restoration procedures, the USAO must send the Chief of MLARS a copy of the Judgment in a Criminal Case containing the order of restitution and a copy of the forfeiture order, along with a written request signed by the U.S. Attorney, or a designee, that includes the representations set forth at Section II.B.3 below. Once the Chief of MLARS has approved the request for restoration, MLARS notifies both the USAO and the custodian of the property. The custodian then transfers the net proceeds of the forfeiture to the clerk of court for distribution pursuant to the order of restitution. MLARS will not accept or approve restoration requests for assets that have been disposed of for over five years unless there are unique circumstances surrounding the delay.[11]

Restoration is appropriate only when the distribution pursuant to the restitution order is essentially the same as the distribution that would be obtained through the remission process. Prosecutors wishing to use the restoration procedures must work with the seizing agency, probation officer and the court to make sure that the court's restitution order lists the names of all victims and the amount of restitution due to each. Prosecutors also should be cognizant that restitution is generally available for a much broader category of harms than may be satisfied through remission, which is allowed only for pecuniary losses caused by the offense underlying the forfeiture or a related offense. Moreover, 28 C.F.R. § 9.8(c) provides that the victim's loss is limited to the fair market value of the property of which the victim was deprived, as of the date of the loss. No allowance is made for interest forgone, lost profits, or collateral expenses incurred to recover lost property or to seek other recompense.

Thus, restoration may not be used where a significant portion of the losses covered by the restitution order relate to bodily harm, property damage, future expenses and collateral expenses such as legal, accounting, or security expenditures incurred in trying to correct the harm caused by the crime. If the restitution order is not amenable to the restoration process, the USAO will be advised and assets may be distributed through the remission process.

### B.3   Representations

The restoration procedures are designed to accomplish results that are consistent with the standards that apply to the remission of forfeited assets at 28 C.F.R. § 9.8. In order to ensure that such standards are met, the U.S. Attorney, or a designee, must inform MLARS of the following, in writing and accompanied by a signature, as part of the request for restoration:

All known victims have been properly notified of the restitution proceedings and are properly accounted for in the restitution order. This representation is intended to ensure that no victims have been left out of the restitution order and that all are treated fairly in the order.

To the best of the U.S. Attorney's, or designee's, knowledge and belief after consultation with the seizing agency, the losses described in the restitution order have been verified, comport with the remission requirements, and reflect all sources of compensation received by the victims, including returns on investments, interest payments, insurance proceeds, refunds, settlement payments, lawsuit awards, and any other sources of compensation for their losses. This is to avoid double recovery by victims who may already have been compensated for part of their losses.

To the best of the U.S. Attorney's, or designee's, knowledge and belief after consultation with the seizing agency, reasonable efforts to locate additional assets establish that the victims do not have

---

[11]   The Department of the Treasury (Treasury) has issued a similar policy to not accept or approve restoration requests for assets that have been disposed of for over five years unless there are unique circumstances surrounding the delay.

recourse reasonably available to obtain compensation for their losses from other assets, including those owned or controlled by the defendants. This is to ensure that restoration does not confer an undue benefit on the defendant.

There is no evidence to suggest that any of the victims knowingly contributed to, participated in, benefitted from, or acted in a willfully blind manner, toward the commission of the offenses underlying the forfeiture or a related offense. This is to prevent the return of forfeited property to those who essentially took part in the conduct that led to the forfeiture.

The USAO must ensure that the time for filing an appeal challenging either the restitution order or the forfeiture has passed, or all relevant appeals have been adjudicated, prior to submitting the restoration request to MLARS.

Because restitution and forfeiture are mandatory and independent parts of a criminal sentence, the forfeited assets may not be used to satisfy the restitution order if other assets are available for that purpose. Typical examples of this situation might involve corporations that have extensive holdings that are not subject to forfeiture, or individuals who have property that exceeds the amount subject to forfeiture. The statutes governing restitution permit the Government to enforce the restitution order as a final judgment against almost all of the defendant's property, not just facilitating property or fraud proceeds that may be subject to forfeiture.

### B.4   Payment

If the assets are to be restored to the victims listed in the restitution order, MLARS will notify the USAO and property custodian. The custodian will then transfer the net forfeited proceeds of all assets in the case or related cases to the clerk of court for distribution pursuant to the restitution order. Payments will be made *only* in accordance with the court's restitution order. If the forfeited assets are not sufficient to fully satisfy the order, payment will be made by the court as directed in the order. Federal government entities are only compensated after all non-federal agencies are compensated in full. *See* 18 U.S.C. § 3664(i); *see also* Section II.C below. Insurance companies must also be prioritized after direct victims in order for MLARS to approve restoration. *See* 18 U.S.C. § 3664(j).

### B.5   Benefits

The restoration procedures are intended to streamline the victim compensation process in cases where both forfeiture and restitution have been ordered. Victims will not need to file petitions for remission, and the process of returning funds to victims will typically be faster. The forfeiture will be completed so that costs can be recovered and third-party rights extinguished. Proceeds from civil, criminal, and administrative forfeitures[12] can be handled together and applied to restitution. Assets will be distributed primarily as they would have been under the remission regulations.

---

[12]  In administrative forfeitures involving TFF member agencies, the USAO must obtain the written concurrence of the local and/or headquarters TFF seizing agency before MLARS may approve restoration of forfeited funds for purposes of criminal restitution. *See Treasury Blue Book*, Sec. VI.B.1.b, available at: treasury.gov/resource-center/terrorist-illicit-finance/Asset-Forfeiture/pages/index.aspx. Treasury Executive Office for Asset Forfeiture (TEOAF) policy does not permit the release of administratively forfeited funds to crime victims without the prior approval of the TFF seizing agency. *See id.* at Sec. VI.B.1.b.ii.

