IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

         v.                                        18-CR-108-EAW

ROBERT MORGAN et al.
       Defendants.

## AFFIDAVIT IN SUPPORT OF GOVERNMENT'S RESPONSE TO DEENDANT MORGAN'S MOTION FOR AN ORDER CONFIRMING THE LACK OF PRETRIAL RESTRAINTS AND ENJOINING THE GOVERNMENT AGAINST FURTHER UNLAWFUL RESTRAINT.

State of New York   )
County of Erie       ) ss:

Richard D. Kaufman, being duly sworn, deposes and says:

1. I am an Assistant United States Attorney in the office of James P. Kennedy, Jr., United States Attorney for the Western District of New York, attorneys for the United States of America in the above criminal prosecution. I am also serving as Chief of the Asset Forfeiture and Financial Litigation Unit within the United States Attorney's Office. This affidavit is submitted in support of the United States' Response to Defendant Robert Morgan's Motion seeking an Order from the Court confirming the lack of pretrial restraints on the defendant's properties and enjoining the government against further unlawful restraints. This affidavit is also being submitted to provide the Court with an accurate factual basis of the government's actions to date in speaking with both legal representatives of the sellers, purchasers and financial institutions that originally contacted the government for assistance in completing various sales of Morgan's properties, involving both Indicted and

non-Indicted properties and dispelling the mischaracterizations raised in the defendant's motion.

2. Since the Superseding Indictment in this action was issued on May 21, 2019, my office has received numerous telephone and email communications requesting information concerning both Indicted and non-indicted properties that Robert Morgan (Morgan) owns or controls. These communications have come from legal representatives of both the titled owners of the LLC's who own the properties, the prospective purchasers, title insurance companies, financial institutions who hold either first or second priority mortgages on these properties, Morgan investors who claim an unsecured legal interest in any sales proceeds and from representatives of Freddie Mac and Fannie Mae.

3. Assistant United States Attorneys, John D. Fabian and Douglas A. Penrose, are assigned to the overall criminal prosecution, while Assistant United States Attorney, Mary Clare Kane, is handling the forfeiture aspects of the matter. Since AUSA Kane was out of the district from May 22 through May 30, 2019 and again on June 10 through June 14, 2019, I responded to many of the requests for telephone conferences and/or meetings with the various parties that had an interest in a particular property.

4. Since May 22, 2019, the government has attempted to return telephone calls and engage in meetings when requested from the various parties in an attempt to determine if there was a procedure that all parties could employ that would allow the previously contracted or proposed sales of some of the properties to continue during the pendency of the criminal case. Generally, the purchasers and the title insurance companies told us that without assurances that the government would not pursue future legal action against the

purchasers; such sales could not be completed.

5. With respect to the Indicted properties, they were informed that the federal law involving criminal forfeitures recognize Bona Fide Purchasers (BFP), however that after the issuance of an Indictment, court pleadings, media reports and their own due diligence, the requirements of qualifying under the BFP provisions may be problematic. One suggestion for the sale to proceed, would be to allow for all normal and regular sales expenses to be paid including the payment of the financial institutional mortgages, and any remaining proceeds would then be held in escrow as a 'substitute res' by the United States Marshals Service (USMS) who are responsible for Department of Justice's forfeiture property management. In this manner, the government could give assurances to the purchasers that they would not be subject in the future to forfeiture claims by the government, as any forfeiture action would be against the `substitute res' as opposed to the real property itself. Had any Stipulated Sales Agreement been agreed upon with respect to the Indicted properties, that Agreement would be submitted to the Court for approval.

6. With respect to the unindicted properties that Morgan or any of the defendants may have an interest, all representatives who contacted our office were told that at the present time there were no restrictions on the sale or transfer of the properties until the federal government took some specific legal action, such as either civil or criminal forfeiture litigation against the properties, however that the federal law on BFP qualifications would still be a concern. It was suggested that to allow the sales to proceed, any net sales proceeds would have to be held in escrow by either the purchaser's attorney or the title insurance company. All representatives were repeatedly told that the government did not want to block any sales of these properties to legitimate purchasers as it would accomplish paying off the

liens, mortgages and taxes on these properties and allow for the complexes to be maintained and improved going forward, however, we did not feel it was appropriate that Morgan or any of the other defendants receive the net proceeds at this time until further Court intervention. At no time were there ever any threats conveyed by the government against any of the interested parties.

7. Your affiant had several discussions with interested parties on a number of properties owned or managed by Morgan. For the purpose of this Affidavit, I will address the details of those specific contacts raised in Morgan's motion.

