THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                                                      18-CR-108-EAW

ROBERT MORGAN, et al.

        Defendants.

**GOVERNMENT'S RESPONSE IN OPPOSTION TO DEFENDANT'S MOTION FOR AN ORDER CONFIRMING THAT THERE ARE NO PRETRIAL RESTRAINTS ON ANY INDICTED OR UNINDICTED PROPERTIES AND DEFENDANT'S MOTION FOR AN ORDER ENJOINING THE GOVERNMENT FROM INTERFERENCE WITH THE SALE OF ANY MORGAN PROPERTIES.**

**INTRODUCTION**

      The United States, through its counsel, hereby files its Response in Opposition to Defendant Robert Morgan's Motion seeking an Order from this Court confirming that no pretrial restraints have been placed on any of his properties and for an Order enjoining the government from interfering with the sale of any of his properties in the future. This Response is supported by the affidavit of Assistant United States Attorney Richard D. Kaufman,[1] filed in connection herewith, and all other pleadings already filed in this matter. Based on the record in this case and reasons set for the below, this Court should deny defendant's motion in its entirety.

      As the Court is aware, shortly after the unsealing of the Superseding Indictment

---

[1] Dkt. No. 75

1

(SSI), third parties and attorneys involved in executed Purchase and Sale Agreements (PSAs) with respect to both Eden Square and View at MacKenzi/Colonial Gardens, contacted the government to determine if there was a procedure to use to allow the sale of each property to proceed and to seek assurances from the government that the purchasers would not be subject to federal forfeiture actions in the future.

Defendant Robert Morgan (hereinafter "Morgan") now claims that by speaking to the various parties, the government engaged in extralegal and unlawful conduct with regard to both indicted and unindicted properties owned by Morgan. Dkt. No. 65 at pp. 17-18. While the government acknowledges that it had discussions with several third parties, it vehemently denies that any of its actions were improper or unlawful. During a status conference on June 25, 2019, the government advised it would cease communicating with any parties with respect to the unindicted properties unless or until litigation is commenced. *See*, Kane letter, Docket 65, Exhibit N at p. 5. To date, the government has abided by this agreement.[2]

## Summary of Argument

The Government has acted lawfully and reasonably in the several weeks following the unsealing of the SSI on May 22, 2019 with respect to the 12 Real Properties included in

---

[2] During the same status conference, counsel for Robert Morgan stated, "if I understand correctly…they [the government] no longer intend to engage in discussions with third parties on the issue of property restraints or their views or opinions or answering questions about the process, which, voluntarily, would alleviate concerns going forward." Docket 66-15, p. 5, lines 4-9.

the Forfeiture Allegation of the SSI (hereinafter "12 Indicted Properties") as well as unindicted properties including View at MacKenzi/Colonial Gardens. There is no need for the Court to issue an order that effectively states a negative; to wit, that, at the present time, there are no pretrial restraints issued pursuant to Title 21, United States Code, Section 853(e) against Morgan owned or managed properties (indicted or unindicted). The United States Attorney's Office (USAO) has made this clear to any of the legal representatives who contacted us prior to June 25, 2019, and it should be apparent to any parties and their attorneys who may now be engaged in efforts to purchase or sell any Morgan owned/managed properties (indicted or unindicted).

Further, the All Writs Act[3] is not applicable. There is no need to enjoin the government from doing what it is not doing. Defendant alleges that the government has been interfering with the sale, transfer, disposition of Morgan owned or managed properties. The government has not engaged in any such conduct. Until the government takes some form of formal legal action against any unindicted property, the government has agreed to cease any discussions with parties in matters pertaining to them. Notably, at no time since the unsealing of the SSI, did the government initiate any contact with any party with respect to any Morgan owned or managed property. Any involvement from the government regarding any sale or transfer of Morgan owned or managed properties was at the behest and invitation of legal counsel or representatives for either the sellers of the property, (Robert Morgan and his various LLCs), and counsel for potential purchasers, title companies and lenders who contacted the USAO to determine if there was a procedure that

---

[3] 28 U.S. Code §1651

would assure potential purchasers that if they did engage in the sale and purchase of a Morgan property that they would not be subject to future forfeiture actions. *See* Kaufman Aff. at ¶¶2, 4, 6, 8.10.

