UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
: 
UNITED STATES OF AMERICA, :
:
      *Plaintiff*, :
:
v. : 18-CR-108-EAW
:
ROBERT C. MORGAN, et al., :
:
      *Defendants.* :
:
------------------------------------------------------------x

# MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION FOR INTERLOCUTORY SALE OF PROPERTY

GIBSON, DUNN & CRUTCHER LLP
Joel M. Cohen
Lee G. Dunst
Caitlin S. Walgamuth
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000

Attorneys for Defendant
ROBERT C. MORGAN

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ............................................................................................................................................ 4

ARGUMENT .................................................................................................................................. 6

    **A.**    The Court Has Broad Discretion to Deny a Motion for Interlocutory Sale ........... 6

    **B.**    The Government is Not Entitled to an Interlocutory Sale Under Rule 32.2(b)(7) or Rule G(7) ................................................................................................ 7

    **C.**    The Government is Not Entitled to an Interlocutory Sale on the Basis of the Forfeiture Allegation Alone ............................................................................ 10

    **D.**    An Interlocutory Sale of Eden Square is Not in the Interests of Justice .............. 11

        **1.**    The Government's Extralegal Demands Caused the Delayed Closing ................................................................................................... 11

        **2.**    The Government Seeks to Seize Eden Square Proceeds Rather Than Allow Them to Be Used to Pay Notes Funds Investors .................. 12

        **3.**    The Interlocutory Sale Impacts Third Parties' Interests .......................... 12

        **4.**    The Government's Motion Highlights the Ongoing Confusion Created by the Government's Communications and Actions to Date ........................................................................................................... 12

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Honeycutt v. United States*,
　137 S. Ct. 1626 (2017)..................................................................................................1, 2, 8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
　559 U.S. 393 (2010)....................................................................................................................8

*Unied States v. Cosme*,
　796 F.3d 226 (2d Cir. 2015).............................................................................................. *passim*

*United States v. Esposito*,
　970 F.2d 1156 (2d Cir. 1992)..................................................................................................11

*United States v. Maye*,
　2011 WL 233020 (W.D.N.Y. June 24, 2011)..........................................................................11

*United States v. Morgan, et al.*,
　19-civ-661 (W.D.N.Y. June 5, 2019)........................................................................................5

*United States v. Approx. 81,454 Cans of Baby Formula*,
　560 F.3d 638 (7th Cir. 2009) ....................................................................................................7

*United States v. Dispascali*,
　No. 09 Cr 764, 2010 WL 9002774 (S.D.N.Y June 18, 2010).....................................................8

*United States v. Hall*,
　877 F.3d 676 (6th Cir. 2017) ....................................................................................................7

*United States v. Real Properties Situated at 105 Graff Lane, Quarry Creek,
　Charleston, Kanawha Cty.*,
　W. Va., No. 2:10-CV-00992, 2011 WL 5975820 (S.D.W. Va. Nov. 28, 2011).........................7

*United States v. Fisher*,
　2015 WL 5824359 (W.D.N.Y. Oct. 6, 2015) .....................................................................1, 10

**Statutes**

21 U.S.C. § 853................................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. Supp. R. G(7) ............................................................................................ *passim*

Fed. R. Crim. Pro. 32.2(b)(7).............................................................................................. *passim*

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Other Authorities**

U.S. Department of Justice Asset Forfeiture Policy Manual (2019) ...................................... *passim*

# PRELIMINARY STATEMENT

The United States Attorney's Office (the "government") comes before the Court seeking an order for the immediate, interlocutory sale of a residential apartment complex at 9000 Old Station Road, Cranberry, Pennsylvania known as Eden Square (hereinafter "Eden Square") *without consent of all of its owners and notice to all stakeholders*. In doing so, the government erroneously claims it is entitled to such relief merely because it alleged Eden Square is subject to forfeiture in this action. Dkt. 71 at 2; Dkt. 42 (Superseding Indictment) at 51–56. The government is wrong that it is entitled to such extraordinary relief. The government agrees that Eden Square is *not* subject to any court-ordered pretrial restraint or a seizure warrant that could subject it to the lawful authority of the government under the forfeiture laws, yet moves to go far beyond a pretrial restraint or seizure and force its sale without the prior consent of its owners in order to seize net proceeds from that sale. Dkt. 76 at 3; *see also* Dkt. 66 at 6–7, ¶ 20.

