UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                :

   THE UNITED STATES OF AMERICA,     :

                                :    18-CR-108-EAW

   v.                                :

   ROBERT C. MORGAN, et al.          :    **DEFENDANT'S MOTION TO**
                                :    **DISMISS THE SUPERSEDING**
                  *Defendants.*    :    **INDICTMENT**

                                :

                                :
------------------------------------------------------------x

## <u>MR. MORGAN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR VIOLATION OF THE SPEEDY TRIAL ACT AND VIOLATION OF MR. MORGAN'S RIGHT TO A SPEEDY TRIAL</u>

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ....................................................................... 3

I.       Background and Relevant Discovery Deadlines............................... 3

II.      The Court's Conditional Exclusion of Speedy Trial Act Time If The Government
         Met Its July 31, 2019 Discovery Deadline.......................... 5

III.     The Government's Rule 16 Discovery Failures................................ 7

IV.      The Government's Noncompliance Demonstrates Gross Negligence and a Willful
         Disregard for Its Discovery Obligations ........................... 9

I.       The Superseding Indictment Must Be Dismissed Because at Least 106 Days of
         Unexcluded Time Have Elapsed Since Mr. Robert Morgan's Indictment. ..... 13

II.      The Dismissal Must Be With Prejudice............................................ 17

         A.       The Non-Violent Nature of the Alleged Offense Weighs in Favor of
                  Dismissal With Prejudice................................... 17

         B.       The Government's Chronic Failure to Meet Its Rule 16 Discovery
                  Obligations and the Court's Deadlines Warrants Dismissal with Prejudice........ 19

         C.       The Amount of Time that Has Elapsed Since Expiration of the Speedy
                  Trial Clock Is Serious and Weighs In Favor of Dismissal With Prejudice. ........ 24

         D.       The Impact of Reprosecution Weighs in Favor of Dismissal with Prejudice
                  due to the Government's Pattern of Disregard for the Act, and the
                  Prejudice to Mr. Morgan that Would Result from Further Delay and a
                  New Indictment........................................... 25

III.     The Indictment Must Be Dismissed for the Separate Reason that the
         Government's Delay Violated Mr. Morgan's Sixth Amendment Right to a Speedy
         Trial................................................................. 27

CONCLUSION................................................................ 30

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Barker v. Wingo,*
    407 U.S. 514 (1972)................................................................................................28, 30

*Bloate v. United States,*
    559 U.S. 196 (2010)................................................................................................13, 14

*Doggett v. United States,*
    505 U.S. 647 (1992)......................................................................................................28

*Fairley v. United States,*
    No. 06 Cr. 89, 2011 WL 1097537 (S.D.N.Y. Mar. 22, 2011) ................................18

*Klopfer v. North Carolina,*
    386 U.S. 213 (1967)......................................................................................................27

*Moore v. United States,*
    No. 13-CR-487 (CBA), 2018 WL 9439860 (E.D.N.Y. Sept. 12, 2018)................................15

*Spencer v. United States,*
    No. 92-CV-763S, 1993 WL 405493 (W.D.N.Y. Sept. 30, 1993)...........................................14

*U.S. v. Coleman,*
    170 F. Supp. 2d 321 (N.D.N.Y. 2001) ...................................................................23

*United States v. Bert,*
    814 F.3d 70 (2d Cir. 2016)........................................................................... *passim*

*United States v. Black,*
    918 F.3d 243 (2d Cir. 2019)......................................................................... *passim*

*United States v. Carini,*
    562 F.2d 144 (2d Cir. 1977)........................................................................................24

*United States v. Giambrone,*
    920 F.2d 176 (2d Cir. 1990).......................................................................2, 19, 20, 23

*United States v. Green,*
    No. 12-CR-83S, 2018 WL 786185 (W.D.N.Y. Feb. 8, 2018) ..........................20, 28

*United States v. Kelly,*
    45 F.3d 45 (2d Cir. 1995) .........................................................................................14

## TABLE OF AUTHORITIES

Page(s)

*United States v. Leaver*,
  358 F. Supp. 2d 255 (S.D.N.Y. 2004)...................................................................28

*United States v. Montecalvo*,
  861 F. Supp. 2d 110 (E.D.N.Y. 2012) ...............................................17, 18, 25, 26

*United States v. New Buffalo Amusement Corp.*,
  600 F.2d 368 (2d Cir. 1979)............................................................................25

*United States v. Ostroff*,
  340 F. Supp. 2d 362 (S.D.N.Y. 2004)...........................................................28, 29

*United States v. Pennick*,
  713 F. App'x 33 (2d Cir. 2017) .....................................................................2, 20

*United States v. Pennick*,
  No. 10-CR-191-A, 2016 WL 4089192 (W.D.N.Y. Aug. 2, 2016),
  *aff'd*, 713 F. App'x 33 (2d Cir. 2017)............................................................27, 28

*United States v. Salzmann*,
  417 F. Supp. 1139 (E.D.N.Y.), *aff'd*, 548 F.2d 395 (2d Cir. 1976)........................23

*United States v. Solnin*,
  81 F. Supp. 3d 193 (E.D.N.Y. 2015) ...................................................................18

*United States v. Sterling*,
  763 F. App'x 63 (2d Cir. 2019)..........................................................................28

*United States v. Tigano*,
  880 F.3d 602 (2d Cir. 2018)...........................................................................2, 20

*United States v. Tunnessen*,
  763 F.2d 74 (2d Cir. 1985)..............................................................................14

*United States v. Upton*,
  921 F.Supp. 100 (E.D.N.Y. 1995), *aff'd sub nom. United States v. Dragone*,
  78 F.3d 65 (2d Cir. 1996) ...............................................................................25

*United States v. Vassell*,
  970 F.2d 1162 (2d Cir. 1992)............................................................................28

*United States v. Vispi*,
  545 F.2d 328 (2d Cir. 1976)........................................................................22, 26

## TABLE OF AUTHORITIES

Page(s)

*United States v. Washnuk*,
   No. 07-CR-174A, 2013 WL 2425122 (W.D.N.Y. June 3, 2013) ............................................29

*Zedner v. United States*,
   547 U.S. 489 (2006) .................................................................................................14, 19, 23

**Statutes**

18 U.S.C. § 3161 .................................................................................................... *passim*

18 U.S.C. § 3162 .................................................................................................13, 17

## PRELIMINARY STATEMENT

Eight days before seeking an indictment in this matter, the government chose to execute a public, sweeping search warrant to collect evidence it could not, and concedes it did not, process or analyze in sufficient time to present to the grand jury.  *See, e.g*., Cohen Decl., Ex. A at 4:13–5:12 (8/6/18 Tr.).[1]  Indeed, the government had not even completed its analysis of that evidence *a year later*, when it chose to supersede the indictment and charged Robert Morgan ("Mr. Morgan") as a defendant.  Those choices by the government—which were entirely discretionary—have resulted in Mr. Morgan laboring under the anxiety and opprobrium attendant the criminal indictment for an unnecessarily protracted period while the government slowly, haphazardly, and inexpertly analyzes (or not) the millions of pages and gigabytes of data it seized during that search to identify Rule 16 discovery material.  That is the very harm that speedy trial rights are designed to protect criminal defendants against, and in this case there can be no question that the Speedy Trial Act was violated and the indictment must be dismissed with prejudice.

The delay in this matter is attributable entirely to government, yet the costs are borne exclusively by the defendants.  The government could have avoided the entire issue by complying with its own discovery policy, which provides that for "evidence/information obtained via subpoena, search warrants, or other legal process, with respect to electronically-stored evidence, including e-mails, sufficient time must be allotted for a search of hard drives, disks, and other storage devices" and notes that "***these searches may take a long time, so they should be undertaken well before indictment***."  Cohen Decl., Ex. H. (Discovery Policy, United

---

[1]  Citations to "Cohen Decl." refer to the January 31, 2020 Declaration of Joel M. Cohen.  Citations to "Hyde Aff." refer to the January 31, 2020 Affidavit of Robert Hyde.  Both documents are filed in support of this motion.

