**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
UNITED STATES OF AMERICA, :
:
:
:
v. : 18-CR-108-EAW
:
ROBERT C. MORGAN, et al. :
:
*Defendants.* :
:
:
---------------------------------------------------------------x

**ROBERT C. MORGAN'S SUBMISSION REGARDING SCOPE AND CONDUCT OF EVIDENTIARY HEARING ON GOVERNMENT'S COMPLIANCE WITH RULE 16 AND DEFENDANTS' SPEEDY TRIAL MOTIONS**

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT .................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. The Government Bears the Burden to Show It Has Not Violated the Speedy Trial Act by Failing to Meet the Court's Discovery Deadlines. ............................ 2

    B. The Government Must Show by a Preponderance of the Evidence That It Has Not Violated the Speedy Trial Act by Failing to Meet Court-Imposed Discovery Deadlines. ................................................................................................ 4

III. SCOPE OF HEARING ................................................................................................... 5

    A. May 2018 Search Warrants and Process ................................................................ 6

    B. Taint Team and Privileged Documents Seized ...................................................... 7

    C. Failure to Produce Discovery from Three Computers ........................................... 9

    D. Todd Morgan's iPhone ......................................................................................... 10

    E. Government's Response to Metadata Issues Raised by the Defense .................... 10

    F. Other Categories of Discovery ............................................................................. 13

IV. CONCLUSION ............................................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boluk v. Holder*,
   642 F.3d 297 (2d Cir. 2011)..................................................................................................3

*Campbell v. United States*,
   365 U.S. 85 (1961)...............................................................................................................2, 3

*United States v. Bert*,
   814 F.3d 70 (2d Cir. 2016)..............................................................................................1, 4, 5

*United States v. Coleman*,
   170 F. Supp. 2d 321 (N.D.N.Y. 2001)...................................................................................5

*United States v. Giambrone*,
   920 F.2d 176 (2d Cir. 1990)................................................................................................4, 5

*United States v. Gotti*,
   244 F. Supp. 2d 120 (E.D.N.Y. 2003) ...................................................................................4

*United States v. Hernandez*,
   863 F.2d 239 (2d Cir. 1988)...................................................................................................4

*United States v. Heyward*,
   No. 10-cr-84, 2010 WL 4484642 (S.D.N.Y. Nov. 9, 2010) ......................................................4

*United States v. N.Y., New Haven & Hartford R.R. Co.*,
   355 U.S. 253 (1957)...............................................................................................................3

*United States v. Taylor*,
   487 U.S. 326 (1988)...........................................................................................................1, 4

*United States v. Tzolov*,
   642 F.3d 314 (2d Cir. 2011)...................................................................................................4

**Rules**

Fed. R. Crim. P. 16(a)(1)(A)........................................................................................................13

I.  **PRELIMINARY STATEMENT**

On January 28, 2020, the Court scheduled an evidentiary hearing, beginning on March 30, 2020, "regarding the government's compliance with its Rule 16 discovery obligations and the defendants' anticipated motion to dismiss on speedy trial grounds." Dkt. 202 at ¶ 2. In advance of that hearing, the Court ordered the defendants to "submit briefs regarding the scope and conduct of the evidentiary hearing, including but not limited to their respective positions on the applicable burden and standard of proof." *Id.*

**Burden and Standard of Proof**. As the only party with access to information about the Rule 16 discovery materials in its possession, the government bears the burden of proving, by a preponderance of the evidence, that it complied with Court-ordered production deadlines and thus did not violate the Speedy Trial Act. Similarly, if the government argues that the superseding indictment should not be dismissed with prejudice, it must prove by a preponderance of the evidence that any lapses in its discovery processes do not reflect the sort of "'truly neglectful attitude'" toward its Rule 16 obligations that would warrant dismissal with prejudice. *United States v. Bert*, 814 F.3d 70, 80-81 (2d Cir. 2016) (quoting *United States v. Taylor*, 487 U.S. 326, 338 (1988)).

