UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | |
| | : | 18-CR-108-EAW |
| v. | : | |
| ROBERT C. MORGAN, et al. | : | |
| *Defendants.* | : | |

**MR. MORGAN'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE SUPERSEDING INDICTMENT FOR VIOLATIONS OF THE SPEEDY TRIAL ACT AND HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. The Government's Failure to Comply with the Unambiguous Terms of the Ends-of-Justice Continuance Requires Dismissal. ..... 2

A. The Speedy Trial Act—Not Rule 16—Governs the Remedy Here. ..... 2

B. The Ends of Justice Continuance Was Expressly Conditioned Upon the Government's Completion of Voluntary Discovery by July 31, 2019. ..... 5

C. The Government Failed to Produce Large Swaths of Discovery Material by the Deadline—and for at Least 106 of Unexcluded Time Thereafter. ..... 7

II. The Dismissal Must Be with Prejudice. ..... 11

A. The Facts and Circumstances of the Government's Speedy Trial Act Violation Warrant Dismissal of the Superseding Indictment with Prejudice. ..... 11

1. The Government's Pattern of Delay and Obfuscation Necessitates Dismissal with Prejudice. ..... 11

2. The Length of the Delay Weighs in Favor of Dismissal with Prejudice. ..... 12

B. Dismissal with Prejudice Is Necessary to Ensure the Administration of the Act and Justice in Light of the Government's Pattern of Speedy Trial Neglect. ..... 13

C. The Prejudice to Mr. Morgan Weighs in Favor of Dismissal with Prejudice. ..... 14

III. The Delay Has Violated Mr. Morgan's Constitutional Right to a Speedy Trial. ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Barker v. Wingo*,
407 U.S. 514 (1972) ........ 15

*Bloate v. United States*,
559 U.S. 196 (2010) ........ 2, 10

*United States v. Bert*,
814 F.3d 70 (2d Cir. 2016) ........ 2, 3, 10, 5

*United States v. Chichackli*,
No. 09-CR-1002, 2014 WL 5369424 (S.D.N.Y. Oct. 16, 2014) ........ 5

*United States v. Esquilin*,
No. 98-1333, 2000 WL 232162 (2d Cir. Feb. 18, 2000) ........ 5, 6

*United States v. Gambino*,
59 F.3d 353 (2d Cir. 1995) ........ 5

*United States v. Giambrone*,
920 F.2d 176 (2d Cir. 1990) ........ 1, 12, 14

*United States v. Govey*,
284 F. Supp. 3d 1054 (C.D. Cal. 2018) ........ 15

*United States v. Montague*,
No. 14-CR-6136-FPG-JWF, 2016 WL 11621620 (W.D.N.Y. May 17, 2016) ........ 8

*United States v. Montecalvo*,
861 F. Supp. 2d 110 (E.D.N.Y. 2012) ........ 13

*United States v. Quinones*,
No. 13-CR-83S, 2015 WL 6696484 (W.D.N.Y. Nov. 2, 2015) ........ 8

*United States v. Reichberg*,
No. 16-CR-4682018 WL 6599465 (S.D.N.Y. Dec. 14, 2018) ........ 5

*United States v. Tunnessen*,
763 F.2d 74 (2d Cir. 1985) ........ 10

*United States v. Villano*,
129 F.R.D. 32 (W.D.N.Y. 1989) ........ 4

# TABLE OF AUTHORITIES

Page(s)

*Zedner v. United States*,
547 U.S. 489 (2006)....................................................................................................13

## Statutes

18 U.S.C. § 3161(h)(7)(C) ..........................................................................................6

## Rules

Fed. R. Crim. P. 16(a)(1)(E) .......................................................................................8

## PRELIMINARY STATEMENT

In opposing Mr. Morgan's motion to dismiss the superseding indictment for violations of his statutory and constitutional rights to a speedy trial, the government refuses to provide any explanation of, or accept any responsibility for, its serial delays in the production of discovery and the progression of this case to trial. This case thus evinces the Western District U.S. Attorney's Office's "cavalier attitude" toward delay and established "pattern of speedy trial neglect." *United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990). This pattern has thus far been impervious to judicial reproach—only a dismissal with prejudice in this case will change that.

