UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                                :

THE UNITED STATES OF AMERICA,    :

v.                                                 :    18-CR-108-EAW

ROBERT C. MORGAN, et al.              :

                        *Defendants.*    :

------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT C. MORGAN'S RENEWED MOTION FOR DISCOVERY REGARDING THE GOVERNMENT'S PRIVILEGE REVIEW**

## TABLE OF CONTENTS

   Page

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ........................................................................................................................... 2

    A.    Mr. Morgan's Initial Request for Discovery on the Government's Violation of the Privilege Protocol ................................................................................ 2

    B.    The Filter Team's Erroneous Privilege Determinations ................................ 3

ARGUMENT ................................................................................................................................. 7

    I.    Mr. Morgan Is Entitled to Discovery Regarding the Government's Privilege Review Process. .................................................................................................. 7

    A.    Mr. Morgan's Privilege Is Not Adequately Protected by the Government's Privilege Review Procedures. ........................................................................ 8

    B.    Mr. Morgan Is Entitled to Immediate Discovery Regarding the Government's Privilege Review Process. ............................................................................ 9

    C.    The Filter Team's Response to Issues Identified with Its Privilege Review Underscores the Need for Discovery. .......................................................... 10

Conclusion ................................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Cty. of Erie*,
  473 F.3d 413 (2d Cir. 2007)..................................................................................................8

*Grand Atlas Prop. Mgmt. v. U.S.*,
  1:18-mc-00030 (EAW) (W.D.N.Y. 2018)..............................................................................9

*U.S. v. Levin*,
  2015 WL 5838579 (S.D.N.Y. Oct. 5, 2015).........................................................................12

*United States v. Pugh*,
  945 F.3d 9 (2d Cir. 2019) .......................................................................................................8

**PRELIMINARY STATEMENT**

While Mr. Morgan has raised this issue previously, it is now increasingly evident that the privilege protocol and procedures employed by the government's filter team to evaluate Mr. Morgan's privilege and the privileges held by entities that Mr. Morgan controls and/or has an ownership in (the "Morgan Entities") are fundamentally flawed. The government's errors in making privileged determinations, coupled with its continuing refusal to provide Mr. Morgan with basic information regarding its privilege review process or discuss specific categories of privilege documents Mr. Morgan raised, justifies Mr. Morgan's request for discovery on the government's written privilege review protocols and identification of the individuals responsible for that review. Without this discovery, Mr. Morgan will be forced to engage in an inefficient, unnecessarily burdensome and costly piecemeal identification of the government's erroneous privilege determinations. Accordingly, for the reasons set forth in Mr. Morgan's February 20, 2020 Motion for Discovery on the Government's Violation of the Privilege Protocol (Dkts. 253 & 254) ("Motion for Discovery"), the Declaration of Joel M. Cohen in Support (Dkt. 253-1), and as set forth below, Mr. Morgan hereby renews his request for discovery regarding any and all protocols related to the government's privilege review and for identification of all members of the government's filter team responsible for that review.[1]

---

[1] The Court previously denied this request *without prejudice* and "*with leave to renew* any relevant requests" once the government provided Mr. Morgan with certain records. Dkt. 281 (emphasis added).

## BACKGROUND

### A. Mr. Morgan's Initial Request for Discovery on the Government's Violation of the Privilege Protocol

On February 20, 2020, after the government informed the Court that 16,900 potentially privileged documents had been improperly disclosed to the prosecutors and investigators trying this case, Mr. Morgan filed a motion requesting that the Court order the government to immediately produce to the defense several categories of information to allow the defense to analyze the extent of the government's violation of Mr. Morgan's privilege. Dkt. 253. In his motion, Mr. Morgan asked that the Court order the government to, *inter alia*: identify all documents among the 16,900 potentially privileged emails and their family members which were made accessible to the investigation team by providing a Relativity report, Dkt. 254 & 275; produce "all written protocols related to the privilege review, including protocols by which the filter team conducted its privilege review and any protocols in place in the event an investigation team member encountered a document that was potentially privileged," Dkt. 254 at 10; and identify the members of its filter team and investigation teams. *Id*. Mr. Morgan argued that, "[w]ithout knowing the qualifications of the individuals making privilege determinations and the guidelines they have applied in so doing," he was unable to assess the scope and extent of the harm caused by the government's privilege violations.[2] *Id.*

On March 12, 2020, the Court granted Mr. Morgan's motion in part, ordering the Government to produce a Relativity history report of the approximately 16,900 potentially privileged documents that were made available to the government's investigation team. Dkt.