### C.  Special considerations for federal government victims

A federal government agency may qualify as a victim entitled to receive compensation through the restoration and remission procedures. A federal government agency victim, like other types of victims, must demonstrate that it suffered a pecuniary loss of a specific amount as a direct result of the commission of the offense, or related offense, underlying the forfeiture. 28 C.F.R. §§ 9.2 and 9.8(b). Federal agencies are not required to submit detailed documentation of loss when an acceptable estimation of loss is provided.

Federal government agencies often suffer pecuniary losses as a result of crimes involving tax-payer funded programs, such as Medicare-Medicaid healthcare, Supplemental Nutrition Assistance Program (SNAP) benefits, and U.S. Department of Housing and Urban Development (HUD) insured loans. In some cases, the federal investigating agency is also a victim of the offense that it is investigating. For instance, the Internal Revenue Service-Criminal Investigations (IRS-CI) may investigate and seize assets in a tax return scheme in which the IRS unknowingly paid tax refunds based on fraudulent tax returns.

Dual investigating/victim agencies who petition for remission must ensure that the division of the agency providing the petition report and recommendation is separate from the petitioning division. For example, the IRS-CI could provide the remission petition report and recommendation, while a different IRS division submits the petition.

The act of forfeiting the seized assets and depositing the proceeds into the Assets Forfeiture Fund (AFF) or TFF does *not* mean that the agency has received victim compensation. Rather, the victim agency should either: (1) be included in the restitution order, with a specified pecuniary loss amount, for restoration request purposes;[13] or (2) file a petition for remission requesting compensation for its losses from the proceeds of the forfeited assets.

### D.  Special considerations for victims of human trafficking crimes

On May 29, 2015, the Justice for Victims of Trafficking Act[14] was enacted. As a result, 18 U.S.C. § 1594 directs the Attorney General to pay victim restitution orders in cases where a forfeiture occurs pursuant to § 1594. *See* 18 U.S.C. § 1594(f)(1). Accordingly, MLARS will process requests from the USAOs in accordance with this new statutory language regardless of whether the victims' losses are considered "pecuniary" as defined by the relevant remission regulations. If no restitution order exists in cases where a forfeiture occurs pursuant to § 1594, MLARS will consider petitions for remission that include a claim of lost wages (based on minimum wage) as the victim's pecuniary loss.

However, § 1594 does not allow for innocent owner or lienholder priority in petition for remission cases. *See* 18 U.S.C. § 1594(f)(2). Therefore, the USAO must resolve all outstanding innocent owner and lienholder claims through the judicial forfeiture process.

---

[13]  If restoration is used, pursuant to 18 U.S.C. § 3664(i), federal agencies will not receive compensation until all non-federal victims are compensated in full.

[14]  Pub. L. 114-22, May 29, 2015, 129 Stat 227.

### E.  Preservation of assets for victims

In order to ensure that forfeited assets are made available for victims, the USAO and seizing agency must enter remission petitions in the Consolidated Asset Tracking System (CATS) immediately upon receipt. In addition, the USAO must place a restitution "hold" on the distribution of seized assets in CATS when a restoration request is anticipated. If assets are transferred for official use or equitable sharing prior to victim compensation, the transfer may be reversed at the discretion of the Chief of MLARS or the Director of Treasury Executive Office for Asset Forfeiture (TEOAF) (for seizures by TFF member agencies) to make the property available for remission or restoration.

Because CATS is not the TFF system of record, the USAO must request that the TFF preserve the asset in cases where restitution may be ordered or where remission or restoration may occur. To ensure the preservation of the forfeited property in judicial cases involving TFF agencies, the USAO must also timely notify and send a copy of the restoration request to the TFF seizing agency. *See Treasury Blue Book*, Section VI.B.1.[15]

### F.  Hybrid remission and restoration review

In appropriate cases, MLARS will process a restoration request together with petitions for remission, where a hybrid decision would be an efficient and just mechanism for compensating the victims. For example, the USAO may discover after the entry of a restitution order that, despite its due diligence, there are additional victims who were inadvertently omitted from the restitution order. In such a situation, it may be burdensome to require the victims in the existing restitution order to seek remission. MLARS may determine that a hybrid restoration/remission decision is appropriate in light of, *inter alia*, the number of victims listed in the existing restitution order; the number of victims omitted from the restitution order; the reasons why victims were omitted from the restitution order; and the amount of net proceeds available for distribution from the forfeited assets.

### G.  Termination of forfeiture and direct payment of assets to victims

If forfeiture tools and resources are used to seize an asset, the forfeiture process should be followed to completion. The termination of forfeiture is appropriate only in extremely limited circumstances and only if no final order of forfeiture has been entered. In these limited situations, it may be appropriate for the USAO to move to dismiss the forfeiture proceeding and request the court to direct the property be turned over directly as restitution pursuant to 18 U.S.C. § 3663A(b)(1)(A), or be transferred to the clerk of court to be paid to the victim. This approach may be more appropriate than remission or restoration when the victim is entitled to restitution for non-pecuniary harm or other collateral costs that are not compensable under the remission regulations. In addition, termination of forfeiture may be appropriate in multiple-victim fraud cases arising in jurisdictions with unfavorable case law concerning constructive trusts. *See* Section III. below. If payment is to be made to the victim through the clerk of court, the property subject to forfeiture must be liquid, as the clerk cannot liquidate real or personal property. For example, the default method of sale to execute a restitution judgment is a sale by the U.S. Marshals Service (USMS) at the courthouse.[16]

---

[15]   A copy of the *Treasury Blue Book* is available at: treasury.gov/resource-center/terrorist-illicit-finance/Asset-Forfeiture/pages/index.aspx.