**CHASE CHAVIN PROPERTIES**

8. Morgan mentions counsel for an unidentified third party stakeholder contacted Morgan's criminal counsel. (Cohen Declaration at ¶19, Dckt. # 66). With respect to the issues raised in Morgan's motion, your affiant was first contacted on June 5, 2019 via email and then had a telephone conversation on June 7, 2019 with attorneys Tara Reynolds and Reed J. McCalib who represented an investor and LLC member with Morgan by the name of Chase Chavin, who unlike many other LLC members who were Morgan's relatives and never invested any dollars into the properties, Chavin actually invested monies into the LLCs. I was asked for the government's position on allowing sales of these properties going forward and I responded that for the Indicted properties, we would propose that the sales be allowed but only if after paying off the valid mortgages, liens and regular expenses of sale, the remaining net sales proceeds be placed in escrow with the USMS. As to the unindicted properties, I advised them that there was no legal restraint or action preventing them from selling those complexes at the present time, however any potential purchaser may be

concerned going forward with such a deal unless they were assured that they would be considered a BFP and protected from future forfeiture actions by the government. Again, I did suggest that one way to complete the sale was to agree to hold the net sales proceeds in escrow after payment of all liens, mortgages and regular sale expenses.

9. Reynolds and McCalib indicated that they would provide me a list of several properties of which Chavin was concerned about, some of which he was hoping to sell in the near future. I was asked if I could tell them if any of the properties on their list would be subject to forfeiture litigation in the future or were at least subject to continuing investigation by the government. They requested I keep the list confidential, which is the reason I am not making it an exhibit to this affidavit. I requested and was granted their permission to share the list with the federal law enforcement agents that are assigned to the investigation and on June 13, 2019, I was able to respond that out of the forty nine (49) properties that they identified, the federal government only had three (3) properties that were the subject of our continuing investigation (one of them being the View at MacKenzi, *see below*) and may be subject to additional forfeiture actions. The remaining forty-six (46) properties were not a concern of the government's investigation. The above information was also discussed with Chavin's attorneys on June 20, 2019 during another telephone conference call.

**VIEW AT MACKENZI**

10. Another property that your affiant became involved in was the View at Mackenzi, also known as Colonial Gardens. On Monday, June 10, 2019 at the request of attorneys representing the potential purchasers of the property, I had a telephone conference call with attorneys Robert Flanagan and Molly Graver, who represented Larkin Associates

(Larkin). They indicated that the purchase was close to being completed when Robert Morgan was indicted and that Larkin were going to back out of the purchase unless the sale could proceed without Larkin having any exposure. I was told the purchase price was for $29 million dollars and Arbor held the mortgage for approximately $20 million dollars. Since this was an unindicted property, I made it clear that at the present time, there was no legal action against this property and they could proceed as they wished but discussed federal forfeiture law regarding BFP status. (*See*, Title 21, United States Code, Section 853(n) (6) (B) and Title 18, United States Code, Section 983(d) (3) (A)). I also advised that the government's investigation was continuing and that additional properties may be identified for civil or criminal forfeiture action in the future. I was asked if the View at Mackenzi was one of those properties and I declined to comment.

11. I did discuss a process that could be used to complete the sale and purchase while at the same time appease their concerns was to enter into an agreement with the seller, purchaser and the government to pay off the valid mortgages and liens, regular and normal expenses of sale and then place any net proceeds in an escrow account for later determination. In that way, the government could assure the purchasers no further forfeiture action against the real property would be pursued. However, since this was an unindicted property and not subject to any civil forfeiture actions at the time, the escrow would have to be held by either the purchaser's attorney or the title insurance company and not the USMS.

12. Mr. Flanagan and Ms. Graver requested that I provide a sample Stipulated Sales agreement that they could review. I did that on Thursday, June 13, 2019. I utilized the draft agreement that AUSA Kane was using in her discussions with regard to an Indicted property (Eden Square) that was still in draft form. I simply struck out specific references to property

descriptions and individual names, replaced them with a series of asterisks (*****) and yellow highlighted sections that the Larkin interests would need to change and revise. One such highlighted section concerned the USMS holding the net sales proceeds in escrow. It was told to me that they would discuss the Stipulation with their client and the title insurance company. I never heard anything back on this matter.