**ARGUMENT**

**DEFENDANT'S REQUEST FOR A COURT ORDER SHOULD BE DENIED**

1. **The Court Should Not Issue an Order Stating That There Are No Pre-Trial Restraints on the 12 Indicted Properties or Any Unindicted Properties. The Record Speaks For Itself.**

In making this extraordinary request for court intervention, Morgan (1) attacks the government's limited and brief involvement in discussions regarding two specific property sales of Robert Morgan owned/controlled properties known as Eden Square (an indicted property) and View at MacKenzi/Colonial Gardens (an unindicted property); (2) misrepresents the law as it pertains to restraining orders; (3) attacks the government for sending notice of 18 U.S.C. §2232(a) to Morgan; and (4) attacks the government for informally discussing the nature of bona fide purchaser laws and ancillary proceedings with third parties as well as the rights any third party stakeholders have with respect to the 12 Indicted Properties at this stage of the criminal proceeding.

In support of his motion, Morgan cites to discussions, letters and informal emails between the government and counsel to parties involved in the PSAs pertaining to Eden Square and View at MacKenzi as well as other discussions pertaining to other unindicted properties to attack as to the government's involvement in these discussions and

characterizes them as extrajudicial or somehow unlawful. Dkt. No. 65 at p. 7-12, Exhibits A. D, E, F, and H.

Absent from defendant's motion is an acknowledgement that it was the third parties, who initiated all contact and invited the government to participate in discussions regarding previously contracted for sales entered into by Morgan in order for those sales could close on their anticipated closing dates. This was because the purchasers and the title companies were refusing to move forward with the purchase until they received assurances from the government that the property would not be subject to forfeiture claims in the future based on the Morgan's alleged illegal conduct. Defendant's motion is also deplete of any reference to the fact that the government had no position with respect to the sale of several unindicted properties including Marsol Apartments and Hunters Chase, along with forty-six (46) other properties where Chase Chavin was a LLC member. *See* Kaufman Aff. ¶¶4, 6, 8 and 9.

Further, Morgan's motion fails to acknowledge that certain Morgan owned/managed properties referenced below have been sold without interference from the government. Sale proceeds have been or will be disbursed to Morgan and presumably LLC members, or possibly to the receiver appointed in *SEC v. Morgan*, 19-CV-661-EAW. Upon information and belief, in 2018, Morgan sold the following apartment complexes: Houston Portfolio and Bayberry. These sales netted proceeds of $17 million. In 2019, Morgan sold the following properties: Gun Hill, Ithaca N.Y., Polo Run (Trails of North Hills, NC) and Highland Club which netted a total of $27 million in proceeds. Marsol Apartments, if sold, will net $27 million in proceeds. In sum, the total sales proceeds for

the above properties (if Marsol Apartments has sold) is believed to be approximately $71 million dollars. There may be other properties that have also sold of which the government is presently unaware. The government did not object or interfere with the above sales, transfers or the disbursement of these sale proceeds.

Again, the government acknowledges that, at the present time, there are no pre-trial restraints issued pursuant to 21 U.S.C. § 853(e) on any Morgan owned/managed properties (indicted and unindicted). The record reflects the same. However, the investigation continues, and in the future, there may be litigation that may require obtaining restraining orders, seizure warrants or the filing of civil forfeiture actions.