The government's application for relief relies on an unsupported interpretation of procedural rules[1], contradicted by language within those very rules, and which would undermine and "circumvent Congress' carefully-constructed statutory scheme" relating to criminal forfeiture. *Honeycutt v. United States*, 137 S. Ct. 1626, 1633 (2017). Simply put, an allegation of forfeiture tacked onto the end of an indictment does not *per se* satisfy the government's burden of demonstrating probable cause that Eden Square is traceable to the allegations at issue. *See United States v. Cosme*, 796 F.3d 226, 234–35 (2d Cir. 2015) (remanding for a probable cause finding where the district court "relied on a mistaken understanding" that the grand jury voted on the forfeiture allegations in the indictment when it had not); *United States v. Fisher*,

---

[1] Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure (hereinafter "Rule 32.2(b)(7)") and Rule G(7) of the Supplemental Rules of Civil Procedure, also known as the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereinafter "Rule G(7)"). Dkt. 71 at 1.

2015 WL 5824359, *7 (W.D.N.Y. Oct. 6, 2015) (there is no "grand jury finding of probable cause" for forfeiture unless the grand jury conducts a separate vote on forfeitability). As the government may not seize assets without ever showing probable cause necessary for a court-ordered restraint, *Cosme,* 796 F.3d at 234, it follows that no forced interlocutory sale can be ordered absent such a showing.[2] The government has no lawful authority to a pretrial restraint (much less a forced interlocutory sale) if it has not proven, to the Court's satisfaction, that "(1) the defendant has committed an offense triggering forfeiture, and (2) that 'the property at issue has the requisite connection to the crime.'" *Honeycutt,* 137 S. Ct. at 1633 (analyzing Section 853(e), the criminal forfeiture provision to restrain a property pretrial) (internal citations omitted). The government appears to think that a forfeiture allegation in an indictment bestows on the government the authority to force a third party to sell a property and seize all such proceeds. The government's construction of the forfeiture laws is incorrect, and would render the governing statute and case law interpreting it a nullity. *Indeed, the government has cited to the Court no precedent in which an interlocutory sale has been ordered on the sole basis of a forfeiture allegation in an indictment.*

In addition to not identifying a legal basis for the extraordinary relief it seeks, the government also fails to note that it is the primary cause of the conditions they claim justify their request. The government's conduct has caused the very delay it claims as the purported basis for the forced interlocutory sale under Supplemental Rule G(7) of the Federal Rules of Civil Procedure, as incorporated by Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure. The government inaccurately represented to counsel for Eden Square's owner, Cranberry Vista

---

[2] According to the U.S. Department of Justice's Asset Forfeiture Policy Manual, a seizure "involves the physical restraint of an asset or its transfer from the owner or possessor to the custody or control of the government, primarily through a law enforcement agency." U.S. Department of Justice Asset Forfeiture Policy Manual Ch. 2, I (2019) (the "Asset Forfeiture Policy Manual") (Dkt. 66-18 at 40).

2

Apartments LLC, that all sales proceeds *must* be seized by the United States Marshals Service ("USMS") because the property was "indicted," Dkt. 66 at 3, ¶ 8; Dkt. 66-4 at 2, and absent those terms, no sale would be "allow[ed]." Dkt. 73 at 3. The government omits from its instant motion that it insisted on these preconditions to Eden Square's sale and drafted a stipulation for the private parties to the Eden Square transaction.[3] Indeed, it is the government's incorrect assertion of such purported authority to dictate the sale terms, *including the demand that all Eden Square sale proceeds be deposited with the USMS for an indefinite period of time, without court order*, that caused the delay in the June 6, 2019 sale that it now claims must occur to preserve the property's value.

Accordingly, even if there were a legal basis for the government's demand, the relief sought by the government would result in a perversely unjust outcome. The government's demand that the remaining proceeds sit for years in a USMS account would impede repayment to Notes Funds investors through the Court-ordered receivership process consented to by Mr. Morgan and the Securities and Exchange Commission ("SEC"). The government has known since at least June 3, 2019 (if not earlier) that it is the owners' intent to use the proceeds from the sale of Eden Square to pay down Eden Square's existing Notes Fund debt for the benefit of individual Notes Funds investors (including many who reside in the Western District of New York). Cohen Decl. ¶ 2, Ex. 1. Notwithstanding the interests of individual investors in the Notes Funds, the government asserts, without explanation, that somehow these proceeds are best kept in the custody of the U.S. government and it would oppose to any third-party claim, never

---

[3] The government's motion to expedite a hearing on its motion for an interlocutory sale references its "discussions" about whether the government would "allow[] the sale of Eden Square to proceed" if net proceeds were seized by the USMS. Dkt. 73 at 3. Curiously, this is omitted from its motion for interlocutory sale. The government never, in any submission to the Court, explains the basis for its purported legal authority to "allow[] the sale of Eden Square." *Id.*

3

addressing the adverse impact its request would have on local and other investors. Cohen Decl. ¶¶ 3–4; Dkt. 66-4 at 2; Dkt. 66-6 at 2.