1

States Attorney's Office, Western District of New York, October 2010) (emphasis added).   Nearly two years after indictment, and faced with an ever-growing list of basic discovery failures, including the inability to identify and timely disclose *four electronic devices* seized *over eighteen months ago*, chronic production deficiencies, the employment of facially inadequate processes to identify Rule 16 material, and repeated omissions of *still more* categories of discovery in the government's possession, the government concedes its discovery processes are "clearly insufficient."  *Id.* at Ex. F at 48:21–23 (1/27/2020 Tr.).   And yet, it remains unrepentant:  suggesting, incredibly, that the egregious failures are merely "routine[]" and can be chalked up to "additional discovery," *id.* at 83:2–4—part of a pattern of wholly inaccurate representations designed to obfuscate Rule 16 failures, rather than address them.  This willful disregard is part of a pattern of neglect reflecting the "lackadaisical attitude on the part of the government attorney in charge of the case [and] a pattern of dilatory practices on the part of the United States Attorney's office."  *United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990) (upholding a dismissal with prejudice where the WDNY United States Attorney's Office twice failed to raise or try to meet Speedy Trial Act deadlines).  The government's failures are not only serious in this case—they are systemic and, thus far, have continued despite repeated judicial approbation.  *See, e.g., United States v. Black*, 918 F.3d 243, 253 (2d Cir. 2019) ("Today we hold for the third time in two years that criminal defendants' rights to a speedy trial have been violated in the Western District of New York."); *United States v. Tigano*, 880 F.3d 602 (2d Cir. 2018); *United States v. Pennick*, 713 F. App'x 33 (2d Cir. 2017) (summary order).

The lamentable record here, measured against that broader pattern, strongly supports dismissal of the indictment on Speedy Trial grounds with prejudice.  Past is prologue, and nothing less will stand a chance of changing this pattern of neglect.

## STATEMENT OF FACTS

**I.      Background and Relevant Discovery Deadlines**

On May 14, 2018, the government searched the offices of Morgan Management and seized, *inter alia*, eight computers, two iPhones, and five external hard drives containing electronic data from at least one computer server.  Dkt. 157-1 at 86–97 (Morgan Management Receipt for Property Received/Returned and Summary of Search Warrant Inventory Receipts). The government also executed a search warrant on Frontier Cybercenter to obtain additional Morgan Management computer servers.  Dkt. 19 at 4.

On May 22, 2018, the government filed an indictment against Frank Giacobbe, Todd Morgan, Kevin Morgan, and Patrick Ogiony.  Dkt. 1.  The Court ordered the government to complete all discovery by July 27, 2018.  Dkt. 16.  At the time the Court issued that order, the government did not raise any objection to the proposed deadline.  *See* Cohen Decl., Ex. A at 11:14–17 (8/6/2018 Tr.).  Yet, the government failed to produce *a single piece of discovery* until less than a week before the deadline, and even then, did not provide any material seized pursuant to the search warrants.  *See* Dkt. 22 at 3; Dkt. 19 at 4–5.  Instead, on the date the production was due to be completed, the government sought a 120-day extension.  Dkt. 19 at 5.

At the August 6, 2018 conference held to address the government's extension request, Magistrate Judge Schroeder expressed his frustration at the government's disregard of the Court's discovery deadline, *see* Cohen Decl., Ex A at 10:17–24 (8/6/2018 Tr.); *see also id.* at 19:2–8.  He explicitly warned the government that it was creating a "conundrum . . . in the context of speedy trial" by its inability to turn over all discovery in the government's possession until six months after it indicted the case.  *Id*. at 27:21–29:14. Magistrate Judge Schroeder added:

3

> THE COURT:  . . . And I think the government fell short of its obligation to meet the requirements of the [C]onstitution as regards to speedy trial, and certainly as set forth in the Speedy Trial Act. The government chose to go and get an indictment.  There was no requirement. *You weren't facing a statute of limitations problem as I can see it to rush and get an indictment and then say okay, now we've got to really start doing our homework. To me that is not the way to proceed in a prosecution.*

*Id.* at 28:20–29:6 (emphasis added).  Magistrate Judge Schroeder ordered the government to produce all pre-search warrant discovery to the defense no later than August 24, 2018 and to produce all search warrant discovery by October 12, 2018.  *Id.* at 21:20–23; 32:14–17.  Its piecemeal productions of search warrant discovery were incomplete and meaningfully deficient. *See* Dkt. 24.  For example, as of October 29, 2018, it had failed to produce to defendant Todd Morgan any records from his own laptop computer, despite the five months since the government seized it during the Morgan Management search warrant.  *Id.* at 4.  In addition to being incomplete, the government's productions contained widespread metadata deficiencies and, most critically, were missing source information, preventing the defense from identifying which seized devices, if any, were actually produced.  *Id.* at 3; *see also* Cohen Decl., Ex. B at 9:20–25 (10/31/2018 Tr.).

The government again failed to meet the Court-imposed deadline.  *See id.* at 6:24–7:4. During an October 31, 2018 status conference held to address the government's noncompliance, Magistrate Judge Schroeder expressed his increasing concern about the delay in discovery, *id.* at 2:24–3:11, and worried aloud that the Court did not have an "appropriate stick" to "get the government to comply with [the Court's] scheduling order."  *Id.* at 17:22–25.  In this context, Magistrate Judge Schroeder explicitly contemplated at the conference the possibility of deciding not to continue to exclude time for Speedy Trial Act purposes if the government again failed to meet the Court's discovery deadline.  *Id.* at 17:25–18:7.  Magistrate Judge Schroeder ordered the government to complete its privilege review of the search warrant material by November 30,

2018 and turn over all non-privileged material to the defense by that date. *Id.* at 29:8–15.  He also ordered the parties to create and implement an agreed-upon document protocol by December 21, 2018. *Id.* at 29:21–30:7; *see also* Dkts. 27, 27-1 (Document production protocol).

The government failed to meet its November 30, 2018 deadline to complete its privilege review and produce non-privileged documents to the defense. *See* Cohen Decl., Ex. C at 5:21–6:13 (5/29/2019 Tr.).  In February 2019—nine months after the search warrant was executed, nine months after the defendants were indicted, and seven months after the Court's initial discovery deadline—the government finally produced *some* search warrant discovery to the defense in a sufficient format for review. *See id.* at 20:1–5.

On May 21, 2019, the government filed a superseding indictment, indicting Mr. Morgan and Michael Tremiti, and adding additional charges against Todd Morgan and Mr. Giacobbe.[2] Dkt. 42.  Mr. Morgan was arraigned on May 22, 2019.  Dkt. 45.  The Court imposed a deadline of July 31, 2019 for the production of all discovery.  Dkt. 50 (Scheduling Order).  The first production the government made to Mr. Morgan was on August 8, 2019.  Hyde Aff. ¶ 4.

Since that date, Mr. Morgan received an additional production of records from three seized computers on December 13, 2019. *See id.* ¶ 5.  The government has stated, and the record is clear, that nineteen months after the initial indictment in this matter, discovery is by no means complete.