**Scope of Hearing**. For each of the six areas of discovery compliance about which there is evidence lacking in the record—ranging from the creation and application of search terms to the incomplete (and in many instances non-existent) productions of electronic data and metadata—the Court should order the government to produce relevant documents and to identify and make available for testimony appropriate witnesses. This evidence will assist the parties and the Court in determining whether the government timely produced all Rule 16 discovery material in its possession and, if not, whether its failure to do so was part of a "'pattern of neglect'" militating "in favor of dismissal with prejudice." *Id.* (quoting *Taylor*, 487 U.S. at 339).

## II.        ARGUMENT

### A.    The Government Bears the Burden to Show It Has Not Violated the Speedy Trial Act by Failing to Meet the Court's Discovery Deadlines.

Mr. Morgan is not aware of any case that specifically addresses which party has the burden of proof at an evidentiary hearing on a defendant's motion to dismiss an indictment on speedy trial grounds where evidence regarding the status of the government's Rule 16 discovery efforts is essential to the determination of that motion. However, cases confronting analogous situations suggest that a burden-shifting framework is appropriate here—a framework under which, after Mr. Morgan makes (as he has already made in this case) a *prima facie* showing that the government failed to produce all Rule 16 discovery material in its possession by July 31, 2019, the government bears the burden to demonstrate that it did, in fact, timely produce all discovery material in its possession as of that date.

The initial question presented for the Court's decision is whether the government violated the Speedy Trial Act. Mr. Morgan has made a *prima facie* showing that the speedy trial clock began to run on August 1, 2019 because the government failed to produce all Rule 16 material in its possession by the July 31, 2019 deadline set by Magistrate Judge Schroeder. Because the determination of the question whether the government completed production of the Rule 16 material in its possession by the July 31, 2019 deadline largely turns on facts uniquely within the purview of the government, the burden has shifted to the government to demonstrate that it did not violate the Act. The Supreme Court has held that where a judge is conducting an inquiry that is "not an adversary proceeding in the nature of a trial," but rather "simply a proceeding necessary to aid the judge to discharge the responsibility laid upon [her] to enforce [an evidentiary] statute," it is the government that bears the burden of producing relevant evidence in its knowledge or possession. *Campbell v. United States*, 365 U.S. 85, 95-96 (1961) (holding that the district court's

2

determination that the defendant bore the burden of showing he was entitled to evidence under the Jencks Act was "erroneous" and that, where the defendant makes a "*prima facie* case of [his] entitlement to a statement," the government is required "to come forward with evidence to answer that case").

This burden-shifting framework accords with the "ordinary rule, based on considerations of fairness, [which] does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *United States v. N.Y., New Haven & Hartford R.R. Co.*, 355 U.S. 253, 256 n.5 (1957); *see also Campbell*, 365 U.S. at 96 (holding that, where "the Government ha[s] the advantage over the defense of knowing" certain information and where the government—and not the defense—has that information in its possession, the government is "clearly required" to produce the information); *Boluk v. Holder*, 642 F.3d 297, 303 (2d Cir. 2011) (noting, in an immigration case, that "the party in the best position to present the requisite evidence should bear the burden of proof" and that the burden of proof should be allocated to the party that "in general is in a better position to come forward with evidence" (internal quotation marks omitted)).

Here, Mr. Morgan's motion to dismiss the superseding indictment, together with the discovery status reports that Mr. Morgan and the government provided to the Court in December 2019 and January 2020, make a *prima facie* showing that the government failed to meet the Court-imposed Rule 16 discovery deadline of July 31, 2019 and, as a result, that it violated Mr. Morgan's speedy trial rights. *See* Dkts. 157, 195, 197, 217. Accordingly, the burden is now on the government—the only party that knows what it has, and has not, done to review and produce Rule 16 discovery materials in its possession—to put on evidence sufficient to rebut that showing.