The government's claim that the Speedy Trial Act has not been violated here hinges upon an interpretation of Magistrate Judge Schroeder's Scheduling Order that defies both the dictionary and logic. The government does not dispute (nor could it) that Magistrate Judge Schroeder conditioned the exclusion of time under the Speedy Trial Act on the government's compliance with a July 31, 2019 deadline for discovery. Nor does the government dispute that it failed to produce large swaths of discovery material by that deadline, much of which remained outstanding months after the deadline had elapsed. Instead, and incredibly, the government argues that the conditional continuance was satisfied by the production of "***any discovery*** . . . . ***at all***" by the July 31, 2019 deadline, Dkt. 262 at 20 ("Opp.") (emphasis added), despite the express mandate that discovery was to be "***completed***" by that date, Dkt. 216-4 at 17:16-18 (5/29/19 Tr.) (emphasis added); *see also* Dkt. 50 (deadline for government's "completion" of voluntary discovery). While the government now argues that dismissal is too "severe" a consequence for discovery violations, Opp. 18, dismissal is, in fact, the necessary—and predictable—consequence of the conditional exclusion of time for Speedy Trial Act purposes to which the government unqualifiedly agreed, *see* Dkt. 216-4 at 15:11-12, 27:21-28:5.

Faced with a record that it cannot credibly rewrite, the government attempts instead to recast blame. It argues—contrary to law—that defendants' alleged delay in reviewing discovery "should not count against the government" for purposes of the speedy trial clock. Opp. 26. But neither the Speedy Trial Act nor cases interpreting it countenance the tit-for-tat tolling that the government urges here. The law is clear that "a criminal defendant has no obligation to take affirmative steps to insure that [he will] be tried in a timely manner." *United States v. Bert*, 814 F.3d 70, 82 (2d Cir. 2016) (citation omitted). And the government ignores "the public interest in the swift administration of justice." *Bloate v. United States*, 559 U.S. 196, 212 (2010).

The government's suggestion that it was defendants' responsibility to ferret out deficiencies in its productions—notwithstanding the government's express assurances that it had satisfied its discovery obligations—lays bare its obstinate refusal to accept responsibility. The superseding indictment should therefore be dismissed with prejudice, not only to remedy the violation of Mr. Morgan's rights, but also to reform the seemingly intractable pattern of prosecutorial delay in the U.S. Attorney's Office for the Western District of New York.

## ARGUMENT

### I. The Government's Failure to Comply with the Unambiguous Terms of the Ends-of-Justice Continuance Requires Dismissal.

In a desperate attempt to evade the consequence of its failure to comply with Magistrate Judge Schroeder's conditional exclusion of time under the Speedy Trial Act, the government sets forth a series of implausible arguments as to why dismissal is not required. None has any merit.

#### A. The Speedy Trial Act—Not Rule 16—Governs the Remedy Here.

The government contends that the more permissive rubric for sanctions under Federal Rule of Criminal Procedure 16(d)(2) should apply. *See* Opp. 16-18. But that argument ignores the record. Magistrate Judge Schroeder unambiguously conditioned the exclusion of time under

the Speedy Trial Act on the government's compliance with a July 31, 2019 deadline for discovery. He made clear that time would be excluded "***for purposes of the Speedy Trial Act subject to the condition [] imposed as far as meeting the discovery deadlines***." Dkt. 216-4 at 27:3-5 (5/29/2019 Tr.) (emphasis added). And if the government failed to meet the July 31, 2019 deadline for discovery, "the time thereafter that it t[ook] for the government to get that material to defendants w[ould] count against the government ***for purposes of speedy trial requirements, which means the clock w[ould] start running as to the government***." *Id.* at 14:16-22 (emphasis added). "For example," he explained, "if the government was 10 days late in getting the discovery material, the government's time for going to trial [would] be reduced by that 10-day period." *Id.* at 15:7-10. Accordingly, because the government's failure to produce discovery by the July 31, 2019 deadline triggered the Speedy Trial Act's clock, which expired 70 days later when the government still had not completed discovery, it is the Speedy Trial Act—not Rule 16(d)(2)—that governs the appropriate sanction. And a violation of the Speedy Trial Act "mandate[s]" dismissal. *Bert*, 814 F.3d at 78; *see also* Dkt. 217 at 13 ("Br.").[1]