---

[2] The government has conceded that *none* of the filter team members who reviewed the documents were attorneys. *See* Dkt. 322-13 at 40:3-8 (March 10, 2020 Hr'g Tr.) (Q (Court): Who were doing the actual review? A (Penrose): I should say non-lawyers, most were agents. I think there were others from agencies that may have not been, you know, a special agent. Q: But they were not attorneys? A: Correct.)

2

281. The Court denied Mr. Morgan's remaining requests *without prejudice*, including his request for all written protocols related to the government's privilege review and for the identity of the members of the government's Filter and Investigation Teams, "*with leave to renew* any relevant requests once the Relativity history report ha[d] been produced." *Id.* (emphasis added). Specifically with respect to Mr. Morgan's request for the written protocol, the Court stated at the March 10, 2020 conference that Mr. Morgan was "not precluded from raising some subsequent issue" and acknowledged that "subsequent discovery" may necessitate future discovery regarding the government's privilege review procedures. *See* Dkt. 322-13 at 45:19-22 (March 10, 2020 Hr'g Tr.).

**B.     The Filter Team's Erroneous Privilege Determinations**

On December 6, 2018, the government provided Mr. Morgan with 200,944 documents seized pursuant to the May 14, 2018 search warrants executed at Morgan Management, LLC and Frontier Cybercenter[3] that the government's filter team identified as non-privileged. Dkt. 326 at 1. Beginning on February 1, 2019, Mr. Morgan's counsel produced on a rolling basis 83,595 documents to the government that he agreed are not privileged. As previously explained by counsel to Mr. Morgan in its April 20, 2020 letter to the Court, the 117,399 remaining documents are likely privileged. Dkt. 306.[4]

On May 14, 2020, the government requested that Mr. Morgan complete his privilege review of 26,254 documents that appear to be presumptively privileged. Dkt. 326. Mr. Morgan previously indicated that these documents are presumptively privileged because, according to the

---

[3] The government also executed a search warrant on Microsoft Corporation. However, it has represented to Gibson Dunn that it did not collect any documents from Microsoft Corporation. Cohen Decl. ¶ 2.

[4] After the Court's March 12, 2020 decision on the Discovery Motion, Mr. Morgan's counsel completed its review of documents that the government's filter team had previously determined were not privileged. *See* Dkt. 306.

3

header information, they are all communications between Mr. Morgan and/or an employee of one of his entities and an attorney, and no third party is copied. Dkt. 306 at 2. As Mr. Morgan is challenging the criteria the filter team has been using to identify privileged communications and plans to move to suppress all of the electronic information seized during the May 2018 search, Mr. Morgan has not individually reviewed these 26,254 documents. *Id.* at 2.

The government also requested that Mr. Morgan review for privilege the documents from Todd Morgan's iPhone. Dkt. 326. As Mr. Morgan's counsel explained to the Court at the May 29, 2020 conference, Mr. Morgan only received the 425,000 records the privilege team identified as non-privileged from Todd's iPhone on April 3, 2020. *See* Cohen Decl. ¶ 5, Exhibit A (April 3, 2020 Letter); *id.* at ¶ 9, Exhibit B (May 29, 2020 Hr'g Tr.) at 22:7–10. It took the government over *fifteen months* after it accessed the contents of that iPhone (which it seized in May 2018) to even provide it to its own filter team for review, and it took the government an additional *four months* to make the contents available to Mr. Morgan for his counsel's review. Yet the government demanded that Mr. Morgan be put on an unreasonable deadline to do his own privilege review so it could make up for its own lost time. The government incredibly asserted that it completed its own privilege review of the 425,000 records in fewer than thirty hours, by a single reviewer.[5] Finally, the government further asked that Mr. Morgan "provide a privilege log