[16]   *See* 28 U.S.C. § 3203(g)(1)(A)(i).

### H.  Comparison of judicial remission and restoration

| Petition for Remission | Restoration |
| --- | --- |
| There is no need for a criminal conviction or restitution order. Only a forfeiture of assets related to the victim's loss is required. | A criminal conviction, an Order of Restitution, and a criminal, civil, or administrative forfeiture which is related to the victim's loss are all required. |
| The USAO, in cooperation with the investigative agency or a claims administrator may send notice to all known victims of the offense underlying the forfeiture. | The USAO works with the investigative agency and probation office to identify victims and determine their losses to ensure inclusion in the restitution order. |
| The victim must file a petition in order to receive compensation. | The victim is not required to file a petition but may be required to submit information to the investigative agency or probation office prior to sentencing. |
| The USAO requests the investigative agency to prepare a report and recommendation. The USAO makes a recommendation and forwards the petition package to MLARS. | The USAO submits a restoration request, including the four required representations, to MLARS. *See* Section II.B.3. |
| MLARS decides petitions for remission of judicially forfeited assets. Seizing agencies decide petitions for remission of administratively forfeited assets. | The Attorney General, through MLARS, reviews the restoration request and may restore forfeited property to victims identified in the restitution order. |
| The custodian of forfeited asset distributes the net proceeds directly to victims. | The custodian of the forfeited asset transfers the net proceeds directly to the Clerk of Court. |

## III.  Constructive Trusts in Multiple-Victim Fraud Cases

While the courts generally agree that fraud victims do not retain legal title in money paid voluntarily into a fraud scheme, the courts are increasingly recognizing constructive trusts in favor of victims. Under this equitable remedy, the perpetrator of the fraud holds title to the victim's funds in trust for the benefit of the victim. This legal theory is troublesome in forfeiture cases involving multiple victims, because it can transform the forfeiture case into a cumbersome liquidation proceeding in which all victims compete against each other and against the Government for the seized funds. The Government should generally oppose a claim of constructive trust in such cases, so that the Attorney General can return the funds to the victims through the orderly remission process.

In *United States v. $4,224,958.57* (*Boylan*), 392 F.3d 1002 (9th Cir. 2004), the Ninth Circuit held that victims of a large fraudulent investment scheme had established a sufficient legal interest in the seized proceeds through a constructive trust to confer upon them standing to contest the forfeiture. Under this holding, Government attorneys litigating forfeiture cases may be required to identify all potential victims of the fraud, notify them of the forfeiture action, and afford them an opportunity to file claims in the judicial proceeding. A related difficulty is that a constructive trust generally requires a victim to trace his or her money to the seized funds, which may warrant extensive discovery and evidentiary hearings. Some judicial circuits have followed the holding of *Boylan* in forfeiture cases. Government attorneys should therefore consult their circuit's case law in responding to constructive trust claims in their district. In litigating forfeiture cases in circuits that recognize constructive trusts, Government attorneys may elect to oppose victims' individual claims of constructive trust on the merits, and further argue that recognition of the trust would result in unfair priority to the claimant, contrary to the equitable principles underlying the trust. The courts should also be advised that forfeiture will enable all victims to have the opportunity to recover the funds on the pro rata basis through the Attorney General's remission authority. *See* 28 C.F.R. § 9.8(a)(1) and (f).

# Chapter 15:
# Federal Official Use and Equitable Sharing

## I.   Federal Official Use

### A.   Overview

Federal retention, or "official use," is a law enforcement agency's use of forfeited assets in the direct performance of law enforcement activities. The transfer of "unique" assets, such as property of cultural or historical significance, to non-component federal agencies is also considered to be official use.

According to Section V.F of *The Attorney General's Guidelines on the Asset Forfeiture Program* (July 2018) (*AG Guidelines*),[1] "the Attorney General has the authority to retain or transfer property for official use to any federal agency. No seized property shall be placed into official use until a final determination of forfeiture has been made and the request to place the property into official use has been approved by the appropriate official."

Agencies must request specific assets for official use.[2] Federal agencies may not put into official use any cash or proceeds from the sale of forfeited property. The requests need not specify the exact intended use of the assets, but all official use is supposed to be for law enforcement purposes. This allows agencies to use forfeited property for operations, training, and any other function, including administrative and other mission support activities.

### B.   Official use designations by the federal seizing agency

The head of the federal seizing agency, or designated headquarters official, decides whether to put assets seized by the agency into its own official use. Once an asset designated by the federal seizing agency for official use has been administratively or judicially forfeited and all third party interests, including victim compensation, have been resolved, the seizing agency has 30 calendar days to inform the U.S. Marshals Service (USMS) of its final decision to place or decline to place the asset into official use. A one-time extension of 15 calendar days may be granted at the discretion of the USMS. Requests for extensions must be made in writing to the USMS. Absent a response from the seizing agency within the initial 30 calendar days (or a time extension that has expired), or following a negative response within the specified time period, the USMS is authorized and directed to take the necessary steps to dispose of the asset in the usual manner, according to law and regulations.

In any instance where the property requested for federal official use is valued at over $50,000, the seizing agency and/or the USMS must provide the Money Laundering and Asset Recovery Section (MLARS) with advance notice and an opportunity to review the request.

---

[1]  A copy of the *AG Guidelines* is available at: www.justice.gov/criminal-mlars/publications.

[2]  *See* Chap. 4, Sec. V.A of this *Manual* regarding the authorities and guidelines for placing real property into official use.