## EDEN SQUARE

13. I also learned from discussions with AUSA Kane that she was engaged in conversations and exchanges involving a draft stipulation that would allow for the sale of the Eden Square (an indicted property). Her conversations concerned a May 2, 2019 Purchase and Sale Agreement for Eden Square entered into by owner Cranberry Vista Apartments LLC's manager Robert Morgan and an assigned signatory for Freshcorn DE1 and DE2 LLCs. Upon information and belief, AUSA Kane had conversations with James Bonsignore, Esq. (representing seller Robert Morgan); Samuel Silverman, Esq. (representing purchaser Freshcorn DE1 and DE2 LLCs); and Jaimie Nowaday, counsel for Ladder Capital (the lender). AUSA Kane had email communications over the wording of the draft stipulation with the above parties as well as with Zahava Silverman, Esq. (Partner, The Silverman Law Firm PLLC). All conversations and communication were aimed at the drafting an acceptable sales stipulation for Eden Square in order to allow the sale to proceed. The attorneys endeavored though a series of emails to agree to draft stipulation that would allow for the sale of Eden Square to proceed. During the conversation, AUSA Kane was asked if Securities and Exchange would sign off on the agreement and she could only advise that our office could not bind the SEC but that she understood the SEC was taking no position on the sale. At one point in the Eden Square discussions, AUSA Kane indicated

to the parties that she would seek USMS's review and any input with regard to the draft stipulation language in order to ensure that any stipulated agreement authorized by the Court could be enforced by the USMS. Input from the USMS was crucial given the value of the asset and the proximity of the closing date of June 6, 2019. To date, no sales stipulation has been entered regarding Eden Square. AUSA Kane just recently filed a Motion for Interlocutory Sale for Eden Square.

**THE ZDARSKY CONTACTS ON OTHER PROPERTIES**

14. In addition, AUSA Kane advised me that she also was contacted by Joseph E. Zdarsky, Esq. concerning the sales of a number of other properties, including Marsol Apartment Complex, Hunters Chase, Longley-Jones Portfolio, Highland Club Property, Colonial Gardens/View at MacKenzi as well as Eden Square. After consulting with case agents and your affiant, AUSA Kane sent a letter to Mr. Zdarsky indicating that the government did not oppose the sales of Marsol Apartment Complex and Hunters Chase going forward given that they were not indicted properties, nor were they subject to continuing investigation in the criminal case. AUSA Kane did state that she opposed the sale of View at MacKenzi/Colonial Gardens at the present time. AUSA Kane had further discussions with Mr. Zdarsky regarding the LLC members and ownership of both the View at MacKenzi/Colonial Gardens and Eden Square. During these conversations and correspondences, Mr. Zdarsky represented that Robert and Todd Morgan would be agreeable to allowing their percentage of the proceeds to be held in escrow by the seller's attorney. AUSA Kane countered that in order to provide the purchasers with the assurances that they sought, the U.S. Attorney's Office would require an agreement that all net sales

proceeds after payment to valid lien holders, should be placed in the USMS holding account pending further litigation and/or Court order. Upon information and belief, in her telephone conversations and communications with Mr. Bonsignore and Mr. Zdarsky, AUSA Kane had brief, informal discussions regarding BFP status and the LLC members, civil forfeiture actions and third party rights in ancillary proceedings. In essence, she advised that the government would likely oppose any third party intervention seeking return of sale proceeds until further litigation or discussions could be had after the stipulated sales.

15. Although email correspondence from Mr. Zdarsky regarding Longley Jones Portfolio, Hunters Chase and Eden Square, dated Friday, June 19, 2019, was emailed to AUSA Kane was followed up with written correspondence regarding same on or about June 22, 2019. After receipt of Mr. Cohen's letter, dated June 21, 2019, AUSA Kane has not had any discussions with Mr. Zdarsky about these properties.

## **CONCLUSION**

16. Based upon the complaints of Morgan in his June 21, 2019 letter and the telephone conference with the Court on June 25, 2109, the government has ceased all discussions with either the sellers or potential purchasers of any non-indicted properties or those properties where we have yet to pursue formal forfeiture litigation. Again, the government was attempting to respond reasonably to the numerous telephone calls and electronic mail communications that we were receiving concerning many of Morgan's properties. The government's desire was to see the contracted sales move forward, paying the valid mortgages, lienholders and the other regular and normal expenses of sale, while

preserving any net sales proceeds as a "substitute res" for future litigation and orders of the Court. Obviously, Robert Morgan does not agree with that position. The investigation is continuing and the government will act in accordance with federal law and file the appropriate pleadings as well as notify the legal owners and those who hold legal interests in such properties as required.

                                                              s/RICHARD D. KAUFMAN
                                                              Assistant U.S. Attorney

Sworn to before me this
11th day of July 2019.

s/Cheryl LoTempio
Notary Public, State of New York
Qualified in Erie County
Commission Expires 6/20/2022