**2. Discussions regarding Eden Square and View at MacKenzi were at Invitation of Third Parties**

**a. Eden Square**

Eden Square is an indicted property. Shortly, after the unsealing of the SSI, Mr. James J. Bonsignore, Esq., counsel for Robert Morgan and/or Morgan's Cranberry Vista Apartments, LLC that held title to Eden Square, sought input from the government as to whether the sale of Eden Square could proceed. The government engaged in discussions in an attempt to reach a reasonable resolution with Mr. Bonsignore, Esq. and other parties involved in the anticipated sale that, if successful, would have allowed a previous PSA to proceed to closing on June 6, 2019. In doing so, the government suggested that in order for the sale to proceed all normal and regular sales expenses could be paid including the payment of the financial institutional mortgages, and thereafter, any remaining proceeds would then be held in escrow as a 'substitute res' by the United States Marshals Service

(USMS).⁴ In this manner, the government could give assurances to the purchasers that they would not be subject in the future to forfeiture claims by the government, as any forfeiture action would be against the 'substitute res' as opposed to the real property itself. Had any Stipulated Sales Agreement been agreed upon with respect to the Indicted properties, that Agreement would be submitted to the Court for approval. *See* Kaufman Aff. ¶ 5. *See also*, Rule G(7)(b)(iv) of the Supplemental Rules (allowing for 'substitute res').

The government's efforts in attempting to reach a stipulation with respect to Eden Square was so that the sale could proceed, a prospect unlikely from the purchaser's perspective given the SSI involving Robert Morgan, without some assurance from the USAO that it would not continue to seek the forfeiture of the real property. Since the closing date of June 6, 2019, the mortgage has gone into default and is accruing penalties and interest in excess of $13,000 per day as of the date of this response. *See* 18-CR-108W, Government's Motion for Interlocutory Sale of Eden Square, Dkt. No. 71 at p. 3.

  b. **View at MacKenzi**

View at MacKenzi is an unindicted property. Legal representatives of the potential purchaser contacted the USAO and invited the government to engage in discussions that would permit the sale of View at MacKenzi/Colonial Gardens while seeking assurances that the purchasers would not have any exposure after the sale. One

---

⁴ Counsel makes much of government's submission of the draft stipulation regarding Eden Square to the USMS for review of the language. AFPM Chapter 4 (Real Property), Section I states, "The USAO should "coordinate closely" with the USMS to address the unique issues that arise before and during forfeiture of real property" [given the availability of USMS Headquarters for topical expertise and authority]. (Footnotes omitted). Dkt. 65, Exhibit R at p.73.

7

suggestion for the sale to go forward was with an agreement that a certain portion of the funds be held in escrow. *See* Kaufman Aff. ¶¶10-12. During these discussions, the government told the legal representatives that at the present time there were no restrictions on the sale or transfer of the properties unless or until the federal government took some specific legal action, such as either initiating civil or criminal forfeiture litigation against the properties, but that the federal law on Bona Fide Purchaser (BFP) qualifications would still be a concern. *See* 21 U.S.C. §853(n) (6) (B) and 18 U.S.C. §983(d) (3) (A). All representatives were repeatedly told that the government did not want to block any sales of these properties to legitimate purchasers as it would accomplish paying off the liens, mortgages and taxes on these properties and allow for the complexes to be maintained and improved going forward. *See* Kaufman Aff. ¶¶ 6 and 10.

### 3. The Filing of *Lis Pendens* against the 12 Indicted Properties was Proper

To date, the government has filed *lis pendens* on the 12 Indicted properties. With respect to *lis pendens*, the 2019 Asset Forfeiture Policy Manual ("AFPM") advises,

> [i]n general, real property is not seized prior to forfeiture; nor is it served with an arrest warrant in rem. Instead, the proper recording of a *lis pendens* pursuant to state law serves to inform the public that a Government action involving the real property has commenced.

Docket 65, Exhibit R (The 2019 AFPM, Chapter 4, Section C, p. 73).