The government's fundamental misunderstanding of the statutory criminal forfeiture scheme is at the core of the dispute here. That the government continues to exceed the limits to its pretrial forfeiture powers and continues, as with this motion, to generate insupportable confusion among market participants, is the very reason Mr. Morgan filed a separate motion seeking confirmation of the lack of any court-ordered pretrial restraints on Mr. Morgan's property. *See* Dkts. 64–66. The Court must deny the government's motion for an interlocutory sale and confirm for the government, property stakeholders, and the public the fact there is no pretrial restraint or seizure on any of Mr. Morgan's properties because unless the Court so acts, the government will continue to misstate its authority and stymie legitimate property sales.

## **FACTS**

The government seeks an immediate, interlocutory sale of Eden Square because, according to the government, a sale originally planned for June 6, 2019 has not yet occurred, and allegedly as a result of that delay, a refinance mortgage loan has defaulted and is accruing fees. Dkt. 71 at 3. However, the government's Motion ignores that it has not obtained consent from the property's owners to the sale, and fails to recognize that its own extralegal demands and opposition to the sale in the days leading up to the June 6, 2019 closing date created the very delay it now argues necessitates the Court's intervention.

Prior to the planned June 6 closing, the government prepared a draft stipulation and then sent this draft to counsel for stakeholders in Eden Square. Dkt. 66 at 3, ¶ 7; Dkt. 66-3 at 3, 5. The government's draft stipulation sets forth extralegal terms it required for the government's approval of the sale, including the demand that all net proceeds from the sale of Eden Square be

4

seized by the USMS and held in the USMS's Seized Asset Deposit Fund as "substitute res" until the conclusion of the criminal action and any (as yet unfiled) forfeiture actions or "until further order of the Federal Court." *Id.* The government told stakeholders' counsel it would oppose any third-party claim to release the net proceeds before this time and thus deny third-party stakeholders access to these sales proceeds for several years. Cohen Decl. ¶ 4; Dkt. 66-6 at 2. The government also sought to prohibit any proceeds from the sale going to Eden Square's owner, Cranberry Vista Apartments LLC, Mr. Morgan, or his family members or entities "until further federal court order." Dkt. 66-3 at 6. At no point in its communication with stakeholders did the government clarify it lacked authority to prevent the planned June 6 sale of Eden Square or impose these terms on private parties to this transaction. Rather, the government capitalized on stakeholders' confusion over its apparent authority to dictate the terms and timing of a sale of real property. *See e.g. id.;* Dkt. 66-6 at 2.

The Eden Square stakeholders did not agree to the government's extralegal seizure of the sale proceeds of Eden Square, and as a result of the uncertainty created by the government's actions, the sale has not occurred. The parties' stated intent was at the time and remains today to use net proceeds from the sale of Eden Square to pay down loans made by the Notes Funds to Eden Square through the receivership process ordered by the Court with the assent of Mr. Morgan and the SEC in *United States v. Morgan, et al.,* 19-civ-661 (W.D.N.Y. June 5, 2019). Cohen Decl. ¶ 2; Ex. 1. The government has known this for over a month, that Eden Square's sales proceeds would go to benefit the Notes Funds investors (many of whom reside in the Western District of New York). Thereafter, it nonetheless demanded that those net proceeds instead be seized by the USMS and also stated it would oppose any third-party claim to the proceeds. Indeed, on June 3, 2019, counsel for Eden Square explained to the government that

5

Eden Square had, in addition to the Ladder secured mortgage, Notes Fund debt and that "the parties desired to use the proceeds from the sale transaction to pay down the Notes Fund debt." *Id.* And yet within days thereafter, the government insisted to stakeholders that, rather than repay Notes Funds debt for the benefit of Notes Funds' investors, Eden Square's net proceeds must be seized by the U.S. government, locked away indefinitely from any third-party claim until the conclusion of its pending criminal case against Mr. Morgan. Dkt. 66 at 4, ¶ 10; Dkt. 66-7 at 2.