## II.   The Court's Conditional Exclusion of Speedy Trial Act Time If The Government Met Its July 31, 2019 Discovery Deadline

A week after the government filed its superseding indictment, on May 29, 2019, the parties attended a status conference before Magistrate Judge Schroeder.  The government

---

[2]   Kevin Morgan and Patrick Ogiony both accepted plea agreements. *See* Dkt. 30 (12/21/2018 Kevin Morgan Plea Agreement); Dkt. 36 (3/15/2019 Patrick Ogiony Plea Agreement).

requested an additional 60 days to produce discovery to defendants.  Cohen Decl., Ex. C at 5:23–6:3 (5/29/2019 Tr.).  After the government's previous failures "to make timely production of the discovery materials," Magistrate Judge Schroeder expressed frustration that he was "now hearing the same story all over again."  *Id.* at 8:2–10.  He reiterated his concern that the government might *again* fail to provide all voluntary discovery, notwithstanding the Court's imposition of yet another mandatory deadline, and in so doing infringe on the defendants' rights to a speedy trial. *Id.* at 8:2–19.  Given the government's repeated and egregious noncompliance with the Court's orders to date, Magistrate Judge Schroder expressed the desire to impose "some sort of control and, put it point blank and bluntly, a club" to ensure that the discovery deadline would in fact be met.  *Id.* at 14:11–16; *see also* Cohen Decl., Ex. B at 28:22–23 (10/31/2018 Tr.) (Magistrate Judge Schroeder explaining he "need[ed] to have the threat of a club" to ensure compliance with the Speedy Trial Act).

At the government's request, Magistrate Judge Schroeder agreed to grant the government an additional 60 days to produce all discovery in the government's possession, but noted that if the government again failed to meet the Court's discovery deadline, "the time thereafter that it takes for the government to get that material to the defendants ***will count against the government for purposes of speedy trial requirements, which means the clock will start running as to the government***."  *Id.*, Ex. C at 14:16–22 (5/29/2019 Tr.) (emphasis added). Magistrate Judge Schroeder stated that the time between May 29, 2019 and January 31, 2020 would be excluded from the Speedy Trial Act calculation in the interests of justice to allow "sufficient time within which to produce voluntary discovery material to each defendant and, thereafter, give each defense counsel sufficient time within which to review the material provided, as well as time to prepare."  *Id.* at 28:8–17.  He made clear, however, that "such time

should be excluded for purposes of the Speedy Trial Act *subject to the condition* [] imposed as far as meeting the discovery deadlines are concerned." *Id.* at 27:21–28:5 (emphasis added); *see also* Dkt. 50.  The government, acknowledging its failures to meet the Court's previous discovery deadlines, agreed to that condition.  Cohen Decl., Ex. C at 15:11–18 (5/29/2019 Tr.); *see also id.* at 27:21–28:5.  Counsel for Todd Morgan likewise agreed to the period of exclusion, "subject to [the Court's] previous indication about the consequences of the government not complying with the 60-day voluntary discovery deadline." *Id.* at 27:6–9.

## III.   The Government's Rule 16 Discovery Failures

### A.   Failure to Provide *Any* Records from Four of Ten Devices Seized in May 2018 by the July 31, 2019 Deadline

To date, the government still has not produced any records from Todd Morgan's iPhone, which has been in its possession since at least October 2018.[3]  Indeed, up until January 2020, the government repeatedly assured the Court and Mr. Morgan that it had satisfied its Rule 16 obligations including by producing Todd Morgan's iPhone, *see* Cohen Decl., Exs. E at 56:21–57:4 (12/20/2019 Tr.), Ex. D at 28:15–18 (11/25/2019 Tr.); *see also* Cohen Decl. ¶ 13, and since then has provided only shifting explanations for its mistake.  *Compare* Dkt. 195 at 5 (suggesting government privilege review was complete) *with* Cohen Decl., Ex. F at 48:24–49:2 (1/27/2020 Tr.) (representing that privilege review was in progress).

Similarly, the government did not produce documents from three of the eight computers seized in May 2018 until December 13, 2019 (hereinafter the "Laptops Production"), almost five months after the discovery deadline.  Hyde Aff. ¶ 5.  This belated production contained at least 775,382 **new records** not previously produced by the government.  *Compare id.* ¶¶ 8–14 *with*

---

[3]   These records, which presumably include call records, text messages, photos, and application data, will not be duplicative of the discovery produced to date.  *See* Cohen Decl., Ex. F at 46:2–10 (1/27/2020 Tr.) (government representing that the iPhone is subject to a separate privilege review process given its unique files).

Dkt. 143 at 5–6 (government representing, without basis, "it is likely that many or most of the items on the laptops are duplicative of items already produced" despite having not completed the processing of the three computers).

### B.     Failure to Provide Complete Records by the July 31, 2019 Deadline

Eight days after the third Court-imposed discovery deadline in this case, on August 8, 2019, the government produced incomplete records from five personal devices seized in May 2018.  The deficiencies in that production, detailed below, are further indication of the government's noncompliance with its discovery obligations.

*First,* the search terms the government created and applied to ensure that it only seized records from the devices that were within the scope of the search warrant were plainly insufficient to satisfy Rule 16.[4]  *See* Cohen Decl., Ex. G (the "2019 Search Terms").  Most glaringly, the list includes ***no search terms to identify three of the twelve properties charged in the Superseding Indictment.***  *See id.* (omitting Rugby Square, Morgan Ellicott, and Ellison Heights).  The terms also omit ***Mr. Morgan's name and email address, as well as the names or email addresses of the government's two key cooperators in this Action***, who are both employees of Morgan Management.  *See id.*  That is not all.  The 2019 Search Terms also omit:

- 6 of the 8 financial institutions allegedly to be defrauded, *see* Dkt. 42 (identifying UBS Real Estate Securities Inc., M&T Bank, Evans Bank, N.A., ESL Federal Credit Union, Canandaigua National Bank & Trust or CNB, and Wells Fargo, as financial institutions);

---

[4]   *See, e.g.,* Cohen Decl., Ex. E at 52:18–24 (12/20/2019 Tr.) (THE COURT:  "Right. But so I'm clear, the government went in and copied information from Morgan Management server and it has undertaken its efforts to comply with its Rule 16 obligations by conducting search terms on those hard drives that the government used to copy information from the servers. MR. PENROSE: Correct, Judge."); *see also* Cohen Decl., Ex. F at 62:13–20 (1/27/2020 Tr.) (government describing the "two sets of search terms and only those t[w]o sets of search terms would have been provided to the agents that are actually running searches" to produce material to defendants); Cohen Decl., Ex. B at 20:21–24 (10/31/2018 Tr.) (MR. PENROSE:  "We believe we would have identified any Brady material in what we've seized and provided it to defense counsel.  As I said, we're aware of none.  But any potential Brady material, we believe, would have been provided.").

- both of the real estate services companies that allegedly issued inaccurate appraisals based on false information provided by defendants, *see id.* (Colliers International and CBRE Group, Inc.);

- the general contracting firm that prepared a project analysis based on an allegedly inflated contract amount, *id.* (Capstone Construction Services, LLC); and

- the servicing company that allegedly received falsely certified documents, *id.* (Prudential Asset Resources Inc.).

Rather than capture exculpatory—or even relevant information—the government's 366 search terms appear drafted to find specific communications identified in its search warrant application, *e.g.*, *id.* ("Whiteout," "WTF"), and property transactions wholly outside the scope of the Superseding Indictment, *see generally id.* (listing at least 140 search terms related to properties not charged in the Superseding Indictment).

*Second,* the August 8, 2019 Production is missing important metadata fields, without access to which Mr. Morgan cannot adequately analyze the data and prepare his defense. *See generally* Hyde Aff., *see also* Dkts. 157 & 195 (Mr. Morgan's discovery status reports).

*Third*, the government has yet to produce any privileged communications and attorney work product over which Mr. Morgan directly or indirectly holds the privilege. *See* Dkt. 157; Cohen Decl., Ex. F at 45:4–16 (1/27/2020 Tr.).

## IV. The Government's Noncompliance Demonstrates Gross Negligence and a Willful Disregard for Its Discovery Obligations

In addition to the government's repeated violations of court-ordered discovery deadlines, the government's lack of forthrightness with the Court and the defendants about the reasons for and circumstances surrounding its pattern of noncompliance evince a willful disregard for its constitutional and statutory discovery obligations.