Equally, if the government takes the position that dismissal in this case should be without prejudice, it is its burden to show that its failure to produce all Rule 16 discovery materials in its

3

possession by July 31, 2019 was not reflective of a "'truly neglectful attitude'" toward its Rule 16 obligations. *United States v. Bert*, 814 F.3d 70, 80-81 (2d Cir. 2016) (quoting *United States v. Taylor*, 487 U.S. 326, 338 (1988)). Here again, Mr. Morgan has made a *prima facie* showing that the government's ongoing failure to adhere to Court-ordered deadlines, regular mischaracterization of the evidence in its possession, and inability to produce all the items seized in a search that occurred *18 months ago* reflects a "cavalier attitude toward speedy trial rights" that warrants dismissal with prejudice, *United States v. Giambrone*, 920 F.2d 176, 182 (2d Cir. 1990). *See* Dkt. 217. And, just as the government is the only party that knows what steps it has taken to review and produce Rule 16 discovery materials in its possession, the government also is the only party in possession of critical evidence tending to show whether its repeated failures to meet Court-ordered discovery deadlines were "isolated unwitting violations," *Taylor*, 487 U.S. at 339, or if, instead, they were the product of "bad faith or a pattern of neglect" by the United States Attorney's Office for the Western District of New York, *United States v. Hernandez*, 863 F.2d 239, 244 (2d Cir. 1988).

> **B.  The Government Must Show by a Preponderance of the Evidence That It Has Not Violated the Speedy Trial Act by Failing to Meet Court-Imposed Discovery Deadlines.**

The standard by which the government must prove that it produced all Rule 16 discovery materials in its possession as of July 31, 2019 and, thus, that it did not violate the Speedy Trial Act, is a preponderance of the evidence. *See United States v. Gotti*, 244 F. Supp. 2d 120, 125 (E.D.N.Y. 2003) (stating that "rulings on pretrial motions in criminal cases" are based on a preponderance-of-the-evidence standard (internal quotation marks omitted)); *see also United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011) (noting that the standard in a dispute over proper venue is a preponderance of the evidence); *United States v. Heyward*, No. 10-cr-84, 2010 WL 4484642, at *1 (S.D.N.Y. Nov. 9, 2010) (applying a preponderance standard on a Rule 12 motion to dismiss an indictment).

4

Similarly, to avoid dismissal of the indictment with prejudice, the government must demonstrate by a preponderance of the evidence that its failures to comply with basic discovery obligations, which began before the speedy trial clock started to run and continue to this day, do not reflect a "lackadaisical attitude on the part of the government attorney in charge of the case [and] a pattern of dilatory practices on the part of the United States Attorney's [O]ffice." *See Giambrone*, 920 F.2d at 180, 182 (upholding a dismissal with prejudice where the United States Attorney's Office for the Western District of New York twice failed to raise or try to meet Speedy Trial Act deadlines); *see also Bert*, 814 F.3d at 80-81 ("A factually supported finding of a pattern of neglect" by the government "may alone suffice to tip the 'facts and circumstances' factor [of the dismissal with or without prejudice test] in favor of dismissal with prejudice."); *United States v. Coleman*, 170 F. Supp. 2d 321, 326-27 (N.D.N.Y. 2001) (dismissing an indictment with prejudice on the basis of the amount of unexcludable time under the Speedy Trial Act and the government's "'extremely lax' attitude toward the requirements of the Act").

### III. SCOPE OF HEARING

With regard to the scope and conduct of the evidentiary hearing scheduled to begin on March 30, 2020, Mr. Morgan suggests the following procedure in an effort to facilitate an orderly and efficient hearing by (1) assisting the parties in their preparation for, and the Court in its conduct of, that hearing; and (2) ensuring that appropriate witnesses are present:

- For each of the six topics listed below, the Court should order the government to identify appropriate witnesses and to produce relevant documents by March 16, 2020, with an ongoing obligation thereafter to supplement its list of witnesses and its production of documents.

    - The Court should order the government to identify, as to each of the evidentiary topics listed below, the specific witness(es) with knowledge on a given topic.

- By March 23, 2020, the defendants will identify for the government the witnesses on the government's list whom they may wish to examine at the evidentiary hearing.

5

- o   To the extent that the government identifies additional witnesses after March 16, 2020 as part of its ongoing obligation to supplement its initial list, the defendants will notify the government as soon as practicable whether they may wish to examine those additional witnesses.

- The Court should order the government to make available for testimony at the evidentiary hearing those witnesses identified by the defendants.