While the government now argues that it is inappropriate to "bootstrap discovery issues into a Speedy Trial Act violation," Opp. 1-2, the appropriate time for it to have raised that argument would have been when Magistrate Judge Schroeder conditioned the exclusion of time under the Act on the government's fulfillment of its discovery obligations. Tellingly, it did not do so. To the contrary, the government agreed that it would "make[] sense," to count every day after July 31, 2019 that it failed to complete discovery against the Speedy Trial Act's 70-day clock, and represented that "the government certainly ha[d] no objection" to that result. Dkt.

[1] The cases that the government cites for the proposition that a sanction short of dismissal is appropriate, *see* Opp. 17-18, 22, are inapposite, as none involved a Speedy Trial Act violation.

216-4 at 15:11-12 (AUSA Penrose); *see also id.* at 27:21-28:5 (AUSA Fabian, agreeing to exclude time for purposes of Speedy Trial Act "subject to the condition" that the court imposed "as far as meeting the discovery deadlines"). And indeed, such an objection would have had no legal merit. Contrary to the government's claim that "an order conditioning exclusion of Speedy Trial Act time on production of all discovery could not withstand legal scrutiny," Opp. at 2, courts routinely exclude time in the interests of justice, pursuant to 18 U.S.C. § 3161(h)(7), in order to permit the government to use the excluded time to complete production of discovery. *See, e.g.*, *United States v. Villano*, 129 F.R.D. 32, 34 (W.D.N.Y. 1989) (granting "relatively brief" and definite ends-of-justice continuance to allow the government, among other things, to "complete voluntary Rule 16 discovery concerning the charges contained in the existing indictment").

In arguing that dismissal would "render largely null the substantial body of [Rule 16(d)(2)] caselaw holding that dismissal is an extraordinary remedy reserved only for extremely limited circumstances," Opp. 23, the government disregards the record. Magistrate Judge Schroeder attempted, repeatedly, to compel the government's compliance with disclosure obligations through lesser means, including court-ordered deadlines and admonishments regarding the defendants' right to—and the public's interest in—a speedy trial. *See, e.g.*, Dkt. 216-2 at 28:20-29:6 (8/6/2018 Tr.) ("[T]he government fell short of its obligation to meet the requirements of the [C]onstitution as regards to speedy trial, and certainly as set forth in the Speedy Trial Act."). Time and again, however, the government violated those deadlines and caused needless delay. Indeed, the government did so even after Magistrate Judge Schroeder warned that "the threat of a club" might be necessary to ensure compliance with the Speedy Trial Act. Dkt. 216-3 at 28:22-23 (10/31/2018 Tr.). Only after the government violated multiple

deadlines and superseded the indictment did the Court deem it necessary to condition the exclusion of time on the government's production of material that had been in its possession for *over a year*. *See* Dkt. 216-4 at 7:13-8:19 (5/29/2019 Tr.).

While the government may regret its agreement to that condition, it is incorrect to suggest that the Second Circuit (or any court) has "rejected" dismissal under the circumstances here. Opp. 23. None of the cases on which the government relies is remotely akin to the situation here, where exclusion of time under the Speedy Trial Act was expressly conditioned upon the government's compliance with a court-ordered discovery deadline.[2]

**B. The Ends of Justice Continuance Was Expressly Conditioned Upon the Government's Completion of Voluntary Discovery by July 31, 2019.**

The government misrepresents the record by claiming that Magistrate Judge Schroeder merely "intended to penalize the government for each day after July 31, 2019 that it failed to provide ***any*** discovery." Opp. 20 (emphasis added). That position is absurd: it would mean that production of a single piece of paper by July 31, 2019 would have sufficed. Such a result could not possibly have served the ends of justice and, thus, it could not have served as the basis for a continuance here. *See, e.g.*, *United States v. Gambino*, 59 F.3d 353, 358 (2d Cir. 1995) ("length of an exclusion for complexity must be . . . reasonably related to the actual needs of the case"); *cf. United States v. Chichackli*, No. 09-CR-1002, 2014 WL 5369424, at *7 (S.D.N.Y. Oct. 16, 2014) (continuance appropriate where it "was *not* based on any request by the Government to