---

[5] In its May 14, 2020 letter the Government claimed that "a single member of the government filter team" completed its "soup to nuts" review of 425,715 documents in "fewer than 30 hours." Dkt. 326 at 2; *see also* Dkt. 216-7 at 46:2-10 (Jan. 27, 2020 Hr'g Tr.) (Mr. Penrose stating that the government "gave the whole iPhone to the privilege team and said go through it soup to nuts and review it for privilege rather than relying on the search terms."). If true, this is a privilege rate of *at least* 4 documents every second. At the May 29, 2020 conference, the government indicated that Kathryn Smith completed this review and found *no privilege documents*. This fails to address the alarming rate for a review of hundreds of thousands of documents. *See* Cohen Decl., Ex. B at 32:20–22 (May 29, 2020 Hr'g Tr.). And in any event, as outlined at the May 29, 2020 conference, a burdensome and costly review of documents from Todd Morgan's iPhone for privilege should be deferred at least until resolution of anticipated pre-trial motions to *inter alia*, suppress the contents of that iPhone.

4

for all documents in those documents that they assert are privileged, despite the government's determination to the contrary." *Id*. at 3.

In response, at the May 29, 2020 status conference, counsel for Mr. Morgan raised its serious concern about the government's review process and protocols in light of Mr. Morgan's completed review of privilege documents. Cohen Decl., Ex. B at 26:9-24 (May 29, 2020 Hr'g Tr.). AUSA Penrose invited Mr. Morgan's counsel to identify the privilege calls by the filter team that Mr. Morgan disagrees with and promised that the government "will remain to be open to reasonable discussions about how we might limit the scope of the review." *Id.* at 33:9-14. On the privilege log issue, Mr. Penrose admitted that, "I think certainly it's the case that a privilege – a sort of typical civil litigation privilege log for 200,000 documents probably isn't necessary." *Id.*[6]

In response to AUSA Penrose's request at the May 29 hearing that Mr. Morgan identify examples of privilege determinations that Mr. Morgan disagreed with, on June 9, 2020, Mr. Morgan's counsel sent a letter to AUSA Kathryn Smith. The letter referenced documents protected by Mr. Morgan's personal privilege, and communications over which limited liability companies ("LLCs") that Mr. Morgan managed and/or owned held the privilege. In the letter, Mr. Morgan's counsel described examples of categories of privileged documents that the government's filter team erroneously deemed not privileged, and attached specific examples of each category of concern. Cohen Decl. ¶ 11, Ex. C. These examples include (1) communications between Mr. Morgan, as manager and owner of an LLC, and the LLC's counsel made for the purpose of obtaining and providing legal advice; (2) attorney-client

---

[6] The Court stated at the May 29, 2020 conference that it intended to address this issue after oral argument on other pending privilege-related motions scheduled for June 22, 2020 and set no deadline for Mr. Morgan's privilege review. Cohen Decl., Ex. B at 37:24-38:14 (May 29, 2020 Hr'g Tr.).

5

communications about real estate properties managed by Morgan Management that include employees of Morgan Management; (3) attorney-client communications that include brokers acting on behalf of the LLCs; (4) attorney-client communications involving individuals who are part-owners of the LLC that holds the privilege; (5) common interest communications relating to the government's investigation of Morgan Management; and (6) communications between Mr. Morgan and his wife that are protected by the spousal privilege.  *Id.* at 3–5.  Mr. Morgan requested that the government "state its position or protocol" with respect to each of the six categories in order to come to a resolution on which categories of documents are privileged.  *Id.* "[G]iven the unreasonably high error rate in the filter team's review," the letter renewed Mr. Morgan's request that the government provide "an explanation of its privilege determinations and provide information on the applicable protocol (if any) used to review these documents" by June 12, 2020.  *Id.* at 2.  Moreover, Mr. Morgan's counsel asked the government to produce the identity of the individuals who comprise the government's privilege team and the government's investigation team.  *Id*. at 6.