### C. Official use requests by other federal agencies

If the lead federal seizing agency decides not to put the asset into its own official use, then any other Department of Justice (Department) investigative agency that participated in the case, Department components, or non-seizing federal agencies, in that order, may request to put the asset into its own official use. Such agencies may seek the transfer of property for its use only if the property is not required for victim compensation or equitably shared with a foreign, tribal, state or local agency. [3]

Where one Department agency requests an asset for official use that was seized by another Department agency, the requesting agency must follow the official use request process of the seizing agency and the USMS (e.g., the U.S. Department of Agriculture (USDA) wants to place a vehicle into official use that was seized by the Federal Bureau of Investigation (FBI)). If more than one Department component seeks to retain the same forfeited property for official use, MLARS will determine which agency may place the property into official use.

The Federal Contribution Form (FCF) is not the appropriate form to request official use by a Department agency for an asset that was seized by another Department agency. All requests, other than those for retention by the lead federal seizing agency, must be submitted to the USMS.

If a Treasury Forfeiture Fund (TFF) participant wants to place an asset seized by a Department agency into official use, it must file an FCF with the lead seizing agency (e.g., the Internal Revenue Service (IRS) wants to place a vehicle into official use that was seized by the Drug Enforcement Agency (DEA)). The seizing agency must enter the FCF in the Consolidated Asset Tracking System (CATS) sharing request and enter a decision in the Decision Form for Transfer of Federally Forfeited Property (Form DAG-72) screen. The disposal instructions/disposal should reflect "transfer for equitable sharing." Similarly, if a Department agency wants to place an asset seized by a non-Department agency into official use, the Department agency must submit a completed FCF to the seizing agency.

Agencies that are not members of either the Department or the Department of the Treasury (Treasury) forfeiture programs must request items for official use through the agencies and the USMS. No FCF form is required, and the decision to transfer is made via the official use approval process, not the equitable sharing approval process.

### D. Internal guidelines

Each agency is required to maintain internal guidelines governing official use requests. The internal guidelines shall:

- prohibit the placement into official use of any seized property prior to: (1) the entry of a final determination of forfeiture, (2) resolution of all third party interests, including victim compensation, and (3) the appropriate approval of the request to place the property into official use;

- require all seized property be recorded and tracked in an official inventory of seized property without regard to its intended disposition;

---

[3]   Requests for official use from tribal, state, and local law enforcement agencies are included as part of equitable sharing decisions as outlined in Sec. III.D below. Because these requests are part of equitable sharing, state and local agencies may request forfeited assets only when they directly participated in the case leading to forfeiture. *See also* the *Guide to Equitable Sharing for State, Local, and Tribal Law Enforcement Agencies* (July 2018), Sec. V.C. A copy of the *Guide* is available at: www.justice.gov/criminal-mlars/publications.

- require a written justification be prepared in each instance, detailing the reasons why the forfeited property was placed into official use, and that these justifications be retained for three years;

- require a specific supervisory-level official be responsible and accountable for the decision to place each item of forfeited property into official use and for ensuring appropriate official use of such property following its transfer;

- require the property placed into official use be identified and tracked in an accountable property system; and

- state that the property may not be transferred or retained if it is primarily for purposes of trade or sale, or home-to-work transportation, or other uses not expressly authorized for property acquired through the expenditure of appropriated funds. There must be an intention to place the property into official use for two years.

### E.  Payment of liens on personal property placed into federal official use

Liens on personal property placed into official use by Department seizing agencies and the USMS may be paid from the Assets Forfeiture Fund (AFF) provided that:

- there remains sufficient funding from the agency's AFF allocation for payment of such liens, and

- there is an intent to place the property into official use for at least two years except when the property is a vehicle requested for use in an undercover capacity. In such event, the head of the seizing agency may decide to exchange the undercover vehicle for a similar vehicle(s) for use in an undercover capacity. No cash or remuneration of any kind may be received as part of any such exchange. All such exchanges shall be reported to the Chief of MLARS within 90 days after the end of each fiscal year.

- the total amount to be paid from the AFF amounts to less than one-third the appraised value of the property; and,

- the total amount to be paid from the AFF is less than $25,000.

Requests for exceptions must be submitted in writing to the Chief of MLARS.

## II.   Equitable Sharing

Federal law authorizes the Attorney General to share federally forfeited property with participating tribal, state, and local law enforcement agencies.[4] Through equitable sharing, any tribal, state, or local law enforcement agency that directly participates in a law enforcement effort that results in a federal forfeiture may either request to put tangible forfeited property into official use or an equitable share of the net proceeds of the forfeiture. The exercise of this authority is discretionary. The Attorney General is not required to share property in any case. Where the Attorney General chooses to share forfeited property, federal law, as set forth in the Controlled Substances Act at 21 U.S.C. § 881(e)(3), for example, provides that:

---

[4]  See 21 U.S.C. §§ 881(e)(1)(A) and (e)(3); 18 U.S.C. § 981(e)(2); and 19 U.S.C. § 1616a. For further details and related publications on equitable sharing, please refer to: http://www.justice.gov/criminal-mlars/equitable-sharing-program.

The Attorney General shall assure that any property transferred to a state or local
law enforcement agency:

    (A)  has a value that bears a reasonable relationship to the degree of direct participation of the
state or local agency in the law enforcement effort resulting in the forfeiture, taking into
account the total value of all property forfeited, and the total law enforcement effort with
respect to the violation of law on which the forfeiture is based; and

    (B)  will serve to encourage further cooperation between the recipient state or local agency and
federal law enforcement agencies.