The filing of a *lis pendens* is not a seizure. *United States v. Borne*, 2003 WL 22836059, *2-3 (E.D. La. Nov. 25, 2003) (the filing of a *lis pendens* is not a prejudgment seizure); *United States v. Jefferson,* 632 F. Supp. 2d 608, 617 (E.D. La. 2009) (same; following *Borne*; notice of

*lis pendens* "is in fact one of the less restrictive means of preserving the Government's interest" in that it allows the defendant to continue to use and enjoy the property). Nor does the filing of a *lis pendens* affect due process rights. *Aronson v. City of Akron*, 116 F.3d 804, 811-12 (6th Cir. 1997) (because *lis pendens* is not a taking, filing *lis pendens* without prior notice did not violate defendant's due process rights); *United States v. St. Pierre,* 950 F. Supp. 334, 337 (M.D. Fla. 1996) (same); *United States v. Register*, 182 F.3d 820, 836 (11th Cir. 1999) (because filing *lis pendens* does not implicate due process rights, no post-filing hearing required to determine if *lis pendens* should be removed); *United States v. Bohling*, 321 Fed. Appx. 855, 858 (11th Cir. 2009) (same); *United States v. Borne*, 2003 WL 22836059, *3 (E.D. La. 2003) (same); *Cf. Diaz v. Paterson*, 547 F.3d 88, 98 (2d Cir. 2008) (the effect of a *lis pendens* "is simply to give notice to the world of the remedy being sought" in a pending lawsuit; the owner of the property "continues to be able to inhabit and use the property, receive rental income from it, enjoy its privacy, and even alienate it"; thus, a *lis pendens* "is deemed one of the less restrictive means of protecting a disputed property).

Defendant contends that the government has acted outside of its authority by not applying for restraining orders pursuant to Title 21, United States Code, Section 853(e) (hereinafter "853(e)"). Dkt. 65, pp 14-15. The government has various means, short of seizure, to protect its legitimate interests in forfeitable real property. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 58, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). In criminal forfeiture procedures, the targeted property is not actually forfeited until the defendant is convicted of the underlying offense. *United States v. St. Pierre*, 950 F.Supp. 334, 337 (M.D.Fla.1996). In the instant case, the government has neither restrained nor seized any

Real Properties of Robert Morgan. Instead, as is within their lawful authority, the government has simply filed *lis pendens* on the indicted properties, the least restrictive means of providing notice to all third parties that a forfeiture action is pending.

Morgan also argues that a hearing is required for a post-indictment 853(e) order. Docket 65 at p. 15.[5] It is not. Contrary to the defendant's argument, "[n]otice and a hearing need not occur before an *ex parte* restraining order is entered pursuant to section 853(e)(1)(A)." *United States v. Monsanto*, 924 F.2d 1186, 1193 (2d Cir. 1991). "[W]hen the Government is seeking forfeiture and secures an indictment to that effect based on probable cause, a court may issue a restraining order without prior notice or a hearing." *United States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 475 (5th Cir. 2007) (en banc) ("a court may issue a restraining order without prior notice or a hearing"); *Kaley v. United States*, 571 U.S. 320 (2014) (holding that a grand jury's finding of probable cause is sufficient to support the restraint of a defendant's property); *United States v. Park*, 825 F. Supp. 2d 644, 646 (D. Md. 2011) (the defendant was indicted for bank fraud and the government obtained an *ex parte* restraining order. Since the grand jury found that the defendant's assets were directly traceable to his offenses and that probable cause existed to establish other assets had been obtained from his offenses, the court granted the government's motion without a hearing).[6]

---

[5] It is Section 853(e) (1) (B) that defendant appears to believe is applicable to the instant case. However, Section 853(e) (1) (B) applies when the government is applying for a protective order "*prior to the filing of such an indictment* or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing [.]" Id. (*Emphasis added*).