Despite the government's heavy-handed actions, the parties did not abandon their lawful rights to freely contract and dispose of Eden Square absent a court-ordered restraint or seizure. But the government's actions and the confusion generated have delayed the Eden Square deal from closing, bringing about the very scenario it now cites as the basis to demand the court mandate their extralegal terms.

## **ARGUMENT**

### A.     **The Court Has Broad Discretion to Deny a Motion for Interlocutory Sale**

The government cites Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure as the purported basis for its motion. Dkt 71 at 1; Fed. R. Crim. Pro. 32.2(b)(7) ("At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable."). Rule G(7) permits the Court to order the interlocutory sale of a property if it is at "risk of deterioration, decay, or injury by being detained in custody pending action"; the expense of keeping the property is excessive or disproportionate to its fair market value; the property is subject to a mortgage or to taxes of which the owner is in default; or "the court finds other good cause." Fed. R. Civ. P., Supp. Rule G(7)(b)(i).

6

Even where one of the enumerated conditions in Rule G(7) is present, the Court has broad discretion to deny a motion for an interlocutory sale and must "weigh the competing interests in each case." *United States v. Hall*, 877 F.3d 676, 685 (6th Cir. 2017) (upholding the denial of an interlocutory sale, citing that "[t]he advisory committee notes to the Federal Rules of Civil Procedure . . . state that 'court[s] must carefully weigh the competing interests in each case' when deciding whether to direct an interlocutory sale of property subject to forfeiture") (internal citation omitted). Rule G(7) "affords the district court a wide degree of latitude in making the decision of whether or not to order [an] interlocutory sale." *United States v. Real Properties Situated at 105 Graff Lane, Quarry Creek, Charleston, Kanawha Cty., W. Va.*, No. 2:10-CV-00992, 2011 WL 5975820, at *2 (S.D. W. Va. Nov. 28, 2011) (citing *United States v. Approx. 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009) (discretion under Rule G(7) is "considerable")).

## B. The Government is Not Entitled to an Interlocutory Sale Under Rule 32.2(b)(7) or Rule G(7)

As a threshold matter, the government has failed to provide authority for its extraordinary claim that it is entitled to a forced interlocutory sale of Eden Square. The only argument the government suggests in its motion would require misapplying and misinterpreting procedural rules to circumvent a governing statute that does not provide for such relief.

Where, as here, "criminal forfeiture is the only judicial forfeiture action that is commenced . . . the government must either obtain a criminal seizure warrant issued pursuant to 21 U.S.C. § 853(f), or an order issued pursuant to 21 U.S.C. § 853(e)" in order to possess or restrain the property. Asset Forfeiture Policy Manual, Ch. 2, III.C.1 (Dkt. 68-18 at 44). This requires the government to "prove[], *at a hearing,* that (1) the defendant has committed an offense triggering forfeiture, and (2) that 'the property at issue has the requisite connection to the

7

crime.'" *Honeycutt.*, 137 S. Ct. at 1633 (internal citation omitted) (analyzing 21 U.S.C. § 853(e)) (emphasis added), *see* 21 U.S.C. § 853(e)(1)(A). Both factors require probable cause findings. *Cosme*, 796 F.3d at 233–34.

Courts in this Circuit, and the Supreme Court, have repeatedly recognized that section 853 is the mechanism by which the government may obtain pretrial restraints in criminal forfeiture actions. *See e.g. Honeycutt*, 137 S. Ct. at 1633 (2017) (applying section 853 and finding pre-trial restraint was authorized upon finding of probable cause); *Cosme,* 796 F.3d at 234 (finding section 853 an appropriate mechanism for pretrial seizure in wire fraud case but remanding for a finding of probable cause). These Courts also have grappled with the serious constitutional implications of pre-trial seizure or taking of a defendant's property. *See e.g. Cosme*, 796 F.3d at 226 (analyzing section 853 and discussing Fourth, Fifth, and Sixth Amendment implications of forfeiture).

It is telling that the government does not cite any precedent for the extreme action it seeks: an interlocutory sale of real property, over owners' objections, that is not subject to court-ordered restraint or lawful government seizure. The only case the government cites in support of its motion is wholly inapplicable to the present case. In *United States v. Dispascali*, the defendant had already pled guilty *and* consented to forfeiture before an interlocutory sale was granted. No. 09 Cr 764, 2010 WL 9002774 at *1, *4 (S.D.N.Y June 18, 2010). Those obviously are not the facts before the Court in this case, and in no way support the extreme relief the government seeks.