### A.    The Government's Attempts to Hide Its Failures to Meet Its Rule 16 Obligations

The government has continually obfuscated the fact that it failed to produce all material subject to Rule 16 to the defendants and has repeatedly made incorrect representations to the Court about the status of its compliance with its discovery obligations and with the Court's orders regarding discovery production.  The government did not promptly notify the defense or the Court after it discovered[5] three computers seized in May 2018; rather, it waited at least a week, and then attempted to hide its failure by mischaracterizing the computers as "additional discovery" and burying the information in the middle of its opposition brief to Mr. Morgan's motion.  *See* Dkt. 143 at 2.  The government also represented to the Court that "it is likely that many or most of the items on the laptops are duplicative of items already produced"—a representation that was necessarily baseless, and possibly false, since the government admitted that it had not yet imaged the documents and thus would have no basis upon which to characterize, much less draw conclusions about, the content of those documents.  *Id*. at 5–6. Indeed, Mr. Morgan's later analysis of the production confirmed the falsity of the government's claim.  *See* Hyde Aff. ¶ 14.

Similarly, the government represented that Todd Morgan's iPhone had been produced to defense, but notwithstanding those representations to the Court and Mr. Morgan, *see* Cohen Decl., Exs. E at 56:21–57:4 (12/20/2019 Tr.),  D at 28:15–18 (11/25/2019 Tr.), the government had not yet produced any records from Todd Morgan's iPhone and, in fact, still has yet to do so. When it belatedly disclosed to Defendants on January 6, 2020 that Todd Morgan's iPhone was yet another device it had never produced, the government justified its delayed production by

---

[5]   According to the government, it made this discovery "on approximately the same date" as Mr. Morgan filed his motion, November 15, 2019.  Dkt. 138.

vaguely stating that the production had not "cleared [] privilege review."  Dkt. 195-1 at 104

(January 6, 2020 email from AUSA Penrose).  In its January 24 Supplemental Status Report, it

reported that the delay in production was a result of "the government [] not provid[ing] the

iPhone documents to Gibson Dunn to review for privilege," which would occur only after the

government completed its own review.  Dkt. 197 at 5.  However, in a subsequent court

appearance, the government conceded that the iPhone had never been reviewed for privileged

information when it was discovered in January 2020.  *Compare* Dkt. 197 at 5, *with* Cohen Decl.,

Ex. F at 46:17–19 (1/27/2020 Tr.).

### B.    Repeated Refusal to Provide Available Metadata and Failure to Take Reasonable Steps to Correct Errors

The government still has not produced the metadata pertaining to the electronic discovery

materials despite Mr. Morgan's repeated requests for that material and, for the Laptops

Production, its January 10, 2020 deadline to do so.  Dkt. 169 at 2.  The productions the

government did make to Mr. Morgan are plagued by extensive metadata issues that it

erroneously represented cannot be corrected by the government because the metadata is

unavailable.  *Compare* Hyde Aff. ¶ 18 (finding metadata issues sampled are available upon

reprocessing), *with* Cohen Decl., Ex. E at 9:5–13 (12/20/2019 Tr.), *and* Cohen Decl., Ex. F at

16:13–17 (1/27/2020 Tr.) (government representing it looked at "literally thousands" of natives

to confirm whether metadata existed); *see also* Cohen Decl., Ex. F at 12:16–18 (1/27/2020 Tr.)

(THE COURT:  "You've been having these issues since 2018.  The fact that we're now in 2020

and we're still dealing with metadata issues is just stunning, really.").

And in some instances, the government refused to produce certain required metadata

fields.  After repeated requests from Mr. Morgan for custodian metadata information for the

Laptops Production—a field required by the protocol and previously provided by the

government—the government refused to provide the necessary overlay by its January 10 deadline, only acknowledged it *could* do so on the day parties' discovery status reports were due, Dkt. 195-1 at 90 (January 21, 2020 email from AUSA Penrose), and only provided the overlay after the January 27 status conference. *See* Cohen Decl., Ex. F at 25:13–18 (1/27/2020 Tr.); *see also id.* at 28:10–29:5.

### C. Belated and Incorrect Disclosures About Other Categories of Rule 16 Discovery

The government has also repeatedly failed to accurately and completely disclose additional categories of Rule 16 discovery.

For example, the government failed to disclose to the Court or Mr. Morgan that it had possession of and was actively working to access a Morgan Management server, and went so far as to misrepresent to the Court on November 25 that it had disclosed all discovery in its possession. *Compare* Cohen Decl., Ex. D at 28:15–18 (11/25/2019 Tr.) (confirming satisfaction of Rule 16), *with* Dkt. 157-1 at 124 (Government's December 17, 2019 letter disclosing Morgan Management server in its possession since October 2019). The government has provided no explanation for this belated disclosure. *See* Cohen Decl., Ex. E at 43:4–24 (12/20/2019 Tr.). In addition, the government made "blatantly wrong" representations to the Court at the November 25 and December 20 status conferences about the existence of grand jury subpoenas and the likelihood that the responses to those subpoenas would constitute Rule 16 discovery. *Compare* Dkt. 197 at 3, *with* Cohen Decl., Ex. E at 56:21–57:4 (12/20/2019 Tr.); *see also* Cohen Decl., Ex. F at 31:18–21 (1/27/2020 Tr.) (the Court stating that "there have been a number of representations that have been made in November and December by the government that are just blatantly wrong. I mean, just blatantly wrong."). It has provided evasive answers and declined

to respond substantively to specific concerns Mr. Morgan raised about its misuse of the grand jury.  *See* Dkt. 195-1 at 154–58 (January 21, 2020 letter from Cohen).

## ARGUMENT

**I.      The Superseding Indictment Must Be Dismissed Because at Least 106 Days of Unexcluded Time Have Elapsed Since Mr. Robert Morgan's Indictment.**

The superseding indictment must be dismissed because at least 106 days of unexcluded time have elapsed since Mr. Morgan's indictment, which is over a month in excess of the time permitted to elapse between indictment and trial under the Speedy Trial Act.  Dismissal is mandatory:  the Speedy Trial Act requires a criminal defendant's trial commence within 70 days of his indictment or initial appearance, 18 U.S.C. § 3161(c)(1), and "unambiguous[ly] mandate[s]" dismissal upon a defendant's motion where a violation is found.  *United States v. Bert*, 814 F.3d 70, 78 (2d Cir. 2016) (concluding that the court was *required* to dismiss the indictment upon the defendant's motion because the Act's 70-day timeline was exceeded and the only dispute remaining was whether the indictment should be dismissed with or without prejudice); *see* 18 U.S.C. § 3162(a)(2) ("If a defendant is not brought to trial within the time limit required by [the Act], the information or indictment shall be dismissed on motion of the defendant."); *accord Bloate v. United States*, 559 U.S. 196, 199 (2010) (defendant entitled to "dismissal of the charges if [Act's] deadline is not met").  "It is well established that a criminal defendant has no obligation to take affirmative steps to insure that [he will] be tried in a timely manner."  *Bert*, 814 F.3d 70 at 82 (internal quotation marks and citation omitted).  Rather, "[i]t is the court and the government that bear the affirmative obligation of insuring the speedy prosecution of criminal charges."  *Id.* (citation omitted).

Certain periods of time are automatically excluded from the calculation of the Act's 70-day time limit.  *See* 18 U.S.C. § 3161(h)(1)–(6).  In addition, the Act provides that any period of

delay resulting from a continuance granted by a judge shall be excluded from the computation of time that is chargeable if such continuance serves "the ends of justice."  *See* 18 U.S.C. § 3161(h)(7).  In order for the ends of justice exemption to apply, however, the court must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."  *Id.*; *accord Bloate*, 559 U.S. at 214.  In explaining its reasons, the court must consider the factors enumerated at (h)(7)(B)(i)–(iv), such as the complexity or unusual nature of a case.  *Bloate*, 599 U.S. at 214.  "[I]f a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance *must be counted*" for purposes of the Speedy Trial Act.  *Zedner v. United States*, 547 U.S. 489, 508 (2006) (emphasis added).  The Court may not retroactively determine that the ends of justice support an exclusion of that time.  *See United States v. Tunnessen*, 763 F.2d 74, 77 (2d Cir. 1985) ("Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retrospective."); *see also, e.g., United States v. Kelly*, 45 F.3d 45, 47 (2d Cir. 1995) (reversing denial of motion to dismiss where it was "apparent that the district court's *nunc pro tunc* 'ends of justice' finding was ineffective to toll the speedy trial clock").