The six topics listed below are narrowly tailored to adduce the evidence that is lacking in the record. Testimony from government witnesses on these topics will assist the parties and the Court in assessing whether the government timely produced all Rule 16 discovery material in its possession and, if not, whether its failure to do so was part of a "pattern of neglect."

### A.   May 2018 Search Warrants and Process

1. Documents sufficient to show any protocols for execution of the May 2018 search warrant at the offices of Morgan Management.

2. The agency (or agencies) and agents responsible for conducting the May 2018 search of the offices of Morgan Management.

3. Chain of custody materials, including but not limited to:

    a) For each device and category of material, the agency (or agencies) and agent(s) responsible for processing devices and materials seized pursuant to the May 2018 search warrant;[1] and

    b) The location(s) of imaged devices prior to, during, and after processing.

4. Information regarding the creation and use of search terms (both the 2018 Search Terms and the 2019 Search Terms), including but not limited to:

    a) Who was involved in the development of the search terms;

    b) The extent of any guidance about, or oversight over, the development of search terms by the U.S. Attorney's Office;

    c) How the terms were selected;

---

[1] The record on this point is unclear and incomplete. *See* Dkt. 216-7 at 15:5-23 (1/27/20 Tr.) (government stating that FHSA agents processed three computers but adding that "[s]ome were FBI"); *see also* Dkt. 157-1 at 86–97 (FBI Inventory Receipt and Summary Chart for each device).

<table>
<tr><td>d)</td><td colspan="2">The steps, if any, taken to develop search terms intended to capture exculpatory or <i>Brady</i> material;</td></tr>
<tr><td>e)</td><td colspan="2">The date the 2018 Search Terms and 2019 Search Terms were created;</td></tr>
<tr><td>f)</td><td colspan="2">The date(s), if any, that the 2018 Search Terms and 2019 Search Terms were applied to each seized device:</td></tr>
<tr><td></td><td>(1)</td><td>Five computers from which the government made a partial production on August 8, 2019;</td></tr>
<tr><td></td><td>(2)</td><td>Three computers from which the government initially produced records on December 13, 2019 (Kristey Trombley's desktop, Michael Tremiti's laptop, and Paul White's laptop);</td></tr>
<tr><td></td><td>(3)</td><td>Todd Morgan's iPhone; and</td></tr>
<tr><td></td><td>(4)</td><td>Robert Morgan's iPhone.</td></tr>
<tr><td>g)</td><td colspan="2">Quality control or review, if any, undertaken to confirm: (i) accuracy of hits; (ii) false hits; and (iii) metadata fields searched after application of search terms; and</td></tr>
<tr><td>h)</td><td colspan="2">Any and all search term hit reports.</td></tr>
</table>

5. For each seized device, an explanation of how search terms were applied, including: the agency (or agencies) and agent(s) that ran the search terms; the program used (e.g., Nuix, Relativity); the metadata fields searched for search term hits; and the exclusion, if any, of documents that hit on search terms.[2]

6. Documents sufficient to show Rule 16 or electronic document review protocols, if any, and whether and how they were followed.

**B.   Taint Team and Privileged Documents Seized**[3]

1. Documents sufficient to show the taint team review protocol, if any.

---

[2] Here, too, the record is incomplete. For example, the government has referred to "additional metadata fields that were not produced because they were not called for in the production protocol" without identifying what fields those are. Dkt. 216-7 at 23:4-16 (1/27/20 Tr.); *see also id.* at 14:17-24, 23:15-19 (discussion of agents who searched devices and the government's dual use of the Nuix and Relativity platforms).

[3] Shortly before filing this submission, Mr. Morgan received the government's letter of February 14, 2020 regarding "an issue . . . with respect to the filtering of potentially-privileged documents." Dkt. 243 at 1. Based

7

2. Information regarding the creation and use of privilege search terms, including but not limited to:

   a) Who was involved in the development of the search terms;

   b) How the terms were selected;

   c) The date the terms were created;

   d) The date, if any, the privilege search terms were applied to each seized device:

      (1) Five computers from which the government made a partial production on August 8, 2019;

      (2) Three computers from which the government initially produced records on December 13, 2019 (Kristey Trombley's desktop, Michael Tremiti's laptop, and Paul White's laptop);

      (3) Todd Morgan's iPhone; and

      (4) Robert Morgan's iPhone.

   e) The volume of documents that hit on one or more privilege search terms;

   f) The current status of the taint team's privilege review; and

   g) Whether the privilege terms were applied before or after the 2018 Search Terms or 2019 Search Terms were applied.