[2] In *United States v. Esquilin*, No. 98-1333, 2000 WL 232162 (2d Cir. Feb. 18, 2000), the court held that the government's failure to produce Rule 16 evidence did not retroactively nullify application of an automatic exclusion. Similarly, in *United States v. Reichberg*, No. 16-CR-4682018 WL 6599465 (S.D.N.Y. Dec. 14, 2018), the court rejected defendants' request to reconsider exclusions of time based on purported misrepresentations concerning the status of Rule 16 discovery. Here, by contrast, Mr. Morgan does not seek to nullify an exclusion. He merely requests that this Court enforce the unambiguous terms of the operative exclusion.

produce discovery on a *leisurely schedule*" (emphases added)).

In fact, the Speedy Trial Act provides that "[n]o [ends-of-justice] continuance . . . shall be granted because of . . . lack of diligent preparation . . . on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(C).[3] By the time Magistrate Judge Schroeder entered the order at issue, more than a year had elapsed since the government seized the materials whose production was still outstanding, and the government had already defied three court-ordered deadlines to produce those materials without providing any justification for its contumacious conduct. Against that backdrop, Section 3161(h)(7)(C) would clearly have precluded a further "ends-of-justice" exclusion if the government continued—more than one year post-seizure—to delay full production of discovery. There is simply nothing in the record that could explain the government's 13-month failure to review and produce materials as anything other than the result of a "lack of diligent preparation." *Id.* Indeed, the 21-page declaration submitted by the government in support of its opposition offers no explanation—much less a justification—for its failure to adhere to three separate court-ordered production deadlines in this matter. Thus, should the Court be inclined accept the government's interpretation of Magistrate Judge Schroeder's order, Mr. Morgan respectfully requests an evidentiary hearing on the question of whether the government's failure to produce the materials resulted from a "lack of diligent preparation" in order to determine whether the recast order was properly granted pursuant to Section 3161(h)(7). If it was not, the ends-of-justice continuance would be a legal nullity, and the Act's 70-day clock would have expired on August 10, 2019.

[3] As one of the cases relied upon by the government recognizes, a "chronic" failure to comply with discovery rules "can prevent exclusion of time from speedy trial calculations." *Esquilin*, 2000 WL 232162, at *2.

In addition to being legally untenable, the government's argument is belied by the record. Magistrate Judge Schroeder made absolutely clear that July 31, 2019 was the deadline for "***completion***" of discovery. Dkt. 50 (emphasis added); *accord* Dkt. 216-4 at 17:16-18 (under "the new scheduling order in place, we have all voluntary discovery to be ***completed*** by July 31st, 2019" (emphasis added)). And the government represented that it was "confident that [it would] be able to . . . provide ***all discovery in the government's possession*** within the 60 days." Dkt. 216-4 at 9:17-20 (emphasis added). Indeed, in agreeing to the conditional exclusion of time, the government confirmed that it applied "with respect to ***any evidence*** subject to discovery currently in [its] possession." *Id.* at 15:11-15 (emphasis added). The government's suggestion that Magistrate Judge Schroeder merely intended to compel the production of "any" discovery "*at all*" is, thus, demonstrably false.[4]

### C. The Government Failed to Produce Large Swaths of Discovery Material by the Deadline—and for at Least 106 of Unexcluded Time Thereafter.

The government offers no explanation for its failure to turn over a voluminous amount of data and discovery material by the July 31, 2019 deadline. While its brief makes conclusory, unsupported statements that the myriad and multiple discovery delays and errors here were "inadvertent, unintentional, and not in bad faith," Opp. at 31, the government offers not one shred of evidence in its supporting declaration to substantiate those claims. In fact, the government does not even bother to proffer an explanation for these failures in its brief, beyond the bare representation that they were inadvertent and unintentional. The government clearly presume that its unsupported conclusory statements should suffice to rebut the detailed evidence

[4] Mr. Morgan does not suggest that an isolated, *de minimis* oversight as to production of material by the July 31, 2019 deadline for completion would have required dismissal under the Speedy Trial Act. But that is plainly not what occurred here. The obvious insufficiency of material produced by the July 31, 2019 deadline—which did not include, *inter alia*, records from *nearly half* of the devices collected—is precisely the type of failure that Magistrate Judge Schroeder intended to penalize when he imposed the conditional exclusion here.

proffered by the defense of a lack of diligent preparation on the government's part, despite numerous occasions in this case where it has had to disavow and correct representations, including "blatantly wrong" ones, Dkt. 216-7 at 31:18-2, made to defense counsel and the Court.