On June 16, 2020, Ms. Smith responded to Mr. Morgan's letter.  Cohen Decl. ¶ 12, Ex. D.  AUSA Smith's response did not engage in the "reasonable[] discussion," as AUSA Penrose represented to expect.  Rather, AUSA Smith's response failed to address or even acknowledge the specific documents identified as privileged by Mr. Morgan, much less the reasons proffered for their being privileged.  She also refused to provide the government's protocol, offering no explanation for the refusal.  Instead, AUSA Smith sought to put the burden on Mr. Morgan to comply with what she characterized were "typical[]" procedure to produce a privilege log of hundreds of thousands of documents, "with evidentiary submissions to factually support the privilege claim."  *Id.* at 1.

6

ARGUMENT

I.     **Mr. Morgan Is Entitled to Discovery Regarding the Government's Privilege Review Process.**

As the June 9, 2020 letter to AUSA Smith lays bare, the government's privilege review process is fundamentally flawed. The dozen examples identified by Mr. Morgan arise from a broad range of communications involving counsel that from their face are privileged and that somehow passed through the filter team's review identified as non-privileged. The range of errors reflect a broader, systemic failure by the filter team. AUSA Smith's letter offers no other reasonable explanation for these errors. The government concedes it failed to even identify privilege holders at the outset, a critical step to any privilege review, and AUSA Smith offers no explanation for this failing either. Dkt. 322-13 at 75:7–21 (March 10, 2020 Hr'g Tr.). Rather than offering any explanations to rebut Mr. Morgan's detailed explanations supporting that the dozen documents are in fact privileged, AUSA Smith's letter relies on the characterization that Mr. Morgan has an "expansive" view of privilege. Cohen Decl., Ex. D. The taint team is not engaging, it is stonewalling.

Mr. Morgan should not be forced to identify the filter team's errors through a burdensome piecemeal review process.[7] Mr. Morgan is entitled to discovery regarding (1) the written protocols governing the filter team's privilege review and (2) the identity of the individuals who comprise the government's filter team, so that Mr. Morgan may identify, in an efficient manner, the errors and deficiencies that pervade the government's privilege review process, and so that the government may resolve those issues accordingly.

---

[7] Given the government's refusal to provide any explanation in its privilege determinations, a privilege log would not further resolve the privilege disputes. Mr. Morgan's June 9 letter provided specific examples of categories of privilege concerns and an explanation of the basis for the privilege assertions. Cohen Decl., Ex. C. The government's refusal to respond belies their claims of "reasonable discussions" and "cooperat[ion]." *See* Cohen Decl., ¶ 10; *see* Cohen Decl., Ex. D at 2.

7

A.  **Mr. Morgan's Privilege Is Not Adequately Protected by the Government's Privilege Review Procedures.**

In addition to the reasons set forth in Mr. Morgan's initial motion, the high rate of erroneous privilege determinations made by the government's filter team (approximately 58%, *see* Cohen Decl., ¶ 7) demonstrates that discovery is needed immediately on the government's process and procedure for its privilege review.

As outlined in the June 9, 2020 letter to AUSA Smith, Mr. Morgan's counsel has identified several categories of privileged communications that the government's filter team erroneously determined were not privileged. Cohen Decl., Ex. C. Among these categories are privileged communications of the most basic sort, including communications between Mr. Morgan and attorneys who represented various LLCs managed or controlled by Mr. Morgan discussing legal advice, which are plainly protected under the attorney-client privilege, *see In re Cty. of Erie,* 473 F.3d 413, 418–19 (2d Cir. 2007), and communications between Mr. Morgan and his wife, which fall under the spousal privilege, *see United States v. Pugh*, 945 F.3d 9, 18 (2d Cir. 2019); *see* Cohen Decl., Ex. C. Moreover, as detailed in the letter to AUSA Smith (and as set forth in Mr. Morgan's pending motion to dismiss counts of the superseding indictment based on the government's privilege violations, Dkts. 322 & 334), the government (both its filter team and investigation team) misunderstands the scope of the attorney-client privilege and the circumstances under which that privilege is deemed waived. *Compare* Dkt. 322 *with* Dkt. 332; *see also* Cohen Decl., Ex. D at 1 (asserting that Mr. Morgan is taking an "overly expansive" view of the attorney-client privilege after he provided examples of communications with his counsel and his wife).