Equitable sharing and official use requests will be granted only if forfeited property[5] or net proceeds[6]
from the sale of forfeited property remain after all approved claims, petitions for remission, and
restoration requests have been processed and paid. In addition, international sharing must be reviewed
and approved prior to payment of domestic sharing.[7]

## III.  Processing Applications for Equitable Sharing

### A.  Eligible participants

In order for a tribal, state, or local law enforcement agency to request equitable sharing, the agency
must be an eligible participant in the Equitable Sharing Program (Program). MLARS determines the
eligibility of a tribal, state, or local law enforcement agency to participate in the Program.

If an agency does not appear in CATS, MLARS must be contacted in order to verify the agency's
current status and/or any of its prior requests for participation in the Program. MLARS will determine
the eligibility of any law enforcement agency not currently admitted to the Program. MLARS will
assess the request according to criteria outlined in the *Guide to Equitable Sharing for State, Local,
and Tribal Law Enforcement Agencies* (July 2018) (*Guide*)[8] and any subsequent updates to the *Guide*.
No agency will be accepted into the Program until MLARS' determination is complete.

### B.  Equitable sharing allocations

Equitable shares allocated to a law enforcement agency must bear a reasonable relationship to
the agency's direct participation in the law enforcement effort resulting in the forfeiture. As a
general rule, the recommended equitable sharing allocation should be based on a comparison of
the workhours and qualitative contributions of each and every federal, tribal, state, and local law
enforcement agency that participated in the law enforcement effort resulting in the forfeiture.[9]
The workhours of every agency participating in the law enforcement effort, including the lead
federal agency, must be reported on the Application for Transfer of Federally Forfeited Property

---

[5]  Unlike other types of forfeited property, federally forfeited firearms and ammunition may not be sold. While forfeited
firearms and ammunition may be put into federal official use, they may not be shared with tribal, state, and local agencies.
*See* Chap. 5, Sec. IV.D of this *Manual*.

[6]  In any case with underwater asset(s) (i.e., where the asset expenses are greater than income), the deciding official must
offset the negative value of the underwater asset(s) against any asset(s) with a net income prior to distribution of any
approved sharing.

[7]  *See* Chap. 8, Sec. XIII of this *Manual*.

[8]  A copy of the *Guide* is available at: www.justice.gov/criminal-mlars/publications.

[9]  Qualitative factors that the decision maker may consider when determining a sharing percentage are outlined in Sec. IV.A of
the *Guide*.

(Form DAG-71), FCF, or a supplemental memorandum for the decision maker to review. Equitable sharing percentages may also be awarded based on an agency's participation in a task force that has previously adopted a task force sharing arrangement consistent with Department policy.[10]

Funds collected to satisfy a forfeiture money judgment are not eligible for equitable sharing where no collection efforts were expended by the participants in the underlying investigation. For example, if a Deputy U.S. Marshal (DUSM), U.S. Attorney's Office (USAO) employee, or other federal agency locates funds in satisfaction of a money judgment, those funds cannot be shared unless the tribal, state, or local agency assisted in the collection effort. Funds located and applied to the money judgment at the time the money judgment is entered could be eligible for sharing.

## C.  Agency field office

A tribal, state, or local law enforcement agency participating in the Program may request official use or an equitable share of forfeited property by submitting a Form DAG-71 through the eShare Portal.

The requesting agency must complete the Form DAG-71 to include the workhours expended by agency personnel and a detailed narrative of the agency's specific role in the effort leading to forfeiture. The field office may reject or request an amendment to an incomplete or insufficient Form DAG-71. A federal investigative agency shall not complete the Form DAG-71 for a tribal, state, or local law enforcement agency. Once submitted, Form DAG-71 may not be changed unless an amendment is requested by the federal seizing agency. The submission deadline for Form DAG-71 is 45 days after forfeiture.[11]

Federal law enforcement agencies that participated in the effort must submit a FCF to the lead/processing federal agency to record participation or, where applicable, request a Fund-to-Fund transfer (e.g., a transfer from the AFF to the TFF or vice versa) for the assistance they provided.[12] Once submitted, an FCF cannot be changed or altered in any manner. The requesting agency may, however, submit an amended FCF, reflecting changes to the information reported on the original submission. A federal investigative agency shall not complete the FCF for another federal agency.

Following receipt of the Form DAG-71 or FCF, the field office must complete section I of the Form DAG-72, and enter the information in CATS. The field office must forward to investigative agency headquarters all documents supporting the equitable sharing request and recommendation, including but not limited to the Form DAG-71, FCF, Form DAG-72, and supplemental memorandum.

## D.  Final decision maker

### D.1  Investigative agency

If assets are administratively forfeited and the total appraised value of all items forfeited under a single Declaration of Administrative Forfeiture is less than $1 million, the head of the investigative agency, or designated agency headquarters official, decides the appropriate equitable share as to each

---

[10]  A formal memorandum of understanding (MOU) reflecting the task force sharing arrangement must be signed by all agencies participating in the task force before any sharing decisions may be made pursuant to the agreement. Such MOUs should be updated periodically to reflect material changes in the agencies constituting the task force or in any agency's contribution to forfeitures credited to the task force.

[11]  The TFF administers a substantially similar equitable sharing program.

[12]  See Sec. VI below for additional information on the FCF.

asset and requesting agency. The investigative agency must then complete section II of the Form DAG-72, and enter the decision in CATS.

### D.2   United States Attorney

If the assets are judicially forfeited and the total appraised value of all of the assets forfeited in a single judicial forfeiture order is less than $1 million, the U.S. Attorney decides the appropriate equitable share as to each asset and requesting agency. The investigative agency headquarters must submit its recommendation by completing section II of the Form DAG-72, entering its recommendation in CATS, and forwarding all documents supporting the equitable sharing request, including, but not limited to, the Form DAG-71, FCF, Form DAG-72, and supplemental memorandum to the USAO. The U.S. Attorney, or a designee,[13] must decide the appropriate equitable share as to each asset and agency, complete section III of the Form DAG-72, and enter the decision in CATS.