[6] To date, defendant has not requested access to the 12 Indicted Properties to pay for counsel of choice. Should that occur, defendant must meet the *Jones-Farmer*'s two-prong test

### 4. Issuance of Section 2232(a) Notice was Proper

Defense counsel contends that the government remains unwilling to correct misimpressions conveyed to stakeholders including facing criminal charges. Dkt. 65 at pp. 17-18. After the SSI was unsealed, the government sent Morgan's counsel a letter regarding Title 18, United States Code, Section 2232(a), which provides:

"[w]hoever, *before*, during, or after any search for or seizure of property by any person authorized to make such search or seizure, knowingly destroys, damages, wastes, disposes of, transfers, or otherwise takes any action, or knowingly attempts to destroy, damage, waste, dispose of, transfer, or otherwise take any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property under its lawful custody and control, shall be fined under this title or imprisoned not more than 5 years, or both. (*Emphasis added*).

Dkt. 65, Exhibit A.

By sending section 2232(a) notice to Morgan and separately advising counsel and representatives for third party purchasers of the BFP laws (21 U.S.C. § 853(n)(6)(B) and 18 U.S.C. §983(d)), the government was providing guidance as to the requirements of federal forfeiture law (if counsel did not already know) and of the inherent risks that existed if parties went forward with any sales and/or destruction, damage, waste or transfer.

Counsel contends, "section 2232 has never been applied to allege criminal obstruction of forfeiture absent a court order of restraint preceding the act, nor could it be under the plain language of the act." Dkt. 65 at p. 8. The defendant's argument in reference

---

before a hearing can be granted. *See* Kane Letter, p. 2. *See also, United States v. Bonventre*, 720 F.3d 126, 133 (2d Cir. 2013) (to qualify for a post-restraint *Monsanto* hearing, defendant must disclose his net worth, provide a comprehensive list of his assets, and explain how he has been paying his significant living expenses; it is not enough to contrast his income stream and bank account balances with his living expenses and legal fees).

to the Title 18 U.S.C. §2232(a) is essentially that, as a matter of law, the government's sending this letter was premature as it is required to have a restraining or seizure warrant in hand, before Title 18 U.S.C. §2232(a) can be triggered. The defendant's reading of the statute is far too restrictive and is not supported by the law. *See United States v. Sutley*, 2007 WL 329148 (S.D. Ala. Feb. 2, 2007) (there was no evidence, other than the indictment, that the government was about to seize his property; defendant's intent to transfer the property (funds in a bank account) before agents applied for a seizure warrant was sufficient to convict him of conspiracy to violate 18 U.S.C. §2232(a)).

There is even a more fundamental reason that the defendant's argument to be rejected. The plain language of the statute states, "Whoever, *before*, during or after any search for or seizure of property by any person authorized to make such search or seizure knowingly destroys...." (*Emphasis added*). The statute's broad language "before" would encompass the destruction/secreting of assets that occurred anytime "before" a warrant was in hand. "Any destruction at any time to prevent a lawful seizure is prohibited." *United States v. Gibbons*, 463 F.2d 1201 (3rd Cir. 1972). As such in criminal cases, as in civil forfeiture cases, it is proper to send notice regarding section 2232(a) even when a restraining order has not been issued.

5. **Government's General Discussions regarding Bona Fide Purchaser Status and Ancillary Proceedings were Proper.**

   a. **Bona Fide Purchaser Status**

During its limited discussions with representative on Eden Square and View at MacKenzi, the government had general discussions regarding bona fide purchaser status (BFP). In sum, the parties were advised that in order to prevail as a BFP under the law,

third party stakeholders or LLC members would have to adjudicate the validity of his or her interest in the LLC. For example, they must establish by a preponderance of the evidence that they were unaware of the media reports regarding Robert Morgan and cohorts' fraud. *See United States v. BCCI Holdings (Luxembourg) S.A. (Petition of Am. Express Bank II)*, 961 F. Supp. 287, 296 (D.D.C. 1997) (given extensive public record of defendant's misconduct, claimant knew or should have known that defendant's assets were subject to forfeiture; standard is objective reasonableness). They must establish that they were unaware of the *lis pendens* against the 12 Indicted Properties. *See Pacheco v. Serendensky*, 393 F.3d 348, 351 (2d Cir. 2004) (person who is aware there is a *lis pendens* on the property cannot be a bona fide purchaser). They must establish that they were unaware of any underlying fraud involved in a specific property. *See United States v. Frykholm*, 362 F.3d 413, 416 (7th Cir. 2004) (third party who acquired an interest in defendant's property knowing that defendant had engaged in fraud and that the property was unencumbered by debt was on notice—or was willfully blind to the fact—that the property represented funds obtained from the fraud scheme).