The government looks to *procedural rules* as the basis for the relief it seeks. Its reliance on Rule G(7), as adopted by Rule 32.2(b)(7), simply misses the mark. A procedural rule cannot trump the express statutory provisions enacted by Congress. *See Shady Grove Orthopedic*

*Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) (procedural rules may govern only "the manner and the means by which the litigants' rights are enforced" and may not "alter[] the rules of decision by which [the] court will adjudicate [those] rights") (internal citations omitted). And, it is simply not the case that these procedural rules were intended to flout a statutory regime, much less one governing in a constitutionally-sensitive area of the law. *See* the Advisory Committee notes to Rule 32.2, regarding the adoption of G(7), "[t]he amendment governs such ***mechanical and technical issues*** as . . . the interlocutory sale of property, bringing ***practice*** under the Criminal Rules into conformity with the Civil Rules." (emphasis added). In sum, what the government seeks is to rely upon procedural rules to effectively eviscerate the requirements of section 853.

In any event, the text of Rule 32.2 and Rule G(7) further evidence the illogical nature of the government's argument. First, Rule 32.2(b)(7), which adopts Rule G(7), is under Rule 32.2 subsection (b), "Entering a Preliminary Order of Forfeiture." Rule 32.2(b) sets forth the steps taken *after* a verdict or finding of guilt or after a plea on a forfeiture count, and discusses the procedures to, among other things, enter a preliminary forfeiture order, seize property *upon* a preliminary forfeiture order, sentencing, and providing notice of a forfeiture order. Fed. R. Crim. P. 32.2(b)(1)–(6). Additionally, Rule G(7) requires that interlocutory sales be made "by a United States agency ***that has authority to sell the property***, by the agency's contractor, or by any person the court designates." Fed. R. Civ. P., Supp. Rule G(7)(ii) (emphasis added), and it offers no support for its supposed authority to do so here.

Accordingly, as the only basis cited by the government, these rules do not provide the authority for the extraordinary relief sought, the inquiry should end here, and the government's motion should be denied.

## C. The Government is Not Entitled to an Interlocutory Sale on the Basis of the Forfeiture Allegation Alone

The fact that Eden Square is among the properties alleged to be subject to forfeiture in the Superseding Indictment does not offer the government support or an independent basis for an interlocutory sale, *see* Dkt. 71 at 2, because the forfeiture allegation alone does not satisfy the government's probable cause showing that Eden Square is traceable to the allegations as required for forfeiture. In this Circuit, the government may not "seize assets without ever showing probable cause," *Cosme,* 796 F.3d at 234, and there is no probable cause unless the grand jury specifically voted that there "was a factual nexus between the conduct charged [and] the assets targeted for forfeiture," *United States v. Fisher,* 2015 WL 5824359 at *2, *7 (W.D.N.Y. Oct. 6, 2015) (rejecting government's argument that it "made a sufficient showing of probable cause by virtue of the indictment which included a forfeiture allegation, [and] nothing more is required," and finding there is no "grand jury finding of probable cause" for forfeiture unless the grand jury conducts a separate vote on forfeitability); *see also Cosme*, 796 F.3d at 234–35 (remanding for a probable cause finding where the district court "relied on a mistaken understanding" that the grand jury voted on the forfeiture allegations in the indictment). Indeed, the Asset Forfeiture Manual counsels the government that "[i]f the grand jury *was actually asked to make such a finding* in the course of its deliberations on the indictment, prosecutors *may properly represent to the court, in connection with an application for a post-indictment restraining order or otherwise, that the grand jury has found probable cause to believe that the requisite forfeiture nexus exists with respect to any other property listed in the indictment as forfeitable*." Asset Forfeiture Policy Manual, Ch. 6, II.B.7 (Dkt. 66-18 at 118) (emphasis added). Notably, the government has not made any such representation here with respect to Eden Square.

**D.     An Interlocutory Sale of Eden Square is Not in the Interests of Justice**

Notwithstanding the government's failure to property move for an interlocutory sale of Eden Square or establish probable cause sufficient to demonstrate Eden Square is subject to forfeiture, the Court should exercise its broad discretion to weigh all relevant factors and deny this motion.