Here, Magistrate Judge Schroeder granted an exclusion of time "in the interest of justice," pursuant to 18 U.S.C. § 3161(h)(7), "for the reasons stated on the record herein."  *See* Dkt. 50 at 2; *see supra* pp. 5–7.  Magistrate Judge Schroeder thus incorporated by reference the May 29, 2019 hearing transcript setting forth the grounds for that exclusion and that record controls the analysis here.  *See, e.g.*, *Spencer v. United States*, No. 92-CV-763S, 1993 WL 405493, at *4 (W.D.N.Y. Sept. 30, 1993) (relying on the records of relevant status conferences to determine that the judges made the necessary findings "with respect to the 'interest of justice'

14

exceptions").  Indeed, the Scheduling Order is insufficient, on its own, to establish an "ends of justice" exclusion because it does not set forth the requisite findings to support such an exclusion, which were instead detailed in the record.  *See, e.g.*, *Moore v. United States*, No. 13-CR-487 (CBA), 2018 WL 9439860, at *5 (E.D.N.Y. Sept. 12, 2018) (declining to find a proper exclusion of time because court did not "provide the specific reasons" for the exclusion, and instead merely noted that the purpose of the exclusion was to engage in motion practice).

The record is clear that Magistrate Judge Schroeder granted an "ends of justice" exclusion from May 29, 2019 through January 31, 2020 "***subject to the condition***" that the government produce all discovery in its possession by July 31, 2019, at which point the government's failure to meet this deadline would cause the "***clock [to] start running***."  *Id.* at 14:17–21; 27:21–28:4 (emphasis added).  Magistrate Judge Schroeder stated explicitly:  "if [the government] doesn't meet the deadline of providing discovery material, ***the time thereafter that it takes for the government to get that material to the defendants will count against the government for purposes of the speedy trial requirements***, which means the clock will start running as to the government."  Cohen Decl., Ex. C at 14:17–21 (5/29/2019 Tr.) (emphasis added).  He expressed concern with "the issue of speedy trial"—specifically, the government's repeated failures to meet the Court's Rule 16 discovery deadlines in the 18 months since it had indicted the case.  *Id.* at 7:12–8:10.  Indeed, the Speedy Trial Act ***explicitly prohibits*** the exclusion of time as in the interest of justice when a continuance is necessitated by "lack of diligent preparation . . . on the part of the attorney for the government."  18 U.S.C. § 3161(h)(7)(C).  The government agreed to Magistrate Judge Schroeder's condition, Cohen Decl., Ex. C at 27:21–28:4 (5/29/2019 Tr.), and counsel for Todd Morgan similarly only consented to the exclusion of time with explicit reference to the condition.  *Id.* at 27:6–9

(agreeing to the continuance only "subject to . . . the consequences of the government not complying with the 60-day voluntary discovery deadline").

Magistrate Judge Schroeder's condition—that the government complete its production of discovery material by July 31, 2019—was plainly not satisfied and thus the time since the expiration of that deadline "will count against the government for purposes of the speedy trial requirements" per the Court's order. *Id.* at 14:17–22. The government failed to timely produce—*and in many instances has not yet produced*—discovery that has been in its possession since May 2018. Specifically, and as set forth in greater detail, *supra* pp. 10–11, as of the date of this filing, the government still has not produced ***any records from Mr. Todd Morgan's iPhone***, which was seized in the May 2018 search and subject to the May 29, 2019 Scheduling Order. The government also failed to produce any documents from ***three of the eight*** computers seized in May 2018 until December 13, 2019, almost 5 months after the discovery deadline. *Supra* pp. 7, 9–10. The government has not produced Mr. Robert Morgan's privileged communications and work product that the government seized in May 2018, nor has it turned over critical, required, and available metadata for already-produced documents, which is required under the government's own protocol. *Supra* pp. 9–11. Finally, as set forth in greater detail, *supra* pp. 8–9, the government's August 8 production failed to satisfy the Scheduling Order and was patently deficient due to the government's incomplete Rule 16 search terms.

In light of the foregoing, the Speedy Trial Act clock started running on August 1, 2019, the day after the government failed to comply yet again with the Court's discovery deadline, and continues to run today given the government's ongoing failure to complete its discovery production. While certain automatic exclusions may apply to days within the period since August 1, 2019 due to Mr. Robert Morgan's request for an extension of pre-trial motions and

16

motion for the return of property, Dkt. 138 (filed Nov. 15, 2019) & 175 (filed Jan. 2, 2020)—
which were necessitated by the government's failure to comply with the Rules of Federal
Criminal Procedure—there can be no doubt that at least 106 unexcluded days have elapsed
between August 1, 2019 and November 15, 2019.  Accordingly, the government has violated the
Speedy Trial Act and the indictment must be dismissed.

## II.  The Dismissal Must Be With Prejudice.

If a Speedy Trial Act violation has occurred, the only determination this Court must make
is "whether to dismiss an indictment with or without prejudice."  *Bert,* 814 F.3d at 79.  If the
government's ongoing dilatory conduct in this case does not merit a dismissal with prejudice, it
is hard to imagine what would.  Under the Speedy Trial Act, the court must consider the
seriousness of the offense, the facts and circumstances in the case which led to the dismissal, and
the impact on reprosecution on the administration of the Act and the administration of justice.
18 U.S.C. § 3162(a)(2).  In addition to the statutory factors, the Supreme Court has indicted that
prejudice to the defendant should also be considered.  *Bert,* 814 F.3d at 79 (internal citation
omitted).

For the reasons set forth below, only a dismissal with prejudice will adequately redress
the government's gross negligence and willful disregard for its constitutional and statutory
discovery obligations and thus adequately protect Mr. Morgan's right to a speedy trial.

### A.  The Non-Violent Nature of the Alleged Offense Weighs in Favor of Dismissal With Prejudice.

Although the indictment charges felony offenses, "it is not inevitable that every felony []
is categorized as 'serious' for Speedy Trial Act purposes."  *United States v. Montecalvo*, 861 F.
Supp. 2d 110, 115 (E.D.N.Y. 2012) (internal quotation marks and citation omitted).  Rather,

"there are degrees of seriousness" and in any event, seriousness "alone is not determinative," *id.*

at 115–16; and "may be outweighed by the other factors," *Bert*, 814 F.3d at 80.

As an initial matter, "the non-violent nature of the [alleged offenses] is" a relevant factor.

*Montecalvo*, 861 F. Supp. 2d at 116.  Here, the Superseding Indictment does not allege any

crimes of violence and does not contain any suggestion of or reference to acts of violence

threatened or perpetrated by the defendants.  *Cf. Fairley v. United States*, No. 06 Cr. 89, 2011

WL 1097537, at *8 (S.D.N.Y. Mar. 22, 2011) (seriousness of the offense weighed in favor of

dismissal without prejudice where, *inter alia*, defendant "was charged with a series of serious,

violent crimes for which he faced life imprisonment").  The non-violent nature of the offenses

alleged "weigh[s] against" a finding of seriousness.  *Montecalvo*, 861 F. Supp. 2d at 116.

The seriousness of bank fraud varies necessarily with the underlying facts and here, the

Superseding Indictment fails to allege that any of the subject bank loans is in default.  Thus,

there is no allegation that the banks have suffered actual losses.  *Cf. United States v. Solnin*, 81 F.