3. The protocol and search terms, if any, that the taint team used to identify exculpatory or *Brady* material within the potentially privileged documents that hit on one or more privilege search terms.

4. Information regarding steps taken by the government since December 17, 2019 (i) to evaluate privilege claims over the list of 25 entities owned or controlled by Mr. Morgan that his counsel provided to the government, and (ii) to produce those privileged documents to Mr. Morgan.[4]

---

on the representations in that letter, Mr. Morgan intends to seek a separate hearing regarding the disclosure of potentially privileged information to the trial team in this matter.

[4] On December 16, 2019, Mr. Fabian told Gibson Dunn that if Mr. Morgan provided "a list of entities for which [he] claims to hold privilege," the government would "evaluate the privilege claims with due diligence and respond accordingly." Dkt. 157-1 at Ex. 9 (Email from AUSA Fabian to Gibson Dunn (Dec. 16, 2019, 7:09 PM)). The next day, Gibson Dunn provided a list of 25 entities identified in the superseding indictment and civil forfeiture complaint as entities owned or controlled by Mr. Morgan. *See id.* (Email from Joel Cohen to AUSA Fabian and

8

C.  **Failure to Produce Discovery from Three Computers**

1. Information regarding the discovery of the deficiencies, including but not limited to:

    a) How and when the government discovered that the three computers had not been produced to the defense;[5] and

    b) Who made the discovery.

2. Describe the steps, if any, that were taken at the time of discovery to confirm that all other devices had been produced, and to redress the deficiencies.

3. Information regarding notifying a supervisor of the delay in providing discovery to the defense,[6] including but not limited to the following:

    a) Who informed a supervisor that there had been a delay in providing Rule 16 discovery to the defendants;

    b) The date upon which any supervisor was informed of the delay;

    c) The identity of any supervisor who was informed of the delay; and

    d) Whether and why any such supervisor approved of the delay.

4. Identify the steps taken between December 20, 2019 and January 27, 2020, if any, to identify documents contained on the three computers that had not been previously produced.[7]

---

AUSA Penrose (Dec. 17, 2019, 12:37 PM)). The government has yet to respond, notwithstanding the Court's January 13, 2020 so-ordered stipulation and protective order protecting privileged documents, *see* Dkt. 188.

[5]  The government has said only that it "identified images of three laptop hard drives that had been seized during a May 10, 2018 search warrant" on "approximately the same date" that Mr. Morgan filed his Motion for an Extension of Pretrial Motion Deadlines (i.e., November 15, 2019). Dkt. 143 at 5.

[6]  *See* Dkt. 216-9 at 3 (WDNY USAO discovery policy) ("Any delay in providing discovery under Rule 16 *must* be approved by a supervisor." (emphasis added)).

[7]  The government has offered contradictory information regarding whether and when it identified not-yet-produced records on these three computers, and it has not explained how (if at all) it did so. *Compare* Dkt. 216-7 at 31:2-8 (1/27/20 Tr.) (AUSA Penrose stating that the government was "independently" seeking to identify unproduced documents on the three computers), *and id.* at 30:19-25 (AUSA Penrose stating that the government had "started that process [but] not completed it"), *with id.* at 30:3-6 (AUSA Penrose stating that the government "ha[d] not" identified the documents on the three computers that had not previously been produced).

### D.  Todd Morgan's iPhone

1. Identify who told Mr. Penrose in February 2019 that the files from Todd Morgan's iPhone had been reviewed for privilege.[8]

    a) Describe the steps taken by Mr. Penrose, if any, to confirm whether the taint team in fact had reviewed the files on Todd Morgan's iPhone as of February 2019.

    b) Describe the steps taken, if any, to confirm that the files on Todd Morgan's iPhone had been produced to Gibson Dunn on behalf of Robert Morgan.