The government also suggests that its failure to produce any discovery from certain seized electronic devices is harmless because some subset of defendants had access to some devices or, much later, mirror images of those devices. This argument ignores firstly, and most fundamentally, that the production of a mirror image of a device cannot alone satisfy the government's obligation to identify discovery that falls within the categories of, *inter alia*, items "material to preparing the defense" or items "the government intends to use . . . in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E). "In meeting its disclosure obligations, the government 'may not simply identify a large number of documents that it may or may not seek to introduce at trial." *United States v. Montague*, No. 14-CR-6136-FPG-JWF, 2016 WL 11621620, at *1 (W.D.N.Y. May 17, 2016) ("[D]ata dumps . . . do not comply with Rule 16."); *United States v. Briggs*, No. 10-CR-184S, 2011 WL 4017886, at *9 (W.D.N.Y. Sept. 8, 2011) (noting with respect to a data dump that the "paper equivalent would be if the Government took photographs of thousands of pages . . . , put them in boxes, and invited inspection by defense counsel"); *accord, e.g.*, *United States v. Quinones*, No. 13-CR-83S, 2015 WL 6696484, at *2 (W.D.N.Y. Nov. 2, 2015). A contrary rule would shift the burden to the defendants to sort through every piece of evidence ever seized by the government and to try to divine which of those materials the government intends to use to prove its case. Such a rule would be entirely inconsistent with the fundamental tenet that the burden of proof in a criminal case rests exclusively with the prosecution.

Secondly, the government's harmlessness argument fails to even attempt to explain how the fact that one defendant is in possession of information can support an inference that all defendants have access to that exact same quantum of information. For example, the government failed to produce to all defendants, until February 11, 2020, *any records* from Todd Morgan's iPhone, which had been in its possession since at least October 2018. Br. 7. Nonetheless, the government emphasizes that the iPhone was returned to Todd Morgan on October 16, 2018. Opp. 15. It does not, however, explain how the return of a device to one defendant could satisfy the government's obligation to produce Rule 16 discovery to other defendants. Nor has it completed the production of Rule 16 discovery from this device to date.

Similarly, the government failed to produce, until December 13, 2019, records from *three computers* seized in May 2018. The government concedes "these hard drives should have been processed and produced earlier, in compliance with the July 31, 2019 discovery deadline." *Id.* While the government attempts to minimize that failure by claiming that the hard drives were "returned to Morgan Management in May 2018, when [Mr.] Morgan still owned the company," Opp. 15, it conspicuously declines to disclose that those hard drives were turned over to Scott Cresswell, a cooperating witness, mere weeks before membership of the company was sold to Mr. Cresswell and three other owners of Grand Atlas, *see* Dkt. 157-1 at 87, and long before Mr. Morgan was indicted. Regardless, for the reasons noted above, returning property seized pursuant to a Rule 41 search warrant does not and cannot suffice to satisfy the government's Rule 16 obligations, especially in the case of a defendant like Mr. Morgan who was not under indictment at the time the property was returned. Even the records that the government did manage to produce on August 8, 2019 were riddled with deficiencies. The records lacked

critical, required metadata fields, were identified using facially insufficient search terms, and omitted privileged communications. *See* Br. 8-9.