**B.     Mr. Morgan Is Entitled to Immediate Discovery Regarding the Government's Privilege Review Process.**

The erroneous privilege calls identified by Mr. Morgan's counsel strongly suggest that the filter team's review process is flawed and inadequate. At the very least, the disputed privilege determinations reveal a fundamental disagreement between the government and Mr. Morgan as to the scope and nature of applicable privileges, a disagreement that affects many thousands of privileged documents. Yet, the only information that Mr. Morgan has regarding the individuals conducting the privilege review is the government's admission that most of the reviewers were "non-lawyers." Dkt. 322-13 at 40:3–8 (March 10, 2020 Hr'g Tr.). Moreover, the government has repeatedly refused to provide Mr. Morgan with the written protocols governing the filter team's review. *See* Cohen Decl. ¶ 12, Ex. D. Providing these protocols is normally uncontroversial and the government has never asserted otherwise; apparently they simply do not want their process revealed. Disturbingly, this may be because the government apparently never documented its process, or did not effectively follow one. Dkt. 322-13 at 44:18–45:6 (March 10, 2020 Hr'g Tr.) (the government conceding that no written protocol that documented the purposed "compromise[]" between Grand Atlas and the government existed).[8]

The government's decision to shroud its privilege review process in mystery and its refusal to engage in cooperative discussion about its privilege determinations has left Mr. Morgan unable to assess the scope and nature of the harm posed by the government's mistakes in making privilege determinations, and the continued concealment of this information will

---

[8] It is unclear whether this "compromise" with Grand Atlas was memorialized, but if it was, the government has refused to provide Mr. Morgan with the documented protocol. *Contrast* Dkt. 322-13 at 44:18–45:6 (March 10, 2020 Hr'g Tr.) (the government conceding that no written protocol that documented the purposed "compromise[]" between Grand Atlas and the government existed) *with Grand Atlas Prop. Mgmt. v. U.S.*, 1:18-mc-00030 (EAW) (W.D.N.Y. 2018), Dkt. 12 (Minute Entry for proceedings held on Aug. 23, 2018 where the Court states that "Parties have reached an agreement and outlined the specifics."). Either way, the government's response has been inconsistent, which has led Mr. Morgan to make his renewed request.

9

unnecessarily place an enormous burden on Mr. Morgan to review and identify each of the government's erroneous privilege determinations. Mr. Morgan should not be forced to engage in a document-by-document identification of the government's erroneous privilege determinations without any information as to the government's process and procedures when conducting this review. Instead, the government should be ordered to produce to Mr. Morgan the protocols governing its privilege determinations and the individuals responsible for those determinations, so that the parties may identify the core areas of dispute and resolve those issues accordingly, including, as necessary, through application to this Court.

### C. The Filter Team's Response to Issues Identified with Its Privilege Review Underscores the Need for Discovery.

The government's June 16, 2020 response to Mr. Morgan's letter—which refused to acknowledge the specific privileged documents identified by Mr. Morgan or the broader privilege issues implicated by those documents—highlights the need for discovery.

Rather than being "open to reasonable discussions"[9] on the substantive privilege issues raised by Mr. Morgan's letter, the solution, according to AUSA Smith, is for Mr. Morgan to comply with "typical[] procedure" by producing a privilege log of hundreds of thousands of documents, "with evidentiary submissions to factually support the privilege claim." *Id.* There is, however, nothing "typical" about the government's proposed procedure. *First*, Ms. Smith and the filter team *have already reviewed these documents*. A privilege log is typically required when the opposing party has not yet seen the documents. *Second*, Mr. Penrose previously suggested to the Court that Mr. Morgan give examples of categories of privileged documents erroneously determined by the filter team to be non-privileged, Cohen Decl., Ex. B 31:23–32:5

---

[9] *See* Cohen Decl., Ex. B at 33:9–14 (May 29, 2020 Hr'g Tr.) (AUSA Penrose: "[T]he government has always been and will remain open to reasonable discussions about how we might limit the scope of the review…").