### D.3   Deputy Attorney General

Regardless of whether assets are administratively or judicially forfeited, the Deputy Attorney General (DAG), or a designee, decides the final equitable share as to each asset and requesting agency in: (1) all cases in which the total appraised value of all of the assets forfeited under a single Declaration of Administrative Forfeiture or judicial forfeiture order is $1 million or more; (2) multi-district cases; (3) cases involving the equitable transfer of real property;[14] or (4) cases involving the transfer of tangible items. The appropriate decision maker with delegated decision making authority from the DAG is generally determined by the value of the assets to be shared, as set forth below. Assets forfeited under a single declaration of administrative forfeiture or judicial forfeiture order cannot be separated so that only the individual assets having a value greater than $1 million are submitted to MLARS, the Assistant Attorney General for the Criminal Division (AAG), or the DAG for sharing decisions.

### D.3.a   Assets valued between $1 million and $5 million

The DAG has delegated to the Chief of MLARS the authority to decide equitable sharing requests for judicially or administratively forfeited assets in which: (1) the property to be shared is valued between $1 million and $5 million, and (2) MLARS, the seizing agency, and the USAO agree on the sharing allocations. If the seizing agency, the USAO, and MLARS do not agree on the sharing allocations, the final decision must be made by the DAG.

### D.3.b   Assets valued over $5 million

The AAG has been delegated authority from the DAG to decide equitable sharing requests for judicially or administratively forfeited assets in which: (1) the property is valued in excess of $5 million, and (2) the seizing agency, the USAO, and MLARS agree on the sharing allocations. If

---

[13]   Any delegation by a U.S. Attorney of authority to decide equitable sharing requests must be in writing and kept on file together with other delegations of authority by the U.S. Attorney.

[14]   The transfer of real property to a tribal, state, or local law enforcement agency for official use is contingent upon the agency's demonstration of a compelling law enforcement need for the property. The recipient agency must sign an MOU before the transfer will be approved. See *Guide*, Sec. V.C.2. All sharing requests involving the transfer of real property must be submitted to MLARS for processing, regardless of the value of the real property. A copy of the *Guide* is available at: www.justice.gov/criminal-mlars/publications.

the seizing agency, the USAO, and MLARS do not agree on the sharing allocations, the final decision must be made by the DAG.

In all of these cases, the lead federal investigative agency for the law enforcement investigation completes section II of the Form DAG-72 as to each asset, and the agency must enter its recommendation in CATS, and forward all documents supporting the equitable sharing request to the USAO. The USAO then completes section III of the Form DAG-72 for each asset, enters its recommendation in CATS, and forwards all documents supporting the equitable sharing request to MLARS.

Regardless of whether the final decision maker is the Chief of MLARS, the AAG, or the DAG, MLARS will enter the final equitable sharing decision into CATS.

### D.3.c   Transfer of tangible property

Regardless of the asset value, all transfers of tangible items to a state or local law enforcement agency requires approval from MLARS. Should MLARS approve such a transfer, the recipient agency will be required to pay any expenses and the federal share. See *Guide*, V.C.1.[15]

In all of these cases, the lead federal investigative agency for the law enforcement investigation completes section II of the Form DAG-72 as to each asset, and the agency must enter its recommendation in CATS, and forward all documents supporting the equitable sharing request to the USAO. The USAO then completes section III of the Form DAG-72 for each asset, enters its recommendation in CATS, and forwards all documents supporting the equitable sharing request to MLARS.

## E.  Communication with the requesting agency

Federal personnel and contractors involved in making, processing, or deciding an equitable sharing request must not represent whether sharing will occur at all, what specific percentages or dollar-amounts will be awarded, or that a sharing request has been or will be approved until the final decision maker has rendered a decision. Premature projections regarding approval of a sharing request often prove unfounded, needlessly risk friction with or disappointment by a supporting law enforcement agency if the projected sharing is ultimately disapproved or substantially reduced, and demonstrate disregard and disrespect for the discretionary authority of the decision maker.

That said, federal officials should promptly advise sharing applicants whenever a requested share is denied. Department seizing agencies should also inform other federal agencies that participated in the investigation of denial of their requested shares. Prompt and accurate communication about sharing matters is of paramount importance and should occur in the first instance at the field level.

---

[15]  A copy of the *Guide* is available at: www.justice.gov/criminal-mlars/publications.

### F.  Reimbursement of federal costs and expenses

Tribal, state, and local law enforcement agencies that receive real property or tangible personal property must reimburse the AFF for any liens, accrued expenses,[16] costs of sharing with other agencies, and the "federal share."[17] Payment must be made within 30 calendar days of notification of the total expenses. If the requesting agency is unable to pay these expenses, these costs may be offset against the requesting agency's other pending equitable sharing awards, if any. If the requesting agency has no pending sharing requests, or is unable or unwilling to pay the balance within 30 calendar days, the property must be sold and up to 80 percent of the proceeds equitably distributed to the agency in lieu of transfer. MLARS shall refer the asset back to the USAO or the seizing agency for an updated decision of cash/proceeds without the need for the requesting agency to submit an amended DAG-71 Form.

Payment of neither the costs and expenses nor the federal share may be waived except in cases of extreme hardship where the requesting agency lacks sufficient funds from previous equitable sharing or other available funds to pay the total costs and expenses. The requesting agency must demonstrate in writing that it is unable to pay the total reimbursement, that the payment of such reimbursement would result in an immediate and extreme financial hardship to the requesting agency, and that the benefit of receiving the property outweighs the receipt of the agency's otherwise applicable equitable share.