### b. Ancillary Proceedings

Counsel complains that the government has yet to explain to third party stakeholders why the net proceeds from the sale of Eden Square would be "seized by the USMS". Dkt. 65, p. 8, 11. To clarify, the USMS would not be "seizing" the net proceeds. The net proceeds would the "substitute res" and replace Eden Square in the SSI. The USMS who are responsible for Department of Justice's forfeiture property management would hold the sale proceeds as the "substitute res." With respect to Eden Square, it was proposed the sale proceeds be deposited in the USMS holding account, an interest bearing account and held in that account until the criminal case is tried. *See also*, Rule G (7) (b) (iv) ("[s]ale

13

proceeds are a substitute res subject to forfeiture in place of the property that was sold. The proceeds must be held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action.")

In the event of a conviction, the government would seek an order of forfeiture of those sales proceeds. If the proceeds were ordered forfeited *via* a preliminary order issued by the Court, then ancillary proceeds would commence with notice to third parties who have a legal interest in the property or proceeds or portion thereof. *See* 21 U.S.C. §853(n) and F. R. Cr. Pro. 32.2(c).

Section 853(k) establishes an orderly process and protects the district court's exclusive jurisdiction. Section 853(k) establishes § 853(n) as the exclusive procedure for determining third party rights in criminal forfeiture cases, and expressly barring third parties from contesting the forfeiture in any other forum. *United States v. Watts*, 786 F.3d 152, 175 (2d Cir. 2015) (holding that, beyond § 853(n)(6)(A), (B), the statute authorizes no challenges to the forfeitability of a defendant's property by interested third parties); *De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006) (until the ancillary proceeding, the ownership of the property is irrelevant; any property involved in the offense of conviction may be forfeited; thus, government does not have to establish defendant's ownership of the property to seize it pending trial or to obtain a preliminary order of forfeiture, and § 853(k) makes it clear that the third party must wait until the ancillary proceeding to assert his rights). *Cf. United States v. Coffman*, 574 F. App'x. 541, 564 (6th Cir. 2014) (in *Libretti*, Supreme Court held that deferring ownership issues to the ancillary proceeding was a policy choice that Congress was entitled to make, even if it does prolong the forfeiture process); *United States v.*

*Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 477 (5th Cir. 2007) (en banc) (section 853(k) ensures an orderly process that relieves government of the burden of having to defend the forfeiture against third party claims during an ongoing prosecution while protecting the third party's right to a day in court in the ancillary proceeding; this procedure does not violate the third party's right to due process).

Therefore, any third party stakeholders or members of Morgan owned/managed LLCs are prevented from making such a claim with respect to the 12 Indicted Properties during the pendency of the criminal case. Any statements by the government regarding third party rights to this effect were proper and correct.

## **CONCLUSION**

WHEREFORE, based upon the above and all the facts and circumstances reflected in the record, this Court should deny defendant's motion in its entirety.

DATED: Buffalo, New York, July 12, 2019.

                            Respectfully submitted,

                            JAMES P. KENNEDY, JR.
                            United States Attorney

By:
                            S/MARY CLARE KANE
                            Assistant United States Attorney
                            United States Attorney's Office
                            Western District of New York
                            138 Delaware Avenue
                            Buffalo, New York 14202
                            (716) 843-5700 ext. 809
                            Mary.Kane@usdoj.gov