**1.     The Government's Extralegal Demands Caused the Delayed Closing**

The government has caused the very basis for which it now seeks an interlocutory sale. The government states that the planned June 6 closing "has not yet taken place" but fails to note its own intrusive role in negotiations in the days leading up to the proposed June 6 closing. *See* Cohen Decl. ¶¶ 2–4. But for the government's extralegal demand to seize all net proceeds from the sale and threats to oppose legitimate third-party claims to proceeds, as set forth in *the draft stipulation the government prepared and provided to counsel for some stakeholders*, the June 6 sale would likely have closed as scheduled. The resulting mortgage default, the government concedes, is a result of the delay in the June 6 closing. *See* Dkt. 73 at 2; Dkt. 71-1 at 2, ¶ 4 (DiOrlio Decl.).

The delay of the sale is "principally the fault of the government" and, as such, the government should not be able to now, through court order, force the parties to the government's extralegal terms. *See United States v. Esposito*, 970 F.2d 1156, 1161 (2d Cir. 1992) (denying interlocutory sale for several reasons, including the government bearing the responsibility for the unreasonable delay in proceeding with the adjudication of the forfeiture action); *see also United States v. Maye*, 2011 WL 233020 at *1 (W.D.N.Y. June 24, 2011) (denying government's motion for an interlocutory sale and, citing *Esposito*, finding the diminished value and costs incurred for vehicles subject to seizure were the fault of the government).

11

### 2. The Government Seeks to Seize Eden Square Proceeds Rather Than Allow Them to Be Used to Pay Notes Funds Investors

The government's motion for an interlocutory sale would require the proceeds to be held by the USMS rather than be used to pay Notes Fund investors. As the government notes in its motion, Rule G(7) requires proceeds from an interlocutory sale to be held by the Unites States. Fed. R. Civ. P., Supp. Rule G(7)(b)(iv). The government's position is not in the best interests of the parties because Eden Square's owners *intend to use proceeds to pay down Notes Funds*—and the government was aware of this in the days *before* it demanded all proceeds be held by the USMS and stated the government's opposition to any third-party claims. Cohen Decl. ¶ 2, Ex. 1. Despite its newfound acknowledgment of the potential harm to "Note Investors" in Eden Square, Dkt. 71 at 5, the government's own motion would prevent Notes Fund debt from being repaid in the ordinary course and deny individual Notes Fund investors from being repaid much sooner.

### 3. The Interlocutory Sale Impacts Third Parties' Interests

Eden Square's multiple owners, Notes Funds investors, and the court-appointed Receiver all have interests in disposition of the net proceeds from a sale of Eden Square. Cohen Decl. ¶ 8. An interlocutory sale under Rule G(7) would require all net proceeds be held by the USMS without regard to these other parties' needs for those funds. Fed. R. Civ. P., Supp. Rule G(7)(b)(ii). The requested relief would impact the rights of all these parties not before this Court.

### 4. The Government's Motion Highlights the Ongoing Confusion Created by the Government's Communications and Actions to Date

The government continues to misapprehend the statutory requirements that it must follow in order to seize property and continues to generate misinformation in the marketplace. For example, in their public motion to expedite this hearing, the government states it engaged in discussions about "allowing" a sale of Eden Square to go forward if net proceeds were held by

the USMS for an indefinite period of time.  Dkt. 73 at 3.  While its claim to "allow" or "oppose" such a transaction is indeed what it has been saying to sellers, buyers, lenders, and title companies since May 2019, the government has no such independent authority to "allow" the sale of Eden Square or any other property.  This is why Mr. Morgan has sought intervention by the Court in his pending motion.  The government's more recent motion makes even clearer that absent court intervention, the government will continue to misstate its role in and authority to affect pre-trial property sales and disposition of assets, to the detriment of Mr. Morgan, other stakeholders, and Notes Funds investors.  The Court should deny the government's motion for an interlocutory sale of Eden Square, both because the government is not entitled to the sale, and because the balancing of interests, including potential damage to Notes Funds investors, warrants denial of the government's motion.

## CONCLUSION

For the reasons set forth herein, Mr. Morgan respectfully requests that this Court deny the government's motion for an interlocutory sale of Eden Square.

Dated: July 15, 2019
New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Joel M. Cohen*
Joel M. Cohen
Lee G. Dunst
Caitlin S. Walgamuth

200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000

*Attorneys for Defendant Robert C. Morgan*