Supp. 3d 193, 202 (E.D.N.Y. 2015) (concluding that "discrete instances of mail fraud result[ing]

in losses of $8,000 and $5,000 to the respective agencies" were "not, in relative terms,

substantial").  Rather, the Morgan properties that are the subject of the Superseding Indictment

continue to be well-managed, with no interruption in service for the residents and employees.

Under the totality of these circumstances, the Court should, at the very least, "find[] that the

factor of a serious offense . . . does not weigh in favor of either party," *Montecalvo*, 861 F. Supp.

2d at 116, and dismiss the Superseding Indictment with prejudice given the other factors that

manifestly warrant such a result.

**B.**     **The Government's Chronic Failure to Meet Its Rule 16 Discovery Obligations and the Court's Deadlines Warrants Dismissal with Prejudice.**

Chief among "the facts and circumstances in the case which led to the dismissal" that the Court must consider is the government's abject and ongoing failure to comply with its basic obligation to provide discovery material to the defense.  This factor counsels strongly in favor of a dismissal with prejudice.  Anything less than that would render meaningless the guarantee of a speedy trial to those charged with crimes by dismantling the incentive structure Congress designed within the Speedy Trial Act.  *See Zedner*, 547 U.S. at 499 ("[T]he knowledge that a violation could potentially result in [dismissal with prejudice] gives the prosecution a powerful incentive to be careful about compliance.");  *Bert*, 814 F.3d 70 at 83 (dismissing indictment with prejudice for Speedy Trial Act violation and finding that "[p]reserving the threat of dismissal with prejudice in cases of administrative neglect . . . furthers the [Speedy Trial] Act's purpose by incentivizing courts to police their own dockets.").  As discussed further below, the fact that the U.S. Attorney's Office handling this matter has repeatedly violated the Speedy Trial Act in other cases makes it even less likely that anything other than a dismissal with prejudice would incentive the prosecutors to take their obligations to comply with court-ordered deadlines, the Office's own discovery policy, and the discovery rules seriously in the future.

The Speedy Trial Act itself makes the obvious point that "lack of diligent preparation . . . on the part of an attorney for the government" is an improper justification for delaying a defendant's trial.  18 U.S.C. § 3161(h)(7)(C).  But far from a mere "lack of diligent preparation," the circumstances surrounding the government's repeated failures to comply with court-imposed deadlines and ongoing inability to complete its production of Rule 16 discovery in this case demonstrate a  "lackadaisical attitude on the part of the government attorney in charge of the case [and] a pattern of dilatory practices on the part of the United States Attorney's office in the

19

district in question [i.e., W.D.N.Y.]." *See United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990) (upholding a dismissal with prejudice where the W.D.N.Y. United States Attorney's Office twice failed to raise or try to meet Speedy Trial Act deadlines). And the Second Circuit has been clear that "[a] factually supported finding of a pattern of neglect" by the government "may alone suffice to tip the 'facts and circumstances' factor in favor of dismissal with prejudice." *Bert*, 814 F.3d 70, 80–81 (2d Cir. 2016) (internal citations omitted).

To put the issue in context, it is essential to note that the U.S. Attorney's Office prosecuting the instant matter has been found by the Second Circuit on multiple occasions to evince just such a "pattern of neglect." *Giambrone,* 920 F.2d at 182. The Court of Appeals has repeatedly bemoaned that "a cavalier attitude toward speedy trial rights was characteristic of the United States Attorney's Office in the Western District of New York." *Id*. at 180. Just last year, the Second Circuit noted at the outset of a decision on a speedy trial issue that "[t]oday we hold for the third time in two years that criminal defendants' rights to a speedy trial have been violated in the Western District of New York." *Black*, 918 F.3d at 256. And the list of similar findings against this office is long: *See id.*; *Tigano*, 880 F.3d at 619 ; *Pennick*, 713 F. App'x at 36; *Giambrone*, 920 F.2d at 182; *United States v. Kiszewski*, 877 F.2d 210, 214–15 (2d Cir. 1989); *United States v. Fox*, 788 F.2d 905, 909 (2d Cir. 1986); *United States v. Green*, No. 12-CR-83S, 2018 WL 786185 (Feb. 8, 2018).

It is difficult to see how the government's repeated failure to adhere to court-ordered deadlines, regular mischaracterizations of the evidence in its possession, and inability to produce all the items seized in a search *18 months after* it completed that search is anything other than a continuation of the pattern of neglect described above. *See supra,* pp. 7–11. We are not presented here with an isolated lapse and the failures at issue cannot be excused as errors

resulting from ordinary complexities of complex litigation. *See supra,* pp. 7–8. Nor are we dealing with a Speedy Trial Act overrun that is a matter of mere days. In fact, discovery in this matter *is not yet complete* despite the fact the Court ordered, after having granted at least two previous extensions, that the government produce all Rule 16 material by July 31, 2019—*six months ago*. And in many instances, the only reason the defense is even aware of the incomplete status of the discovery is because it has made inquiries to the government that have purportedly prompted the recollection of additional evidence in the government's possession. For example, the government's tardy identification and disclosure of the three computers and Todd Morgan's iPhone in November 2019 and January 2020, respectively, occurred only in response to Mr. Morgan's or the Court's actions.[6] *See* Dkt. 143 at 5 (describing the government's discovery of the three laptops "on approximately the same date" as Mr. Morgan filed his motion); *see also* Cohen Decl., Ex. F at 46:23–47:7 (1/27/2020 Tr.) (THE COURT: "I mean, where is the quality control in terms of making sure that items that were seized pursuant to the search warrant, in fact, were processed? . . if I hadn't ordered the government to identify where in the production various materials were that were seized pursuant to the search warrant, you may never have realized that the Todd Morgan iPhone wasn't processed and reviewed."). Indeed, the government took no meaningful steps to ensure it had identified and produced all voluntary discovery to satisfy its Rule 16 discovery obligations and conceded that any "informal process" it used was "clearly insufficient." *Id.* at 47:10-48:23.

---

[6] The government made little effort to provide defendants with sufficient information to identify what it had produced. Its August 8 production letter provided no explanation of its contents. *See* Dkt. 157-1 at 70. The government only provided an inventory of the seized materials in December 2019 upon Mr. Morgan's repeated requests, *id.* at 6–7, and failed to answer Mr. Morgan's repeated requests for the government to identify Seized Material within the production. *See generally* Dkt. 157 at 4–7; *see also* Dkt. 157-1 at 80–85 (Gibson Dunn's December 4, 2019 request) *and id. at* 99-102 (Gibson Dunn's December 12 and December 16 requests).

The government was aware of the risk of discovery delays causing Speedy Trial concerns when it charged the case and did so regardless.  We know the government was aware because its own discovery manual counsels that:  "sufficient time must be allotted for a search of hard drives, disks, and other storage devices" for "electronically-stored evidence, including e-mails" obtained via subpoena or search warrant, because "these searches may take a long time, **so they should be undertaken well before indictment**."  *Id.*, Ex. H (Discovery Policy, United States Attorney's Office, Western District of New York, October 2010 ) (emphasis added).  If the cost of the government's  willful disregard for the impact that its decision to charge this case a mere eight days after a search that yielded a dozen electronic devices would have on its ability to timely produce discovery, it is the government, and not the defendants, who should bear the costs of that decision—only a dismissal with prejudice would achieve that result.

Compounding all of this, and leading to unavoidable inference that a dismissal with prejudice is the only appropriate remedy, is the fact that the government in this matter cannot be taken at its word.  The government has made repeated misrepresentations that demonstrate, categorically, that the Court cannot rely on its statements about the "the completeness, the thoroughness, or what it has actually done with respect to discovery."  *Id.*, Ex. F at 31:16-32:5 (THE COURT: "there have been a number of representations that have been made in November and December by the government that are just blatantly wrong. I mean, just blatantly wrong. And I don't think I have to tell you how important credibility is. You don't go into a court and say one thing when it's factually inaccurate. And you know and I know, we all know that has happened here.").  Therefore, the only thing we know for certain at this point is that discovery is not complete:  any representations by the government regarding if and when it will be completed are

wholly unreliable, and thus whether this matter will ultimately be able to proceed to trial in a year, as Mr. Morgan desires, is an open question.