2. Identify when the government discovered that records from Todd Morgan's iPhone had not been produced to the defense.

3. Identify who made that discovery.

4. Identify where the government kept Todd Morgan's iPhone after seizing it in May 2018.

5. Identify when and how the government discovered that the taint team had not reviewed the files on Todd Morgan's iPhone.

6. Identify who made that discovery.

7. Identify the date upon which Todd Morgan's iPhone was provided to the taint team.

8. Identify (i) the date on which a supervisor at the U.S. Attorney's Office was notified of the delay in providing files from Todd Morgan's iPhone to the defense, (ii) who informed a supervisor of this delay, (iii) the identity of any supervisor who was informed of this delay, and (iv) whether and why any such supervisor approved this delay.

### E.  Government's Response to Metadata Issues Raised by the Defense

The government has repeatedly responded to the defendants' assertions regarding missing metadata by stating that "the metadata does not exist" and therefore cannot "be 'corrected' through

---

[8] The government said in a supplemental status report on January 24, 2020, and in court on January 27, 2020, that it "had been told that the files from [Todd Morgan's] iPhone had been reviewed for privilege." Dkt. 216-7 at 44:18-20 (1/27/20 Tr.); *see also* Dkt. 197 (stating that AUSA Penrose "was informed in February 2019 that the files on [Todd Morgan's] phone had been reviewed by the government privilege team").

an overlay file or otherwise." Dkt. 197 at 2. The Affidavit of Robert Hyde in Support of Mr. Morgan's speedy trial motion ("Hyde Aff."), *see* Dkt. 216-10, undercuts the government's claims.

1. For each of the dates and topics identified below, describe the "reasonable efforts" the government "undertook . . . to confirm that the metadata did not exist in the underlying native files," and identify the specific individuals involved, Dkt. 197 at 2:

    a) August 8, 2019 Production

    (1) Describe the process undertaken by the government between December 6 and December 16, 2019 to review metadata issues raised by Gibson Dunn and to determine whether missing metadata was available.

    (2) Describe the date each step occurred and identify who was involved, including but not limited to the specific agency (or agencies) and agent(s).

    (3) Describe the steps, if any, taken by the government on or before December 16, 2019 to review missing metadata (after Gibson Dunn noted that more than half of the documents in the production were emails seized and processed by the government).[9]

    (4) Describe the steps taken, if any, to confirm that missing file extension metadata was not available in the underlying native files.

    (5) Describe the basis, if any, for the government's December 16, 2019 representation that missing file extension fields were "simply a function of the underlying data and how we received it." Dkt. 157-1 at Ex. 13 (Email from AUSA Penrose to Gibson Dunn (Dec. 16, 2019, 6:43 PM)).

    (6) Provide or describe copies of all reports run between December 6 and December 16, 2019 to confirm that metadata was unavailable for the August 8, 2019 production, including the dates any such reports were run.

---

[9] As of December 13, 2019, the government had not reviewed DAT files that Gibson Dunn had provided the previous week. *See* Dkt. 157-1 at 9 (¶ 28). However, the government eventually agreed to review the files and, on December 16, 2019, agreed to produce an overlay file to correct certain metadata issues. *See id.* at 12 (¶ 39), 128; *see also* Dkt. 157 at 4 n.1.

11

      b)      December 13, 2019 Production

          (1)    Describe the process undertaken by the government between December 30, 2019 and January 6, 2020 to review metadata issues raised by Gibson Dunn and to determine whether missing metadata was available, including the date each step was taken and the identity of any agency (or agencies) and agent(s) involved.[10]

          (2)    Describe the process undertaken by the government to confirm that missing file extension metadata was not available in the underlying native files.[11]

          (3)    Describe the basis, if any, for the government's January 24, 2020 representation that "the underlying files do not contain the relevant metadata." Dkt. 197 at 2.[12]

          (4)    Provide or describe copies of all reports run between December 30, 2019 and January 6, 2020 to confirm that metadata was unavailable for the December 13, 2019 production, including the dates any such reports were run.

2.    Identify the government's "processing software vendor," Dkt. 197 at 2, and describe this vendor's role in processing the data and reviewing metadata issues raised by defense counsel.

      a)      Provide more detail regarding the government's efforts to investigate metadata issues raised by defense counsel, including but not limited to more information regarding any "examination, . . . research, and conversations with the processing software vendor," Dkt. 197 at 2, such as the dates on which any such conversations occurred.