Finally, defendants' purported delay in reviewing certain discovery material is a red herring. This argument ignores the fact that the government—by its own concession—had not actually completed production of discovery at the time that the running of the speedy trial clock was purportedly tolled on November 15, 2019. *See* Dkt. 143 at 2, 5-6; Dkt. 157-1, Ex. 1 at 15:4-16:2, 28:15-29:10 (11/25/2019); Dkt. 195-1, Ex. 7; Dkt. 216-7 at 46:15-22 (1/27/2019). It was Mr. Morgan's filing of a motion, and not the government's completion of discovery pursuant to the July 31st order, that purportedly tolled the clock. Dkt. 138. Thus, there can simply be no argument that all of the time between July 31st and November 15th should not be counted against the government for its failure to complete production of materials seized in the May 2018 search because even on November 15, 2019, the government still had not completed production of those materials. *See, e.g.*, Dkt. 143 at 2, 5-6; Dkt. 195-1, Ex. 7.[5]

Apart from being inaccurate, the government's argument that some of the time during which the speedy trial clock ran should not be counted towards the 70-day limit because of alleged negligence by the defendants lacks legal merit. "A criminal defendant has no obligation to take affirmative steps to insure that [he will] be tried in a timely manner." *Bert*, 814 F.3d at 82. And the Speedy Trial Act's terms are clear: there can be no retroactive or *nunc pro tunc* decision by a court that time that has properly elapsed under the statute to not in fact be counted. *See, e.g.*, *United States v. Tunnessen*, 763 F.2d 74, 77 (2d Cir. 1985); *see also* Br. 14. Finally, in seeking to punish defendants for perceived inaction, the government ignores "the public interest

[5] Even assuming, however, that the speedy trial clock did not begin running until August 9, 2019, as the government suggests, Opp. 20-21, after Mr. Morgan's counsel provided hard drives and the government made its initial production to him, there still would be at least 98 days of unexcluded time requiring dismissal under the Speedy Trial Act.

in the swift administration of justice." *Bloate*, 559 U.S. at 211.

## II. The Dismissal Must Be with Prejudice.

The government's opposition makes clear that dismissal with prejudice is necessary because no other remedy will suffice to protect Mr. Morgan's right to a speedy trial or to vindicate the purposes of the Speedy Trial Act in this case.

### A. The Facts and Circumstances of the Government's Speedy Trial Act Violation Warrant Dismissal of the Superseding Indictment with Prejudice.

#### 1. The Government's Pattern of Delay and Obfuscation Necessitates Dismissal with Prejudice.

The record belies the government's claim that it "has worked sedulously to resolve the discovery concerns that have presented themselves in this case." Opp. 38. The government has instead engaged in a pattern of obfuscation that reveals a willful disregard for its statutory and constitutional discovery obligations. For example:

- The government did not promptly notify defendants or the Court after it discovered three computers seized in May 2018, from which it had failed to produce any records. Instead, the government waited at least a week to disclose the failure and buried the revelation in an opposition brief. *See* Br. 10.

- The government blithely represented to the Court that "many or most of the items on the laptops [would be] duplicative of items already produced," despite the fact that it had not yet imaged the documents. Dkt. 143 at 5-6. It has tellingly backed away from that argument here, but only after Mr. Morgan's analysis revealed at least 775,382 new records not previously disclosed, *see* Br. 7-8, 10, and it has been unable to identify any duplicative records nearly four months later.

- After erroneously representing that Todd Morgan's iPhone had been produced, the government backtracked and attempted to justify its delinquent production by representing that the discovery material had not "cleared [] privilege review." Dkt. 195-1 at 104. Weeks later, however, the government conceded that the iPhone had *not*, in fact, been reviewed for privilege. *See* Dkt. 216-7 at 46:15-22 (1/27/2019); Br. 10-11.

- The government incorrectly represented that it could not correct certain metadata issues and refused to produce certain required metadata fields. Despite repeated requests from Mr. Morgan for custodian metadata information, the government refused to provide essential overlay information by the court-ordered January 10 deadline, and only did so after the January 27 status conference with this Court. *See* Br. 11-12.

- The government failed to disclose that it was in possession of a Morgan Management server for months, despite representing that it had produced all discovery material. *Id.* at 12. It also failed to meet its court-ordered deadline to produce the server. Dkt. 270 at 1.
- The government made "blatantly wrong" representations to the Court concerning the existence of grand jury subpoenas and the likelihood that responses would constitute Rule 16 discovery. Dkt. 216-7 at 31:18-21 (1/27/2020 Tr.); *see also* Br. 12.
- The government failed to disclose, during a February 5, 2020 appearance addressing ongoing discovery issues, that earlier that day it identified a significant violation of the court-approved taint team review process resulting in the sharing with its investigations team of more than 16,000 documents identified as presumptively privileged, and waited nine days thereafter to disclose this information. *See* Dkt. 254 at 3-4.[6]

Any one of these errors, omissions, or misstatements would be cause for concern. Together, they demand dismissal with prejudice.