(May 29, 2020 Hr'g Tr.), and Mr. Morgan did exactly that—he provided *a dozen* examples of privileged documents spanning six different categories of privilege. Cohen Decl., Ex. C. *Third*, it is not "process" to have Mr. Morgan provide "evidentiary submissions to factually support the privilege claim" for hundreds of thousands of documents. Nevertheless, Mr. Morgan did provide examples and categories of privileged documents to facilitate a conversation about the government's privilege calls, and the government has declined to engage in any substantive discussion to address the disputes. Mr. Morgan has sought to be "cooperative[]" at every stage, in contrast to the government's consistent failure to provide Mr. Morgan with insight into the privilege review process or a meaningful response to Mr. Morgan's letter identifying representative privileged documents. *See* Cohen Decl., Ex. D at 2. The government's refusal to engage substantively on these issues, after representing to the Court that they would, only underscores Mr. Morgan's need for discovery as to the protocols governing the filter team's review.

Further, the government's letter emphasizes Mr. Morgan's concern regarding the use of a filter team generally and the operation of the filter team in this specific case. Issues of privilege should be limited to discussion between Mr. Morgan and the filter team. And yet, the file name for AUSA Smith's letter response, which was copied to Mr. Penrose, is titled "Cohen letter 061620 ***DAP edits***." *See* Cohen Decl., Ex. E (emphasis added). It appears to be the case that AUSA Douglas A.C. Penrose ("DAP") may have edited the filter team's response to Mr. Morgan concerning privileged documents.[10] Mr. Morgan assumes that AUSA Smith did not share the underlying documents with AUSA Penrose. But if AUSA Smith shared Mr. Morgan's

---

[10] The government has refused to identify the members of the filter team, so Mr. Morgan assumes, but cannot be sure, that "DAP" refers to AUSA Penrose rather than another government employee bearing the same initials.

letter, that too would be improper, as the letter contains a description of privileged email correspondence. But regardless, his apparent involvement in editing correspondence concerning the scope of privilege raises serious concerns about the purported separation between the filter and investigation teams, which Mr. Morgan has raised previously. *See* Dkts. 323 & 334. In the filter AUSA's "circumscribed role, he or ***she is not supposed to affirmatively act on behalf on the prosecution***." *U.S. v. Levin*, 2015 WL 5838579, at *2 (S.D.N.Y. Oct. 5, 2015) (emphasis added). Here, however, it appears that the filter AUSA has not only acted in coordination with the investigation team, but that the investigation team edited the filter team's responsive letter concerning the scope of privilege.[11]

Accordingly, Mr. Morgan renews his request that the Court order immediate discovery of all written protocols related to the privilege review, including protocols by which the filter team conducted its privilege review, and the identification of all individuals who comprise the government's filter teams.

## Conclusion

For the reasons set forth above and in his initial Motion for Discovery, Mr. Morgan hereby renews his request that the Court order the government to produce (1) the identity of the individuals who comprise the government's filter team and (2) the written protocols governing the filter team's privilege review.

Dated:   June 18, 2020
        New York, New York

---

[11] Given AUSA Penrose's seeming involvement in editing the letter, it is baffling that the letter now demands production of a privilege log by June 30, 2020—and evidence to support each claim of privilege—when at the May 29, 2020 conference, Mr. Penrose acknowledged to this Court that a typical privilege log would not make sense in this case. Cohen Decl., Ex. B at 33:9–21.

12

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Joel M. Cohen*
    Joel M. Cohen
    Lee G. Dunst
    Genevieve B. Quinn, *pro hac vice admission forthcoming*
    200 Park Avenue
    New York, NY  10166-0193
    Telephone:  212.351.4000
    jcohen@gibsondunn.com

    *Attorneys for Defendant Robert C. Morgan*