The decision to waive the federal share and expenses rests with MLARS. MLARS will ascertain the ability of the tribal, state, or local law enforcement agency to pay the amount due prior to approving any waiver. In addition, if it is fiscally advantageous to transfer the property, as opposed to liquidating the property and transferring the proceeds, MLARS may take those facts into consideration when determining whether to waive expenses.

## IV.  Equitable Sharing Payments

The USMS makes equitable sharing payments only after final approval of the sharing appears on the CATS Equitable Sharing Payments Authorization Report. This will not happen unless all information required to authorize the payment has been entered in CATS by the investigative agency, the USAO, and/or MLARS and the recipient agency is in compliance with all reporting requirements.

All equitable sharing payments to tribal, state, and local law enforcement agencies are electronically transferred by the USMS.[18] In order to electronically receive equitable sharing payments, a tribal, state, or local law enforcement agency must submit a completed "UFMS Vendor Request Form" (ACH form) to the USMS at AFD.ACHFORMS@usdoj.gov.[19]

---

[16]  "Accrued expenses" includes reimbursement of the cost of contractor expenses that are allocated by the federal agency to the forfeited asset.

[17]  The federal share is the amount retained in the AFF which represents the percentage corresponding to the federal agency's participation in the law enforcement effort. If a tribal, state, or local agency opts to take an asset for official use as opposed to receiving the net proceeds, the agency must pay the value of the federal share that would have been retained had the asset been sold. In these instances, the federal share is based on the current appraised value of the asset. In no case shall the federal share be less than 20 percent of the appraised value of the asset.

[18]  Approved sharings of less than $500.00 will not be processed.

[19]  A copy of the ACH Form is available at: www.justice.gov/criminal-mlars/equitable-sharing-program. Contact the Treasury Executive Office of Asset Forfeiture (TEOAF) or to the U.S. Postal Inspection Service (USPIS) for information regarding payments from these agencies.

All equitable sharing payments are subject to offset under the Debt Collection Improvement Act of 1996 (DCIA). The DCIA requires the Treasury and other disbursing officials to offset federal payments in order to collect delinquent non-tax debts owed to the United States and certain delinquent debts owing to a state government. In addition, the Taxpayer Relief Act of 1997 includes a provision that provides for the continuous levy of federal non-tax payments to collect delinquent tax debts. The Treasury Offset Program (TOP), which is designed to offset payments related to the DCIA, requires the collection of the Taxpayer Identification Number (TIN) and banking account information for the payee on any payment.

If a delinquent debt is attributable to the TIN number provided by a requesting agency on the ACH form submitted with its sharing request, the funds the USMS would otherwise transfer to the agency will be offset—even if the delinquent debt giving rise to the offset is attributable to another governmental agency in the same governmental jurisdiction as the requesting agency. When sharing funds due to be paid to tribal, state, and local law enforcement agencies are offset, the affected agency should contact the USMS eShare helpdesk to identify the TIN that appears on its ACH form. The affected agency should then contact the TOP Call Center at 800-304-3107 to determine the amount of, and identity of the governmental agency responsible for, the delinquent debt so the requesting agency can seek repayment of the offset funds from the city, county, or state agency for which the offset was intended.

## V.   Compliance

In order to participate in the Program, tribal, state, and local law enforcement agencies must first submit, and annually resubmit, an Equitable Sharing Agreement and Certification form (ESAC form) signed by both the head of the law enforcement agency and the head of the governing body having budgetary authority over the law enforcement agency. By signing the Equitable Sharing Agreement, the signatories agree to be bound by, and comply with, the federal statutes and Department policies governing the Program.

Any breach of the Sharing Agreement by a tribal, state, or local law enforcement agency may render it non- compliant or ineligible to receive equitable sharing payments. Failure to annually resubmit a properly completed ESAC form may also result in the permanent extinguishment of the agency's pending equitable sharing distributions. While federal investigative agencies and U.S. Attorneys have no obligation affirmatively to monitor an agency's eligibility, they are obliged promptly to report to MLARS any information that might affect an agency's eligibility to participate in the Program. Participation may be barred on either a temporary or permanent basis where a requesting agency has failed timely to submit an ESAC form or ACH form or to meet any other requirements as set forth in the *Guide*.[20]

Participation may also be temporarily or permanently barred: (1) pending resolution of any audit or investigation of an agency's possible mishandling or misuse of shared funds and or property placed into official use; or (2) if applicable tribal laws, state laws, or local ordinances prevent compliance with federal statutes and equitable sharing policies.

---

[20]  A copy of the *Guide* is available at: www.justice.gov/criminal-mlars/publications.

There are three agency compliance statuses that appear in CATS:

(1) **Compliant:** An agency will be deemed compliant once all required paperwork is received by MLARS and any discrepancies have been resolved. Compliant agencies will receive equitable sharing payments.

(2) **Non-Compliant:** MLARS has the discretionary authority to designate an agency non-compliant for any of several reasons, including adverse audit findings, impermissible expenditures, or failure to submit the ESAC form within 60 days from the end of an agency's fiscal year. The agency remains non-compliant until all required paperwork is received by MLARS and/or all discrepancies and audits findings are resolved. Pending sharing distributions will be held in suspense until MLARS designates the agency compliant. Federal agencies may continue accepting and processing any Form DAG-71(s) received from a non-compliant agency, but no sharing payment will be made so long as the agency is designated non-compliant. However, if an agency remains non-compliant for over one year, MLARS may extinguish all pending sharing. Funds previously approved for transfer will remain in the AFF.