Mr. Morgan cannot be asked to labor under "the anxiety and societal pressures of a public accusation of criminal conduct" that speedy trial rights are intended to mitigate for an indefinite amount of time. *United States v. Vispi*, 545 F.2d 328, 335 (2d Cir. 1976). He has endured the "weighty burden" that results from the "anxiety attendant on criminal indictment," *United States v. Salzmann*, 417 F. Supp. 1139, 1168 (E.D.N.Y.), *aff'd*, 548 F.2d 395 (2d Cir. 1976), for longer than would have been necessary if the government had been either responsible about its charging decisions or diligent about its discovery obligations, in which case trial could have proceeded even earlier. And it is not only the defendants who bears the cost of this undue and illegal delay: a "disregard for speedy trial rights . . . harm both the interest of the defendant and the interest of the public, for if the defendant is innocent, he has an interest in early vindication; and if he is guilty, the public has an interest in expeditious punishment." *Giambrone*, 920 F.2d at 181. To allow this action to proceed with a dismissal without prejudice would be an endorsement of the government's derelict behavior and systematic neglect of its obligations to the Court and defendants. *See Zedner*, 547 U.S. at 499; *see also U.S. v. Coleman*, 170 F. Supp. 2d 321, 326 (N.D.N.Y. 2001) (dismissing the indictment with prejudice on the basis of the amount of unexcludable time under the Act and the government's "'extremely lax' attitude toward the requirements of the Act.") (quotation marks in original).

In addition to the government's failure to comply with its discovery obligations, the government's repeated violation of court-ordered deadlines is another "circumstance[] in the case which led to the dismissal" that weighs in favor of dismissal of this Action with prejudice. The government failed, not once, not twice, but *three times* to meet its discovery deadlines.

*Supra* pp. 3–6.  And then, it superseded the indictment, despite still not being prepared to meet its discovery obligations.  *See* Cohen Decl., Ex. A at 29:10–14  (8/06/2018 Tr.) ("And I don't know how I can get the message across to your office.  The next thing I'm liable to hear is, well, we're going to have a superseding indictment, which will even be worse").  Only at that point, after repeatedly admonishing the government and raising concerns about the defendants' speedy trial rights, did Magistrate Judge Schroeder determine it was necessary to impose the sanction of running the clock in the event that yet another deadline would be ignored.  *See id.,* Ex. C at 14:11–22.  But even that sanction did not incentivize the government to complete production of discovery.  Nor has the Court's recent scheduling order.  Dkt. 169.  Against this backdrop, it is clear that not only are the defendants entitled to dismissal with prejudice as a matter of fairness and equity, but in fact nothing short of that result could stand a chance of remedying the government's "lackadaisical conduct" and "cavalier attitude toward speedy trial rights."  *Giambrone*, 920 F.2d at 180, 182.

### C.   The Amount of Time that Has Elapsed Since Expiration of the Speedy Trial Clock Is Serious and Weighs In Favor of Dismissal With Prejudice.

The days between May 29, 2019 and January 31, 2020 were to be excluded in the interest of justice, Cohen Decl., Ex. C at 28:6–29:9 (5/29/19 Tr.) (setting forth the basis for the time exclusion "in the interest of justice"), *only if* the government met its July 31, 2019 deadline to produce all discovery in its possession—a deadline that it has blatantly disregarded.  *See supra* pp. 7–9.  As such, the speedy trial clock has been running since August 1, 2019 and has not stopped, meaning that at least the 106 days between May 29, 2019 and November 15, 2019, the date of Mr. Morgan's first filed motion, *see* Dkt. 138, are not excluded.  *See supra* pp. 16–17. The government's clear violation of the Speedy Trial Act must not be countenanced in this Court.

Courts within the Second Circuit have dismissed cases with prejudice due Speedy Trial Act violations based on far fewer non-excludable days than the 36 days that have exceeded the Speedy Trial Act deadline here.  *See, e.g.*, *Giambrone*, 920 F.2d at 182 (2d Cir. 1990) (finding dismissal with prejudice warranted where the Speedy Trial Act clock was exceeded by 20 days); *United States v. Carini*, 562 F.2d 144, 152 (2d Cir. 1977) (dismissing the information with prejudice and holding that "[a]lthough the [Speedy Trial Act] deadline was exceeded by only thirty-one days, the resulting violation of the Act, which might otherwise seem inconsequential, assumes much greater importance when those thirty-one days are viewed against the pre-existing background of protracted delay directly or constructively chargeable to the government."). Given the ongoing Speedy Trial Act clock, dismissal with prejudice is warranted here.  *See Bert*, 814 F.3d at 82 ("The sheer length of a delay may support a finding of non-trial prejudice and thereby tip the prejudice factor in favor of dismissal with prejudice.").

    **D.**    **The Impact of Reprosecution Weighs in Favor of Dismissal with Prejudice due to the Government's Pattern of Disregard for the Act, and the Prejudice to Mr. Morgan that Would Result from Further Delay and a New Indictment.**

Prejudice to the defendant and risk of reprosecution is a crucial inquiry when determining whether to dismiss a charging instrument with prejudice.  *See United States v. Upton*, 921 F.Supp. 100, 104–05 (E.D.N.Y. 1995), *aff'd sub nom. United States v. Dragone*, 78 F.3d 65 (2d Cir. 1996) (per curiam) (dismissing indictment with prejudice and stating that "the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, must, of necessity, also embrace the unexpressed factor of prejudice to the defendant"). Reprosecution means a greater likelihood that memories are diminished and evidence is lost, diminishing a defendant's ability to build his defense.  *See Montecalvo*, 861 F. Supp. 2d at 119 ("in evaluating the effect of reprosecution, the Court must also consider the prejudice suffered by defendant, if any, as a result of the delay . . . The longer the delay, the greater the presumptive or

actual prejudice to the defendant in terms of his ability to prepare for trial") (internal quotation marks and citation omitted).  Here, where the government has repeatedly shown it cannot be trusted to preserve and track evidence appropriately, this concern is acute.

Beyond trial-related prejudice, the Court should consider other types of prejudice to the defendant, including personal hardship as well as business and reputational harm.  *See United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 378–79 (2d Cir. 1979) (the defendant's "anxiety and concern" would "unavoidably increase" as the time after indictment continued to accrue without a trial) (internal quotation marks and citation omitted); *Montecalvo*, 861 F. Supp. 2d at 119–20 (describing the prejudice suffered by defendant as "interference with his liberty, public obloquy, and anxiety," and finding that this prejudice, "in addition to the sheer length of the delay, weigh substantially in the Court's analysis in favor of dismissal with prejudice").

Mr. Morgan, his family, and affiliates have faced severe personal, business, and reputational harm throughout this proceeding, since the beginning of the government's highly-publicized investigation into Mr. Morgan and his affiliates, which will continue to accrue if this case is not dismissed with prejudice.   The government's statements and actions in connection with this matter have created a cloud of uncertainty in the marketplace, which has severely restricted Mr. Morgan's ability to effectuate transactions involving Morgan-affiliated properties (including those that are not subject to any allegations in this matter or the related civil action), in order to preserve the value of those properties and ensure they remain under high-quality management, to the benefit of residents and the community at large.  *See* Dkts. 66 at ¶¶ 5–26 (describing impediments to property sales as a result of the government's extralegal statements and actions in connection with this matter); Dkt. 86 at 2–3 (describing impact of this proceeding and the government's actions on title companies, which refused to do business with or required

exceptional assurances as a precondition to doing business with any Morgan-affiliated entity). *Cf. Vispi*, 545 F.2d at 334–35 (the post-information delay not only impacted the defendant's morale, but also "had a more serious adverse effect on his income than might otherwise have been the case, since his retention as an attorney . . . turned greatly on confidence in his integrity, which was now being questioned"). If the Superseding Indictment were dismissed without prejudice, the chilling effect of uncertainty regarding future government action related to Morgan-affiliated properties will continue, to the detriment of the residents, employees, business partners, and community at large. That these harms to those individuals result solely from the government's negligence and dilatoriness is, frankly, galling.