---

[10]    On January 6, 2020, the government said it did "not have MD5 Hash values" for 643,920 of the 643,976 documents from the December 13, 2019 production that Gibson Dunn had identified as missing MD5 Hash values. *See* Dkt. 195-1 at Ex. 4 (Email from AUSA Penrose to Gibson Dunn (Jan. 6, 2020, 8:24 PM)).

[11]    *See generally* Hyde Aff. at 4 (¶ 15) (stating that 776,792 records were missing file extension metadata, that 717,209 records were missing file size metadata, and that 624 email messages were missing "Date Sent" metadata).

[12]    *See also* Dkt. 195-1 at Ex. 4 (Email from AUSA Penrose to Gibson Dunn (Jan. 6, 2020, 8:24 PM)) (stating that the missing MD5 Hash values "don't exist").

**F.     Other Categories of Discovery**

There are at least three other categories of discovery for which there is no or minimal information in the record: (1) oral statements by the defendants; (2) the "Hill Server"; and (3) meetings involving government agents and a grand jury subpoena recipient in November and December 2019. Thus, Mr. Morgan requests more information regarding:

1. Rule 16 oral statements by the defendants.[13]

2. Information regarding the Morgan Management server at the home of Larry Hill, former Chief Financial Officer of Morgan Management, including but not limited to:

   a) The date the government learned of this server;

   b) The date the government took possession of this server;[14]

   c) The agency (or agencies) and agent(s) involved in taking possession of this server; and

   d) The date the government first accessed information or records stored on this server.

3. Information regarding meetings between agents and a grand jury subpoena recipient—a former Morgan Management employee—on November 20, 2019 and December 5, 2019, including but not limited to:

   a) Which agent(s) attended which meetings;

   b) The subject matter of those meetings, including but not limited to whether there were discussions regarding any documents produced by that grand jury subpoena recipient; and

---

[13] For example, the government recently disclosed, for the first time, alleged statements made by Mr. Morgan on May 15, 2018 regarding the passcode to his cellphone. *See* Dkts. 205-1 at 2, 205-2 at ¶ 5 (Government's Sur-Reply to Defendant Robert C. Morgan's Motion for Return of Property and supporting affidavit). Meanwhile, Rule 16—not to mention the U.S. Attorney's Office's *own discovery policy*—requires disclosure of Rule 16 material, including a defendant's oral statements, "as near the time of arraignment as possible but not later than the discovery date set by the Court" and "encourage[s]" disclosure "at or before arraignment." Dkt. 216-9 at 1-3, 15 (WDNY USAO discovery policy); *see also* Fed. R. Crim. P. 16(a)(1)(A) (requiring the government to disclose "the substance of any relevant oral statement made by the defendant").

[14] The government has said only that it took "possession of the server in October" 2019. Dkt. 157-1 at 124.

13

      c)      The agency (or agencies) and agent(s) with knowledge of any production made in response to this grand jury subpoena.

## IV.    CONCLUSION

For the reasons set forth herein, Robert C. Morgan hereby requests that the Court require the government (1) to prove, by a preponderance of the evidence, that it produced all Rule 16 discovery materials in its possession by July 31, 2019—and thus that it did not violate the Speedy Trial Act—and that any lapses in its discovery processes do not reflect the sort of "truly neglectful attitude" toward its Rule 16 obligations that would warrant dismissal of the superseding indictment with prejudice; and (2) to identify witnesses and documents sufficient to address the evidentiary topics and questions described herein no later than March 16, 2020.

Dated:   February 14, 2020
           New York, New York

                                        GIBSON, DUNN & CRUTCHER LLP

                                        By:    /s/ *Joel M. Cohen*
                                                  Joel M. Cohen
                                                  Lee G. Dunst
                                                  Zainab N. Ahmad
                                                  Caitlin Walgamuth

                                                  200 Park Avenue
                                                  New York, NY  10166-0193
                                                  Telephone:  212.351.4000

                                                  Attorneys for Defendant Robert C. Morgan