**2. The Length of the Delay Weighs in Favor of Dismissal with Prejudice.**

The government is wrong to assert that "a thirty-six day delay is not substantial enough to warrant dismissal with prejudice." Opp. 31. The Second Circuit has found that a delay of fewer days may warrant dismissal with prejudice under certain circumstances. *See Giambrone*, 920 F.2d at 182. Further, the technical number of days understates the pattern of government negligence (or worse) that has deprived defendants of discovery to which they are entitled under Rule 16 and the Constitution. The government has not represented that voluntary discovery is complete: it has still not produced Todd Morgan's iPhone records, consistent with its Rule 16 obligations. Measured against the government's original deadline, this voluntary discovery is *594 days late and counting*. Dkt. 16. The clock thus continues to run (now with a 155 day delay), even if that time is technically deemed excluded under the Act while this motion remains pending. The days that have elapsed since the expiration of the Act's speedy trial deadline take

[6] While the record conclusively establishes the government's violation of the Speedy Trial Act, and the necessity of a dismissal with prejudice, the upcoming hearing, and any further proceedings that the Court deems appropriate, will further underscore the facts and circumstances that warrant dismissal with prejudice here.

on heightened significance when evaluated in this context.[7]

### B. Dismissal with Prejudice Is Necessary to Ensure the Administration of the Act and Justice in Light of the Government's Pattern of Speedy Trial Neglect.

The government's refusal to accept *any* responsibility for its delays and errors in the production of Rule 16 discovery in this case is stunning. Not once in its brief or supporting affidavit does the U.S. Attorney's Office explain or express regret regarding its repeated failures to adhere to court-ordered deadlines or its misrepresentations regarding the state of discovery. This lack of acknowledgment of any responsibility for the "quagmire" that the parties find themselves in additionally supports dismissal with prejudice, because it makes clear that nothing short of that will get through to the government. The continued willful and repeated disregard of court orders by the prosecutors in this case evinces few parallels in the case law, and yet despite that fact, they give short shrift to their failings, brushing them aside with conclusory claims of inadvertence. Opp. 2, 14-16.

The Speedy Trial Act specifically states that courts should consider the "impact of reprosecution on the administration of this Chapter and on the administration of justice" in assessing whether dismissal with prejudice is appropriate. Indeed, the government appears well aware that whether it acted in "bad faith," Opp. 23, or with "an unjustifiable lack of diligence," *id*. at 25, is relevant to the Court's decision regarding dismissal with prejudice, and yet it offers *no evidence* in that regard. It is particularly surprising that the government does not bother to address, much less explain, the fact that the prosecutors' conduct in this case violated the Office's *own discovery policy*. Br. 1-2, 19; Dkt. 216-9.

[7] The government's suggestion that Mr. Morgan's request for a limited, six-month extension of the deadline for pre-trial motions was inconsistent with his desire for a speedy trial, *see* Opp. 35, is utterly disingenuous. Those motions depend, in large part, on review and analysis of the same material with which the government was initially "unable to cope," Dkt. 216-2 at 4:20-21 (8/6/18 Tr.), and which it still had not finished reviewing a year later, when it elected to supersede the indictment.