(3) **Ineligible:** MLARS has the discretionary authority to designate an agency ineligible for equitable sharing where the agency has violated the Program's policies and regulations.[21] Any pending sharing disbursements will be suspended until MLARS makes a final determination regarding the agency's continued participation in the Program. Federal agencies may NOT accept or process any Form DAG-71 received from an ineligible agency. No seizures that occur while an agency is designated ineligible can form the basis for equitable sharing, even if the agency is rendered compliant at a later date.

## VI.  Federal Contribution Form

Each federal agency must complete the FCF to fully capture federal participation in the law enforcement effort leading to forfeiture, and when appropriate, request a transfer of funds from one forfeiture fund (e.g., the AFF, TFF, United States Postal Service forfeiture funds) to the fund of the recipient agency. Any forfeited funds or proceeds from the sale or other disposition of forfeited property may only be transferred directly to the appropriate forfeiture fund of the requesting agency, not to the requesting agency itself.

When federal agencies from the same forfeiture program participate in a joint investigation, no Fund-to-Fund monetary transfers occur. In these cases, the FCF serves the important function of documenting the participation of each federal agency and also provides necessary information to the sharing decision maker who must evaluate the overall workhour and qualitative contributions of all participating federal, tribal, state, and local agencies when determining sharing percentages for "cash/proceeds" decisions.

When an AFF investigative agency participates in an investigation resulting in the seizure of property processed for forfeiture by another federal investigative agency, it can record the seizure in CATS by creating a "referral asset." A referral asset is another method for capturing statistics on seizures to document participation in an investigation.

---

[21]  An agency may also be designated ineligible if it remains out of compliance for over one year, its NCIC code has changed, it has disbanded, it is no longer a participant in the Program, or it no longer qualifies as a law enforcement agency.

An FCF may only be completed by the following federal agencies:

| NCIC/ORI CODE | Agency |
|---|---|
| CBPAMO000 | Customs and Border Protection- Air Operations (CBP-AO) |
| CBPOBP000 | Customs and Border Protection- Border Patrol (CBP) |
| CBPOFO000 | Customs and Border Protection- Field Operations (CBP-FO) |
| DCATF0000 | Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) |
| DCDOS0000 | Department of State |
| DCICE0000 | Immigration and Customs Enforcement (ICE) |
| DCIS | Defense Criminal Investigative Service (DCIS) |
| DEA | Drug Enforcement Administration (DEA) |
| FBI | Federal Bureau of Investigation (FBI) |
| IRS | Internal Revenue Service (IRS) |
| MDFDA03T0 | Food and Drug Administration (FDA) |
| TTB | Tax and Trade Bureau (TTB) |
| USCG | U.S. Coast Guard (USCG) |
| USDAIG | U.S. Department of Agriculture, Office of Inspector General (USDA-OIG) |
| USMS | U.S. Marshals Service (USMS) |
| USPS00000 | U.S. Postal Service (USPS) |
| USSS | U.S. Secret Service (USSS) |

When a TFF agency becomes involved in an ongoing joint investigation involving an AFF agency and tribal, state, or local law enforcement agencies, and there is an existing MOU on sharing between the AFF agency and the participating tribal, state, and local law enforcement agencies, the sharing percentages agreed upon in the MOU must be reduced to include a transfer to the TFF in recognition of the Treasury agency's participation. When a federal agency is invited to join an ongoing investigation, the agency must immediately notify the lead agency and the USAO of its involvement. Any issues that cannot be resolved through communication between case agents should be submitted to the appropriate special agent-in-charge (SAC) for the involved agencies. Agency headquarters will not become involved in the resolution of issues unless the SAC from either of the participating agencies requests assistance. Prompt and accurate communication about sharing matters is important, and should occur, in the first instance, at the field level.

The deadline for agencies to submit FCFs is 45 days after forfeiture. Agencies may submit FCFs for intra-fund joint investigations (i.e., from one Department seizing agency to another) electronically through the eShare Portal.[22]

---

[22]  Agencies should continue to submit hard copies of the FCF to Treasury and Department of Homeland Security (DHS) agencies.

## VII.    Reverse Sharing

The Department investigative agencies participating in an investigation resulting in the seizure of property that is processed for forfeiture by a tribal, state, or local law enforcement agency or foreign jurisdiction should create a "referral asset" in CATS in order to document their participation in the investigation. If any proceeds are received from the state or law enforcement agency or foreign jurisdiction through "reverse sharing," the agency's share will be deposited into the AFF.

## VIII. International Sharing of Forfeited Assets

The Department encourages international asset sharing with countries that facilitate the forfeiture of assets under United States law. International sharing, which requires both Department of Justice and Department of State approval, and concurrence by Treasury, must be either approved or pre-approved before any domestic equitable sharing can take place. The percentage granted to a foreign country is often guided by international sharing agreements or is determined based on factors which differ significantly from the "workhour and qualitative contribution" standard used in determining domestic sharing. Funds shared with the United States by the foreign government that have not been forfeited under United States law may not be eligible for domestic equitable sharing. Such funds would only be eligible for domestic equitable sharing if they are forfeited under United States law.[23] Nevertheless, if United States prosecutors or investigators assisted in a foreign case that resulted in a foreign forfeiture, they are encouraged to contact MLARS's International Unit to determine if it might be appropriate to submit a sharing request to that country, as such funds still may be deposited into the AFF and be applied for Asset Forfeiture Program purposes. All requests to foreign countries for asset sharing must be submitted by the MLARS' International Unit in coordination with the Office of International Affairs (OIA).

The Department policy applicable to international sharing, as well as the forfeiture of assets located overseas, appears in Chapter 8 of this *Manual*.

---

[23]  *See also* Chap. 8, Sec. XIII of this *Manual*.