Mr. Morgan also faces heightened non-trial related prejudice from the anxiety related to his prosecution due to the health challenges he faces every day. Mr. Morgan is a paraplegic grandfather, husband, and father with serious and sometimes life-threatening health complications. Not only does the stress of a future prosecution impacts his health, but he also has greater reason to feel anxiety and concern about the possibility of incarceration, since such limitations on his freedom would impact the medical options available to him.

## III.   The Indictment Must Be Dismissed for the Separate Reason that the Government's Delay Violated Mr. Morgan's Sixth Amendment Right to a Speedy Trial.

In addition to contravening the Speedy Trial Act, the government violated Mr. Morgan's Sixth Amendment right to a speedy trial. This constitutional violation provides an independent—and mandatory—basis for dismissal with prejudice. *See United States v. Pennick*, No. 10-CR-191-A, 2016 WL 4089192, at *4 (W.D.N.Y. Aug. 2, 2016) ("If a violation is established, dismissal of the charge with prejudice is the mandatory remedy."), *aff'd*, 713 F. App'x 33 (2d Cir. 2017).

The right to a speedy trial is "one of the most basic rights preserved by our constitution," with "roots at the very foundation of our English law heritage." *Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967).  "Pursuant to the Sixth Amendment, the court and the government owe an affirmative obligation to criminal defendants and to the public to bring matters to trial promptly." *Black*, 918 F.3d at 253.  To determine whether a defendant's right to a speedy trial has been violated, courts consider: "the 'length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'"  *Pennick*, 2016 WL 4089192, at *5 (W.D.N.Y. Aug. 2, 2016) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  None of these factors is "a necessary or sufficient condition to the finding of a deprivation," *Barker*, 407 U.S. at 533; rather, they must be considered together with "such other circumstances as may be relevant," *Pennick*, 2016 WL 4089192, at *5.  Here, the unnecessary and unjust delays in the progression of this case to trial, which have resulted from the government's grievous failure to satisfy basic discovery obligations, establish a clear constitutional violation.

*First*, the delay between Mr. Morgan's indictment and trial—over eight months thus far—is prejudicial.  *See Black*, 918 F.3d at 255.  "[T]he Supreme Court has noted that a post-accusation delay approaching one year may be considered presumptively prejudicial," *id.* (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)), and courts within the Second Circuit have suggested that "more than eight months is presumptively prejudicial," *Pennick*, 2016 WL 4089192, at *5 (citing *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992); *accord, e.g.*, *United States v. Ostroff*, 340 F. Supp. 2d 362, 366–67 (S.D.N.Y. 2004).[7]

---

[7]   Although the court in *Vassell* did not hold that eight months is presumptively prejudicial, it referred to a law review article—also cited by the Supreme Court in *Doggett*—which discerned "a general consensus that a delay of over eight months meets [the presumptively prejudicial] standard." *Vassell*, 970 F.2d at 1164; *but see United States v. Sterling*, 763 F. App'x 63, 65-66 (2d Cir. 2019) (summary order).

28

*Second*, the delay is principally attributable to the government's willful disregard of its discovery obligations, *see supra* pp. 7–12—a factor that weighs in favor of finding a Sixth Amendment violation.  *See, e.g.*, *Green*, 2018 WL 786185, at *7 (finding Sixth Amendment speedy trial violation where, *inter alia*, delays were due to the "government's inability to coordinate its litigation obligations" such as "providing discovery" and "producing" certain evidence); *see also, e.g.*, *United States v. Leaver*, 358 F. Supp. 2d 255, 265 (S.D.N.Y. 2004) (government has "constitutional duty to make a diligent good faith effort to bring [an accused] to trial without unnecessary delay").  Indeed, "even where the delay is caused by the [g]overnment's mere negligence, this factor must still weigh against the [g]overnment."  *Id.*; *see also, e.g.*, *United States v. Washnuk*, No. 07-CR-174A, 2013 WL 2425122, at *4–5 (W.D.N.Y. June 3, 2013) ("[T]he reason for delay factor, even for the neutral reason of [g]overnment negligence, favors [the defendant].").  Here, there can be "no doubt that the [g]overnment is more responsible than [Mr. Morgan] for the delay"; accordingly, "this factor weights against the [g]overnment."  *Ostroff*, 340 F. Supp. 2d at 369–70.

*Third*, Mr. Morgan unambiguously asserted his right to a speedy trial in advance of filing this motion.  *See Black*, 918 F.3d at 263 (upholding dismissal on speedy trial grounds and citing fact that defendants "frequently expressed their desire for a speedy trial").  Counsel for Mr. Morgan explicitly detailed the speedy trial violation during a November 25, 2019 status conference with the Court and has raised the issue on multiple occasions since then, *see, e.g.*, Cohen Decl., Ex. D at 16:21–23 (11/25/2019 Tr.) (arguing that the government's delay would "unambiguously . . . require dismissal of the indictment"); *id*. at 16:16–20:19, 25:20–31:25; *see also* Dkt. 157 (Dec. 18, 2019 letter requesting opportunity to brief speedy trial issue); Cohen Decl., Ex. E at 60:1–62:9 (12/20/2019 Tr.) (discussing briefing schedule for speedy trial

motion).[8]  Moreover, by August 2018, Magistrate Judge Schroeder had already admonished the government regarding its apparent failure to satisfy obligations under the "[C]onstitution as regards to speedy trial, and certainly as set forth in the Speedy Trial Act."  Cohen Decl., Ex. A at 28:20–24 (8/6/2018 Tr.).  Accordingly, because Mr. Morgan's speedy trial concerns were raised "frequently and explicitly," "this factor weighs in [his] favor."  *Black*, 918 F.3d at 264.

*Fourth*, Mr. Morgan has been prejudiced by the delay.  Courts "assess the prejudice to criminal defendants 'in the light of the interests the speedy trial right was designed to protect'— namely, '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'"  *Id.* (quoting *Barker*, 407 U.S. at 532).  As detailed above, *see supra* pp. 24–27, Mr. Morgan has suffered as a result of "living under a cloud of anxiety, suspicion, and [] hostility."  *Id.*  Further, the government's ongoing failure to satisfy its Rule 16 obligations has forced Mr. Morgan into an impossible situation in which he must proceed to trial in January 2021 to avoid compounding the deleterious effects that delay has already had, while at the same time being deprived of the discovery material and time necessary to mount an adequate defense.  This Catch-22 should not be permitted to continue, as it pits Mr. Morgan's right to due process against his right to a speedy trial.  The indictment must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Morgan respectfully requests that the Court to grant his motion to dismiss, with prejudice, the Superseding Indictment for violations of the Speedy Trial Act and Mr. Morgan's constitutional right to a speedy trial.

---

[8]  Counsel for Mr. Todd Morgan also raised the speedy trial concern over a year ago during a status conference, *see* Cohen Decl., Ex. B at 28:5–6 (10/31/2018 Tr) ("I think this case is an abuse of the Speedy Trial Act").

Dated:   January 31, 2020
         New York, New York

                        GIBSON, DUNN & CRUTCHER LLP
                        By:   /s/ Joel M. Cohen
                            Joel M. Cohen
                            Lee G. Dunst
                            Zainab Ahmad, *pro hac vice admission*
                            *forthcoming*
                            Caitlin S. Walgamuth

                            200 Park Avenue
                            New York, NY  10166-0193
                            Telephone:  212.351.4000
                            JCohen@gibsondunn.com

                            Attorneys for Defendant Robert C. Morgan

31