As is clear from the government's handling of this case, no remedy short of dismissal with prejudice would serve to correct the years-long pattern of speedy trial neglect by the U.S. Attorney's Office in this district, Br. 19-20, which preceded and presaged the violation here. Again, the government devotes not a single word to the record of violations by its Office, making clear that the message the Second Circuit sought to send to the Western District of New York has not been heard. Br. 20-22. The Office's "cavalier attitude toward speedy trial rights," *Giambrone*, 920 F.2d at 182, has persisted despite repeated judicial reprobation. The government's lamentable, recidivist record of prior Speedy Trial Act violations and resulting dismissal of indictments without prejudice plainly did not deter its behavior in this case. Only dismissal with prejudice would thus provide the necessary "incentive" for the prosecution "to be careful about compliance" with the Speedy Trial Act moving forward. *Zedner v. United States*, 547 U.S. 489, 499 (2006).[8]

**C. The Prejudice to Mr. Morgan Weighs in Favor of Dismissal with Prejudice.**

The government argues that the prejudice suffered by Mr. Morgan as a result of its pattern of delay and mistake in this case is identical to the prejudice suffered by "all criminal defendants." Opp. 39. Since the superseding indictment was brought, the government has blithely communicated to third parties threats about supposed obstruction and required government conditions to "allow" transactions to occur where it had no legal right to do so, irreparably damaging Mr. Morgan's business;[9] delayed significantly Rule 16 disclosure including

8 Under these circumstances, the non-violent offenses charged should not weigh against dismissal with prejudice. *See* Br. 17-18. Indeed, contrary to what the government argues, Opp. 29, "it is not inevitable that every felony charge is categorized as 'serious' [under the] Speedy Trial Act"; rather, "there are degrees of seriousness." *United States v. Montecalvo*, 861 F. Supp. 2d 110, 115 (E.D.N.Y. 2012) (citation and quotation omitted).

9 *See* Dkt. 109 at 3, 5-6 (admonishing government for its "unfortunate" use of "imprecise language" and "incorrect" "suggestion that [it] ha[d] a legal basis to object to the transfer" of non-forfeiture properties); Dkts. 65-66; 86-87; *see also Montecalvo*, 861 F. Supp. 2d at 119-20 ("practical prejudice" included "lost [] business").

irresponsible invasion of Mr. Morgan's attorney-client privilege; and acted with a disturbing lack of candor with the Court and counsel for the defense. *See* Dkt. 66-7 at 2. Further, the government ignores the daily health issues and, in some instances, life-threatening complications that Mr. Morgan faces as a paraplegic. These are not prejudices suffered by all criminal defendants. The anxiety attendant criminal prosecution and the specter of incarceration thus carry, for Mr. Morgan, uniquely oppressive weight. And the government's argument that Mr. Morgan "would have faced substantial hardship and anxiety . . . regardless of this criminal matter," Opp. 39 n.11 (citing SEC investigation and unrelated civil action), betrays a startling inability to appreciate the singular, "weighty" burden that a criminal prosecution imposes. *United States v. Salzmann*, 417 F. Supp. 1139, 1168 (E.D.N.Y.), *aff'd*, 548 F.2d 395 (2d Cir. 1976).[10]

## III. The Delay Has Violated Mr. Morgan's Constitutional Right to a Speedy Trial.

The government's actions "do not reflect a diligent attempt to comply with its constitutional obligations." *United States v. Govey*, 284 F. Supp. 3d 1054, 1062 (C.D. Cal. 2018). Accordingly, for the reasons set forth in Mr. Morgan's opening brief, the government's violation of his constitutional right to a speedy trial provides an independent basis for dismissal with prejudice. *See* Br. 27-30; *see also supra* Pt. II.

## CONCLUSION

For the foregoing reasons, as well as those set forth in his opening brief, Dkt. 217, Mr. Morgan respectfully requests that the Court grant his motion to dismiss the superseding indictment, with prejudice.

---

[10] The government suggests it is inappropriate to rely on cases involving constitutional violations when assessing whether to dismiss with prejudice under the Speedy Trial Act. *See* Opp. 35. It is not. Courts routinely rely on the factors enumerated in *Barker v. Wingo*, 407 U.S. 514 (1972)—which concerned an alleged constitutional violation—to evaluate prejudice under the Speedy Trial Act. *See, e.g.*, *Bert*, 814 F.3d at 83. Accordingly, the constitutional cases cited in Mr. Morgan's opening brief, *see* Br. 23, 26-27, are highly relevant here.

Dated: March 11, 2020
New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Joel M. Cohen*

Joel M. Cohen
Lee G. Dunst
Zainab Ahmad
Caitlin S. Walgamuth

200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
JCohen@gibsondunn.com

Attorneys for Defendant Robert C. Morgan